**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** § | | Chapter 11 |
| § | | |
| **WBH Energy, LP,** § | | Case No. 15-10003 |
| **WBH Energy Partners LLC** § | | Case No. 15-10004 |
| **WBH Energy GP, LLC** § | | Case No. 15-10005 |
| § | | |
| **Debtors.** § | | Joint Administration Requested |

**DEBTORS' EMERGENCY MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL OF EXISTING SECURED LENDERS, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, AND (III) SCHEDULING FINAL HEARING**

WBH Energy, LP, et al., the above-captioned debtors and debtors in possession (together, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this Emergency Motion (the "Motion") For an Order (I) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lenders, (II) Granting Adequate Protection for Use Thereof, and (III) Scheduling Final Hearing and in support thereof, respectfully represent as follows:

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157. Venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 361, 362, 363 and Bankruptcy Rules 2002, 4001, and 9014.

**II. RULE 4001 STATEMENT**

2. By this Motion the Debtors seek authority to use the Cash Collateral (as defined below) of CL III Funding Holding Company, LLC ("Castlelake") and, to the extent the Court

#4779790

finds it has a valid lien, U.S. Energy Development Corporation ("USED"). The Debtors seek to use such Cash Collateral as working capital in the operation of their business for the purposes specified in, and at least for the period defined in, the attached budget. As adequate protection for the diminution in value of Cash Collateral, the Debtors will (i) maintain the value of their business as a going-concern, (ii) provide replacement liens upon now owned and after-acquired cash to the extent of any diminution in value of Cash Collateral, and (iii) provide superpriority administrative claims to the extent of any diminution in value of Cash Collateral.

### III. BACKGROUND

**Business Description**

3. On January 4, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors in possession. The Debtors have requested joint administration of these chapter 11 cases by motion filed concurrently herewith. No trustees or examiners have been appointed in these cases.

4. The Debtors have filed a Notice of Designation as Complex Chapter 11 Bankruptcy Case. The Debtors have, pursuant to a separate motion, moved this Court for an order authorizing joint administration of the Chapter 11 Cases.

5. Together, the Debtors operate an oil and gas exploration and production business with a primary focus on the Barnett Combo Play of the Fort Worth Basin. Each of the Debtors is a Texas entity, is based in Austin, Texas, and was founded in 2011.

6. WBH Energy, LP is a real property holding company that owns working interests in approximately 1,500 leases consisting of approximately 2,570 net acres throughout the Barnett Combo Play. Of those leases, approximately 30 horizontal wells and 7 vertical wells are currently producing and 6 horizontal wells have been drilled and cased. WBH Energy, LP is managed by its general partner, WBH Energy GP, LLC.

7. WBH Energy Partners LLC is the oil and gas operating company responsible for developing the working interests of WBH Energy, LP and its non-affiliated, non-debtor partner, USED. Specifically, WBH Energy Partners LLC is the operator of certain oil and gas interests pursuant to that certain Joint Operating Agreement (the "JOA") dated September 1, 2011, by and between itself, as operator, and WBH Energy, LP and USED as oil and gas lease owners and/or oil and gas interest owners.

**Description of Secured Bank Debt[1]**

8. Each of the Debtors is a borrower pursuant to that certain senior secured Amended and Restated Loan Agreement (as amended, modified, and supplemented, the "Senior Facility"), dated as of December 19, 2013, by and between WBH Energy Partners LLC, WBH Energy, LP, WBH Energy GP, LLC, as borrowers, on the one hand, and Green Bank, N.A., ("Green Bank") as lender, on the other.[2] Approximately $5,512,000 in principal amount is currently outstanding under the Senior Facility. Pursuant to that certain Amended, Restated and Supplemented Deed of Trust, Mortgage, Security Agreement, Assignment of Production and Financing Statement, dated December 19, 2013, and the Security Agreement between Green Bank and WBH Energy Partners LLC, dated October 17, 2013 (together, the "Senior Security

---

[1] The Debtors do not consent to the extent, validity, or priority of any liens in Debtor property and all such liens are currently under investigation. The Debtors reserve all rights with respect all prepetition liens.
[2] CL III Funding Holding Company, LLC has succeeded to the interests of Green Bank under the Senior Facility, as described below.

Agreement") the Senior Facility is secured by, among other things, a senior lien on (i) all oil and gas leases and interests owned by WBH Energy, LP, (ii) all liquid or gaseous hydrocarbons accruing to or produced from the leases and interests described in the foregoing clause, (iii) all proceeds of the foregoing; and (iv) substantially all assets of WBH Energy Partners LLC.

9. WBH Energy, LP is a borrower pursuant to that certain junior secured Credit Agreement (as amended, modified, and supplemented, the "Junior Facility"), dated as of December 19, 2013, by and between WBH Energy, LP, as borrower, and CL III Funding Holding Company, LLC ("Castlelake") as lender. Approximately $24,000,000 in principal amount is currently outstanding under the Junior Facility. Pursuant to that certain Deed of Trust, Mortgage, Security Agreement, Assignment of Production and Financing Statement, dated December 19, 2013 (the "Junior Security Agreement") the Junior Facility is secured by, among other things, a junior lien on (i) all oil and gas leases and interests owned by WBH Energy, LP, (ii) all liquid or gaseous hydrocarbons accruing to or produced from the leases and interests described in the foregoing clause, (iii) all proceeds of the foregoing. The Junior Facility is further secured by, among other things, a lien against all accounts, contract rights, and rights to payment, related to the oil and gas properties of WBH Energy, LP, and owned by WBH Energy Partners LLC.

10. The priorities between the lenders under the Senior Facility and the lenders under the Junior Facility are governed by that certain Intercreditor Agreement, dated December 19, 2013, by and among the Debtors, Green Bank, and Castlelake. Pursuant to the terms of the Intercreditor Agreement, Castlelake requested Green Bank sell its rights under the Senior Security Agreement and on December 10, 2014, Castlelake provided the Debtors' notice of

#4779790

Green Bank's assignment of its interest in the Senior Facility and Senior Security Agreement to Castlelake.

11.  Under the JOA, the relevant Debtors granted to USED certain liens on their leasehold interests, working interests, operating rights, and overriding royalty interests to secure their performance under the JOA.  The Debtors dispute the amount, validity and priority of any such liens, and reserve all rights with respect thereto.  The adequate protection offered to be provided to USED in this motion and the attached order is only applicable to the extent that the Court finds that USED has a valid lien.  Insofar as both USED and Castlelake are provided adequate protection, the Debtors request that such adequate protection be granted in whatever relative priority existed between Castlelake and USED as existed on the Petition Date

## IV.  RELIEF REQUESTED

12.  As a consequence of the prepetition secured financing under the Senior Facility and Junior Facility as described above, and the JOA, certain cash in the Debtors' possession or in which the Debtors have an interest on and after the Petition Date constitutes asserted cash collateral ("Cash Collateral") in which Castlelake or USED may assert an interest within the meaning of § 363(a) of the Bankruptcy Code.  By this Motion, pursuant to Bankruptcy Code §§ 105, 361, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, the Debtors request that the Court enter an order (i) approving the Debtors' use of Cash Collateral, (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral, and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

#4779790

## V. BASIS FOR RELIEF

13. Under 11 U.S.C. § 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or if the Court, after notice and a hearing, authorizes the use of the cash collateral. Pursuant to 11 U.S.C. § 363(c)(3), the Court must condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.

14. Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.

15. At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.

16. As of the Petition Date, the Debtors do not have unencumbered cash sufficient to fund their business operations and pay present operating expenses. Notably, Castlelake has issued notices to the first purchasers of the Debtors' hydrocarbons demanding that such first purchasers pay any proceeds of the Debtors' hydrocarbons directly to Castlelake. As a result of these actions, the Debtors will be unable to meet basic operating expenses, which has imperiled the survival of their business. Therefore, the Debtors have an urgent need for the immediate use of Cash Collateral pending a final hearing on this Motion.

17. The operation of the Debtors' wells is extremely capital intensive, and any lapse in operation, no matter how transitory, could have a devastating economic impact on the going

#4779790

concern value of the Debtors' business. Specifically, Debtors' approximately 30 horizontal wells and 7 vertical wells that are currently producing require compression services, measurement services, gas lifting, sand separating, water disposal, chemical treatment, roustabourt services, pumpers, *et cetera* in order to continue production. Furthermore, the Debtors own several valuable leases that require either commencement of operations or agreed upon and funded lease extension agreements by approximately January 15, 2015. Absent the commencement of operations or lease extension agreements, the Debtors risk expiration of the leases. The Debtors have been in continuing discussions with Castlelake regarding funding the completion of the drilled and cased wells on these leases (the "Lewis-Stuart Wells") but have not reached agreement as of the filing of this Motion. Consequently, the Debtors seek to preserve the value of their assets by using Cash Collateral to fund lease extensions for the Lewis-Stuart Wells.

18. Accordingly, the Debtors face "immediate and irreparable harm to the estate" absent the emergency consideration of the relief requested in this motion. The immediate use is necessary, and it will stabilize the Debtors' operations and revenue by paying ordinary, postpetition operating expenses, lease extension amounts related to the Lewis-Stuart Wells, and any court approved prepetition expenses that may be at issue. Without authority to use Cash Collateral, the Debtors will not be able to function as a going concern, risk forfeiture of the Lewis-Stuart Wells, and will not be able to proceed to consideration of a plan of reorganization. Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtors' businesses, and will be in the best interests of the Debtors, their estates and their creditors.

19. Through this Motion, the Debtors intend to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to Castlelake and USED, for the use of the Cash Collateral by:

#4779790

(a) maintaining the going concern value of the collateral by using the Cash Collateral to continue to operate the business and administer these cases, including using Cash Collateral to extend the terms of the Lewis-Stuart Wells;

(b) providing Castlelake and USED a postpetition replacement lien pursuant to 11 U.S.C. § 361(2) in the accounts receivable of each relevant Debtor, including cash generated or received by such Debtor subsequent to the Petition Date, but only to the extent that Castlelake and USED had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date, and subject to the Carve-Out (as defined in the attached proposed order); and

(c) providing to Castlelake and USED a superpriority claim pursuant to 11 U.S.C. § 507(b) over all administrative expense claims and unsecured claims, of any kind or nature whatsoever, whether in existence on or arising after the Petition Date, against the Debtors, subject only to the Carve-Out.

20. The continuation of the Debtors' operations presents the best opportunity for Castlelake and USED to receive the greatest recovery on account of their claims. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue their operations, preserve Castlelake and USED's collateral and thereby protect Castlelake and USED's interests. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship,* 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced

#4779790

by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

21. Additionally, through this Motion, the Debtors intend to provide further adequate protection, to the extent of any diminution in value, to Castlelake and USED for the use of the Cash Collateral by providing to Castlelake and USED postpetition replacement liens pursuant to 11 U.S.C. § 361(2) in accounts receivable, including cash generated or received by the Debtors subsequent to the Petition Date, but only to the extent that Castlelake or USED had valid, perfected prepetition liens and security interests in such collateral as of the Petition Date. The priority of any postpetition replacement liens granted to Castlelake and USED shall be the same as existed as of the Petition Date.

## VI. REQUEST FOR INTERIM AND FINAL RELIEF

22. An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral in order to meet key expenses as described above and as identified in the interim budget ("Interim Budget") attached hereto as **Exhibit A.**[3] Without the immediate use of the Cash Collateral for an interim period, the Debtors will essentially be forced to cease production and risk the loss of the Lewis-Stuart Wells. Obviously this would have a severe negative impact upon the Debtors' going concern value and ability to successfully create value for all creditors. A complete shutdown of the Debtors' business, even for a short period, would result in the loss of employees, and creditors and equity receiving substantially less from the enterprise than going concern value. Accordingly, it is imperative that a preliminary hearing be set immediately.

---

[3] The Debtors are preparing a longer term budget and will file such supplemental budget when available.

#4779790

23. Pursuant to Bankruptcy Rule 4001, the Debtors request that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral consistent with the Interim Budget, in order to avoid immediate and irreparable harm to these bankruptcy estates pending a final hearing.

24. The Debtors' also request a final hearing as soon as the Court's schedule permits, following 14 days after service of this Motion.

WHEREFORE, premises considered, the Debtors request that this Court enter an Order, in substantially the form attached hereto, authorizing the Debtors to use Cash Collateral as described herein, setting the Motion for a final hearing, and granting such other and further relief as the Court may deem just and proper.

    Respectfully submitted,

    **BRACEWELL & GIULIANI LLP**

    By: */s/ William A. (Trey) Wood III*
        William A. (Trey) Wood III
        Texas Bar No. 21916050
        Trey.Wood@bgllp.com
        Jason G. Cohen
        Texas Bar No. 24050435
        Jason.Cohen@bgllp.com
        711 Louisiana, Suite 2300
        Houston, Texas 77002
        Telephone: (713) 223-2300
        Facsimile: (713) 221-1212

    **PROPOSED COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 5, 2015, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system and via electronic mail or U.S. Mail or fax upon all parties on the attached Master Service List.

/s/ *Jason G. Cohen*
Jason G. Cohen

#4779790