IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| In re: | § | Chapter 11 |
|---|---|---|
| | § | |
| WBH Energy, LP, | § | Case No. 15-10003 |
| WBH Energy Partners LLC | § | Case No. 15-10004 |
| WBH Energy GP, LLC | § | Case No. 15-10005 |
| | § | |
| Debtors. | § | Joint Administration Requested |

DECLARATION OF JOSEPH S. WARNOCK
IN SUPPORT OF VOLUNTARY PETITIONS UNDER
CHAPTER 11 OF THE UNITED STATES CODE AND FIRST DAY MOTIONS

I, Joseph S. Warnock, state as follows:

### I. INTRODUCTION

1. I am the Vice President of WBH Energy Partners LLC, WBH Energy, LP, and WBH Energy GP, LLC (together, the "Debtors"). I am also a co-founder of each of the Debtors. I am familiar with the Debtors' day-to-day operations, business affairs, books and records.

2. I submit this declaration (the "Declaration") to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of these chapter 11 cases and in support of (i) the Debtors' voluntary petitions for relief under chapter 11 of the Bankruptcy Code filed on January 4, 2015 (the "Petition Date") and (ii) the relief, in the form of motions, that the Debtors have requested of the Court (the "First Day Motions"). Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First Day Motion.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' management and other of the Debtors' advisors and employees, my review of relevant documents, or my opinion

#4779149.3

based upon my experience and knowledge of the Debtors' operations and financial condition. If I were called to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

4. This Declaration is intended to provide a summary overview of the Debtors and these chapter 11 cases. This Declaration describes the Debtors' businesses and the Debtors' debt, and summarizes the First Day Motions supported by this Declaration.

## II. DEBTORS' BUSINESSES

5. On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors in possession. The Debtors have requested joint administration of these chapter 11 cases by motion filed concurrently herewith. No trustees or examiners have been appointed in these cases.

6. The Debtors have filed a Notice of Designation as Complex Chapter 11 Bankruptcy Case.

7. Together, the Debtors operate an oil and gas exploration and production business with a primary focus on the Barnett Combo Play of the Fort Worth Basin. Each of the Debtors is a Texas entity, is based in Austin, Texas, and was founded in 2011.

8. WBH Energy, LP is a real property holding company that owns working interests in approximately 1,500 leases consisting of approximately 2,570 net acres throughout the Barnett Combo Play. Of those leases, approximately 30 horizontal wells and 7 vertical wells are currently producing and 6 horizontal wells have been drilled and cased. WBH Energy, LP is managed by its general partner, WBH Energy GP, LLC.

#4779149.3

9. WBH Energy Partners LLC is the oil and gas operating company responsible for developing the working interests of WBH Energy, LP and its non-affiliated, non-debtor partner, U.S. Energy Development Corporation ("USED"). Specifically, WBH Energy Partners LLC is the operator of certain oil and gas interests pursuant to that certain Joint Operating Agreement (the "JOA") dated September 1, 2011, by and between itself, as operator, and WBH Energy, LP and USED as oil and gas lease owners and/or oil and gas interest owners. WBH Energy, LP and USED have agreed to the joint development of certain oil and gas lease interests pursuant to that certain Participation Agreement dated September 1, 2011, by and between WBH Energy, LP and USED (the "Participation Agreement"). WBH Energy Partners LLC is a member managed limited liability company. WBH Energy Partners LLC's four employees and four managing members handle all tasks related to operation of the oil and gas interests. WBH Energy Partners LLC does not receive any material revenue from the sale of oil and gas; rather, WBH Energy Partners LLC is compensated through operator fees for its services. If WBH Energy Partners LLC was removed as operator it would effectively be out of business.

### III. CAPITAL STRUCTURE[1]

10. Each of the Debtors is a borrower pursuant to that certain senior secured Amended and Restated Loan Agreement (as amended, modified, and supplemented, the "Senior Facility"), dated as of December 19, 2013, by and between WBH Energy Partners LLC, WBH Energy, LP, WBH Energy GP, LLC, as borrowers, on the one hand, and Green Bank, N.A., ("Green Bank") as lender, on the other.[2] Approximately $5,512,000 in principal amount is

---

[1] This Affidavit contains a summary only and is not intended to alter the actual terms of the Senior Facility, Senior Security Agreement, Junior Facility, or Junior Security Agreement (collectively, the "Loan Documents"). In the event there is a discrepancy between the terms in this Affidavit and the terms of the Loan Documents, the Loan Documents control.

[2] CL III Funding Holding Company, LLC has succeeded to the interests of Green Bank under the Senior Facility, as described below.

#4779149.3

currently outstanding under the Senior Facility. Pursuant to that certain Amended, Restated and Supplemented Deed of Trust, Mortgage, Security Agreement, Assignment of Production and Financing Statement, dated December 19, 2013, and the Security Agreement between Green Bank and WBH Energy Partners LLC (together, the "Senior Security Agreement") the Senior Facility is secured by, among other things, a senior lien on (i) all oil and gas leases and interests owned by WBH Energy, LP, (ii) all liquid or gaseous hydrocarbons accruing to or produced from the leases and interests described in the foregoing clause, (iii) all proceeds of the foregoing, and (iv) substantially all assets of WBH Energy Partners, LLC.

11. WBH Energy, LP is a borrower pursuant to that certain junior secured Credit Agreement (as amended, modified, and supplemented, the "Junior Facility"), dated as of December 19, 2013, by and between WBH Energy, LP, as borrower, and CL III Funding Holding Company, LLC ("Castlelake") as lender. Approximately $24,000,000 in principal amount is currently outstanding under the Junior Facility. Pursuant to that certain Deed of Trust, Mortgage, Security Agreement, Assignment of Production and Financing Statement, dated December 19, 2013 (the "Junior Security Agreement") the Junior Facility is secured by, among other things, a junior lien on (i) all oil and gas leases and interests owned by WBH Energy, LP, (ii) all liquid or gaseous hydrocarbons accruing to or produced from the leases and interests described in the foregoing clause, (iii) all proceeds of the foregoing. The Junior Facility is further secured by, among other things, a lien against all accounts, contract rights, and rights to payment, related to the oil and gas properties of WBH Energy, LP, and owned by WBH Energy Partners LLC.

12. The priorities between the lenders under the Senior Facility and the lenders under the Junior Facility are governed by that certain Intercreditor Agreement, dated December 19,

#4779149.3

2013, by and among the Debtors, Green Bank, and Castlelake. Pursuant to the terms of the Intercreditor Agreement, Castlelake requested Green Bank sell its rights under the Senior Security Agreement and on December 10, 2014, Castlelake provided the Debtors' notice of Green Bank's assignment of its interest in the Senior Facility and Senior Security Agreement to Castlelake.

### IV. EVENTS LEADING TO CHAPTER 11 FILING

13. In early September 2014, the Junior Lender informed the Debtors that it was declining to release further funds under the Junior Credit Facility. As a result, WBH Energy LP was unable to fund its share of expenses due to WBH Energy Partners LLC under the Joint Operating Agreement. WBH Energy Partners LLC, in turn, was then unable to fund its payment obligations to various vendors. Consequently, the Debtors' lease development plan was placed in jeopardy. The Debtors immediately entered into restructuring discussions with their Junior Lenders.

14. As restructuring discussions continued between the Debtors and the Junior Lender, the Debtors also entered into discussions with USED related to the WBH Energy, LP's lack of funds to move forward with well completion. On November 20, 2014, USED informed WBH Energy Partners LLC ("Operator") that it believed Operator was insolvent and therefore deemed to resign as the operator under the JOA. Operator disagreed that it was insolvent and stated that it remained as operator under the JOA.

15. On December 3, 2014, the Junior Lender sent WBH Energy, LP a default and acceleration notice under the Junior Credit Facility.

16. On December 9, 2014, USED provided the Debtors with a Notice of Default under the Joint Operating Agreements, asserting the Debtors were in default for failure to pay its share of operational expenses in the amount of approximately $12 million. Pursuant to the Joint

#4779149.3

Operating Agreement, USED asserted that the Debtors have until January 9, 2015 to cure the default or USED may foreclose on WBH Energy, LP's interest in its leases.

17. On December 12, 2014, Castlelake provided the Debtors with a default and acceleration notice under the Senior Credit Facility. On the same day, Castlelake also issued a Notice of Trustee's sale under the Junior Credit Facility, which set such sale for January 6, 2015 Facility. In addition, on December 23, 2014, Castlelake filed a Verified Complaint in the Fourth Judicial District Court for the County of Hennepin, Minnesota, styled *CL III Funding Holding Company, LLC a Delaware limited liability company v. WBH Energy, LP, a Texas limited partnership, WBH Energy GP, LLC, a Texas limited liability company, and WBH Energy Partners, LLC, a Texas limited liability company*, for breach of contract, appointment of a receiver, declaratory judgment enforcing rights under the deeds of trusts, and injunction. A week later, Castlelake issued a notice of sale of collateral under the Uniform Commercial Code, pursuant to which Castlelake sought to foreclose on the accounts of WBH Energy Partners LLC.

18. On December 29, 2014, USED filed a petition in the 271st Judicial District of Jack County, Texas ("State Court"), styled *U.S. Energy Development Corporation v. WBH Energy Partners LLC, WBH Energy, LP and WBH Energy GP, LLC*, for breach of contract, fraud, breach of fiduciary duty, conspiracy, accounting, foreclosure, constructive trust, exemplary damages, declaratory judgment, and a temporary injunction. Specifically, USED alleges that the Debtors resigned as operator under the terms of the Joint Operating Agreement and is in default under the Joint Operating Agreement. USED alleges that it has the right to replace WBH Energy Partners LLC as operator under the Joint Operating Agreement with itself, effective immediately. The Debtors dispute all of these allegations. On the same day the petition was filed, the State Court judge entered an *ex parte* Order Granting USED's Application

#4779149.3

for Temporary Restraining Order against Defendants WBH Energy Partners, LLC. ("TRO"). The TRO restrains the WBH Energy Partners LLC from, among other things, acting as operator under the Joint Operating Agreement; interfering or opposing USED designation and approval as operator under the Joint Operating Agreement; and withholding any documentation in connection with the operations under the Joint Operating Agreement. The TRO also requires the Debtors to deliver data relating to operations to USED; advise parties to pay production proceeds to USED instead of Debtors; and complete forms to be filed with the Texas Railroad Commission changing the operator to USED. The hearing on USED's application for temporary injunction against the Debtors is currently set for January 9, 2015.

19. In order to preserve the value of the Debtors' businesses and potential value to unsecured creditors, the Debtors were forced to file these bankruptcy cases before the January 6, 2015 foreclosure date. In addition, the Debtors could not operate their businesses as a result of the TRO unless they filed these bankruptcy cases.

## V. FIRST DAY MOTIONS

**Emergency Motion Pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure Requesting Joint Administration of Chapter 11 Cases**

20. The Debtors anticipate that, during the course of these cases, it will be necessary to file numerous motions and applications, as well as other pleadings and documents, seeking relief on behalf of all Debtors. To accomplish this as efficaciously as possible, the Debtors seek joint administration of their cases under the WBH Energy, LP case. The Debtors respectfully submit that joint administration of their chapter 11 cases is in the best interests of their estates, creditors, and other parties-in-interest; and will further the interests of judicial economy and administrative expediency by, among other things, obviating the need to: (i) file duplicate motions, (ii) enter duplicate orders, and (iii) forward unnecessary, duplicate notices and other

#4779149.3

documents to creditors and other parties-in-interest, which actions would cause the Debtors' estates to incur unnecessary costs and expenses.

**Notice of Designation as Complex Chapter 11 Bankruptcy Cases**

21. The Debtors believe that these cases qualify for treatment as complex cases. As of the Petition Date, the Debtors have aggregate assets of more than $10 million and aggregate liabilities of more than $30 million. There are over 1,000 parties in interest in the case. As a result, the Debtors have a significant need for simplification of noticing and hearing procedures to reduce delays and expenses.

**Emergency Motion for an Order (i) Authorizing Continued Use of Existing Business Forms and Records, (ii) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System, and (iii) Waiving the Requirements of 11 U.S.C. § 345(b)**

22. Prior to commencing these cases, in the ordinary course of their businesses, the Debtors used a cash management system (the "Cash Management System") to efficiently collect, transfer, and disburse funds generated by their business operations.

23. The Debtors respectfully request authority to maintain their bank accounts and the Cash Management System in accordance with their usual and customary practices to ensure a smooth transition into chapter 11 with minimal disruption to operations. The Debtors also request authority to close any of their bank accounts if, in the exercise of their business judgment, the Debtors determine that such action is in the best interest of their estates.

24. In order to conduct their postpetition business, the Debtors need to be able to issue checks to vendors, service providers, and others. Additionally, their bank accounts are maintained with financial institutions that are financially stable. For instance, the Debtors maintain accounts at the following banks: Green Bank, Horizon Bank, Texas Capital Bank, and Texas Exchange Bank. As an oil and gas operator, the Debtors have a system in place to receive

#4779149.3

payments from their production and remit to each royalty owner a share of such revenue Requiring a change in the Debtor's current cash management system would likely result in a loss of revenue for a period of time, would be costly, and would likely be disruptive to the timely payment to royalty owners, which could subject leases to forfeiture, ultimately, to the detriment of the Debtors' reorganization efforts.

**Emergency Motion to Authorize Payment of Prepetition Taxes and Related Obligations and Continue Such Payments Postpetition**

25. The Debtors seek authority, but not direction, to pay pre-petition property taxes, federal, state, and local severance taxes, employee related taxes, and all other applicable taxes to the respective taxing authorities. This request is without prejudice to the Debtors' right to contest any amounts of taxes on any ground they deem appropriate. The failure to pay taxes could disrupt the Debtors' operations and reorganization efforts, to the detriment of their estates and creditors.

**Emergency Motion for Order (I) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment**

26. The Debtors' request authority to make adequate assurance payments to utility companies currently providing or which will provide services to the Debtors, prohibiting such utility companies from altering, refusing, or discontinuing services on account of the Debtors' bankruptcy filing or the non-payment of pre-petition amounts owed, and establishing certain procedures for resolving utility company requests for additional assurance of payment. Numerous companies provide the Debtor with electricity, telephone, and internet services that are necessary for the continued operation of the Debtors' businesses. As of the Petition Date, no defaults or arrearages with any utility company exists and upon information and belief, no

#4779149.3

outstanding amounts are owed to any utility provided. The Debtors estimate that their aggregate monthly utility usage is approximately $5,100.00. The Debtors' require uninterrupted utility service to effectively operate and maintain the value of their businesses, for the ultimate benefit of their creditors. The Debtors' cannot operate their business without utility services. Therefore, any interruption of their utility services for substantially disrupt the Debtors' operations and ability to successfully reorganize.

**Emergency Motion for Order (I) Authorizing Debtors to (A) Pay Prepetition Wages and Salaries to Employees and (B) Pay Prepetition Benefits and to Continue Benefit Programs in the Ordinary Course, and (II) Authorizing Financial Institutions to Honor All Related Checks and Electronic Payment Requests**

27. The Debtors' have eight (8) employees collectively. WBH Energy LP has four (4) employees that consist of its management team and WBH Energy Partners LLC has three (3) salaried employees and one (1) hourly employee. The Debtors seek authority to pay any pre-petition wages due to their employees, whether accrued or currently due and payable, any pre-petition employee benefit obligations, and continue paying such fees and obligations post-petition. The Debtors request this relief to reduce any potential hardship to their employees and maintain the morale of their essential workforce through the Debtors' bankruptcy cases. Assuming the Debtors' are granted authority to use Cash Collateral, the Debtors will have sufficient funds to pay all requested amounts as and when due.

**Emergency Motion for Order Authorizing Debtors to (A) Remit Royalty and Working Interest Payments to Royalty and Working Interest Holders and (B) Continue Such Payments Post-Petition in the Ordinary Course of Business**

28. The Debtors seek authority to make all payments due to royalty interest owners and working interest owners (collectively, the "Royalty Owners") in the normal course of business, regardless of whether such royalty is due for production before or after the Petition Date. The Debtor's oil and gas leases are the foundation of their business and the failure to pay

#4779149.3

or continue to pay amounts owed to Royalty Owners would result in an increased risk of liens, litigation, or other actions by the Royalty Owners. This would burden the Debtors' assets, diminish their value, and distract the Debtors' from their ultimate goal of reorganization. Further, the payment of royalties is essential to preserving the value of the Debtors' oil and gas leases and ensuring the successful sale of the Debtors' assets and businesses.

**Emergency Motion for an Order (I) Authorizing the Debtors to Use Cash Collateral of Existing Secured Lenders, (II) Granting Adequate Protection for Use Thereof, and (III) Scheduling Final Hearing**

29. The Debtors have an immediate need to use the Cash Collateral of Castlelake and, to the extent the Court finds it has a valid lien, USED. Without the use of this Cash Collateral, the Debtors will not be able to pay the costs and expenses of operating their business, including but not limited to, wages, salaries, general and administrative operating costs, lease operating expenses, and other costs that arise in the ordinary course of the Debtors' business and in the administration of these bankruptcy cases. As of the Petition Date, the Debtors do not have sufficient unencumbered cash to fund their business operations and pay present operating expenses. If the Debtors are unable to obtain interim authority to use Cash Collateral as working capital in the operation of their business, the Debtors will be unable to meet basic operation expenses, which would have a devastating effect on the value of the Debtors' business and other assets and, ultimately, the Debtors' ability to successfully reorganize. Therefore, the Debtors face immediate and irreparable harm if they are not granted authority to use Cash Collateral in accordance with the motion and interim order.

30. The interim order protects any interest of Castlelake and USED in the Cash Collateral by providing them adequate protection to the extent of the aggregate diminution in the value of Cash Collateral by maintaining the going concern value of the collateral; providing

#4779149.3

Castlelake and USED a postpetition replacement lien to the extent of their valid, perfected prepetition liens and security interests in such Cash Collateral, as described in the Cash Collateral motion; and providing Castlelake and USED a superpriority claim, as described in the Cash Collateral motion. As such, any interest of Castlelake and USED in the Cash Collateral is adequately protected through the terms of the interim order.

31. Accordingly, the Debtors request authority to use the Cash Collateral on an interim basis in accordance with the proposed interim budget and interim order attached to the Cash Collateral motion, set a final hearing on the Debtor's request to use Cash Collateral, and provide adequate protection to Castlelake and USED in accordance with the terms of the interim order.

## Conclusion

12. Approval of the First Day Motions is in the best interest of the Debtors, their estates and their creditors.

13. I have reviewed this Declaration and hereby declare under penalty of perjury that the foregoing is true and correct and within my own personal knowledge.

Executed this 5th day of January, 2015

_____
Joseph S. Warnock
Vice President

#4713378.3