IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WBH Energy, LP, | § | Case No. 15-10003 |
| | § | |
| Debtor. | § | |

CL III FUNDING HOLDING COMPANY, LLC'S
OBJECTION TO DEBTOR WBH ENERGY, LP'S
EMERGENCY MOTION TO USE CASH COLLATERAL
[Relates to Docket No. 16]

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

CL III Funding Holding Company, LLC ("CL III") files this Objection to Debtor WBH Energy LP's Emergency Motion to Use Cash Collateral (Docket No. 16) as follows:

## I. INTRODUCTION

1. CL III holds valid, perfected liens and security interests which secure indebtedness in excess of $30 million on all cash currently held by WBH Energy, LP ("WBH LP") or WBH Energy Partners, LLC ("Energy Partners"), as well as all post-petition receipts by WBH LP (which are primarily proceeds from the sale of production attributable to WBH LP's working interests in oil and gas leases) and all post-petition receipts by Energy Partners (which consist of joint interest billing accounts receivable payments to Energy Partners as operator).[1] In sum, CL III has a valid perfected lien and security interest in all cash on hand and all projected

---

[1] While the Energy Partners budget attached as Docket No. 16-1 shows operating receipts from oil revenue, gas revenue and pipeline revenues, these payments are not Energy Partners' property; rather, such payments are received and passed through by Energy Partners to the royalty interest owners and working interest owners who own the property interests such payments are attributable to.

1

cash receipts which are reflected in the budget filed at Docket No. 16-1. While the Debtors have presented a consolidated budget for usage of CL III's cash collateral, the request by each Debtor must be considered separately. The cash collateral proposed to be used by each Debtor is different. The cash collateral proposed to be used by WBH LP is oil and gas revenues and pipeline revenues. *See* WBH LP weekly budget; Docket No. 16-1, page 5 of 5. The cash collateral proposed to be used by Energy Partners consists solely of joint interest billing accounts receivable receipts.[2] The expenses of each Debtor should also be considered separately in determining which expenditures are necessary to avoid immediate and irreparable harm to each Debtor's estate. Finally, the adequate protection required of CL III's interest in cash collateral must be considered separately. Neither Debtor has shown that it can provide adequate protection for the use of CL III's cash collateral, therefore, the motion should be denied.

## II. BACKGROUND

2. WBH LP holds working interests in approximately 5,000 leases throughout the Barnett Combo Play and located in Montague and Cooke Counties, Texas ("Subject Leases"). Energy Partners is the oil and gas operating company responsible for operating the leases in which WBH LP holds a working interest.

3. On January 4, 2015 (the "Petition Date"), WBH LP, Energy Partners and WBH Energy GP, LLC (collectively herein sometimes referred to as the "Debtors") each filed with the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"), their respective voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code")

---

[2] The other operating receipts shown on the Energy Partners weekly budget are not attributable to property of Energy Partners; rather, such receipts are received by Energy Partners, as operator, on behalf of WBH LP and U.S. Energy Corporation ("USED"), the working interest owners.

2

commencing each respective chapter 11 case. The Debtors continue to operate each of their respective businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed, and no committee has yet been appointed or designated.

4. On January 5, 2015, WBH LP filed a number of "first-day" motions, including the Cash Collateral Motion.

5. In the Cash Collateral Motion, WBH LP improperly attempts to use CL III's cash collateral. CL III's liens and security interests attach to and encumber all assets of WBH LP including payments WBH LP receives from proceeds from production from its oil and gas leases. Such proceeds constitute CL III's cash collateral and CL III does not consent to Debtors' use of CL III's cash collateral.

### CL III's Security Interests

6. CL III is the holder of both the senior and junior secured debts of the Debtors.

**A. Senior Loan Documents**

7. On December 19, 2013, Green Bank, N.A. and the Debtors entered into that certain Amended and Restated Loan Agreement (as amended, restated and otherwise modified, the "Loan Agreement") establishing and containing the terms of a revolving credit facility not to exceed the total aggregate amount of $15,000,000 ("Senior Loan") from Green Bank, N.A. to the Debtors. Under the terms of the Loan Agreement, the Debtors executed and delivered to Green Bank, N.A. that certain Revolving Note, dated as of October 17, 2013, in the original principal amount of $15,000,000 ("Senior Note").

8. The Senior Note and the Debtors' obligations and duties under the Loan Agreement are secured by, among other documents:

3

(a) Amended, Restated and Supplemented Deed of Trust, Mortgage, Security Agreement, Assignment of Production and Financing Statement, dated as of December 19, 2013, from WBH Energy, LP to Geoffrey D. Greenwade, as Trustee for the benefit of the Secured Parties defined therein, as recorded in Official Public Records of Cooke County, Texas, Doc. No. 2013-43724, Vol. 1910, Pg. 526 on December 26, 2013 and in the Official Public Records of Montague County, Texas, Inst. No. 1313777, Vol. 728, Pg. 478 on December 26, 2013 ("Senior Deed of Trust");

(b) Security Agreement (WBH Energy Partners LLC), dated as of October 17, 2013, between WBH Energy Partners LLC, as debtor, and Green Bank, N.A., as secured party ("Senior Energy Partners Security Agreement"); and

(c) Security Agreement (WBH Energy, LP), dated as of October 17, 2013, between WBH Energy, LP, as debtor, and Green Bank, N.A., as secured party ("Senior WBH LP Security Agreement")

(collectively, along with the Loan Agreement and Senior Note, the "Senior Loan Documents").

9. On December 10, 2014, Green Bank, N.A. sold, transferred, assigned, granted, and conveyed to CL III the Loan Agreement, Senior Note, Senior Loan Documents and all indebtedness and obligations owing to Green Bank, N.A., along with all rights, benefits, remedies and privileges of Green Bank, N.A.

**B. Junior Loan Documents**

10. On or about December 19, 2013, CL III and WBH LP entered into a Credit Agreement (as amended, restated or otherwise modified, the "Credit Agreement") establishing and containing the terms of an advancing term loan not to exceed the total aggregate amount of $31,500,000 (the "Junior Loan") from CL III to WBH LP. In connection with the Credit Agreement, WBH LP executed an Advancing Term Note (the "Junior Note"), dated December 19, 2013, in favor of CL III in the original principal amount of THIRTY-ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($31,500,000) or as much thereof as shall have been

4

advanced and remaining unpaid and outstanding hereunder, plus all PIK Interest increasing such principal amount and other amounts accrued under the Credit Agreement.

11. The Junior Note and the Debtors' obligations and duties under the Credit Agreement are secured by, among other documents:

(a) Security Agreement between WBH Energy Partners ("Energy Partners") and CL III (the "Junior Energy Partners Security Agreement");

(b) Security Agreement between WBH LP and CL III (the "Junior WBH LP Security Agreement"); and

(c) Deed of Trust, Mortgage, Security Agreement Assignment of Production and Financing Statement that was recorded in the Official Public Records of Cooke County, Texas, Cooke County Clerk's Document No. 43731, Book OPR, Vol. 1910, Pg. 622, on December 26, 2013 and the Official Public Records of Montague County, Texas, Montague County Clerk's Instrument No. 1313778, Vol. 728, Pg. 554, on December 26, 2013 (collectively, the "Junior Deeds of Trust").

(collectively, along with the Credit Agreement and Junior Note, the "Junior Loan Documents").

**Nature and Scope of Security Interest**

12. <u>WBH LP's Accounts and Deposit Accounts</u>. The Senior WBH LP Security Agreement and Junior WBH LP Security Agreement grant CL III a security interest in all of the personal property of WBH LP, including the following interest:

(a) all of WBH LP's now owned or existing or hereafter acquired or arising accounts and includes all of WBH LP's rights to payment arising out of the transfer of rights in WBH LP's tangible or intangible personal property. *See* Section 2.1 and Appendix I of Senior WBH LP Security Agreement and Section 2.1 and Appendix I of Junior WBH LP Security Agreement; and

(b) all of WBH LP's now owned or existing or hereafter acquired or arising deposit accounts. *See* Section 2.1 and Appendix I of Senior WBH LP Security Agreement and Section 2.1 and Appendix I of Junior WBH LP Security Agreement.

13. <u>Subject Leases</u>. The Senior Deed of Trust and Junior Deeds of Trust grant CL III security interests in the following, among other, assets: all of WBH LP's undivided interest and title, now owned or hereafter acquired, in and to (i) the Subject Leases; (ii) the oil, gas and other minerals in and under the lands covered by the Subject Leases and/or the lands spaced, pooled or unitized therewith (the "<u>Lands</u>"); (iii) the oil, gas and other mineral interests and estates in and under the Lands including working interests, royalties, overriding royalties, net profits interests and production payments (the "<u>Subject Interests</u>"); (iv) any and all oil and gas units covering, in whole or in part, the Lands covered by, or derived or carved from, the Subject Leases and/or the Lands spaced, pooled or unitized therewith; (v) all pooling, communitization, unitization and similar orders of governmental authorities, bodies and commissions that cover all or any portion of the Lands; and (vi) the Lands and all lands pooled, unitized or communitized therewith. *See* Paragraph I at Pg. 1 of the Senior Deed of Trust and Junior Deeds of Trust.

14. <u>Hydrocarbons</u>. The Senior Deed of Trust and Junior Deeds of Trust also granted CL III security interests in all oil, gas, casinghead gas, drip gasoline, natural gasoline and condensate, all other liquid and gaseous hydrocarbons, and all other minerals, whether similar to the foregoing or not (herein collectively called "<u>Hydrocarbons</u>"), now or hereafter accruing to or produced from the Subject Interests and/or to which WBH LP now or hereafter may be entitled as a result of or by virtue of its record and/or beneficial ownership of any one or more of the Subject Interests. *See* Paragraph II at Pg. 2 of the Senior Deed of Trust and Junior Deeds of Trust.

15. <u>Contract Rights</u>. Likewise, the Senior Deed of Trust and Junior Deeds of Trust grant CL III security interests in all present and future rights of WBH LP under or by virtue of all present and future operating agreements, contracts for the purchase, exchange, processing,

transportation or sale of Hydrocarbons, and other contracts and agreements relating in any way to all or any part of the Mortgaged Property, as the same may be amended or supplemented from time to time (herein collectively called the "Subject Contracts"). *See* Paragraph III at Pg. 2 of the Senior Deed of Trust and Junior Deeds of Trust.

16. Production and Production Proceeds. Also, the Senior Deed of Trust and Junior Deeds of Trust grant CL III security interests in the following:

    (a) all as-extracted collateral and all oil, gas and other Hydrocarbons and minerals produced from or allocated to the Mortgaged Property, and any products processed or obtained therefrom (herein collectively called the "Production"), and all Liens in the Production securing payment of the proceeds of the Production, including those Liens provided under statutes enacted in the jurisdictions in which the Mortgaged Property is located. *See* Paragraph (b) at Pg. 3 of the Senior Deed of Trust and Junior Deeds of Trust;

    (b) all money, documents, instruments, chattel paper, securities, accounts or general intangibles arising from or by virtue of any transaction related to the Mortgaged Property or the Production. *See* Paragraph (f) at Pg. 4 of the Senior Deed of Trust and Junior Deeds of Trust; and

    (c) all proceeds of the Collateral or payments in lieu of Production (such as "take or pay" payments), whether such proceeds or payments are goods, money, documents, instruments, chattel paper, securities, accounts, general intangibles, fixtures, real property or other assets. *See* Paragraph (g) at Pg. 4 of the Senior Deed of Trust and Junior Deeds of Trust.

17. All accounts and deposit accounts of WBH LP and the proceeds from Production from the Subject Leases constitute the cash collateral of CL III. Likewise, all WBH LP's post-petition collections of proceeds from production from third parties and affiliates constitute the cash collateral of CL III. Further, CL III's security interest in the Subject Leases is impaired by the production and sale of oil and gas from the oil and gas leases upon which CL III's liens attach under applicable state law. Hydrocarbons are unique because they are not reproducible and the amount is finite. The oil and gas leases are likewise unique because as production occurs

the value of the leases diminish until they finally become worthless. Thus, the value of CL III's liens and security interests diminish as the wells are produced.

### III. DISCUSSION

18. Title 11 U.S.C. § 363 of the Bankruptcy Code provides in relevant part:

(c)(2) The trustee may not use, sell, or lease cash collateral unless –

(A) each entity that has an interest in such cash collateral consents; or

(B) the court after notice and a hearing authorizes such use, sale, or lease in accordance with provisions of this section.

\*\*\*

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing *shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest*. . . . (emphasis added).

**Objections to Proposed Cash Collateral Order**

19. <u>Objection 1 – The Proposed Order improperly permits WBH LP to use CL III's cash collateral without CL III's consent</u>. By failing to provide that the Debtors must obtain CL III's consent to Debtors' use of CL III's cash collateral, the Debtors' proposed cash collateral order violates Section 363. The Court should prohibit Debtors from using CL III's cash collateral, except to the extent that CL III consents, in writing, to the use of its cash collateral and such cash collateral is used in strict accordance with an interim budget that is approved by CL III. Further, use of cash collateral during the interim period should be limited to only those expenditures necessary to avoid immediate and irreparable harm to the estate.

20. <u>Objection 2 – The Proposed Order fails to provide CL III with adequate protection</u>. The principal balance of the Senior Loan and the Junior Loan is potentially greater

than the value of WBH LP's assets. The principal balance on the Senior Loan is $5,512,000 and the principal balance on the Junior Loan is $24,000,000. In addition to the principal balances, the Debtors also owe CL III other amounts including accrued and unpaid interest, attorneys' fees and other fees and expenses, which are also secured under CL III's pre-petition loan and collateral documents.

21. Adequate protection must be determined on a case-by-case basis. Some examples of adequate protection are provided in 11 U.S.C. § 361, which provides for cash payments, additional or replacement liens or other relief that will result in the realization of the indubitable equivalent of the creditors interest in its collateral. *See* 11 U.S.C. § 361. Here, the Debtors propose to use CL III's cash collateral, the highest and best form of collateral. Further, as explained above, as the hydrocarbons from the subject leases are produced and sold, and the cash used, such leases depreciate in value. With respect to Energy Partners, its only sources of cash are payments on joint interest billing accounts receivables and as such cash is spent CL III's collateral position is impaired. The proposed adequate protection liens and adequate protection claims are insufficient to protect CL III's interest in its cash collateral. The adequate protection liens propose to grant CL III (and USED) replacement liens on the same collateral which CL III already has a lien on under CL III's pre-petition collateral documents and by virtue of 11 U.S.C. § 552(b). An adequate protection lien which CL III would share *pari passu* with USED and which is subordinate to a $250,000 dollar carve-out for Debtors' professional fees, on the same collateral that CL III already holds a lien on, is not adequate protection. Further, the proposed adequate protection super-priority claim subjects CL III to the very real risk of either or both of the WBH LP and Energy Partners bankruptcy cases being administratively insolvent. Thus, CL III is not adequately protected.

9

22. Further, CL III requests that any order authorizing the use of CL III's cash collateral expressly provide that:

(a) Before WBH LP shall use any of CL III's cash collateral, WBH LP must obtain CL III's consent, which may be withheld in the sole discretion of CL III, to the use of cash collateral;

(b) WBH LP shall obtain written approval from CL III, which approval may be withheld in the sole discretion of CL III, for the cash collateral budget;

(c) WBH LP shall use such CL III's cash collateral in strict accordance with the approved cash collateral budget;

(d) All pre and post-petition production revenues or proceeds from the Subject Leases are the cash collateral of CL III;

(e) All pre and post-petition collections of joint interest billings are the cash collateral of CL III;

(f) All deposit accounts of WBH LP are the cash collateral of CL III;

(g) All production revenues or proceeds from the Subject Leases be deposited monthly into a segregated account;

(h) All post-petition collections of joint interest billings be deposited into a segregated account;

(i) All proceeds in the current deposit accounts of Debtors be deposited into separate, segregated accounts;

(j) WBH LP shall furnish to CL III the following information with respect to CL III's collateral and Debtors' businesses:

(1) a current listing of the Debtors' oil and gas leases and producing/non-producing wells;

(2) a listing of the working interest owners and their respective ownership interests (including the Debtors) in the Debtors' oil and gas leases and wells on a lease-by-lease (or unit) and well-by-well basis;

(3) most recent engineer reserve report(s) evaluating Debtors' interest in the Debtors' oil and gas leases and wells;

(4) monthly oil and gas production and revenue reports and lease operating statements on a lease-by-lease (or unit) and well-by-well basis for the past six months;

(5) monthly joint interest billings reports setting forth the amounts billed, paid, and outstanding (with respect to each non-operating working interest owner) on a lease-by-lease (or unit) or well-by-well basis for the past six months;

(6) a list of all assignees of oil and gas interests (whether recorded or not) that have received assignments from the Debtors within the past six months;

(7) A listing of all agreements with third parties which relate to Debtors' interests in the Debtors' oil and gas leases and wells, including joint operating agreements;

(8) A listing of all agreements with third parties for the gathering, treating and processing of production from the Debtors' oil and gas leases and wells;

(9) An accounting of all proceeds received from first purchasers of production from the Debtors' oil and gas leases and wells for the past six months;

(10) Corporate tax returns for 2010 forward;

(11) Correspondence with owners of each Debtor regarding tax payments required by each and funded by the debtors;

(12) Name of revenue accounting software used since 2012 (other than Oil & Gas Business Solutions which was outsource vendor through 2013);

(13) Name of general ledger software used since 2012; and

(14) Online access to bank records or copies of bank statements (not including all items/checks at this time) for 2013 and 2014 for both Debtors.

**WHEREFORE, PREMISES CONSIDERED,** CL III respectfully requests that the Court enter an order limiting WBH LP's use of CL III's cash collateral to circumstances whereby CL III consents to such use, granting CL III adequate protection, and such other relief to which CL III is entitled.

January 6, 2015                               Respectfully submitted,

                                          SNOW SPENCE GREEN LLP

                                        By:   /s/  Kenneth Green
                                              Phil Snow
                                              State Bar No. 18812600
                                              Kenneth Green
                                              State Bar No. 24036677
                                              2929 Allen Parkway, Suite 2800
                                              Houston, Texas 77019
                                              (713) 335-4800
                                              (713) 335-4848 (Fax)

                                        **ATTORNEYS FOR SECURED CREDITORS**
                                        **CL III FUNDING HOLDING COMPANY, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 6, 2015, a true and correct copy of this document was served by electronic means via the Court's ECF noticing system.

        */s/    Kenneth Green*
        Kenneth Green

I:\Client\CAST0001-Castlelake-WBH\Bankruptcy\Drafts\20150106 CL III Obj to Cash Collateral - WBH LP.docx