

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | Case No. 15-10003 |
| **WBH Energy Partners, LLC, and** | § | |
| **WBH Energy GP, LLC** | § | Chapter 11 |
| | § | |
| Debtors. | § | *Jointly Administered* |

# TERM SHEET

This is a term sheet for proposed debtor-in-possession financing by CL III Funding Holding Company LLC ("Castlelake") to the Debtors for (i) Debtor LP's share of completion costs for the six Lewis-Stuart PDNP Wells and (ii) agreed-upon reasonable and necessary bankruptcy administration costs and expenses incurred by the Debtors in connection with the bankruptcy cases, to the extent such financing is necessary to supplement the Debtors' use of cash collateral to pay bankruptcy-related expenses, which shall not include any Break-Up Fee or Expense Reimbursement to Cantor Fitzgerald[1]. No agreement shall exist unless and until definitive documents are executed and approved by the Bankruptcy Court.

**Summary of Principal Terms and Conditions for
Senior Secured Superpriority Debtor in Possession Term Loan Facility**

| Borrowers: | Debtor GP, Debtor LP and Debtor LLC (each a "Borrower" or "Debtor" and collectively, the "Borrowers" or "Debtors"), as debtors and debtors in possession in a jointly administered bankruptcy case (the "Bankruptcy Case") pending under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"). |
|---|---|
| Lender: | Castlelake (the "Lender"). |
| DIP Facility: | A senior secured priming superpriority debtor in possession term loan |

---

[1] Expenditures by Debtor LLC would continue to be governed by a separate cash collateral order and budget for Debtor LLC.

1

| | |
|---|---|
| | facility in an aggregate principal amount of up to $5,000,000 (the "DIP Facility", the loans thereunder the "DIP Loans"). |
| Purpose: | The proceeds of the DIP Facility will be used (a) to finance specified capital expenditures in accordance with the applicable DIP Budget (as defined below), subject to the expenditure variances referenced below under the heading "Affirmative Covenants" and (b) to pay certain fees, costs and expenses incurred by the Debtors in connection with the Bankruptcy Case. |
| Interest Rates: | The DIP Loans shall bear interest at the rate of 5% per annum, compounded quarterly. Calculation of interest shall be on the basis of the actual number of days elapsed over a calendar year and shall be paid in kind by being capitalized and added to the principal amount of the outstanding DIP Loan amount on a quarterly basis. |
| Default Rate: | The applicable interest rate plus 2.0% per annum. |
| DIP Budget: | The Borrower shall prepare and provide on the Closing Date, a mutually agreeable weekly cash flow budget covering at least the upcoming 13-week period, (together with all updates thereto approved by the Lender, the "DIP Budget"). The DIP Budget shall include a detailed listing of all capital expenditures to be made with respect to Borrower's six-well completion project ("Lewis-Stuart Completion Project") for the Lewis-Stuart B-1H and 2H, E-1H and 2H, and F-3H and 4H wells and shall include details as to accounts payable relating to the Lewis-Stuart Completion Project, separated by pre- and post-petition, including vendor names and description of goods/services performed for all individual services over [$10,000]. Where possible and competitive, Lender requests that the oilfield service companies who are creditors of the Debtors be utilized for the Lewis-Stuart Completion Project. |
| Availability: | Subject to satisfaction of the Conditions set forth below, as applicable: (a) Upon entry of a mutually agreeable form of order by the Bankruptcy Court approving the DIP Facility (the "DIP Order"), DIP Loans will be made available for uses consistent with and in accordance with the DIP Budget; and (b) Amounts to be advanced for the Lewis-Stuart Completion Project shall be funded into a separate escrow account under an escrow agreement with the Operator. Pursuant to the DIP Budget and upon submission of invoices from the Operator detailing the third-party expenditures required to be paid, funds will be released from the escrow on a weekly basis or as otherwise agreed to by Lender and the Operator for uses consistent with and in accordance with the applicable DIP Budget. |
| Conditions to Availability: | Customary conditions for debtor in possession facilities and transactions of this type and others to be reasonably specified by the Lender, including, without limitation: (a) receipt of the DIP Budget and such other information as may be |

| | |
|---|---|
| | reasonably requested by the Lender; |
| | (b) entry of the DIP Order which shall (x) approve and authorize (i) the DIP Funding and (ii) certain specified matters as set forth herein, including the superpriority claim status and the liens in respect of the DIP Facility referred to below under the caption "Security and Priority", (y) set a deadline of <u>April 15, 2015</u> for any challenges to the claims and liens of Lender under the Prepetition Senior Credit Agreement and/or Prepetition Junior Credit Agreement and (z) include a finding that the Lender is extending credit in good faith within the meaning of Section 364(e) of the Bankruptcy Code, and which DIP Order shall be in full force and effect and shall not have been vacated, reversed, modified, amended or stayed; |
| | (c) delivery of satisfactory corporate documents and officers' and public officials' certifications; |
| | (d) evidence of authority; |
| | (e) absence of material adverse change other than by virtue of the commencement of the Bankruptcy Case; |
| | (f) payment of fees and expenses; |
| | (g) receipt of PATRIOT Act and other "know your customer" information; |
| | (h) delivery of notice of borrowing; |
| | (i) accuracy of representations and warranties; |
| | (j) absence of defaults as set forth herein, as applicable; and |
| | (k) execution and delivery by the Debtors to the Lender of a debtor-in-possession credit agreement and related documentation, or an amendment to the existing Credit Agreement between Lender and Borrower, consistent with the terms hereof (the "<u>Definitive Documentation</u>"). |
| <u>Final Maturity:</u> | The DIP Facility will mature on the earliest to occur of (a) August 1, 2015; (b) the closing of a sale of all or substantially all of the assets of Borrowers, which must occur by no later than August 1, 2015; (c) the effective date of any plan of reorganization filed in the Bankruptcy Case that is confirmed pursuant to an order entered by the Bankruptcy Court, which must occur by no later than August 1, 2015; or (d) in the case of an Event of Default, the date of acceleration of the loans under the DIP Facility and the termination of the commitments under the DIP Facility in accordance with the terms of the Definitive Documentation. |
| <u>Security and Priority:</u> | All obligations of the Borrower under the DIP Facility shall at all times: <br><br> (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority claim status in the Bankruptcy Case (senior to all other claims of any kind); <br><br> (ii) pursuant to Section 364(c)(2) of the Bankruptcy Code, be secured |

3

by a perfected first priority lien on all now owned or hereafter acquired tangible and intangible property of the Debtors and the Debtors' estates in the Bankruptcy Case that is not subject to: (a) valid, perfected and non-avoidable liens in existence as of the Petition Date or (b) valid and non-avoidable liens in existence as of the Petition Date that are subsequently perfected as permitted by Section 546(b) of the Bankruptcy Code (other than in the case of (a), the prepetition liens and security interests held by Lender), including, without limitation, all inventory, accounts receivable, general intangibles, Hydrocarbon Interests (as defined in the Prepetition Senior Credit Agreement), Hydrocarbons (as defined in the Prepetition Senior Credit Agreement), chattel paper, owned real estate, real and personal property leaseholds, fixtures and machinery and equipment, deposit accounts, cash collateral, letter of credit rights, patents, copyrights, trademarks, tradenames, rights under license agreements, and other intellectual property and capital stock of any affiliates or subsidiaries of the Debtor, <u>excluding however, avoidance actions under Chapter 5 of the Bankruptcy Code</u>;

(iii)  pursuant to Section 364(c)(3) of the Bankruptcy Code, be secured by a perfected junior lien on all now owned or hereafter acquired tangible and intangible property of the Debtors and the Debtors' estates in the Bankruptcy Case that is subject to: (a) valid, perfected and non-avoidable liens in existence as of the Petition Date that are senior to the liens securing the Prepetition Senior Credit Agreement and/or Junior Credit Agreement or (b) valid and non-avoidable liens in existence as of the Petition Date that are senior to the liens securing the Prepetition Senior Credit Agreement and/or Junior Credit Agreement which are subsequently perfected as permitted by Section 546(b) of the Bankruptcy Code; and

(iv)  pursuant to Section 364(d)(1) of the Bankruptcy Code, be secured by a perfected first priority, senior priming lien on all now owned or hereafter acquired (a) interests of Debtor LP in the oil and gas wells, leases, units and related property rights described in **Exhibit A** ("<u>Lewis-Stuart Lease Interests</u>") and (b) Debtor LLC's accounts receivables and related property and rights collectively, the "<u>DIP Collateral</u>", which shall be subject in each case only to the "<u>Carve-Out</u>".

The "<u>Carve-Out</u>" shall mean (i) all fees required to be paid pursuant to 28 U.S.C. §1930, (ii) in the event of the occurrence and during the continuance of an Event of Default under the Definitive Documentation, the payment of allowed and unpaid estate professionals' fees and disbursements (collectively "<u>Professional Fees</u>") incurred after the first business day following delivery of a Carve-Out Trigger Notice (as defined below) in an aggregate amount not in excess of [$250,000] (the "<u>Carve-Out Cap</u>") and (iii) all unpaid Professional Fees and Operating Expenses incurred or accrued in accordance with the DIP Budget prior to the first business day following delivery by Lender of a Carve-Out Trigger Notice, in each case to the extent allowed by the Bankruptcy Court.

The term "<u>Carve-Out Trigger Notice</u>" shall mean a written notice delivered by the Lender to the Debtor, its counsel, the Committee, its counsel and the U.S. Trustee, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the Definitive Documentation, expressly stating that the Carve-Out Cap is invoked. No

4

| | |
|---|---|
| | portion of the Carve-Out Cap or any of the proceeds of the DIP Facility may be used for or in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Lender under the Prepetition Senior Credit Agreement, Prepetition Junior Credit Agreement or the DIP Facility.<br><br>So long as an Event of Default shall not have occurred and be continuing under the Definitive Documentation, except as provided in the preceding sentence, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and § 331, and in accordance with the DIP Budget, as the same may be due and payable.<br><br>Neither the Carve-Out nor any portion of the DIP Facility or cash collateral shall be used in connection with (i) preventing, hindering or delaying the Lender's enforcement or realization upon the DIP Collateral once an Event of Default has occurred and is continuing, (ii) using or seeking to use cash collateral or selling or otherwise disposing of the DIP Collateral without the consent of the Lender, (iii) using or seeking to use any insurance proceeds related to the DIP Collateral without the consent of the Lender, or (iv) incurring indebtedness other than in accordance with the DIP Budget.<br><br>All of the above-described pledges, security interests and mortgages shall be created on terms, and pursuant to documentation, satisfactory to the Lender and none of the DIP Collateral shall be subject to any other liens, other than as described above and subject to customary and limited exceptions to be agreed upon. |
| Postpetition Lien Perfection and Right to Credit Bid: | The DIP Order will provide that the DIP Order is sufficient and conclusive evidence of the validity, perfection and priority of the liens on the DIP Collateral without the necessity for any filing or recording of any financing statement or other instrument or document which may otherwise be required under the laws of any jurisdiction or the taking of any action to validate or perfect such liens or to provide for the priorities described above under the caption "Security and Priority." Notwithstanding the foregoing, the Lender may take any action (and shall, to the extent necessary in connection therewith, be granted relief from the automatic stay), to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, such liens, and the Debtor shall execute and deliver to the Lender all such financing statements, mortgages, notices and other documents as the Lender may reasonably request in connection therewith.  Further, the DIP Order shall provide that Lender shall have the right to credit bid any and all amounts outstanding under the DIP Facility in connection with any sale of the Debtors' assets, whether as part of a 363 sale, a plan of reorganization, or otherwise. |
| Use of Cash Collateral: | The DIP Facility shall not be available unless the Bankruptcy Court shall have authorized the use by the Debtors of proceeds of collateral that constitutes "cash collateral" as defined in the Bankruptcy Code. The DIP Facility shall not be available unless the Borrower shall at that time have the use of such cash collateral for the purposes that are described under "Purpose" above. |

5

| | |
|---|---|
| Adequate Protection: | To compensate for any diminution in value of the collateral securing Borrowers' obligations under the Prepetition Senior Credit Agreement and Prepetition Junior Credit Agreement during the Bankruptcy Case, Castlelake will be provided agreed-upon adequate protection, to include administrative claims and replacement liens to secure obligations under the Prepetition Senior Credit Agreement and Prepetition Junior Credit Agreement, which shall be junior to the liens and claims in respect of the DIP Facility. The DIP Order shall include provisions for such adequate protection liens and claims satisfactory to the Lender. As adequate protection for the priming of the liens securing the Prepetition Senior Credit Agreement and Prepetition Junior Credit Agreement, the Borrower will acknowledge the validity and amount of the Lender's secured claims under both credit agreements (but not the priority of such liens or claims). Additionally, to the extent of any diminution in value, the Lender under the Prepetition Senior Credit Agreement and Prepetition Junior Credit Agreement will receive replacement liens on all postpetition assets and income and proceeds from such assets as adequate protection, junior to the liens securing the DIP Facility. |
| Mandatory Prepayments: | Loans under the DIP Facility shall be prepaid with (a) 100% of the net cash proceeds of all non-ordinary course asset sales or other dispositions of property by the Debtor, including proceeds from the sale of equity securities and insurance and condemnation proceeds, and (b) 100% of the net cash proceeds of issuances, offerings or placements of debt obligations of the Debtor. |
| Voluntary Prepayments and Reductions in Commitments: | Voluntary reductions of the unutilized portion of the commitments under the DIP Facility and prepayments of borrowings thereunder will be permitted at any time, in minimum principal amounts to be agreed upon, without premium or penalty. |
| Representations and Warranties: | Customary for debtor in possession facilities and transactions of this type, including:<br><br>(a) corporate status;<br><br>(b) legal, valid and binding documentation;<br><br>(c) no consents necessary;<br><br>(d) accuracy of financial statements, confidential information memorandum and other information;<br><br>(e) description of and amount of accounts payable as of the Petition Date (based on the accounts payable account within the general ledger as of the Petition Date);<br><br>(f) reasonable and good-faith budget projections;<br><br>(g) no material adverse change other than the commencement of the Bankruptcy Case;<br><br>(h) absence of undisclosed liabilities, litigation and investigations; |

|  | |
|---|---|
|  | (i) no unstayed litigation, proceeding or investigation; <br><br> (j) no violation of, or conflicts with, agreements or instruments other than those caused by the commencement of the Bankruptcy Case; <br><br> (k) compliance with laws (including the PATRIOT Act, ERISA, margin regulations, environmental laws, laws applicable to sanctioned persons and the Foreign Corrupt Practices Act); <br><br> (l) payment of taxes; <br><br> (m) ownership of properties; <br><br> (n) intellectual property; <br><br> (o) inapplicability of the Investment Company Act; <br><br> (p) effectiveness of governmental approvals; <br><br> (q) labor matters; <br><br> (r) environmental and other regulatory matters; <br><br> (s) use of proceeds; <br><br> (t) insurance; <br><br> (u) location of business and offices; <br><br> (v) marketing of production; <br><br> (w) swap agreements; <br><br> (x) validity and perfection of security interests; and <br><br> (y) reorganization matters. |
| <u>Debtor Stipulations:</u> | Customary for debtor in possession facilities and transactions of this type, including: <br><br> (a) aggregate amount of the debt owed under the Prepetition Senior Credit Agreement and Prepetition Junior Credit Agreement; <br><br> (b) the validity (but not priority) of the liens and security interests securing such debt; and <br><br> (c) the waiver of any claims or causes of action against the Lender under the Prepetition Senior Credit Agreement and Prepetition Junior Credit Agreement. |
| <u>Affirmative Covenants:</u> | Customary for debtor in possession facilities and transactions of this type, including: <br><br> (a) maintenance of corporate existence and rights; <br><br> (b) performance of obligations (in accordance with the DIP Budget); <br><br> (c) delivery of consolidated financial statements and other information, including information required under the PATRIOT Act; |

7

|  |  |
|---|---|
|  | (d) delivery of updates to the DIP Budget, and weekly compliance with the DIP Budget, subject to weekly expenditure variances, on a line item and aggregate basis, with no individual line item variance exceeding 10% and the aggregate variance not exceeding 15%; |
|  | (e) updates and variance reports with respect to the Lewis-Stuart Completion Project Budget; |
|  | (f) other customary debtor in possession financing reporting requirements (it being understood and agreed by Lender that an advisory firm acceptable to Lender may assist the Debtor in reviewing accounting matters; analyzing, reviewing and confirming the Debtor's cash flow and capital expenditure budget; and monitoring budget variances and other similar matters in connection with such reporting); |
|  | (g) delivery of monthly certification of financial covenant compliance and other reporting requirements; |
|  | (h) delivery of all pleadings, motions, applications, judicial or financial information and other documents filed by or on behalf of the Debtor with the Bankruptcy Court, at the same time as any such information is delivered or updated; |
|  | (i) delivery of notices of default, litigation, ERISA events and material adverse change; |
|  | (j) maintenance of properties in good working order; |
|  | (k) maintenance of satisfactory insurance; |
|  | (l) compliance with laws; |
|  | (m) inspection of books and properties; |
|  | (n) further assurances; |
|  | (o) payment of taxes (as allowed by Bankruptcy Court order for prepetition taxes); and |
|  | (p) compliance by the Debtor in all respects with the DIP Order. |
| Negative Covenants: | Customary for debtor in possession facilities and transactions of this type, including: |
|  | (a) limitations on dividends on, and redemptions and repurchases of, equity interests and other restricted payments; |
|  | (b) limitations on prepayments, redemptions and repurchases of debt (other than loans under the DIP Facility) and prohibition on prepaying prepetition debt, except as provided for in the DIP Budget or as otherwise agreed to by the Lender; |
|  | (c) limitations on liens and sale-leaseback transactions; |
|  | (d) limitations on loans and investments; |
|  | (e) limitations on debt, guarantees and hedging arrangements; |

8

|  |  |
|---|---|
|  | (f) limitations on mergers, acquisitions and asset sales; |
|  | (g) limitations on transactions with affiliates; |
|  | (h) limitations on changes in business conducted by the Borrower and limitations on creation of new subsidiaries; |
|  | (i) limitations on amendments of debt and other material agreements; |
|  | (j) limitations on rejection of oil and gas leases without prior consultation with the Lender at least 30 days before the filing of any motion for rejection or the deemed rejection of any oil and gas lease; |
|  | (k) limitations on capital expenditures; and |
|  | (l) prohibition on claims under Section 506(c) of the Bankruptcy Code. |
| Events of Default | Customary for debtor in possession facilities and transactions of this type (subject, where appropriate, to thresholds and grace periods to be agreed upon), including: |
|  | (a) the Definitive Documentation shall not have been executed and delivered by the Borrower to Lender within one business day after the date of entry of the DIP Order; |
|  | (b) dismissal of the Bankruptcy Case or conversion of the Bankruptcy Case to a Chapter 7 case unless consented to in writing by Lender; |
|  | (c) appointment of a Chapter 11 trustee, a responsible officer or an examiner with enlarged powers (beyond those set forth in Section 1l06(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of the Debtor in the Bankruptcy Case; |
|  | (d) the granting of any superpriority claim or lien which is *pari passu* with or senior to the claims or liens of the Lender with respect to the DIP Facility; |
|  | (e) the entry of any order in the Bankruptcy Case charging any of the DIP Collateral, including under Section 506(c) or Section 552(b) of the Bankruptcy Code, or the commencement of other actions adverse to the Lender or its rights and remedies under the DIP Facility in any Bankruptcy Case; |
|  | (f) failure of the DIP Order to be in full force and effect, including by the entry of an order reversing, amending, supplementing, staying for a period in excess of 7 days, vacating or otherwise modifying, in a manner that is adverse to the Lender, the DIP Order; |
|  | (g) failure of the Debtors to comply with the terms of the DIP Order; |
|  | (h) entry of an order by the Bankruptcy Court terminating the use of cash collateral; |
|  | (i) the payment by the Debtors (by way of adequate protection or otherwise) of any principal or interest or other amount on account of any pre-petition indebtedness or payables unless consented to in writing by Lender; |

9

|  | |
|---|---|
|  | (j) the entry of an order or orders granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party or third parties (other than Lender) to proceed against any assets of the Debtors having a value, individually or in the aggregate, in excess of [$10,000] or to permit other actions that would have a material adverse effect on the Debtors or their estates; <br><br> (k) the rendering of any judgment(s) or order(s), individually or in the aggregate, in excess of [$10,000] against the Debtors, the enforcement of which is not stayed or the rendering of any non-monetary judgment against the Debtor which causes or would reasonably be expected to cause a material adverse effect; <br><br> (l) the filing of a plan by the Debtors, without the consent of the Lender, that does not provide for the indefeasible payment in full upon confirmation in cash of all obligations owed to the Lender in respect of the DIP Facility; <br><br> (m) failure to: <br>    (i) or before March 31, 2015 file a motion for approval of bid procedures for a sale of the assets of the Borrowers on terms acceptable to the Lender, <br>    (ii) on or before April 30, 2015 obtain an order of the Bankruptcy Court approving bid procedures for a sale of the assets of the Borrowers on terms acceptable to the Lender, or <br>    (iii) on or before August 1, 2015 obtain an order of the Bankruptcy Court approving a sale of the assets of the Borrowers on terms acceptable to the Lender. <br><br> (n) the assertion by the Debtors of any investigation, claim or action against the Lender under the (x) DIP Facility, (y) Prepetition Senior Credit Agreement or (z) Prepetition Junior Credit Agreement; <br><br> (o) entry of an order approving any sale of all or substantially all of the Debtors' assets other than as provided herein; <br><br> (p) cessation of work otherwise contemplated by the DIP Budget adversely affecting the Debtors' business operations; <br><br> (q) violation of covenants; <br><br> (r) incorrectness of representations and warranties in any material respect; <br><br> (s) Change of Control; <br><br> (t) entry of a final order by any governmental authority that requires incremental bonding or other collateral requirements in excess of 110% of the amount specified in the DIP Budget. |
| Automatic Stay: | The DIP Order shall provide for the automatic lifting of the automatic stay to allow the Lender to exercise, upon the occurrence of an Event of Default and five business days' prior written notice, all rights and remedies under the Definitive Documentation, including, among other things, the right of the Lender to accelerate amounts owed under the DIP Facility and to terminate the Debtors' use of cash collateral. |

10

| | |
|---|---|
| Cost and Yield Protection: | Customary for debtor in possession facilities and transactions of this type. |
| Access to Information: | Lender will be provided access by the Debtors to all financial and operational information regarding the Debtors, including, without limitation, with respect to the Debtors' oil and gas operations, assets and liabilities, contracts and commitments, projections and plans, third party reports and analyses, and including access to any data room established by the Debtors and all information contained therein. |
| Lender Default: | Customary for debtor in possession facilities and transactions of this type. |
| Expenses and Indemnification: | The Borrowers will indemnify the Lender and its respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, attorneys, financial advisors, consultants, controlling persons and members of each of the foregoing (each, an "Indemnified Person") and hold them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding that relates to the DIP Facility or the transactions contemplated thereby, including the financing contemplated herein and any transactions in connection therewith; *provided* that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from its gross negligence or willful misconduct. In addition, the Borrower shall pay all reasonable out-of-pocket expenses (including, without limitation, fees, disbursements and other charges of counsel) of the Lender for enforcement costs and documentary taxes associated with the DIP Facility. |
| Governing Law: | Minnesota |
| Counsel to Lender | Snow Spence Green LLP |

11

## EXHIBIT "A"

To be added.

i:\client\cast0001-castlelake-wbh\term sheet\wbh dip term sheet_3 11 2015.docx