IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **WBH Energy, LP,** *et al.,* | § | Case No. 15-10003 hcm |
| | § | |
| Debtors. | § | (Jointly Administered) |

**RESPONSE OF OFFICIAL CREDITORS' COMMITTEE TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF (A) INTERIM ORDER APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT AND (B) FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 364 AND 507 (I) AUTHORIZING POSTPETITION FINANCING, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED BRIEF**
[Relates to Dockets No. 216 and 224]

The Official Creditors' Committee (the "OCC") in the *In re: WBH Energy, LP, et al.* jointly-administered bankruptcy cases files this response respecting the Debtors' Emergency Motion [Dkt. 216] (the "Motion"), the Objection of CL III Funding Holding Company, LLC ("Castlelake") [Dkt. 224], and the other objections that now have been filed in response to the Motion, and represents as follows:

1.   From the OCC's perspective, the Debtors WBH Energy, LP, WBH Energy Partners, LLC, and WBH Energy GP, LLC, (collectively, the "Debtors") have moved forward in good faith to arrange for debtor-in-possession ("DIP") financing in connection with the completion of six wells, the completion of which will significantly benefit the Debtors' estates and creditors' interests.

2.   Upon information and belief, the failure to fund the drilling and completion costs of these six wells by Castlelake—the Debtor's pre-petition lender—is one of the critical factors that precipitated the Debtors' need to file for Chapter 11 protection.

1

3. Subsequent to the filing of these bankruptcy cases, upon information and belief, the Debtors engaged in numerous rounds of discussions with Castlelake to obtain DIP financing and, in fact, those discussions were ongoing up until the commencement of the hearing on the preliminary injunction sought by U.S. Energy Development Corporation ("USED").

4. Near the conclusion of the hearing on the preliminary injunction, counsel for Castlelake squarely addressed whether it would provide any further funding, including DIP funding and stated, ". . . [W]e have agreed to do interim funding up through the end of this month and through cash collateral budget. We have made no agreement beyond that. And, we have made, over the month, efforts to have a DIP put together. We do not—and, at this stage, we do not plan on supporting collateral usage beyond the end of the month or beyond the end of the date of the hearing that the three weeks expired to."

5. Based on the foregoing, the Court in its ruling on the preliminary injunction indicated that while there might have been some mention that Castlelake might possibly be a DIP lender to finish the wells, that possibility was quickly dashed by Castlelake's counsel, who advised the Court that it would not support the Debtors' use of cash collateral beyond the end of February 2015.

6. We have already been down this path twice before. Castlelake had an opportunity to fund these wells and their completion prior to the filing of the bankruptcy cases. Once the filings had occurred, Castlelake had an opportunity to negotiate and provide DIP financing up to the date of the hearing on the preliminary injunction hearing when it informed the Debtors (and the Court) that it would not be doing so.

7. At this point, the Debtors have moved forward and now have a binding commitment for DIP financing based on the terms that have been brought to this Court for

approval. The OCC believes that it is critical that these wells be completed in a timely fashion. In addition, the Debtors' representatives have stated that this funding is necessary to support the Debtors' reorganization and path forward.

8. Now that the Debtors have arranged for DIP financing, Castlelake has demanded that it be provided with the terms of the financing. The Debtors responded (appropriately) that Castlelake had indicated they were not interested in providing DIP financing and that the Debtors were moving forward with the arrangements that they had negotiated with Cantor Fitzgerald Securities ("CFS"), and Debtors filed their Motion.

9. Faced with the reality of the Motion, Castlelake has now circulated a nonbinding redline term sheet. At this point, however, the OCC believes that it is too little too late. Castlelake has already indicated its true intentions. Castlelake has filed motions to lift the stay and motions to convert this case, and Castlelake's counsel has squarely informed the Court that it would not be providing DIP financing. The OCC respectfully submits that we should not go down this road a third time.

10. At this point, the term sheet and Castlelake's objections to the proposed DIP financing appear to be solely a litigation tactic (very similar to announcing to the Court at the end of the preliminary injunction hearing that they would not be providing DIP financing). If one were a skeptic, one might argue that the only reason Castlelake has provided a term sheet is because the Debtors actually sought out other financing sources, and having found a party willing to provide that financing, they negotiated reasonable terms in order to bring it to this Court for proper authorization, and hopefully to proceed with completion of the six wells.

11. Beyond being a litigation tactic, the term sheet that Castlelake provided to Debtors appears to contain a rollup of the lien provisions with regard to WBH Energy Partners,

3

LLC's account receivables. Castlelake suggests it has a limited collateral request with regard to the proposal for DIP financing; however, that is solely as to WBH Energy, LP. As to WBH Energy Partners, LLC, the collateral request includes a collateral extension to the account receivables, which extension the OCC believes is inappropriate.

12. Further, the term sheet is nonbinding, and the Debtors simply do not have the time to flush out Castlelake's true motives here. There is no indication in the term sheet that Castlelake will withdraw its Motions to Convert or Motions to Lift Stay, and the term sheet provides for a shorter period for the DIP financing than the CFS proposal.

13. Finally, to the extent that Castlelake is genuine in its forwarding of the term sheet with regard to DIP financing, Castlelake can negotiate in the face of a binding arrangement that the Debtors have negotiated at "arm's length" over time and expense with CFS. The OCC believes that CFS is entitled to its requested break-up fee for its efforts that have been expended to date and for, at minimum, bringing Castlelake to the bargaining table. Moreover, the payment of the break-up fee, if one is ultimately paid, does not negatively impact the bankruptcy estates or their creditors.

14. Absent an approval of the matters set for hearing this Monday, March 16, 2015, in connection with the CFS DIP financing, it is uncertain what options the Debtors have left. At this stage of the proceedings, the OCC believes it would be inappropriate to have a last-minute Castlelake proposal create further uncertainty and delay.

Accordingly, the Official Creditors' Committee requests that upon hearing these matters, the Court will grant the relief sought by the Debtors in their emergency Motion and for such other relief it may be entitled to under the law or in equity.

DATED this the 15th day of March, 2015

Respectfully submitted:

/s/ Berry D. Spears_____
By:
BERRY D. SPEARS
bspears@lockelord.com
State Bar No. 18893300
TODD LAWRENCE DISHER
tdisher@lockelord.com
State Bar No.24081854
600 Congress Ave., Suite 2200
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (facsimile)

PHILIP G. EISENBERG
peisenberg@lockelord.com
State Bar No. 24033923
SCOTT L. FRIEDMAN
sfriedman@lockelord.com
State Bar No. 24087543
600 Travis Street, Suite 2800
Houston, Texas 77002
(713) 226-1200
(713) 223-3717 (facsimile)

**[PROPOSED] COUNSEL FOR THE OFFICIAL CREDITORS' COMMITTEE**

CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing document has been served upon those parties receiving the Court's ECF e-mail notification and on the parties on the attached service list by depositing same in the United State First Class Mail on this 15th day of March, 2015.

/s/ Berry D. Spears
Berry D. Spears