**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | **Case No. 15-10003** |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | *Jointly Administered* |

**DEBTORS' MOTION FOR (A) ENTRY OF AN ORDER**
**(I) APPROVING BIDDING PROCEDURES; (II) SCHEDULING BIDDING**
**DEADLINE, AUCTION DATE, AND SALE HEARING DATE;**
**(III) APPROVING FORM AND NOTICE THEREOF; (B) ENTRY**
**OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING**
**THE DEBTORS TO SELL THEIR ASSETS; AND (II) AUTHORIZING**
**THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON APRIL 20, 2015, AT 1:30 P.M. IN COURTROOM 2, HOMER J. THORNBERRY FEDERAL JUDICIAL BUILDING, 903 SAN JACINTO BLVD., AUSTIN, TX 78701.**

**OBJECTIONS TO THE RELIEF REQUESTED HEREIN MUST BE IN WRITING AND FILED WITH THE COURT BY APRIL 17, 2015, AT 5:00 P.M. (CT).**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

WBH Energy, LP, WBH Energy Partners LLC, and WBH Energy GP, LLC (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this *Motion for (A) Entry of an Order (I) Approving Bidding Procedures, (II) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; (III) Approving Form and Notice Thereof; (B) Entry of an Order After*

the Sale Hearing (I) Authorizing the Debtors to Sell Their Assets; and (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief (the "Sale Motion").  In support of the Sale Motion, the Debtors respectfully state as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this chapter 11 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND

2.      On January 4, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their property as debtors in possession.  No trustees or examiners have been appointed in these cases.

3.      On January 8, 2015, the Court entered its Order Granting Motion for Joint Administration [Docket No. 34] and Order Granting Complex Chapter 11 Bankruptcy Case Treatment [Docket No. 37].

4.      Together, the Debtors operate an oil and gas exploration and production business with a primary focus on the Barnett Combo Play of the Fort Worth Basin.  Each of the Debtors is a Texas entity, is based in Austin, Texas, and was founded in 2011.

5.      WBH Energy, LP is a real property holding company that owns working interests in approximately 1,500 leases consisting of approximately 2,570 net acres throughout the Barnett Combo Play.  Of those leases, approximately 30 horizontal wells and 9 vertical wells are

currently producing and 6 horizontal wells have been drilled and cased. WBH Energy, LP is managed by its general partner, WBH Energy GP, LLC.

6.      WBH Energy Partners LLC is the oil and gas operating company responsible for developing the working interests of WBH Energy, LP and its non-affiliated, non-debtor partner, U.S. Energy Development Corporation ("USED"). Specifically, until March 1, 2015, WBH Energy Partners LLC was the operator of certain oil and gas interests pursuant to that certain Joint Operating Agreement (the "JOA") dated September 1, 2011, by and between itself, as operator, and WBH Energy, LP and USED as oil and gas lease owners and/or oil and gas interest owners.

7.      Contemporaneously with the filing of this Motion, the Debtors are filing a motion (the "DIP Motion") seeking approval of debtor in possession financing from CL III Funding Holding Company, LLC ("CL III"). As part of that financing, CL III proposes to serve as the stalking horse bidder (in such capacity, the "Proposed Purchaser") for the sale of the Assets as described herein. The Proposed Purchaser has submitted the following Qualifying Bid for the Assets pursuant to the DIP Motion and ancillary documents (defined terms are as used in theDIP Motion):

Oil & Gas Property.

(a)     the sum of (i) fifty percent (50%) of the DIP Obligations, plus (ii) fifty percent (50%) of the amount outstanding under the Senior Pre-Petition Loan Agreement, plus (iii) an amount outstanding under the Junior Pre-Petition Credit Agreement such that the sum of (i), (ii) and (iii) shall equal the sum of not less than $15 million; or

(b)     a sum equal to one hundred percent (100%) of the Projected Reserve Value of existing proved developed Wells (other than the Lewis-Stuart Completion Operation Wells) plus one hundred ten percent (110%) of the Projected Reserve Value of the Lewis-Stuart Completion Operation Wells. The credit bid amount pursuant to this subsection (b) would be  consist of: (i) fifty percent of the  DIP Obligations plus (ii) fifty percent (50%) of the amount outstanding under the Senior Pre-Petition Loan Agreement, plus

(iii) an amount outstanding under the Junior Pre-Petition Credit Agreement such that the sum of (i), (ii) and (iii) shall equal the sum of (x) one hundred percent (100%) of the Projected Reserve Value of existing proved developed Wells plus (y) one hundred ten percent (110%) of the Projected Reserve Value of the Lewis-Stuart Completion Operation Wells. The Projected Reserve Value will be determined by the Bankruptcy Court upon the motion of either Lender or Borrowers; and

Personal Property. (i) fifty percent of the DIP Obligations plus (ii) fifty percent (50%) of the amount outstanding under the Senior Pre-Petition Loan Agreement, plus (iii) an amount outstanding under the Junior Pre-Petition Credit Agreement such that the sum of (i), (ii) and (iii) shall equal the sum of not less than $10 million.

(collectively, the "Purchase Price"). The Proposed Purchaser is required to simultaneously bid on the Oil & Gas Property and the Personal Property in a total amount no less than the Purchase Price. The Proposed Purchaser has not requested a break-up fee or expense reimbursement in connection with its Purchase Price offer.

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek (a) entry of an order (the "Bid Procedures Order") (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale of the Debtors' assets, (ii) scheduling a bid deadline, auction date, and sale hearing date as follows:

- Bid Deadline: July 31, 2015, at 4:00 p.m. Central Time as the last date by which any Potential Purchaser may deliver its Bid by email to counsel for the Debtors.

- Auction Date: August 10, 2015, at 10:00 a.m. Central Time as the date and time that the Auction, if one is needed, will be held at at the offices of Bracewell & Giuliani LLP, 111 Congress Avenue, Suite 2300, Austin, Texas 78701-4061, or at another location as may be timely disclosed by the Sellers to Qualified Bidders.

- Sale Hearing: August 12, 2015, at 1:30 p.m., as the date and time that the Court will consider approval of the Sale.

and (iii) approving form and notice thereof. The Debtors submit that the Bidding Procedures will permit interested parties reasonable opportunities to evaluate whether to propose a bid for

the Assets that is higher and better in value to the Debtors' estates than the proposed Purchase

Price submitted by the Proposed Purchaser.  In addition, the Debtors seek, at the conclusion of

the Sale Hearing (defined below), entry of an order (a) authorizing the sale of the Debtors'

property to the Proposed Purchaser, or such other person or entity that is the Successful Bidder

(defined below), with such sale being free and clear of all liens, claims, and encumbrances, (b)

authorizing the assumption and assignment of certain executory contracts and unexpired leases to

the Successful Bidder, and (c) granting certain related relief (the "Sale Order").

## A.    Proposed Bidding Procedures

9.    Pursuant to the Sale Motion, the Debtors seek to sell substantially all of the

Debtors' assets, as well as assume and assign certain executory contracts and unexpired leases.

Pursuant to Bankruptcy Rule 6004(f), sales of property outside the ordinary course of business

may be by private sale or auction.  The Debtors believe that good cause exists to sell the

Debtors' assets at auction.  An auction conducted substantially in accordance with the proposed

Bidding Procedures will enable the Debtors to obtain the highest and best offer for the Assets (as

defined in the Bidding Procedures), thereby maximizing the value of the Assets for the benefit of

their creditors.

10.    The Bidding Procedures ensure that a marketing and sales process is undertaken

by the Debtors and are designed to maximize value for the Debtors' estates.  The Bidding

Procedures are summarized as follows:[1]

(a)    Participation Requirements:  Any Potential Purchaser that wishes to participate in the bidding must become a "Qualifying Bidder."  As a prerequisite to becoming a Qualifying Bidder, a Potential Bidder: (a) must deliver an executed confidentiality agreement in form and substance

---

[1] The description of the Bidding Procedures provided herein is a summary and is qualified in its entirety by reference to the Bidding Procedures attached as **Exhibit 1** to the Bid Procedures Order.  Also attached to the Bid Procedures Order are the Sale Notice (**Exhibit 2**) and the Cure Notice (**Exhibit 3**), all as defined in this Sale Motion.

reasonably acceptable to the Debtors;[2] and (b) must be able, as determined by the Debtors, to consummate a transaction based upon a Qualifying Bid (as defined below), and have delivered such Qualifying Bid to the Debtors. A Potential Bidder who satisfies the foregoing prerequisites shall be deemed a "<u>Qualifying Bidder</u>." The Debtors reserve the right (i) at any time to require any Potential Bidder previously determined to be a Qualified Bidder to provide additional evidence of its ability to consummate a transaction based upon a Qualifying Bid in order to remain a Qualified Bidder, and (ii) to exclude any such Potential Bidder from participating further in the auction process as a result of its inability to satisfy such further requirements to remain a Qualified Bidder.

(b)     <u>Due Diligence</u>:  The Debtors shall afford any Potential Purchaser the time and opportunity to conduct reasonable due diligence. This will include reasonable access to the Sellers' books, records, facilities, consultants and legal counsel for the purpose of conducting due diligence. The due diligence period shall extend through and include the Bid Deadline (as defined below). The Debtors and their representatives shall not be obligated to furnish any due diligence information after the Auction. Any information provided by or on behalf of the Sellers to a Potential Purchaser shall also be provided, at the same time, to the Proposed Purchaser and the Committee, if such information has not already been provided to them. Notwithstanding the foregoing, the Sellers are not required to provide confidential or proprietary information to a competitor if the Sellers reasonably believe that such disclosure would be detrimental to the interests and operation of the Sellers.

(c)     <u>Bid Requirements</u>: To be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder by a date no later than the Bid Deadline that:

(i)      is in writing;

(ii)     can be effectuated on or before August 30, 2015, under a plan of reorganization or a stand-alone purchase and sale agreement approved at a sale hearing;

(iii)    is accompanied by a clean and duly executed version of the proposed asset purchase and sale agreement (the "<u>Bid Purchase and Sale Agreement</u>") and a marked Bid Purchase and Sale Agreement reflecting variations from the Form Purchase and Sale Agreement, subject to the minimum cash overbid requirement, set

---

[2] For the avoidance of doubt, parties who have already executed a confidentiality agreement with the Debtors shall not be required to execute a new confidentiality agreement provided that the existing confidentiality agreement is in form and substance acceptable to the Debtors.

forth below, and that clearly specifies the amount the Potential Purchaser is willing to pay;

(iv)     is accompanied by reasonably satisfactory evidence of committed financing or other ability to perform the transaction and provides an earnest money deposit of five percent (5%) of the proposed purchase price for the "Earnest Money Deposit" in the form of a certified check or wire transfer to the Sellers in care of their designated escrow agent, such Earnest Money Deposit being refundable within three (3) business days of Closing unless such Potential Purchaser is selected as the Backup Bidder and is required to close;

(v)      provides that such bidder's offer is binding upon the bidder, is unconditional, not contingent upon any due diligence investigation or the receipt of financing, or any other event that is in addition to or more burdensome than the conditions set forth in the PSA;

(vi)     provides that the bidder's offer is irrevocable until the closing of the purchase of the Assets if such bidder is the Successful Bidder;

(vii)    provides sufficient indicia that such Potential Purchaser or its representative is legally empowered, by power of attorney or otherwise, and financially capable to (i) bid on behalf of such Potential Purchaser; and (ii) complete and sign, on behalf of such Potential Purchaser, a binding and enforceable purchase and sale agreement; and (iii) agree that the bid will contain no contingencies to the validity, effectiveness, and/or binding nature of the offer including, without limitation, contingencies for financing, due diligence, or inspection;

(viii)   provides consideration for the Assets equal to or greater than the sum of the Purchase Price under the PSA, and a minimum cash overbid of $100,000 (the "Minimum Qualifying Bid");

(ix)     be supplemented with such other information as Sellers may request; and

(x)      meets all other requirements of the Bidding Procedures.

(d)     A competing bid meeting the above requirements shall constitute a "Qualifying Bid."  The Debtors shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than **12:00 p.m. (prevailing Central time) on August 4, 2015**.  The Proposed Purchaser is deemed a Qualifying Bidder and the PSA is deemed a Qualifying Bid.

(e)    <u>Bid Deadline</u>: A Potential Purchaser that desires to make a bid for the Assets shall deliver such bid by email to counsel to the Debtors at Trey Wood, email: Trey.Wood@bgllp.com, and Jason Cohen, email: Jason.Cohen@bgllp.com and (ii) counsel for the Committee at Berry Spears, email: bspears@lockelord.com, and Philip Eisenberg, email: PEisenberg@lockelord.com, so as to be received by a date **no later than 4:00 p.m. (prevailing Central Time) on July 31, 2015 (the "<u>Bid Deadline</u>").**

(f)    <u>Evaluation of Qualifying Bids</u>:  Prior to the Auction (defined below), the Debtors shall determine, in their reasonable judgment after consultation with the Debtors' legal advisors, which of the Qualifying Bids is likely to result in the highest and best value to the Debtors' estates, and shall provide a copy of that Qualifying Bid to all Qualifying Bidders prior to the beginning of the Auction.

(g)    <u>Auction</u>: In the event that the Debtors timely receive one or more Qualifying Bids, the Debtors shall conduct an auction (the "<u>Auction</u>") starting at 10:00 a.m. (prevailing Central Time) on August 10, 2015 (the "<u>Auction Date</u>") at the law offices of Bracewell & Giuliani LLP, 111 Congress Ave., Suite 2300, Austin, Texas 78701.  The Auction shall be governed by the following procedures:

    (i)    No persons other than representatives of the Sellers, Proposed Purchaser, the Committee, including the members of the Committee solely in their capacity as members, and each Qualified Bidder may participate in the Auction

    (ii)    Only Qualifying Bidders who have made a Qualifying Bid shall be entitled to make any subsequent bids at the Auction;

    (iii)    Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

    (iv)    Qualifying Bidders shall appear in person at the Auction, or through a duly authorized representative;

    (v)    By making a Qualified Bid at the Auction, a Qualified Bidder shall be deemed to have agreed to keep its final Qualified Bid made at the applicable Auction open until fifteen days after the entry of an Order confirming the Plan or an Order approving the Sale (as applicable)

    (vi)    Bidding shall commence at the amount of the highest Qualifying Bid as determined pursuant to these  Bidding Procedures;

(vii) With respect to each round of bidding at the Auction following the initial bid, each successive bid must be at least $100,000 in cash or other ascertainable value in excess of the aggregate consideration contained in the then highest standing Qualified Bid. Proposed Purchaser shall have the right prior to and/or during the Auction to increase the Purchase Price through a cash component, increased credit bid, or combination thereof; provided that the Debtors shall retain the right to modify the bid increment requirements at the Auction;

(viii) the Auction will be conducted openly and Qualifying Bidders will be informed of the terms of the previous bid;

(ix) Qualifying Bidders shall have the right to submit additional bids and make additional modifications to the PSA or Bid Purchase and Sale Agreement at the Auction, provided that any such modifications to the PSA or Bid Purchase and Sale Agreement on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors' estates, as determined by the Debtors, than the terms of the highest and best Qualifying Bid at that time;

(x) the Auction shall continue until there is only one offer that the Debtors determine, in consultation with the Committee and subject to Bankruptcy Court approval, is the highest or best from among the Qualifying Bids submitted at the Auction (the "Successful Bid"). In making this decision, the Debtors shall consider, without limitation, the amount of the Purchase Price or other amounts to be paid to the Debtors, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the PSA requested by each bidder, and the net benefit to the Debtors' estates. The bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable PSA or Bid Purchase and Sale Agreement;

(xi) within three business days after the conclusion of the Auction, the Successful Bidder(s) shall provide updated financial information showing its ability to close and shall update and provide such additional financial information as required by the Sellers

(xii) within three business days after the entry of the Sale Order, the Successful Bidder and the Debtors (i) shall complete and execute all agreements, contracts, instruments and other documents

evidencing and containing the terms and conditions upon which the Successful Bid was made; and

(xiii)   the Debtors may adopt such other rules for the Auction (including rules that may depart from those set forth herein) that they anticipate will result in the highest or otherwise best value for the Debtors' estates and that are not inconsistent with any applicable Bankruptcy Court order, provided that any changed or additional rules of the Auction are not materially inconsistent with the Bidding Procedures and are communicated to all participants at or prior to the Auction.

(h)   <u>Sale Hearing</u>: The Successful Bid will be subject to approval by the Bankruptcy Court. The hearing to approve the Successful Bid (the "<u>Sale Hearing</u>") shall take place at 1:30 p.m. (prevailing Central Time) on August 12, 2015. At such time, the Debtors will seek the entry of an order of the Bankruptcy Court approving and authorizing the Sale to the Successful Bidder at the Auction on the terms and conditions of the Successful Bid. The Successful Bidder shall appear at the Sale Hearing and be prepared to testify in support of the Successful Bid and the Successful Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

(i)   <u>Return of Deposits</u>: Except as provided herein, all deposits shall be returned without interest (other than any earnings on any such amounts under, and subject to, the terms of the escrow agreement pursuant to which such Earnest Money Deposit is held) to each bidder not selected by the Debtors as the Successful Bidder no later than five (5) business days following the conclusion of the Auction.

(j)   <u>Closing</u>. The closing of the sale(s) of the Assets shall occur no later than fifteen days after the Court enters an Order approving the Sale(s) (the "Final Closing Deadline"); provided, however, that this requirement may be waived upon the agreement of the Sellers, the Successful Bidder, the Committee, and CL III Funding Holding Company, LLC in its capacity as lender under the applicable debtor in possession credit agreement.

(k)   <u>Failure to Consummate Purchase</u>: If an Auction is conducted, and any Successful Bidder fails to consummate a Sale because of a breach or failure to perform on the part of such Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (the "<u>Back-Up Bidder</u>") will be deemed to be the Successful Bidder of the Assets and the Sellers will be authorized to consummate the Sale of such Assets with such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall

thereupon be deemed the Successful Bid; provided that upon being notified that its Qualified Bid has become the Successful Bid, the Qualified Bidder submitting such Qualified Bid shall within three business days after such notification provide an Earnest Money Deposit (unless such Qualified Bidder previously shall have provided an Earnest Money Deposit that shall not have been returned as described below) and, upon providing such Earnest Money Deposit such Qualified Bidder shall be deemed the Successful Bidder. If any Qualified Bidder fails to consummate a Sale because of a breach or failure to perform on the part of such Qualified Bidder (including without limitation the failure to timely deposit the Earnest Money Deposit) or for any reason within ten days after being deemed the Back-Up Bidder pursuant to this section of the Bidding Procedures, the process described above may continue as determined by Sellers until a Qualified Bidder shall consummate the Sale.

(l)     Reservation of Rights; Deadline Extension: The Debtors reserve their rights, in the exercise of their fiduciary obligations, to modify these Bidding Procedures or impose at, or prior to, the Auction, additional customary terms and conditions on the Sale of the Assets, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Assets at any time prior to or during the Auction or canceling the Auction in the Debtors' business judgment.

## B.     Approval of Notice Procedures

11.     Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the proposed sale of the Assets, including a disclosure of the time and place of the Auction, the terms and conditions of the sale, and the deadline for filing any objections thereto. The proposed Auction and Sale Hearing Notice contain the type of information required under Bankruptcy Rule 2002(c) and also include information on the Bidding Procedures.  This information will enable interested parties to participate in the Auction and Sale Hearing if they choose.  Accordingly, the Debtors request that this Court approve the form and content of the Auction and Sale Hearing Notice.

12.     The Debtors have served this Motion by the electronic court filing system (ECF), electronic mail, facsimile, and first class United States mail, postage prepaid, as the case may be,

on the parties listed on Debtors' Master Service List. The Debtors will also serve a copy of this Motion, the order approving this Motion, and the Auction and Sale Hearing Notice on all Potential Purchasers. The Debtors propose to serve the Auction and Sale Hearing Notice, together with the Bidding Procedures, within five (5) business days after the entry of the Order approving the relief requested herein (the "Bidding Procedures Order"), by electronic mail, facsimile, or first-class United States mail, postage prepaid, as the case may be, upon (i) counsel for the Committee; (ii) the United States Trustee for the Western District of Texas; (iii) all other parties known to Debtors who have or may have asserted liens against any of the Assets; (iv) the Debtors' thirty (30) largest unsecured creditors (on a consolidated basis); (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (vi) all other entities known to have expressed an interest in a transaction with respect to all or part of the Assets.

13. The notices to be provided and the method of service proposed herein constitute good, proper and adequate notice of the sale of the Assets and the proceedings to be had with respect thereto (including, but not limited to, the Auction and the Sale Hearing). Therefore, the Debtors respectfully request that this Court approve the foregoing notice procedures.

## C. Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases

14. To facilitate and effect the Sale, to the extent necessary, the Debtors may be required to assume and assign to the Successful Bidder certain executory contracts and unexpired leases (the "Assumed and Assigned Contracts"). The Debtors shall cause notice to be provided to any counterparties to such Assumed and Assigned Contract by April 23, 2015 (the "Cure Notice").[3] The Cure Notice shall provide the counterparties to such Assumed and Assigned

---

[3] The Cure Notice is attached as **Exhibit 3** to the Bid Procedures Order.

Contracts notice of the amount that the Debtors believe must be cured upon assumption and assignment as required under Bankruptcy Code section 365 (the "Cure Amount").

15.     Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance or to the Cure Amounts set forth in the Cure Notice, must be in writing and filed with the **Court no later than 4:00 p.m. (prevailing Central Time) on August 7, 2015** (the "Cure Notice Objection Deadline").

16.     If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice will be binding upon the non-debtor party or parties to the Assumed and Assigned Contract for all purposes in these chapter 11 cases and otherwise.  All such counterparties to the Assumed and Assigned Contracts will (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Contracts.

17.     If a non-debtor counterparty to an Assumed and Assigned Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing.

18.     Except as may otherwise be agreed to by parties to an Assumed and Assigned Contract (with the consent of the Committee), all Cure Amounts shall be paid as administrative expenses.

## II.     ARGUMENTS AND AUTHORITIES

### A.     The Bidding Procedures are Fair and are Designed to Maximize the Value Received for the Assets Given the Financial Exigencies Facing the Debtors

19.     The Bidding Procedures proposed herein are designed to maximize the value received for the Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids, taking into account the financial exigencies facing the Debtors.  The Bidding Procedures provide Potential Bidders with more than the twenty day notice envisioned by Rule 2002 of the Bankruptcy Rules, which provides sufficient notice and opportunity to acquire the information necessary to submit a timely and informed bid.  The Debtors believe that the period between the filing of this Sale Motion and the deadline for submission of bids provides a reasonable means for maximizing the return from sale of the Assets.

20.     At the same time, the Bidding Procedures provide the Debtors with the opportunity to consider all competing offers and to select the highest or best offer for the completion of the Sale.  The Bidding Procedures and Auction process will ensure that the consideration paid for the Assets will be fair, reasonable, and in the best interest of the Debtors' estates and creditors, and there are sound business reasons to approve the Bidding Procedures.

### B.     The Debtors Have Exercised Sound Business Judgment and Provided Adequate Notice and Opportunity to Object With Respect to Assumed and Assigned Contracts

21.     Bankruptcy Code section 365(a) provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or

-14-

unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996). Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate. *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr. Del. 2001); *see also, In re Chi-Feng, Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.* 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988). Moreover, a debtor's decision to assume an executory contract or unexpired lease should be accepted "except upon a finding of bad faith or gross abuse of [the debtor's] business discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985). "More exacting scrutiny would slow the administration of the debtors' estates and increase its cost, interfere with the Bankruptcy Court's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing*, 762 F.2d at 1311.

22. Two conditions are imposed upon a debtor's ability to assume and assign an executory contract. First, in order to assume an agreement, pursuant to Bankruptcy Code section 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly cure" any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. Bankruptcy Code section 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable. *See* 11 U.S.C.

§ 365(f)(1); *see also, e.g.*, *In re Office Prods. of Am., Inc.*, 140 B.R. 407, 409-410 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the debtor's estate").

23.     Pursuant to Bankruptcy Code section 365(a), assignment is conditioned on "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes,* Inc.*)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *Accord In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

24.     Here, any Qualifying Bidder must be an entity with financial resources adequate to perform under the respective executory contracts and unexpired leases.  Additionally, the Debtors respectfully submit that the proposed cure procedures for the identification and payment of Cure Amounts (the "Cure Procedures") are appropriate and reasonably tailored to provide non-Debtor counterparties to potential assumed and assigned contracts with adequate notice of the proposed assumption and assignment of their applicable contract, as well as the proposed Cure

Amounts related thereto, if any. Such non-Debtor parties to the potential assumed and assigned contracts are given an opportunity to object to the proposed assumption and assignment and, in the event an objection is not resolved, this Court will adjudicate the dispute, including issues pertaining to adequate assurance of future performance. Accordingly, the Debtors submit that implementation of the proposed Cure Procedures is appropriate in these cases.

**C.     The Sale of the Assets Is Authorized Under Bankruptcy Code Section 363(b)**

25.     At the conclusion of the Sale Hearing, the Debtors request that the Court approve the sale of the Assets to the Successful Bidder.[4] The Debtors submit that the sale of the Assets pursuant to the Successful Bid is in the best interest of the Debtors' estates and their creditors.

26.     Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the Debtors' decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2nd Cir. 1983), which decision has been adopted in this circuit. *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986); *see also, Fulton State Bank* v. *Schipper,* 933 F.2d 513, 515 (7th Cir. 1991); *In re San Jacinto Glass Industries, Inc.,* 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988); *In re Condere Corp.,* 228 B.R. 615, 628-69 (Bankr. S.D. Miss. 1998).

27.     The business judgment rule shields a debtor's management from judicial second-guessing. *See In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a

---

[4] This portion of the relief is requested to be entered after the Sale Hearing in the form of the Sale Order. The Debtors hereby reserve the right to file supplemental pleadings in support of its request for entry of the Sale Order.

presumption of reasonableness attaches to a debtor's management decisions").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

28.    Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1).  When applying the business judgment standard, courts show great deference to a debtor's business decisions.  *See GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687, at *8-9 (N.D. Ill. September 8, 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

29.    The fairness and reasonableness of the consideration to be paid for the Assets by the Successful Bidder, as may be declared at the Sale Hearing, will be conclusively demonstrated by the exposure of the opportunity to the marketplace.  The Debtors have proposed a fair and open process for achieving the objective of obtaining the highest or best offer and sale of the Assets for the benefit of the Debtors' estates and their creditors.  The Debtors' decision to proceed with the sale process is consistent with sound business judgment.  Under the circumstances, the Bidding Procedures and Auction process represent the best way to achieve substantial consideration for the Debtors' businesses, and offer the best resolution to the Debtors'

current financial situation in the manner that will maximize the value available to the Debtors' estates and their creditors.

**D.      The Sale of The Assets Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)**

30.      The Debtors respectfully submit that it is appropriate to sell the Assets free and clear of all interests, pursuant to Bankruptcy Code section 363(f), with all such interests attaching to the net sale proceeds of the Assets to the extent applicable.   Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

i.      applicable nonbankruptcy law permits sale of such property free and clear of such interests;

ii.      such entity consents;

iii.      such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

iv.      such interest is in bona fide dispute; or

v.      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

31.      Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Assets free and clear of the interests.  *In re Nature Leisure Times, LLC*, 2007 WL 4554276, *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that

Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

32.    The Debtors believe that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Assets pursuant to a Sale Order.  In particular, the Debtors believe that section 363(f)(3) and/or (5) will be satisfied.

### III.    CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court (i) issue the Bid Procedures Order, substantially in the form attached hereto as **Exhibit A**, (ii) issue the Sale Order, (to be filed as a proposed order at a later date), after the Sale Hearing, and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By: _/s/ William A. (Trey) Wood III_
       William A. (Trey) Wood III
       Texas Bar No. 21916050
       Trey.Wood@bgllp.com
       Jason G. Cohen
       Texas Bar No. 24050435
       Jason.Cohen@bgllp.com
       711 Louisiana, Suite 2300
       Houston, Texas 77002
       Telephone: (713) 223-2300
       Facsimile: (713) 221-1212

**COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2015 a true and correct copy of the above and foregoing Motion has been served (i) electronically on the parties registered to receive notice through the court's ECF noticing system; and (ii) via electronic mail or facsimile where available, otherwise by regular U.S. mail, postage prepaid, on the parties listed in the attached Master Service List.

By: */s/ Jason G. Cohen*
    Jason G. Cohen