**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | **Case No. 15-10003** |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | *Jointly Administered* |

**JOINT DISCLOSURE STATEMENT FOR THE DEBTORS'
PROPOSED FIRST AMENDED JOINT PLAN OF REORGANIZATION**

**IMPORTANT DATES**

- Date by which Ballots must be received: August 14, 2015

- Deadline by which objections to Confirmation of the Plan must be Filed and served: August 14, 2015

- Hearing on Confirmation of the Plan: 9:30 a.m., prevailing Central Time, August 20, 2015

**BRACEWELL & GIULIANI LLP**

William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:     (713) 223-2300
Facsimile:     (713) 221-1212

**COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

THE PLAN VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN DESCRIBED HEREIN IS AUGUST 14, 2015, UNLESS THE DEBTORS EXTEND THIS DATE PRIOR TO THE PLAN VOTING DEADLINE.  TO BE COUNTED, THE VOTING AGENT MUST RECEIVE YOUR BALLOT ON OR BEFORE THE PLAN VOTING DEADLINE.

THE DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION. THE INFORMATION INCLUDED IN THE DISCLOSURE STATEMENT IS PROVIDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS WHICH ARE ATTACHED TO, OR INCORPORATED BY REFERENCE IN, THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS AND THE STATEMENTS REFLECTED HEREIN OR THEREIN, RESPECTIVELY. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN, OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION INCORPORATED IN THE DISCLOSURE STATEMENT BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION, AS THE CASE MAY BE, SHALL GOVERN FOR ALL PURPOSES.

THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT HAVE BEEN MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH IN THE DISCLOSURE STATEMENT SINCE THE DATE OF THE DISCLOSURE STATEMENT OR THE DATES OTHERWISE NOTED. EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THE PLAN, THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT IN THEIR ENTIRETY BEFORE CASTING A BALLOT. THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ENTITIES DESIRING SUCH ADVICE OR ANY OTHER ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

NO ONE IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THE DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT AND THE DOCUMENTS ATTACHED TO THE DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN AS SET FORTH, OR INCONSISTENT WITH THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR THE DOCUMENTS ATTACHED TO THE DISCLOSURE STATEMENT AND THE PLAN, SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.

WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATION OR OTHER ACTIONS, THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER,

#4925052

BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE. THE DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THE DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE.

THE PROJECTIONS PROVIDED IN THE DISCLOSURE STATEMENT, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, THOUGH CONSIDERED REASONABLE BY THE DEBTORS AND THEIR PROFESSIONALS, MAY NOT BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL. THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE ABILITY TO ACHIEVE THE PROJECTED RESULTS.

**THE BANKRUPTCY COURT HAS SCHEDULED THE CONFIRMATION HEARING TO COMMENCE ON AUGUST 20, 2015, AT 9:30 A.M. PREVAILING CENTRAL TIME BEFORE THE HONORABLE H. CHRISTOPHER MOTT UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION, 903 SAN JACINTO BLVD., SUITE 326, AUSTIN, TEXAS 78701. THE CONFIRMATION HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE EXCEPT FOR AN ANNOUNCEMENT OF THE ADJOURNED DATE MADE AT THE CONFIRMATION HEARING OR ANY ADJOURNMENT OF THE CONFIRMATION HEARING.**

**TO BE COUNTED, THE BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY THE VOTING AGENT FOR THE DEBTORS IN THESE CHAPTER 11 CASES, NO LATER THAN AUGUST 14, 2015.**

**OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE FILED AND SERVED ON OR BEFORE AUGUST 14, 2015. UNLESS OBJECTIONS TO CONFIRMATION ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE ORDER APPROVING THE DISCLOSURE STATEMENT, THEY MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

### TABLE OF CONTENTS

SUMMARY OF PLAN.................................................................................................1

ARTICLE I BACKGROUND ....................................................................................1
    1.1           Introduction..........................................................................1
    1.2           Sources of Information ........................................................2
    1.3           Description of Debtors' Business and Assets .......................2
    1.4           Debtors' Corporate Structure...............................................3
    1.5           The Debtors' Pre-Petition Indebtedness ..............................3
    1.6           Debtors' Management ..........................................................4
    1.7           Non-Bankruptcy Litigation.................................................4
    1.8           Events Precipitating the Reorganization Cases....................5

ARTICLE II THE CHAPTER 11 CASES .................................................................6
    2.1           Overview of Chapter 11 ......................................................6
    2.2           Administration of the Chapter 11 Cases ..............................7

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........10
    3.1           Introduction........................................................................10
    3.2           Voting; Acceptance by Impaired Classes ...........................10
    3.3           The Secured Claim of the DIP Lender.................................11
    3.4           Administrative Expense Claims ..........................................11
    3.5           Priority Tax Claims .............................................................11
    3.6           Priority Claims ...................................................................12
    3.7           Senior Secured Claims ........................................................12
    3.8           Senior Secured Claims of CL III..........................................12
    3.9           Junior Secured Claim of CL III............................................12
    3.10         Other Secured Claims ..........................................................13
    3.11         General Unsecured Claims ..................................................13
    3.12         Interests ..............................................................................13
    3.13         Effect of Intercompany Claims ...........................................13
    3.14         Summary of Proposed Distributions Under the Plan............13

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN........................................15
    4.1           No Substantive Consolidation.............................................15
    4.2           Sale of the Acquired Assets.................................................15
    4.3           Appointment of Creditors' Trustee ......................................16
    4.4           Duties of the Creditors' Trustee ..........................................16
    4.5           Funding of the Creditors' Trust............................................20
    4.6           Distribution Procedures .......................................................22
    4.7           Cancellation of Existing Secured Claims ............................23
    4.8           Terminated Corporate Existence .........................................23
    4.9           Directors and Officers.......................**Error! Bookmark not defined.**
    4.10         Exclusivity Period...............................................................23
    4.11         Effectuating Documents; Further Reorganization Transactions ..........23
    4.12         Exemption from Certain Transfer Taxes..............................23
    4.13         Closing of the Debtors' Chapter 11 Cases. .........................24

#4925052

ARTICLE V THE SOLICITATION; VOTING PROCEDURES ...............................................24
    5.1             Solicitation Package.................................................................24
    5.2             Voting Instructions..................................................................24
    5.3             Voting Tabulation....................................................................25
    5.4             Agreements upon Furnishing Ballots....................................26

ARTICLE VI FEASIBILITY, BEST INTEREST OF THE CREDITORS AND
                LIQUIDATION.....................................................................................26
    6.1             Feasibility of the Plan.............................................................26
    6.2             Best Interest of Creditors Test.............................................26

ARTICLE VII CONFIRMATION PROCEDURES ............................................................27
    7.1             The Confirmation Hearing....................................................27
    7.2             Statutory Requirements for Confirmation of the Plan.......27
    7.3             Identity of Persons to Contact for More Information.........30

ARTICLE VIII CERTAIN RISK FACTORS AFFECTING CERTAIN OF THE
                DEBTORS.............................................................................................30
    8.1             Certain Bankruptcy Law Considerations.............................30
    8.2             Risks Related to the Sale of the Debtors' Assets.................31

ARTICLE IX ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
                THE PLAN ...........................................................................................31
    9.1             Liquidation Under Chapter 7................................................31
    9.2             Alternative Plan of Reorganization.....................................32

ARTICLE X EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
                AGREEMENTS.....................................................................................33
    10.1           Assumption/Rejection............................................................33
    10.2           Cure Costs...............................................................................33
    10.3           Assumed Executory Contracts and Unexpired Leases.......33
    10.4           Insurance Policies...................................................................34
    10.5           Pass-through............................................................................34
    10.6           Claims Based on Rejection of Executory Contracts and
                      Unexpired Leases...................................................................34
    10.7           Reservation of Rights.............................................................34
    10.8           Nonoccurrence of Effective Date.........................................35

ARTICLE XI PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
                UNLIQUIDATED CLAIMS.................................................................35
    11.1           Objections to Claims..............................................................35
    11.2           Estimation of Claims..............................................................36
    11.3           No Distributions Pending Allowance....................................36
    11.4           Distributions After Allowance...............................................36
    11.5           Reduction of Claims...............................................................37
    11.6           Compliance with Tax Requirements/Allocations...............37

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION  AND
                CONSUMMATION OF THE PLAN...................................................37
    12.1           Conditions Precedent to Confirmation.................................37

12.2    Conditions Precedent to Effective Date ..............................................38

12.3    Substantial Consummation ..................................................................38

12.4    Waiver of Conditions .........................................................................38

12.5    Revocation, Withdrawal, or Non-consummation...............................38

ARTICLE XIII AMENDMENTS AND MODIFICATIONS .......................................39

ARTICLE XIV RETENTION OF JURISDICTION ..................................................39

ARTICLE XV COMPROMISES AND SETTLEMENTS .........................................41

ARTICLE XVI MISCELLANEOUS PROVISIONS ................................................41

16.1    Bar Dates for Certain Actions ............................................................41

16.2    Payment of Statutory Fees .................................................................42

16.3    Severability of Plan Provisions..........................................................43

16.4    Successors and Assigns......................................................................43

16.5    Releases..............................................................................................43

16.6    Exculpation ........................................................................................45

16.7    Indemnification ..................................................................................45

16.8    Permanent Injunction ........................................................................46

16.9    Bankruptcy Rule 3016 Compliance ...................................................46

16.10   Term of Injunctions or Stay ...............................................................46

16.11   Integral to Plan ..................................................................................47

16.12   Preservation of Rights of Action; Settlement....................................47

16.13   Binding Effect ...................................................................................47

16.14   Notices ...............................................................................................48

16.15   Setoffs ................................................................................................49

16.16   Recoupment .......................................................................................49

16.17   Release of Liens.................................................................................49

16.18   Request for Expedited Tax Review.....................................................50

16.19   Dissolution of Committee ..................................................................50

16.20   No Admissions ..................................................................................50

16.21   Governing Law ..................................................................................50

ARTICLE XVII CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE
PLAN .............................................................................................50

17.1    Certain Material Federal Income Tax Consequences of the Plan ........50

17.2    Consequences to U.S. Holders of Certain Claims ..............................52

17.3    Tax Treatment of Creditors' Trust and Its Beneficial Holders.............54

17.4    Tax Reporting for Assets Allocable to Disputed Claims and
Distributions from the Creditors' Trust Disputed Claims
Reserve...............................................................................................56

17.5    Information Reporting and Withholding..............................................57

17.6    Importance of Obtaining Professional Tax Assistance .......................57

ARTICLE XVIII CONCLUSION AND RECOMMENDATION ...............................57

## **TABLE OF EXHIBITS**

| Exhibit | Name |
|---------|------|
| A | Plan of Reorganization |
| B | Bidding Procedures Order |
| C | Liquidation Analysis |
| D | Order Approving the Disclosure Statement |
| E | Payments/Transfers to Creditors within 90 Days (or One Year for Insiders) |
| F | Retained Causes of Action |

#4925052

**SUMMARY OF PLAN**

On July 22, 2015, the Debtors filed their First Amended Joint Plan of Reorganization[1] which proposes to sell substantially all assets of each Debtor to a proposed purchaser and to transfer the proceeds from such sale, along with any and all remaining assets, to a Creditors' Trust.  The Debtors have sought and gained approval from the Bankruptcy Court to establish appropriate Bidding Procedures and sale procedures related to the anticipated sale.  Pursuant to the terms of the Plan and the Creditors' Trust Agreement, the Creditors' Trustee will distribute the net proceeds of all assets to Creditors in order of the priority of their Claims.

Under the Plan, the Debtors are not consolidated for distribution or voting purposes.  Each Debtor is treated separately.

Under the Plan, all Allowed Administrative Expense Claims and all Allowed Priority Tax Claims shall be paid in full from cash on hand on or promptly after the Effective Date.  Holders of Priority Claims will be paid in full from cash on hand on or promptly after the Effective Date.  The DIP Lender will be paid in full from the cash proceeds of a sale of the DIP Lender's Collateral up to the extent of the DIP Loan; or be satisfied in full in exchange for the Proposed Purchaser Credit Bid.  Holders of Senior Secured Claims will either (i) be paid up to the extent of such Allowed Senior Secured Claim from the proceeds of the sale of the holder's Collateral; (ii) receive such collateral, without representation of warranty; (iii) retain their lien against such collateral; or (iv) receive such other treatment rendering such holder's Claim Unimpaired.  The Senior and Junior Secured Claims of CL III will be paid in full from the cash proceeds of a sale of the Collateral for the Senior and Junior Secured Claims of CL III, up to the extent of such claims; or be satisfied in full in exchange for the Proposed Purchaser Credit Bid.  Holders of Other Secured Claims shall receive the Cash proceeds of the sale of their Collateral.  General Unsecured Claims will receive their pro rata share of the Creditors' Trust Assets.  Holders of Allowed Interests against each Debtor shall be cancelled and extinguished, and the holders of Interests shall not receive or retain any property or assets on account of their Interests.

**ARTICLE I**
**BACKGROUND**

1.1  **Introduction**

WBH Energy, LP, a Texas limited partnership, and the other debtors in the above-captioned Chapter 11 Cases (collectively, the "Debtors") submit the following Disclosure Statement pursuant to Bankruptcy Code section 1125 for the purpose of soliciting votes to accept or reject the Debtors' Plan.  A copy of the Plan is attached hereto as **Exhibit A**.  The Disclosure Statement describes certain aspects of the Plan, including the treatment of holders of Claims and Interests, and also describes certain aspects of the Debtors' operations, financial projections, and other related matters.

---

[1] Capitalized terms used in this Disclosure Statement and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

#4925052

On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  By order of the Bankruptcy Court, the Chapter 11 Cases are being jointly administered for procedural purposes only.  Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtors are continuing to operate their businesses and manage their properties as debtors in possession in these Chapter 11 Cases.

### 1.2    Sources of Information

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT AND IS BASED, IN PART, UPON INFORMATION PREPARED BY PARTIES OTHER THAN THE DEBTORS.  THEREFORE, ALTHOUGH THE DEBTORS HAVE MADE EVERY REASONABLE EFFORT TO BE ACCURATE IN ALL MATERIAL MATTERS, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE.**

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtors, their businesses, properties and management, and the Plan, have been prepared from information furnished by the Debtors.

Certain of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents.  While the Debtors have made every effort to retain the meaning of such other documents or portions that have been summarized, the Debtors urge that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves.  In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of such document shall apply.

The authors of the Disclosure Statement have compiled information from the Debtors without professional comment, opinion or verification and do not suggest comprehensive treatment has been given to matters identified herein.  Each Creditor and Holder of an Interest is urged to independently investigate any such matters prior to reliance.

No statements concerning the Debtors, the value of their property, or the value of any benefit offered to the Holder of a Claim or Interest in connection with the Plan should be relied upon other than as set forth in this Disclosure Statement.  In arriving at your decision, you should not rely on any representation or inducement made to secure your acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional representations or inducements should be reported to counsel for the Debtors, Bracewell & Giuliani LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attention: Jason G. Cohen.

### 1.3    Description of Debtors' Business and Assets

Together, the Debtors operate an oil and gas exploration and production business with a primary focus on the Barnett Combo Play of the Fort Worth Basin.  Each of the Debtors is a Texas entity, is based in Austin, Texas, and was founded in 2011.

WBH Energy, LP ("Debtor LP") is a real property holding company that owns working interests in approximately 1,500 leases consisting of approximately 2,570 net acres throughout the Barnett Combo Play.  Of those leases, approximately 30 horizontal wells and 9 vertical wells are currently producing and 6 horizontal wells (the "Lewis-Stuart Wells") have been drilled and cased.  Debtor LP is managed by its general partner, WBH Energy GP, LLC.

WBH Energy Partners LLC ("Debtor LLC") is an oil and gas operating company that was responsible for developing the working interests of Debtor, LP and its non-affiliated, non-debtor partner, U.S. Energy Development Corporation ("USED").  Until March 1, 2015, Debtor LLC was the operator of certain oil and gas interests pursuant to that certain Joint Operating Agreement (the "JOA") dated September 1, 2011, by and between itself, as operator, and Debtor LP and USED as oil and gas lease owners and/or oil and gas interest owners.

Further information regarding the Debtors' businesses can be found in the Affidavit of Joseph Warnock in Support of First Day Motions at Docket No. 19 in Case No. 15-10003.

### 1.4     Debtors' Corporate Structure

Debtor LLC is a Texas limited liability company.  Its members consist of David Henderson, Joseph Warnock, Jacob Warnock, and Rand Winfrey.

Debtor LP is a Texas limited partnership.  Debtor LP's limited partners consist of David Henderson, Joseph Warnock, Jacob Warnock, Rand Winfrey, and Ryen Burrus.  Its managing general partner is WBH Energy GP, LLC.

WBH GP, LLC is a Texas limited liability company.  Its members consist of David Henderson, Joseph Warnock, Jacob Warnock, Rand Winfrey, and Ryen Burrus.

### 1.5     The Debtors' Pre-Petition Indebtedness

Prior to the Petition Date, the Debtors entered into the following secured financing transactions:

• the Loan Agreement, dated October 17, 2013, between Debtor LP, Debtor LLC, and WBH Energy GP, LLC as borrowers, and Green Bank, N.A., as lender, as amended by the Amended and Restated Loan Agreement (as amended, supplemented, and modified, the "Senior Pre-Petition Loan Agreement"), dated December 19, 2013, between Debtor LP, Debtor LLC, and WBH Energy GP, LLC, as borrowers, and Green Bank, N.A., as lender.  On December 10, 2014, Green Bank, N.A. sold, transferred, assigned, granted, and conveyed to CL III the Senior Pre-Petition Loan Agreement and all indebtedness and obligations owing to Green Bank, N.A., along with all rights, benefits, remedies and privileges of Green Bank, N.A.  As of January 4, 2015, the amount of $5,547,306.28 was outstanding pursuant to the terms of the Senior Pre-Petition Loan Agreement.

• the Credit Agreement (as amended, supplemented, and modified, the "Junior Pre-Petition Credit Agreement", and together with the Senior Pre-Petition Loan Agreement, the "Lender Pre-Petition Loans"), dated December 19, 2013, between Debtor LP, as borrower, and CL III, as amended by First Amendment to Credit Agreement entered into as of December 31,

2013, between Debtor LP, as borrower and CL III, as further amended by the Second Amendment to Credit Agreement, dated as of April 21, 2014, between Debtor LP, as borrower and CL III.  As of January 4, 2015, the amount of $28,901,217.37 was outstanding under the Junior Pre-Petition Credit Agreement.

Pursuant to the Senior Pre-Petition Loan Agreement and Junior Pre-Petition Credit Agreement, CL III has a lien on substantially all of the assets of the Debtors.

### 1.6    Debtors' Management

Upon the Petition Date, the following persons were employed as management of the Debtors:

David Henderson, President
Joseph Warnock, Vice President
Jacob Warnock, Vice President
Rand Winfrey, Vice President

The following persons were employed as management during the pendency of these cases:

David Henderson, President
Joseph Warnock, Vice President
Jacob Warnock, Vice President
Rand Winfrey, Vice President

Under the Plan, the winding up of the estates after Confirmation of the Plan will be managed by a Creditors' Trust, with Creditors' Trustee to be John D. ("Danny") Mullen, subject to Bankruptcy Court approval.

### 1.7    Non-Bankruptcy Litigation

As of the Petition Date, the following Debtors were defendants in the following suits:

- *U.S. Energy Development Corporation v. WBH Energy Partners LLC, WBH Energy, LP, and WBH Energy GP, LLC*.  Cause No. 14-12-142 in the District Court of Jack County, Texas, 271st Judicial District.

- *CL III Funding Holding Company, LLC v. WBH Energy Partners LLC, WBH Energy, LP, and WBH Energy GP, LLC*.  Case No. 27-CV-14-20734 in the District Court of Hennepin County, Minnesota, Fourth Judicial District.

Although the outcome of these disputes cannot be predicted, management, after consultation with legal counsel, is of the opinion that the final resolution of all currently pending or threatened litigation is not likely to have a material adverse effect on the Debtors' consolidated financial position, results of operations, or cash flows.  All of the actions in which one of the

4

Debtors is a defendant have been stayed by operation of law as a result of the commencement of these Chapter 11 Cases.

### 1.8    Events Precipitating the Reorganization Cases

In early September 2014, CL III informed the Debtors that it was declining to release further funds under the Junior Pre-Petition Credit Agreement.  As a result, Debtor LP was unable to fund its share of expenses due to Debtor LLC under the JOA.  Debtor LLC, in turn, was then unable to fund its payment obligations to various vendors.  Consequently, the Debtors' lease development plan was placed in jeopardy.  The Debtors immediately entered into restructuring discussions with CL III.

As restructuring discussions continued between the Debtors and CL III, the Debtors also entered into discussions with USED related to the Debtor LP's lack of funds to move forward with well completion.  On November 20, 2014, USED informed Debtor LLC that it believed Debtor LLC was insolvent and therefore deemed to resign as the operator under the JOA.  Debtor LLC disagreed that it was insolvent and stated that it remained as operator under the JOA.

On December 3, 2014, CL III sent Debtor LP  a default and acceleration notice under the Junior Credit Facility.

On December 9, 2014, USED provided the Debtors with a Notice of Default under the JOA, asserting the Debtors were in default for failure to pay their share of operational expenses in the amount of approximately $12 million.  Pursuant to the JOA, USED asserted that the Debtors had until January 9, 2015, to cure the default or USED would foreclose on Debtor LP's interest in its leases.

On December 12, 2014, CL III provided the Debtors with a default and acceleration notice under the Senior Pre-Petition Loan Agreement.  On the same day, CL III also issued a Notice of Trustee's sale under the Junior Pre-Petition Credit Agreement, which set such sale for January 6, 2015.  In addition, on December 23, 2014, CL III filed a Verified Complaint in the Fourth Judicial District Court for the County of Hennepin, Minnesota, styled *CL III Funding Holding Company, LLC a Delaware limited liability company v. WBH Energy, LP, a Texas limited partnership, WBH Energy GP, LLC, a Texas limited liability company, and WBH Energy Partners, LLC, a Texas limited liability company*, for breach of contract, appointment of a receiver, declaratory judgment enforcing rights under the deeds of trusts, and injunction.  A week later, CL III issued a notice of sale of collateral under the Uniform Commercial Code, pursuant to which CL III sought to foreclose on the accounts of Debtor LLC.

On December 29, 2014, USED filed a petition in the 271st Judicial District of Jack County, Texas, styled *U.S. Energy Development Corporation v. WBH Energy Partners LLC, WBH Energy, LP and WBH Energy GP, LLC*, for breach of contract, fraud, breach of fiduciary duty, conspiracy, accounting, foreclosure, constructive trust, exemplary damages, declaratory judgment, and a temporary injunction.  Specifically, USED alleged that the Debtors resigned as operator under the terms of the Joint Operating Agreement and were in default under the JOA.  USED alleged that it had the right to replace Debtor LLC as operator under the JOA with itself,

effective immediately. The Debtors disputed all of these allegations. On the same day the petition was filed, the State Court judge entered an ex parte Order Granting USED's Application for Temporary Restraining Order against Defendant Debtor LLC. ("TRO"). The TRO restrained Debtor LLC from, among other things, acting as operator under the JOA; interfering or opposing USED's designation and approval as operator under the JOA; and withholding any documentation in connection with the operations under the JOA. The TRO also required the Debtors to deliver data relating to operations to USED; advise parties to pay production proceeds to USED instead of Debtors; and complete forms to be filed with the Texas Railroad Commission changing the operator to USED. The hearing on USED's application for temporary injunction against the Debtors was set for January 9, 2015.

In order to preserve the value of the Debtors' businesses and potential value to unsecured creditors, the Debtors were forced to file these bankruptcy cases before the January 6, 2015 foreclosure date. In addition, the Debtors could not operate their businesses as a result of the TRO unless they filed these bankruptcy cases.

## ARTICLE II
## THE CHAPTER 11 CASES

### 2.1    Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Chapter 11 authorizes a debtor to reorganize its business for the benefit of its creditors, equity interest holders, and other parties in interest. Commencing a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The principal objective of a chapter 11 case is to consummate a plan of reorganization. A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan of reorganization by a bankruptcy court binds a debtor, any issuer of securities thereunder, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or entity the bankruptcy court may find to be bound by such plan. Chapter 11 requires that a plan treat similarly situated creditors and similarly situated equity interest holders equally, subject to the priority provisions of the Bankruptcy Code.

Subject to certain limited exceptions, the bankruptcy court order confirming a plan of reorganization discharges a debtor from any debt that arose prior to the date of confirmation of the plan and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

Prior to soliciting acceptances of a proposed plan of reorganization, Bankruptcy Code section 1125 requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed

judgment regarding acceptance of the plan of reorganization. This Disclosure Statement is submitted in accordance with Bankruptcy Code section 1125.

### 2.2 Administration of the Chapter 11 Cases

#### 2.2.1 *First-day Motions*

On the Petition Date, or soon thereafter, the Debtors filed numerous first-day motions, the object of which was to streamline the transition to operating under chapter 11, to stabilize operations, and to preserve their relationships with vendors, customers, employees and utility providers. These first-day motions requested, among other things, authority to procedurally consolidate the cases, designate these bankruptcies as "complex" under the local rules, pay prepetition taxes, pay prepetition wages, remit payments to royalty and working interest owners, and use cash collateral to fund operations. The Debtors also filed motions seeking relief from certain administrative requirements of the Bankruptcy Code and to establish procedures to resolve adequate assurance requests for their utility accounts.

#### 2.2.2 *Appointment of Committee*

The Official Committee of Creditors was appointed by the United States Trustee on January 20, 2015. The Committee is (as of the date of this Disclosure Statement) composed of Inwell, LLC, P.L.P.S., Inc., Gladiator Energy Services LLC, Morrison Supply Co., Nabors Drilling USA, LP, Cressman Tubular Products Corporation, and Challenger Process Systems Co.

#### 2.2.3 *Retention of Professionals*

Pursuant to Court order, the Debtors have retained Bracewell & Giuliani LLP, as their general bankruptcy and restructuring counsel, and Willkie Farr & Gallagher LLP as their corporate counsel. Additionally, the Committee has retained Locke Lord LLP as its counsel.

As of the date hereof, the Debtors estimate that, as of the Effective Date, the total amount of Allowed Administrative Expense Claims will be approximately $808,860. The Debtors further estimate that approximately $632,251 of the total amount of Allowed Administrative Expense Claims will consist of unpaid Professional Fees (which includes $194,207 for Committee Professional Fees) and the remaining $176,609 will constitute unpaid ordinary course accounts payable.

#### 2.2.4 *Bidding Procedures Motion*

On April 6, 2015, the Debtors filed the Bidding Procedures and Sale Motion, which seeks Bankruptcy Court approval of a process under which the Debtors will seek competing bids for the sale of all or substantially all of the Debtors' assets. Specifically, the Bidding Procedures and Sale Motion contemplates the following:

- Upon execution of a confidentiality agreement, in form and substance satisfactory to the Debtors, any party wishing to conduct due diligence on the Acquired Assets may be granted access to material information.

- To be deemed a Qualifying Bid, a bid must meet the requirements specified in the Bidding Procedures.

- All Qualifying Bids must also be accompanied by a purchase deposit, which will be returned to each Qualifying Bidder not deemed to be the Purchaser.

- In the event the Debtors timely receive one or more Qualifying Bids other than the Purchase and Sale Agreement, the Debtors shall conduct an Auction.

- The Qualifying Bidder submitting the highest and best bid at the Auction will be deemed the Purchaser, and will complete and execute all documents evidencing and containing the terms and conditions upon which the winning bid was made.

To facilitate this process, the Debtors negotiated and signed a Purchase and Sale Agreement with the Proposed Purchaser. The Purchase and Sale Agreement provides that the Proposed Purchaser will pay an amount of no less than $25,225,000 ($25,000,000 will be a credit bid) for the Acquired Assets. The Debtors have not offered or provided the Proposed Purchaser with any break up fee or expense reimbursement.

The order approving the Bidding Procedures was entered on May 11, 2015, and is attached hereto as **Exhibit B.** The disclosures in this section are qualified in their entirety by the Bidding Procedures, which control in the case of any discrepancy. The Auction contemplated by the Bidding Procedures and Sale Motion, if necessary, will be held on August 18, 2015, at 10:00 a.m. prevailing Central Time, at the law offices of Bracewell & Giuliani LLP, 111 Congress Ave., Suite 2300, Austin, Texas 78701.

### 2.2.5  *Preference Analysis and Other Potential Avoidance Actions*

The Bankruptcy Code preserves the Debtors' rights to prosecute claims and causes of action which exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims which are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers and fraudulent conveyances. As described below, the Plan preserves all of the Debtors' rights in respect of all Avoidance Actions, transfers the Debtors' rights in respect of such Avoidance Actions to the Creditors' Trust, and empowers the Creditors' Trustee to prosecute, collect, and/or settle the Avoidance Actions as deemed appropriate.

On January 20, 2015, the Debtors filed their Statements of Financial Affairs, which include, amount other things, a list of potentially preferential transfers made within the preference period. Those lists of payments are attached hereto as **Exhibit E.** To date, the Debtors and other parties have not conclusively identified and/or investigated any potential Avoidance Actions.

**IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN, AND IN DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN, HOLDERS OF CLAIMS AND INTERESTS (INCLUDING PARTIES THAT RECEIVED PAYMENTS FROM THE DEBTORS WITHIN NINETY (90) DAYS PRIOR TO THE PETITION DATE) SHOULD CONSIDER THAT A CAUSE OF ACTION MAY EXIST**

**AGAINST THEM, THAT THE PLAN PRESERVES ALL CAUSES OF ACTION, AND THAT THE PLAN AUTHORIZES THE CREDITORS' TRUSTEE TO PROSECUTE THE SAME.**

### 2.2.6  *Adversary Proceedings*

(a)     ***15-1006 U.S. Energy Dev. Corp. v. WBH Energy Partners LLC et al.***

On January 15, 2015, USED filed an adversary proceeding against Debtor LLC alleging that Debtor LLC was in breach of the JOA for, among other things, failing to pay and discharge expenses incurred in the development of the relevant contract area.  On account of this alleged breach, USED seeks to permanently remove Debtor LLC as operator under the JOA, and to install itself as operator.  By way of answer, Debtor LLC denied the claims of USED and asserted a counterclaim in the amount of $11,400,000 based on terms of the JOA requiring USED to pay any outstanding amounts owed to operator by any other non-operating party.  On February 17, 2015, the Court issued its Order Granting Plaintiff's Application for a Preliminary Injunction Against Defendant WBH Energy Partners, LLC, by which the Court deemed, on a preliminary basis, USED the operator under the JOA as of March 1, 2015.  In light of the Debtors' Sale Motion, by agreed stipulation and order, the adversary proceeding has been abated pending further order of the Court.  If the Debtors' assets are sold to CL III, then the Debtors believe that this adversary proceeding will be moot, as CL III has agreed to have USED operate the properties.  If another party purchases the assets, it is possible that such party may wish to contest the claims of USED and pursue the claims of an operator under the JOA against USED.

(b)     ***15-1010 U.S. Energy Dev. Corp. v. WBH Energy Partners LLC, et al.***

USED filed a secondary adversary proceeding against Debtor LLC on February 2, 2015.  Numerous oilfield service providers were also named as defendants.  In this lawsuit, USED admits that it owes Debtor LLC $1,943,177.17 and has owed Debtor LLC this amount at all times relevant to the subject matter of the lawsuit.  However, USED also claims that it has received notice letters from the various oilfield service provider defendants threatening liens against USED on behalf of sums owed to them by Debtor LLC.  USED claims that some of these letters assert fund trapping claims under Tex. Prop. Code § 56.043 related to the $1,943,177.17.  Consequently, USED seeks to interplead such funds and be discharged from liability with respect to such funds and the claims asserted against such funds.  On May 11, 2015, the Court ordered that USED deposit $1,845,925.02 into the registry of the Court.  Such funds have been deposited.  Currently, the various oilfield service providers have asserted claims related to the deposited funds and the case is proceeding to trial along a parallel path with Adversary Nos. 15-1078 and 15-1079.  The case is scheduled for mediation on July 28, 2015.

#4925052

     (c)     ***15-1078 CL III Funding Holding Co. v. WBH Energy Partners LLC, et al.* and *15-1079 CL III Funding Holding Co. v. WBH Energy Partners, LP, et al.***

CL III has filed two parallel adversary proceedings in order to establish the relevant priority of liens against the Debtors' assets. One adversary proceeding (15-1078) is against Debtor LLC and the other adversary proceeding (15-1079) is against Debtor LP. Each adversary proceeding also includes all oilfield service providers that have asserted liens against the Debtors' property. CL III maintains that its liens against the Debtors' assets, arising as a result of the Senior CL III Credit Facility and Junior CL III Credit Facility, are first in time and thus senior to any claims asserted by any oilfield service provider. This claim is contested by the defendants (other than the Debtors). Currently, the case is proceeding to trial along a parallel path with Adversary No. 15-1010. The cases are scheduled for mediation on July 28, 2015.

     2.2.7    ***Exclusivity***

The Debtors have the exclusive right to file a plan in their bankruptcy cases until August 2, 2015, and the exclusive right to solicit acceptances until October 10, 2015. Although there is always a possibility that Confirmation of the Plan will not occur, at this time, the Debtors do not contemplate the need to extend these dates.

## ARTICLE III
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

     3.1    **Introduction**

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, Confirmation and distribution pursuant to the Plan and Bankruptcy Code sections 1122 and 1123(a)(l). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims (except for Administrative Expense Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code section 1123(a)(l)) are classified in Section 3.6 through Section 3.12 below.

     3.2    **Voting; Acceptance by Impaired Classes**

Each Impaired Class of Claims that will (or may) receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. An Impaired Class of Claims shall have accepted the Plan if (i) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the Holders

(other than any Holder designated under Bankruptcy Code section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan. Priority Claims, Secured Claims of the DIP Lender, Senior Secured Claims, and Senior Secured Claims of CL III against each Debtor are not impaired. Junior Secured Claims, Other Secured Claims, General Unsecured Claims, and Interests against each Debtor are impaired.

3.3     **The Secured Claim of the DIP Lender**

The Secured Claim of the DIP Lender consists of the Claim of the DIP Lender related to, arising under, or in connection with the DIP Loan, for all outstanding obligations thereunder incurred through and including the Effective Date, after taking into account the sum of all payments made to the DIP Lender prior to the Effective Date on account of such Claims (if any). The Secured Claim of the DIP Lender is secured by, among other things, a first priority, senior priming lien on all now owned or hereafter acquired interest of the Debtors in the (a) Lewis-Stuart Completion Operation Wells; (b) the Oil and Gas Properties associated with the Lewis-Stuart Completion Operations Wells, and all Personal Property (each as defined in the DIP Loan). Additionally, the Secured Claim of the DIP Lender constitutes an allowed senior administrative claim pursuant to Bankruptcy Code section 364(c)(1) against each of the Debtors with priority over all valid claims, administrative expenses, adequate protection claims, and all other valid claims against each of the Debtors.

The Secured Claim of the DIP Lender shall be satisfied in full with the Cash proceeds of the sale of the DIP Lender's Collateral for the DIP Loan, up to the extent of the DIP Loan, or be satisfied in full exchange for the Proposed Purchaser Credit Bid.

The Debtors believe that, as of the Effective Date, the total amount of the Allowed DIP Facility Claims will be approximately $5,003,878.34.

3.4     **Administrative Expense Claims**

Except as otherwise provided for in the Plan, and subject to the requirements of Section 16.1 of the Plan, each Holder of an Allowed Administrative Expense Claim shall receive from the Creditors' Trustee in full satisfaction, release, settlement, and discharge of and in exchange for such Allowed Administrative Expense Claim the amount of such Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtors, or, after the Effective Date, the Creditors' Trustee.

3.5     **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim shall receive from the Creditors' Trustee, in full satisfaction, release settlement, and discharge of and in exchange for such Allowed Priority Tax Claim the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that is ten (10) Business Days

after the date such Claim is Allowed, or (iii) such other date as may be agreed upon in writing by the Holder of such Claim and the Debtors, or, after the Effective Date, the Creditors' Trustee.

### 3.6     Priority Claims

Each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

### 3.7     Senior Secured Claims

Each holder of an Allowed Senior Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Senior Secured Claim (including such interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtor, or after the Effective Date, the Creditors' Trustee, either (i) the Cash proceeds of the sale of such holder's Collateral for the Allowed Senior Secured Claim, up to the extent of such Allowed Senior Secured Claim, (ii) such Collateral, without representation or warranty, (iii) retention of such Holder's lien against the relevant Collateral; (iv) such other treatment rendering such holder's Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (v) such other lesser treatment to which the Debtors and the Holder of a Senior Secured Claim agree upon in writing.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

### 3.8     Senior Secured Claims of CL III

The Senior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Senior Secured Claims of CL III, up to the extent of such claims, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

### 3.9     Junior Secured Claim of CL III

The Junior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Junior Secured Claims of CL III, up to the extent of such claims, (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid, or (iii) receive such other lesser treatment as to which the Debtors and CL III agree upon in writing.

3.10     **Other Secured Claims**

Each holder of an Allowed Other Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Other Secured Claim, the Cash proceeds of the sale of the Collateral securing such holder's Allowed Other Secured Claim up to the Allowed amount of such Holder's Other Secured Claim after satisfaction in full of all superior liens in the Collateral.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.  In the event that any Claim of the holder of an Allowed Other Secured Claim is not completely satisfied by such distribution, the deficiency amount will constitute a deficiency claim and such claim will be designated and treated as a General Unsecured Claim pursuant to Class 7 of this Plan.

3.11     **General Unsecured Claims**

Each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and discharge of and in exchange for their respective Allowed General Unsecured Claim, on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the Creditors' Trust Assets.  In no event shall the Proposed Purchaser share in the Class 7 Assets.

3.12     **Interests**

On the Effective Date, all Interests shall be cancelled and extinguished, and the holders of Interests shall not receive or retain any property or assets on account of their Interests.

3.13     **Effect of Intercompany Claims**

Debtor LP has scheduled a claim of Debtor LLC in the amount of $11,608,670.00.  This amount is not scheduled as contingent, unliquidated, or disputed.  The claim arises from unpaid joint interest billings due from Debtor LP to Debtor LLC under the JOA.  This claim of Debtor LLC is not released under the Plan.  However, as described above, CL III has a lien on substantially all of the Debtors' assets, and this includes all accounts receivable of Debtor LLC. Under the DIP Order, the Debtors have stipulated to the extent and validity (but not priority) of CL III's liens, and that stipulation became binding upon all third parties on June 8, 2015. Consequently, while Debtor LLC may arguably have a first in time operator's lien with respect to its claim for $11,608,670.00, such lien is practically rendered moot, as any sums received by Debtor LLC are subject to CL III's liens.

3.14     **Summary of Proposed Distributions Under the Plan**

The table below summarizes the estimated distributions to be made on account of prepetition Claims and Interests under the Plan, assuming that CL III is the Purchaser under its

proposed Purchase and Sale Agreement, which includes the Proposed Purchaser Credit Bid and the Class 7 Contributed Amount.[2]

| Class | Type of Claim | Est. Range of Allowed Claims | Est. Percentage of Recovery |
|---|---|---|---|
| A1 | Priority Claims | $445,000 | 100% |
| A2 | Senior Secured Claims of DIP Lender | $5,003,878 | 100% |
| A3 | Senior Secured Claims | $0 | n/a |
| A4 | Senior Secured Claims of CL III | $5,547,306 | 100% |
| A5 | Junior Secured Claims of CL III | $28,901,217 | Deemed 100% |
| A6 | Other Secured Claims | $0 | n/a |
| A7 | General Unsecured Claims | $12,271,043 | 1.5% |
| A8 | Interests | $0 | n/a |
| B1 | Priority Claims | $445,000 | 100% |
| B2 | Senior Secured Claims of DIP Lender | $5,003,878.34 | 100% |
| B3 | Senior Secured Claims | $0 | n/a |
| B4 | Senior Secured Claims of CL III | $5,547,306.28 | 100% |
| B5 | Junior Secured Claims of CL III | $28,901,217.37 | Deemed 100% |
| B6 | Other Secured Claims | $0 | n/a |

[2] This summary of proposed distributions also assumes that the liens securing the Senior CL III Credit Facility and Junior CL III Credit Facility are senior to any liens asserted by mechanics and materialmen against the Debtors' property.  The summary further assumes that USED does not have a valid claim against any Debtors.  To the extent that USED does have a valid claim against a Debtor, the Debtors believe that such claim would be an Other Secured Claim.  The assumptions made herein are not intended to be binding on any party and all rights are reserved.

#4925052

| B7 | General Unsecured Claims | $2,925,559 | 1.5% |
|---|---|---|---|
| B8 | Interests | $0 | 0% |
| C1 | Priority Claims | $445,000 | 100% |
| C2 | Senior Secured Claims of DIP Lender | $5,003,878.34 | 100% |
| C3 | Senior Secured Claims | $0 | 100% |
| C4 | Senior Secured Claims of CL III | $5,547,306.28 | 100% |
| C5 | Junior Secured Claims of CL III | $28,901,217.37 | Deemed 100% |
| C6 | Other Secured Claims | $0 | 100% |
| C7 | General Unsecured Claims | $0 | 100% |
| C8 | Interests | $0 | 0% |

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 4.1    No Substantive Consolidation

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent provided in the relevant Plan), and such Claims will be administered and treated in the manner provided in the relevant Plan.

### 4.2    Sale of the Acquired Assets

The Plan contemplates the sale of the Acquired Assets to a third party.  To effect this, the Debtors Filed the Bidding Procedures and Sale Motion which seek, inter alia, to establish an auction.  On May 11, 2015, the Bankruptcy Court entered the Bidding Procedures Order, which established August 7, 2015, as the deadline for potential bidders to submit bids for the Acquired Assets, and established August 18, 2015, as the date for the auction.  In connection with the auction, the Debtors have identified the Potential Purchaser as a potential purchaser for the

Acquired Assets. If no additional Qualified Bidders (as defined in the Bidding Procedures) are identified at the auction, then the Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Potential Purchaser, pursuant to the Purchase and Sale Agreement. If additional Qualified Bidders are identified, at the conclusion of the auction, the Debtors will seek Bankruptcy Court approval to sell the Acquired Assets pursuant to the applicable Purchase and Sale Agreement to the Qualified Bidder submitting the highest and best offer, free and clear of any Liens, Claims, encumbrances or other interests, unless otherwise agreed to by the Purchaser. The Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement in this regard. The Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the Cash proceeds of the sale, unless otherwise agreed to by the Purchaser.

### 4.3 Appointment of Creditors' Trustee

On or before the Effective Date, the Creditors' Trust Agreement shall be executed by the Debtors and the Creditors' Trustee, and all other necessary steps shall be taken to establish the Creditors' Trust. The Creditors' Trust shall be governed by the Creditors' Trust Agreement. The initial Creditors' Trustee shall be John D. ("Danny") Mullen. The salient terms of the employment of the Creditors' Trustee, including duties and compensation, to the extent not set forth in the Plan, shall be set forth in the Creditors' Trust Agreement or the Confirmation Order. The Creditors' Trust Agreement shall contain provisions customary to Creditors' Trust agreements utilized in comparable circumstances. The Creditors' Trust and the Creditors' Trustee shall be bound by the Plan and shall not challenge any provision of the Plan. The Creditors' Trust Agreement shall be filed as an exhibit to the Plan Supplement, and its express terms shall govern distributions thereunder. The Plan Supplement will be filed at least 10 days prior to the Confirmation Hearing.

### 4.4 General Powers and Duties of the Creditors' Trustee

The Creditors' Trustee will initially be appointed by the Bankruptcy Court in the Confirmation Order. The Creditors' Trustee's compensation will be set forth in the Creditors' Trust Agreement, which will be filed with the Plan Supplement at least 10 days prior to the Confirmation Hearing, and approved by the Bankruptcy Court at Confirmation.

Subject to any express limitations, the Creditors' Trustee, on behalf of the Creditors' Trust, shall have all of the rights, powers and privileges set forth in the Plan, the Confirmation Order, and the Creditors' Trust Agreement. The Creditors' Trustee shall be authorized and shall have the obligation to take all such actions as in his/her judgment are necessary and appropriate to effectuate the purposes of the Plan, including but not limited to the following:

4.4.1 Commence, prosecute or settle claims or causes of action, enforce contracts, and assert claims, defenses, offsets and privileges;

4.4.2 Hold legal title to the Creditors' Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Creditors' Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein;

#4925052

4.4.3  Make distributions contemplated under the Plan;

4.4.4  Supervise and administer the reconciliation, resolution, settlement and payment of Claims in accordance with the Plan;

4.4.5  Enter into any agreement on behalf of the Creditors' Trust required by or consistent with the Plan and perform all of the obligations required of the Trustee under the Creditors' Trust Agreement or the Plan;

4.4.6  Abandon any of the assets of the Creditors' Trust if the Trustee concludes that such assets are of no benefit to the Creditors;

4.4.7  Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Creditors' Trust, including without limitation all state and federal Causes of Action or any other litigation, including Avoidance Actions, which constitute an asset of the Creditors' Trust;

4.4.8  Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Cases;

4.4.9  Act in the name of or in the place of the Creditors' Trust in any action before the United States Bankruptcy Court or any other judicial or administrative body;

4.4.10  Protect and enforce the rights to the Creditors' Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

4.4.11  Take actions and exercise remedies against any Person that owes money to the Creditors' Trust, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

4.4.12  Retain and pay such Creditors' Trust Professionals as the Trustee may select to assist the Trustee in its duties, on such terms as the Trustee deems appropriate, without Bankruptcy Court approval. The Trustee may commit the Creditors' Trust to and shall pay Creditors' Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel on a contingent basis. A law firm or professional shall not be disqualified from serving as a Creditors' Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Cases;

4.4.13  Retain and pay an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Creditors' Trust as the Trustee may deem appropriate, and to prepare and file any tax returns or informational returns for the Creditors' Trust as may be required, without Bankruptcy Court approval. The Trustee may commit the

Creditors' Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred;

4.4.14   Retain and pay such third parties as the Trustee may deem necessary or appropriate to assist the Trustee in carrying out its powers and duties under this Trust Agreement. The Trustee may commit the Creditors' Trust to and shall pay all such Persons reasonable compensation for services rendered and expenses incurred, as well as commit the Creditors' Trust to indemnify any such parties in connection with the performance of services;

4.4.15   Assert or waive any privilege or defense on behalf of the Creditors' Trust, with respect to the Creditors' Trust Assets, as provided in the Trust Agreement or the Plan;

4.4.16   Compromise, adjust, arbitrate, sue on or defend, pursue, prosecute abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Creditors' Trust as the Trustee shall deem advisable;

4.4.17   Avoid and recover transfers of the Debtors' property as may be permitted by the Bankruptcy Code or applicable state law;

4.4.18   Execute offsets and assert counterclaims against Claims;

4.4.19   Authority  but not the obligation to compromise, settle or otherwise resolve all objections to any Claim filed in the amount of $25,000 or less without approval of the Bankruptcy Court or further notice. For all Claims in excess of $25,000, the Trustee shall provide 10 days written notice of any proposed settlement. If no objection is submitted to the Trustee within 10 days of the date of such notice, the Trustee may proceed with such settlement and may settle such Claim without approval of any other Person;]

4.4.20   Invest any moneys held as part of the Creditors' Trust limited, however, to such investments that are consistent with the Creditors' Trust's status as a Creditors' Trust within the meaning of Treasury Regulations Section 301.7701-4(d);

4.4.21   Request any appropriate tax determination with respect to the Creditors' Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

4.4.22   May establish and maintain a website for the purpose of providing notice of Creditors' Trust activities in lieu of sending written notice to beneficiaries of the Creditors' Trust, subject to providing notice of such website to such beneficiaries;

4.4.23   Take or refrain from taking any and all actions the Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Creditors' Trust Assets or to carry out the purposes hereof;

4.4.24   Seek the examination of any Person, and subject to, the provisions of Bankruptcy Rule 2004;

4.4.25  Assume such other powers as may be vested in or assumed by the Creditors' Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Trust Agreement;

4.4.26  Establish and maintain such bank accounts as may be necessary or appropriate, draw checks on such bank accounts and perform such other necessary and appropriate duties with respect to such accounts, or designate individuals as signatories therefore, as the Trustee may direct and authorize;

4.4.27  Invest or reinvest Creditors' Trust Assets and to cause such investments, or any part thereof, to be registered and held in its name, as Trustee, or in the name of nominees;

4.4.28  File any required reports and pay to the office of the U.S. Trustee all applicable costs and fees incurred from and after the Effective Date and file a final report with the Bankruptcy Court and close the Cases;

4.4.30  Hold any Unclaimed Distribution or payment to the Holder of an Allowed Claim in accordance with the Plan and the Creditors' Trust Agreement;

4.4.31  Propose any amendment, modification or supplement to the Plan or the Creditors' Trust Agreement, provided that any such amendment, modification or supplement that is material requires approval of the Bankruptcy Court after notice and a hearing;

4.4.32  File dissolution/termination documents with the appropriate governmental agencies to dissolve the Creditors' Trust;

4.4.33  Receive, conserve and manage the Creditors' Trust Assets, and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1123(a)(5) and the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Trustee deems most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

4.4.35  Pay all taxes, if any, properly payable by the Creditors' Trust, make all tax withholdings and file tax returns and tax information returns with respect to the Creditors' Trust, and make tax elections by and on behalf of the Creditors' Trust;

4.4.36  Carry insurance coverage, including insurance to protect the Creditors' Trust and the Trustee against claims brought against the Trustee in such amounts as he deems advisable, including obtain insurance coverage with respect to real and personal property that may become Creditors' Trust Assets, if any;

4.4.37  Establish such reserves for taxes, assessments and other expenses of administration of the Creditors' Trust (including without limitation the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Creditors' Trust;

4.4.38  Borrow funds, incur or assume liabilities, and pledge Creditors' Trust Assets on behalf of the Creditors' Trust in furtherance of or in connection with the Trustee's or the

Creditors' Trust's duties, powers, authority, and obligations under this Trust Agreement, and determine and satisfy any and all liabilities created, incurred or assumed by the Creditors' Trust;

4.4.39   Exercise such other powers and duties as are necessary or appropriate in the Trustee's discretion to accomplish the purposes of the Plan.

The Committee has requested that the Creditors' Trustee:

- Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code; and

- Assert or waive any privilege or defense on behalf of the Debtors, with respect to the Creditors' Trust Assets, as provided in the Trust Agreement or the Plan.

The Committee and Debtors continue to negotiate these issues and if not resolved by agreement, the parties may seek resolution by the Court at Confirmation.

4.5    **Obligations of the Creditors' Trustee**

4.5.1   The Creditors' Trustee shall cause to be prepared a semi-annual report illustrating (i) receipts and disbursements during the prior two quarters, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, (iv) a summary listing of the status of the resolution of objections to Claims and Causes of Action, and (v) a list of payments made to Creditors' Trust Professionals. Such semi-annual report shall be made available to any party in interest upon request, within fifteen (15) business days after the end of the relevant report preparation period.

4.5.2   The Creditors' Trustee shall maintain records and books of account relating to the Creditors' Trust Assets, the management thereof and all transactions undertaken by the Creditors' Trustee on behalf of the Creditors' Trust. The Creditors' Trustee shall also maintain records and books of account relating to all Distributions contemplated under the Plan.

4.6    **Resignation/Removal of the Creditors' Trustee**

The Creditors' Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; and (ii) the appointment of a successor trustee. All fees and expenses incurred by the Creditors' Trustee shall be paid by the Creditors' Trust.

4.7    **Insurance Preservation**

Nothing in this Plan, including any releases, shall diminish or impair the enforceability of any D&O Insurance that may cover claims against the Debtors, the Estates, or any other Person.

#4925052

4.8     **Documents of the Debtors**

The Creditors' Trustee shall be granted reasonable access to the Debtors' books, records and electronically stored information for review and copying.

The Committee has requested that the Creditors' Trustee, on behalf of the Creditors' Trust, succeed to all of the Debtors' attorney-client, work-product, and other privileges. The Committee and Debtors continue to negotiate this issue and if not resolved by agreement, the parties may seek resolution by the Court at Confirmation.

4.9     **Implementation**

The Debtors, the Creditors' Trust and the Creditors' Trustee shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

4.10    **Funding of the Creditors' Trust**

On the Effective Date, the Debtors will transfer to the Creditors' Trust from their Cash the Administrative and Priority Claims Reserve for the benefit of the Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims. From time to time the Creditors' Trustee will make distributions to the Holders of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims from (i) the Administrative and Priority Claims Reserve, and (ii) from the Class 7 Contributed Amount and proceeds of Avoidance Actions if the Administrative and Priority Claims Reserve is insufficient to pay all such Claims in full. If there is any amount remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, then such remaining amount shall become part of the Creditors' Trust Assets.

On the Effective Date, all of the Creditors' Trust Assets shall be transferred and assigned to the Creditors' Trust, and the Creditors' Trust shall be in possession of, and have title to, all Creditors' Trust Assets. The conveyances of all Creditors' Trust Assets shall be accomplished pursuant to this Plan, the Sale Order and/or the Confirmation Order. The Debtors shall convey, transfer, assign and deliver the Creditors' Trust Assets Free and Clear. The Creditors' Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Creditors' Trust. Such orders may be presented without further notice other than as has been given in this Plan.

**In addition to the assets described in the foregoing paragraph which are to be transferred to the Creditors' Trust on the Effective Date, and except as otherwise provided in the Plan, the Debtors reserve and upon the Effective Date assign to the Creditors' Trust any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, including, without limitation, any and all claims, coverage claims, and/or causes of action for relief that the Debtors, the Reorganized Debtors, the Creditors' Trust or the Creditors' Trustee may have against or on behalf of any director, officer, any insurer under any D&O**

Insurance policy, or any other person or entity. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Creditors' Trust or the Creditors' Trustee relating to any such claims, coverage claims, or causes of action. The Creditors' Trustee shall constitute the duly authorized representative of the Creditors' Trust for purposes of asserting and/or enforcing claims and causes of action, and the duly authorized representative of the estate for purposes of asserting and/or enforcing coverage claims under section 1123(b)(3)(B) of the Bankruptcy Code. In keeping with section 1123(b)(3) of the Bankruptcy Code, the Debtors will retain and transfer to the Creditors' Trust all Causes of Action that they owned before the Effective Date, including all claims recoverable under Chapter 5 of the Bankruptcy Code, including all claims assertable under sections 544, 546, 547, 548 and 550 of the Bankruptcy Code, and all claims owned by the Debtors pursuant to section 541 of the Bankruptcy Code or similar state law, including all claims against third parties on account of any indebtedness, and including, without limitation, the Causes of Action and all other claims owed to or in favor of the Debtors to the extent not specifically compromised and released pursuant to the Plan or an agreement referred to or incorporated in the Plan, including the Causes of Action listed on Exhibit A-1, incorporated herein for all purposes.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors and the Creditors' Trustee and the beneficiaries of the Creditors' Trust) will treat the transfer and assignment of the Creditors' Trust Assets to the Creditors' Trust for the benefit of the beneficiaries of the Creditors' Trust as (a) a transfer of the Creditors' Trust Assets directly to the beneficiaries of the Creditors' Trust followed by (b) the transfer by the beneficiaries of the Creditors' Trust to the Creditors' Trust of the Creditors' Trust Assets. The Creditors' Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The beneficiaries of the Creditors' Trust will be treated as the grantors and owners of their Pro Rata portion of the Creditors' Trust Assets for federal income tax purposes.

4.11    **Distribution Procedures**

Any payments or distributions to be made by the Creditors' Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims. Any payments or distributions to be made by the Creditors' Trustee pursuant to the Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in the Plan. Any payment, delivery or distribution by the Creditors' Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Creditors' Trustee into the United States mail. Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims. No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed. The Creditors' Trustee will establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan. The Debtors and the Creditors' Trustee will make no distributions upon a Claim held by a party against whom a Debtor or the Creditors' Trustee asserts any avoidance action until resolution of the avoidance action by settlement or judgment

or as otherwise provided by Bankruptcy Court order. All Avoidance Actions are retained as property of the Debtors under the Plan, and such actions may be pursued solely by the Debtors or, after the Effective Date, the Creditors' Trustee.

### 4.12  Cancellation of Existing Secured Claims

Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Creditors' Trustee after the Effective Date) any Collateral or other property of any Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

### 4.13  Terminated Corporate Existence

Following the Effective Date, the Debtors shall take such actions as may be required under state law to wind down their affairs, effectuate the dissolution of each corporate entity, be discharged and have no further responsibilities.

### 4.14  Exclusivity Period

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of the Plan under Bankruptcy Code section 1121(d).

### 4.15  Effectuating Documents; Further Reorganization Transactions

Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to certify or attest to any of the foregoing actions.  The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement.

### 4.16  Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(c), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected by mergers, provided under the Plan, from the Debtors to the Creditors' Trustee or any other Person or Entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

4.17    **Closing of the Debtors' Chapter 11 Cases.**

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Creditors' Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V**
**THE SOLICITATION; VOTING PROCEDURES**

5.1    **Solicitation Package**

Accompanying this Disclosure Statement for the purpose of soliciting votes on the Plan are copies of (i) the Plan; (ii) the notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time, and place of the hearing to consider Confirmation of the Plan and related matters, and the time for filing objections to Confirmation of the Plan; and, as applicable, (iii) a Ballot or Ballots (and return envelope(s)) that you may use in voting to accept or to reject the Plan), or a notice of non-voting status, (collectively the "Solicitation Package"). Only Holders eligible to vote in favor of or against the Plan will receive a Ballot(s) as part of their Solicitation Package.  If you did not receive a Ballot and believe that you should have, please contact the Debtors' counsel at the address or telephone number set forth in 16.14.

5.2    **Voting Instructions**

After carefully reviewing the Plan and this Disclosure Statement, and the Exhibits thereto, and the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.  Please complete and sign your Ballot and return it in the envelope provided so that it is RECEIVED by the Voting Agent on or before the Plan Voting Deadline set forth on the Ballot.

Each Ballot has been coded to reflect the Class of Claims it represents.  Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

If you have any questions about the procedure for voting your eligible Claim or with respect to the Solicitation Package that you have received, please contact the Voting Agent:

Bracewell & Giuliani, LLP
Attn: Chelsea Dal Corso
711 Louisiana St., Suite 2300
Houston,  Texas 77002
Email: Chelsea.DalCorso@bgllp.com

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT FOR THE DEBTORS ON OR BEFORE AUGUST 14, 2015, AT THE ABOVE ADDRESS.  EXCEPT TO THE EXTENT ALLOWED BY THE BANKRUPTCY COURT OR DETERMINED OTHERWISE BY**

THE DEBTORS, BALLOTS RECEIVED AFTER THE PLAN VOTING DEADLINE WILL NOT BE ACCEPTED OR USED IN CONNECTION WITH THE DEBTORS' REQUEST FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF.

ONLY BALLOTS WITH ORIGINAL SIGNATURES WILL BE COUNTED. BALLOTS WITH COPIED SIGNATURES WILL <u>NOT</u> BE ACCEPTED OR COUNTED. YOU <u>MAY NOT</u> SUBMIT A BALLOT BY FACSIMILE. YOU <u>MAY</u> SUBMIT A BALLOT BY EMAIL TO <u>CHELSEA.DALCORSO@BGLLP.COM</u>, BY SCANNING AN ORIGINAL SIGNATURE AND SENDING IN .PDF FORMAT. ONLY ORIGINAL BALLOTS (OR SCANNED ORIGINAL BALLOTS IN THE CASE OF BALLOTS SUBMITTED BY EMAIL) RECEIVED BY THE VOTING AGENT BY THE PLAN VOTING DEADLINE WILL BE COUNTED.

### 5.3    Voting Tabulation

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only Holders who actually vote will be counted. The failure of a Holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such Holder with respect to voting on the Plan and such abstentions will not be counted as votes for or against the Plan.

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted. The Debtors, in their sole discretion, may request that the Voting Agent attempt to contact such voters to cure any such defects in the Ballots.

Except as provided below, unless the applicable Ballot is timely submitted to the Voting Agent before the Plan Voting Deadline, together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid and decline to utilize it in connection with seeking Confirmation of the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Bankruptcy Code section 1126(e), that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and, unless otherwise determined by the Debtors, must submit proper evidence satisfactory to the Debtors of authority to so act.

The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Plan Voting Deadline. Except to the extent permitted by the Bankruptcy Court, Ballots that are received after the Plan Voting Deadline will not be counted or otherwise used by the Debtors in connection with the Debtors' request for Confirmation of the Plan (or any permitted modification thereof). IN NO CASE SHOULD A BALLOT BE DELIVERED TO ANY ENTITY OTHER THAN THE VOTING AGENT.

5.4     **Agreements upon Furnishing Ballots**

The delivery of an accepting Ballot to the Voting Agent by a Holder pursuant to one of the procedures set forth above will constitute the agreement of such Holder to accept (i) all of the terms of, and conditions to, the solicitation and voting procedures and (ii) the terms of the Plan; provided, however, all parties in interest retain their right to object to Confirmation of the Plan pursuant to Bankruptcy Code section 1128.

## ARTICLE VI
## FEASIBILITY, BEST INTEREST OF THE CREDITORS
## AND LIQUIDATION

6.1     **Feasibility of the Plan**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successors to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Plan proposed by the Debtors provides for a liquidation of the Debtors' remaining assets and a distribution of Cash to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. The ability of the Creditors' Trustee to make the Distributions described in the Plan does not depend on future earnings of the Debtors. Accordingly, the Debtors believe that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

6.2     **Best Interest of Creditors Test**

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of a Claim or interest in such Class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such person would receive or retain if the Debtors liquidated under chapter 7 of the Bankruptcy Code. In chapter 7 liquidation cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior Class receiving any payments until all amounts due to senior Classes have been paid fully or any such payment is provided for:

- Secured creditors (to the extent of the value of their collateral);

- Administrative and other priority creditors;

- Unsecured creditors;

- Debt expressly subordinated by its terms or by order of the Bankruptcy Court; and

- Interest holders.

As described in the liquidation discussion set forth in 9.1 hereof, the Debtors believe that the value of any distributions in a chapter 7 case would be less than the value of distributions under the Plan because, among other reasons, distributions in a chapter 7 case may not occur for

a longer period of time, thereby reducing the present value of such distributions. In this regard, the distribution of the proceeds of a liquidation would be delayed until a chapter 7 trustee and its professionals became knowledgeable about the Chapter 11 Cases and the Claims against the Debtors. In addition, proceeds received in a chapter 7 liquidation are likely to be significantly discounted due to the distressed nature of the sale, and the Debtors' estates would have to pay the fees and expenses of a chapter 7 trustee in addition to the Professionals' pre- conversion fees and expenses (thereby further reducing cash available for distribution).

## ARTICLE VII
## CONFIRMATION PROCEDURES

### 7.1    The Confirmation Hearing

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after notice, to hold a Confirmation Hearing. Bankruptcy Code section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing for August 20, 2015, at 9:30 a.m., prevailing Central Time, before the Honorable H. Christopher Mott, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas at the Homer J. Thornberry Federal Judicial Bldg., 903 San Jacinto Blvd., Suite 326, Austin, Texas 78701.

Objections to Confirmation of the Plan must be filed and served on the Debtors and the other parties set forth in the order approving the Disclosure Statement, and certain other parties, by no later than August 14, 2015, in accordance with the order approving the Disclosure Statement (attached hereto as **Exhibit D**).   THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO CONFIRMATION OF THE PLAN IF ANY SUCH OBJECTIONS HAVE NOT BEEN TIMELY SERVED AND FILED IN COMPLIANCE WITH THE ORDER APPROVING THE DISCLOSURE STATEMENT.

The notice of the Confirmation Hearing will contain, among other things, the deadline to object to Confirmation of the Plan, the Plan Voting Deadline, and the date and time of the Confirmation Hearing.

### 7.2    Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code section 1129 have been satisfied. The Debtors believe that the Plan satisfies or will satisfy the applicable requirements, as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as Plan proponent, have or will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

#4925052

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (a) made before the Confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after the Confirmation of the Plan.

- The Debtors, as Plan proponent, have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an Affiliate of the Debtors participating in the Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

- The Debtors, as Plan proponent, have disclosed the identity of any insider (as defined in Bankruptcy Code section 101) that will be employed or retained by the Creditors' Trust, and the nature of any compensation for such insider.

- The Plan does not propose any rate change that is subject to approval by a governmental regulatory commission.

- Either each Holder of an Impaired Claim or Interest has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of each voting Class pursuant to Bankruptcy Code section 1129(b).

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims, Priority Tax Claims and, Priority Non-Tax Claims will be paid in full, in Cash, on the Effective Date, or as soon thereafter as practicable.

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan unless such a liquidation or reorganization is proposed in the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

- The Debtors have no retirement benefit obligations except for 401(k) plans, and such plans are expected to be terminated and will provide for rollover distributions to current participants.

The Debtors believe that: (a) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (b) the Debtors have complied or will have complied with all of the requirements of chapter 11; and (c) the Plan has been proposed in good faith.

### 7.2.1 *Acceptance by Impaired Classes*

The Bankruptcy Code requires, as a condition to Confirmation, that, except as described in the following section, each Class of Claims or Equity Interests that is Impaired under the Plan accept the Plan. A class that is not impaired under a plan of reorganization is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is Impaired unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or equity interest; or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest after the occurrence of a default—(1) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured; (2) reinstates the maturity of such claim or interest as such maturity existed before such default; (3) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and *(4)* if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(l)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure*; and* (5) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### 7.2.2 *Confirmation Without Acceptance by All Impaired Classes*

Bankruptcy Code section 1129(b) allows a bankruptcy court to confirm a plan, even if an Impaired class entitled to vote on the plan has not accepted it, provided that the plan has been accepted by at least one Impaired Class. No Classes are deemed to reject the Plan. However, the Debtors cannot guarantee that all Impaired Classes will accept the Plan. If any Impaired Class does not accept the Plan, the Debtors intend to seek confirmation of the Plan pursuant to Bankruptcy Code section 1129(b). Bankruptcy Code section 1129(b) states that, notwithstanding an Impaired class's failure to accept a plan of reorganization, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is Impaired under, and has not accepted, the plan.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of secured creditors includes the following requirements that either: (a) the plan provides that holders of such claims retain the liens securing such claims, whether the property subject to such

liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims and that each holder of a claim of such class receive on account of such claims deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; (b) the plan provides for the sale, subject to 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under (a) or (c) of this paragraph; or (c) the plan provides for the realization by such holders of the indubitable equivalent of such claims.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims includes the following requirement that either: (a) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (b) the holder of any claim or equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or equity interest any property.

The Debtors reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Exhibit or Schedule, including to amend or modify it to satisfy Bankruptcy Code section 1129(b), if necessary.

### 7.3    Identity of Persons to Contact for More Information

Any interested party desiring further information about the Plan should contact the Voting Agent at the phone number and/or address listed in Section 16.14 of this Disclosure Statement.

## ARTICLE VIII
## CERTAIN RISK FACTORS AFFECTING
## CERTAIN OF THE DEBTORS

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF IMPAIRED CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 8.1    Certain Bankruptcy Law Considerations

Although the Debtors believe that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes.  Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.  In the event the conditions precedent to Confirmation of the Plan have not been satisfied or waived (to the extent possible) by the Debtors or applicable party (as provided in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no distributions under the Plan will be made, and the

Debtors and all Holders of Claims and Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though such Confirmation Date had never occurred.

### 8.2    Risks Related to the Sale of the Debtors' Assets

The Bankruptcy Court has not yet approved a sale of the Debtors' assets.  Further, the Purchase and Sale Agreement is subject to certain conditions precedent which must be satisfied before the transaction is consummated.  There is no guarantee that these conditions precedent will be satisfied or that the Bankruptcy Court will approve a sale of the Debtors' assets.  If the sale of the Debtors' assets is not consummated, the feasibility of the Plan may be adversely affected.

## ARTICLE IX
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives to the Plan include: (a) liquidation of the Debtors under chapter 7 of the Bankruptcy Code; and (b) an alternative plan of reorganization.

### 9.1    Liquidation Under Chapter 7

If no plan can be confirmed, the Debtors' Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed (or elected) to liquidate the Debtors' assets for distribution in accordance with the priorities established by the Bankruptcy Code.  A discussion of the effects that a chapter 7 liquidation would have on the recoveries of Holders of Claims and Interests is set forth below.  The Debtors believe that liquidation under chapter 7 would result in smaller distributions to creditors than those provided for in the Plan because: (a) the automatic stay would lift pursuant to the Court's *Stipulation and Agreed Order on (I) Motion for Relief from Automatic Stay to Foreclose on Collateral Owned by WBH Energy LP and (2) Motion for Relief from Automatic Stay to Foreclose on Collateral Owned by WBH Energy Partners LLC Filed by CL III Funding Holding, LLC (Castlelake)* (Dkt. No. 358), and CL III would foreclose on the assets under state law; (b) additional administrative expenses involved in the appointment of a trustee would be incurred; and (c) additional expenses and claims, some of which would be entitled to priority, would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of the Debtors' operations.

Specifically, the Debtors' costs of liquidation under chapter 7 of the Bankruptcy Code would include the fees payable to a chapter 7 trustee, as well as those fees that might be payable to attorneys and other Professionals that such a trustee might engage.  In addition, claims would arise by reason of the breach or rejection of obligations incurred and leases and executory contracts assumed or entered into by the Debtors during the pendency of the Chapter 11 Cases. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 Cases, including any unpaid expenses incurred by the Debtors and the Committee during the Chapter 11 Cases such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance

of those proceeds would be made available to pay prepetition Allowed General Unsecured Claims, Allowed subordinated Claims or Allowed Interests. Furthermore, the Debtors' DIP Facility will mature on September 10, 2015, at which point the Debtors are unlikely to be able to fund essential costs needed to preserve their assets and, if the cases were converted, the automatic stay would lift automatically and CL III would pursue its rights under state law, namely, foreclosure.

To determine if the Plan is in the best interests of each Impaired Class, the value of the distributions from the proceeds of a liquidation of the Debtors' unencumbered assets and properties, after subtracting the amounts attributable to the foregoing claims, are then compared with the value of the property offered to such Classes of Claims and Interests under the Plan.

After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to the Holders of Claims and Interests in the Chapter 11 Cases, including (i) the increased costs and expenses of a liquidation under chapter 7 of the Bankruptcy Code arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, (ii) the likely erosion in value of assets in a chapter 7 case in the context of an expeditious liquidation and the "forced sale" atmosphere that would prevail under a chapter 7 liquidation and (iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases, the Debtors have determined that Confirmation of the Plan will provide each holder of an Allowed Claim or Interest with a recovery that is not less than such holder would receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

The Debtors' Liquidation Analysis is attached hereto as **Exhibit C**. The information set forth in Exhibit C provides a summary of the liquidation values of the Debtors' assets, assuming a chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtors' estates. The liquidation analysis was prepared by the Debtors' financial advisor.

Underlying the liquidation analysis are a number of estimates and assumptions that, although developed and considered reasonable by management, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtors and their management. The liquidation analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtors were, in fact, to undergo such a liquidation. The chapter 7 liquidation period is assumed to be a period of six (6) months, allowing for, among other things, the (i) discontinuation of the Debtors' operations, (ii) sale of assets, and (iii) collection of receivables.

9.2    **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Bankruptcy Court could confirm a different plan. A different plan might involve either a reorganization and continuation of the Debtors' businesses or an orderly liquidation of the Debtors' assets, or some combination of the two. The Debtors believe that the Plan, as described herein, enables Holders of Claims and Interests to realize the highest and best value under the circumstances. The Debtors believe that any alternative form of chapter 11 plan is a much less attractive alternative to creditors than the Plan because of the

greater returns and certainty provided by the Plan.  Other alternatives could involve diminished recoveries, significant delay, uncertainty, and substantial additional administrative costs.

## ARTICLE X

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

### 10.1    Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

### 10.2    Cure Costs

The Purchase and Sale Agreement between the Debtors and the Proposed Purchaser may require the assumption and assignment of any Assumed and Assigned Contracts (as defined in the Bidding Procedures and Sale Motion).  The Debtors are required to provide notice of any proposed cure amount to any counterparties to any Assumed and Assigned Contract by July 22, 2015.  The Cure Notice shall be substantially in the form attached to the Bidding Procedures Order.  The Cure Notice shall, among other things, (i) identify the potential Assumed and Assigned Contracts, (ii) specify the Cure Costs necessary to assume and assign such Assumed and Assigned Contracts, and (iii) state that failure to timely object to the proposed assumption and assignment and/or the Cure Cost shall constitute deemed consent to such assumption and assignment and Cure Cost.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures Order, File a detailed statement setting forth its reason no later than 4:00 p.m. (prevailing Central Time) on August 14, 2015, and the Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation Hearing.  The fixing of the Cure Costs shall constitute the Debtor's right to assign the executory contract and unexpired lease to the Purchaser under Bankruptcy Code sections 365(c) and (f).

### 10.3    Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

#4925052

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

10.4    **Insurance Policies**

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Creditors' Trust. The Creditors' Trustee may purchase extensions or tails on any insurance policy.

10.5    **Pass-through**

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Creditors' Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c) shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Creditors' Trust and the counterparty unaltered and unaffected by the bankruptcy Filings or Chapter 11 Cases.

10.6    **Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Unless otherwise provided by a Bankruptcy Court order, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any Proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Creditors' Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim against the particular Debtor in question to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim against the particular Debtor in question.

10.7    **Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was

executory or unexpired at the time of assumption or rejection, the Debtors or Creditors' Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

Nothing in this Disclosure Statement shall constitute an admission by any Creditor.

## 10.8 Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

## ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### 11.1 Objections to Claims

#### 11.1.1 *Authority*

The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File objections to all Claims, and to withdraw any objections to such Claims that they File. The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims. The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims. From and after the Effective Date, the Creditors' Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Creditors' Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

Notwithstanding the foregoing paragraph, if CL III is the Purchaser, then CL III shall have the exclusive authority to File objections to all Senior Secured Claims, and to withdraw any objections to such Claims that they File. If CL III is the Purchaser, then CL III shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Senior Secured Claims. If CL III is the Purchaser, then CL III, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Senior Secured Claims. From and after the Effective Date, if CL III is the Purchaser, then CL III may settle or compromise any Disputed Claim that is a Senior Secured Claim, without approval of the Bankruptcy Court. If CL III is the Purchaser, then CL III also shall have the right to resolve any Disputed Claim that is a Senior Secured Claims outside the Bankruptcy Court under applicable governing law.

#### 11.1.2 *Objection Deadline*

As soon as practicable, but no later than the Claims Objection Deadline, the Creditors' Trustee may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made. Nothing contained herein,

however, shall limit the right of the Creditors' Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor or the Creditors' Trustee, as the case may be, without notice or hearing.

For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.

## 11.2 Estimation of Claims

The Creditors' Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Creditors' Trustee or any Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Creditors' Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

## 11.3 No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Creditors' Trustee in writing, no payments or distributions shall be made with respect to any disputed portion of a Claim unless and until all objections to such disputed portion of the Claim have been settled or withdrawn or have been determined by Final Order. The Creditors' Trustee shall pay the undisputed portion of a Claim in accordance with the Plan, Confirmation Order and orders of the Court.

## 11.4 Distributions After Allowance

The Creditors' Trustee shall make payments and distributions from a distribution reserve to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Creditors' Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of the Creditors' Trust for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

### 11.5    Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Creditors' Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

### 11.6    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Creditors' Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Creditors' Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. The Creditors' Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise provided in the Plan, distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

**ARTICLE XII**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

### 12.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.1.1  The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such order shall have become a Final Order.

12.1.2  The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors and the Purchaser; and (ii) include a finding of fact that the Debtors, and their respective present members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code section 1125(e) and are

therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

12.1.3  If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order, which approves the Purchase and Sale Agreement, in form and substance reasonably acceptable to the Debtors and the Purchaser.

## 12.2    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.2.1  The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser and such order shall have become a Final Order.

12.2.2  If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser, and such order shall have become a Final Order.

12.2.3  Purchaser shall have provided written evidence satisfactory to the Debtors that simultaneous with the occurrence of the Effective Date, Purchaser is prepared to close under the Purchase and Sale Agreement, and the Closing shall have occurred pursuant to the Purchase and Sale Agreement.

## 12.3    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

## 12.4    Waiver of Conditions

Each of the conditions set forth in Section 12.1 or Section 12.2 hereof may be waived in whole or in part by the Debtors or Purchaser, as applicable.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

## 12.5    Revocation, Withdrawal, or Non-consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or substantial consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for

Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

**ARTICLE XIII**
**AMENDMENTS AND MODIFICATIONS**

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to the Purchaser, the Debtors may not modify such document without the written consent of the Purchaser, as applicable.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**ARTICLE XIV**

**RETENTION OF JURISDICTION**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are

#4925052

parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(G)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

(I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Purchase and Sale Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

(L)     Recover all assets of the Debtors and property of the Estates, wherever located;

(M)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)     Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

(O)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)     Enter an order or final decree concluding or closing the Chapter 11 Cases; and

(Q)     Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

16.1    **Bar Dates for Certain Actions**

16.1.1  ***Administrative Expense Claims; Substantial Contribution Claims***

The Confirmation Order will establish a Bar Date for Filing of all Administrative Expense Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and the types of Administrative Expense Claims outlined in section 16.1.2, 16.1.3, or 16.1.4 below), which date will be forty-five (45) days after the Effective Date (the "Administrative Expense Claims Bar Date").  Holders of asserted Administrative Expense Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities described in section 16.1.2 or 16.1.3 below, must submit proofs of Administrative Expense Claim on or before such Administrative Expense Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Expense Claims Bar Date.  The Creditors' Trustee shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Claims Bar Date to review and object to such Administrative Expense Claims before a hearing for determination of allowance of such Administrative Expense Claims.

#4925052

### 16.1.2 *Administrative Ordinary Course Liabilities*

Holders of Administrative Expense Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Expense Claims. For the avoidance of doubt, Holders of Administrative Expense Claims pursuant to Bankruptcy Code section 503(b)(9) shall be required to File a proof of Administrative Expense Claim on or before the Administrative Expense Claims Bar Date.

### 16.1.3 *Administrative Tax Claims*

All requests for payment of Administrative Expense Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Creditors' Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Creditors' Trustee or its property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date. Any interested party desiring to object to an Administrative Expense Claim for taxes must File and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

### 16.1.4 *Professional Fee Claims*

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must be Filed and served on the Creditors' Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

### 16.2 **Payment of Statutory Fees**

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the

#4925052

United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan. Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited to funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids. Post-confirmation, the Debtors, and post-Effective Date, the Creditors' Trustee, shall be responsible for the payment of accruing United States Trustee quarterly fees for each of the Debtors until each case is closed by the Court. The Debtors and the Creditors' Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

### 16.3 Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 16.4 Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 16.5 Releases

*__Releases of and by Debtors and Estates__*. **On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, CL III, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus, in their individual capacities (iv) legal, financial and restructuring advisors of the Debtors; (v) the Creditors' Trustee, and (vi) the Related Persons of each of the foregoing, from any and all Claims,**

43

interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that CL III, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Creditors' Trustee, on its own behalf and as a representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) CL III; (ii) CL III's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal, financial and restructuring advisors of CL III; and (iv) the Related Parties for each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that the Debtors or Creditors' Trustee, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

**Release of and by Purchaser.** On and after the Effective Date, the Purchaser shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus in their individual capacities (iv) legal, financial and restructuring advisors of the Debtors; (v) the Creditors' Trustee, and (vi) the Related Persons of each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character

whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, save and except any Claims and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.

On or after the Effective Date, the Debtors, on behalf of themselves and their respective subsidiaries and affiliates (including the Creditors' Trustee) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Purchaser, (ii) the Purchaser's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal and financial advisors of the Purchaser, and (iv) the Related Persons of each of the foregoing, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtors' their subsidiaries and affiliates (including the Creditors' Trustee) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, save and except any Claims arising after the Closing and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.

16.6    **Exculpation**

The Exculpated Persons SHALL NOT BE LIABLE FOR ANY cause of action arising in connection with or out of the administration of the Chapter 11 Cases, the planning of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the good faith solicitation of acceptances of the Plan in accordance with Bankruptcy Code 1125(e), pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the Acquired Property to be sold pursuant to the Purchase and Sale Agreement or to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court. All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any Exculpated Person as to which such Exculpated Person has been exculpated from liability pursuant to the preceding sentence.

16.7    **Indemnification**

The Creditors' Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Creditors' Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Creditors' Trustee may, in

connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Creditors' Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Creditors' Trustee unless such determination is based on willful misconduct, gross negligence or fraud.  The Creditors' Trust shall indemnify and hold harmless the Creditors' Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditors' Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 16.8    Permanent Injunction

Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, and the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Creditors' Trust, or their assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest.  The foregoing injunction will extend to successors of the Debtors and Creditors' Trust and their respective property and interests in the property.

### 16.9    Bankruptcy Rule 3016 Compliance

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

### 16.10    Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

#4925052

16.11 **Integral to Plan**

Each of the injunctions provided in the Plan is an integral part of the Plan and is essential to its implementation. Each of the Persons protected by the injunctions set forth in the Plan shall have the right to independently seek the enforcement of such injunctions.

16.12 **Preservation of Rights of Action; Settlement**

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise disposed of in the Plan, the Purchase and Sale Agreement, or are expressly and specifically released in connection with the Plan, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code § 1123(b): (1) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Creditors' Trustee, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in the Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Creditors' Trustee does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in the Plan, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in the Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Creditors' Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date. The Creditors' Trustee may, subject to the Plan, commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Creditors' Trust.

16.13 **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and

#4925052

47

assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

16.14 **Notices**

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Creditors' Trust shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

WBH Energy, LP *et al.*
Attention: Joseph Warnock
P.O. Box 302380
Austin, TX 78703
Phone: (512) 330-9502
Fax: (512) 330-9504

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone: (713) 223-2300
Fax: (713) 221-1212

If to the Creditors' Trustee

John D. Mullen
5014 Spring Hill Dr., Ste. 300
Spring, TX 77396
Phone: (713) 408-4478

With a copy to (which shall not constitute notice):

Berry Spears
Locke Lord LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
Phone: (512) 305-4700
Fax: (512) 305-4800

#4925052

16.15    **Setoffs**

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or the Creditors' Trust may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or the Creditors' Trust, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Creditors' Trust of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtor or the Creditors' Trust, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

16.16    **Recoupment**

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or the Creditors' Trust, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

16.17    **Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.  For the avoidance of doubt, as provided in section 4.02 of the Plan, the Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

### 16.18   Request for Expedited Tax Review

The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 16.19   Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

### 16.20   No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

### 16.21   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or the Creditors' Trust, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

## ARTICLE XVII
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### 17.1   Certain Material Federal Income Tax Consequences of the Plan

The following discussion summarizes certain material federal income tax consequences of the implementation of the Plan to certain holders of Allowed Other Secured Claims and Allowed General Unsecured Claims.  For the avoidance of doubt, Allowed Claims include any Disputed Claim when such Claim becomes Allowed under the Plan. This summary does not address the federal income tax consequences to holders of Interests or any other holders of Claims, including (i) holders of Claims who are deemed to have rejected a Plan in accordance with the provisions of section 1126(g) of the Bankruptcy Code, (ii) holders whose Claims are entitled to payment in full in cash or are otherwise unimpaired under the Plan (i.e., holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Senior Secured Claims), or (iii) holders whose Claims are extinguished without distribution in exchange therefore.

This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), existing and proposed treasury regulations promulgated thereunder ("Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis.  Any such change could significantly affect the federal income tax consequences described below.

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  The Debtors have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  The discussion below is not binding upon the IRS or the courts. Thus, no assurance can be given the IRS would not assert, or that a court would not sustain, a different position than any position discussed in this Disclosure Statement.

The following discussion does not address the federal income tax consequences to holders of Allowed Claims that are not U.S. Holders. For purposes of this discussion, a "U.S. Holder" is a holder that is: (a) an individual citizen or resident of the United States for U.S. federal income tax purposes; (b) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof, or the District of Columbia; (c) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (d) a trust (i) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more U.S. persons have authority to control all substantial decisions of the trust or (ii) that has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. person.

This discussion does not purport to address all aspects of federal income taxation that may be relevant to those certain holders of Allowed Claims in light of their individual circumstances, nor does it purport to address the federal income tax consequences of the Plan to holders that are subject to special treatment under federal income tax laws (including, without limitation, non-U.S. Holders, brokers, dealers and traders in securities, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated investment companies, tax-exempt organizations, certain expatriates, or former long term residents of the United States, pass-through entities or investors in pass-through entities, and those holding Claims as part of a hedge, straddle, conversion, constructive sale or conversion transaction).  This discussion assumes, except where otherwise indicated, that such Claims, are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the IRC. In addition, this summary does not address state, local or foreign income or other tax consequences of the Plan.

If a holder is a partnership, other pass-through entity or a disregarded entity for U.S. federal income tax purposes, the tax treatment of a partner in or owner of such entity generally will depend upon the status of the partner or owner, and the activities of the entity. Partners or owners of other pass-through entities as well as non-U.S. Holders and other holders that are subject to special treatment  under federal income tax law should consult their respective tax advisors regarding the federal income tax consequences of the Plan.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED**

#4925052

**UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLANS.**

17.2    **Consequences to U.S. Holders of Certain Claims**

The federal income tax consequences of the Plan to U.S. Holders of Claims, including the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan, generally will depend upon, among other things, (i) the manner in which a holder acquired a Claim; (ii) the length of time a Claim has been held; (iii) whether the Claim was acquired at a discount; (iv) whether the holder has taken a bad debt deduction in the current or prior years; (v) whether the holder has previously included accrued but unpaid interest with respect to a Claim; (vi) the holder's method of tax accounting; (vii) whether the holder will realize foreign currency exchange gain or loss with respect to a Claim; (viii) whether a Claim is an installment obligation for federal income tax purposes; and (ix) whether the transaction is treated as a "closed transaction." Therefore, U.S. Holders of Claims are urged to consult their tax advisors for information that may be relevant to their particular situation and circumstances and the particular tax consequences to such holders as a result thereof.

Pursuant to the Plan, holders of Allowed Other Secured Claims will receive Cash proceeds up to the Allowed amount of such holder's Other Secured Claim after the satisfaction in full of all superior liens in the Collateral. In the event the Claim of a holder of an Allowed Other Secured Claim is not completely satisfied by such Cash distribution, the deficiency amount will constitute a deficiency claim and such deficiency claim will be designated and treated as a General Unsecured Claim under the Plan. Pursuant to the Plan, holders of Allowed General Unsecured Claims will receive their Pro Rata share of the interests in the Creditors' Trust.

As discussed below, the Creditors' Trust has been or will be structured to qualify as a "grantor trust" for federal income tax purposes. Accordingly, each U.S. Holder of an Allowed General Unsecured Claim receiving a beneficial interest in the Creditors' Trust will be treated for federal income tax purposes as directly receiving, and as a direct owner of, its respective share of the Creditors' Trust Assets (consistent with its economic rights in the trust) (other than any assets allocated to the Disputed Claims Reserve, to the extent established, as discussed below). Pursuant to the Plan, the Debtors or the Creditors' Trustee (as provided in the Plan) will in good faith value the assets transferred to the Creditors' Trust, and all parties to the Creditors' Trust (including holders of General Unsecured Claims receiving interests in the Creditors' Trust) must consistently use such valuation for all U.S. federal income tax purposes.

After the Effective Date, a holder's share of any collections received on the assets of the Creditors' Trust (other than as a result of the subsequent disallowance of Disputed Claims, or the redistribution among holders of Allowed Claims of undeliverable distributions from the Disputed Claim Reserve, to the extent established, as discussed below) should not be included, for federal income tax purposes, in the holder's amount realized in respect of its Claim but should be separately treated as amounts realized in respect of such holder's ownership interest in the

#4925052

underlying assets of the Creditors' Trust. See Section 17.3, "*Tax Treatment of Creditors' Trust and Its Beneficial Holders*," below.

### 17.2.1 *Gain or Loss – Generally.*

In general, each U.S. Holder of an Allowed Other Secured Claim and Allowed General Unsecured Claim will recognize gain or loss (although any loss with respect to such a Claim might be deferred until all Disputed Claims are resolved) in an amount equal to the difference, between (i) such holder's "amount realized" in respect of its Claim (other than any amounts received in respect of any Claim for accrued but unpaid interest), which is (A) the amount of Cash received (in the case of a holder of Allowed Other Secured Claim), if any, and (B) its Pro Rata share, if any (which would not apply to a holder of Allowed Other Secured Claim which is fully satisfied for cash) of the fair market value of the assets transferred to the Creditors' Trust and (ii) the holder's adjusted tax basis in its Claim (other than any tax basis attributable to accrued but unpaid interest). Where gain or loss is recognized by a holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was acquired at a market discount, and whether and to what extent the holder previously had claimed a bad debt deduction. See the discussions of "accrued interest" and "market discount" below. Holders of Allowed Claims are urged to consult their tax advisors to determine the character of any gain or loss recognized in connection with the implementation of the Plan.

### 17.2.2 *Accrued Interest.*

A portion of the consideration received by the U.S. Holders of Allowed Claims may be attributable to accrued interest on such Allowed Claims. Such amount may be taxable to that holder as interest income if such accrued interest has not been previously included in such U.S. Holder's gross income for U.S. federal income tax purposes. Conversely, U.S. Holders of Allowed Claims may be able to recognize a deductible loss to the extent any accrued interest on the Allowed Claims was previously included in such U.S. Holder's gross income but was not paid in full.

If the fair market value of the consideration is not sufficient to fully satisfy all principal and interest on Allowed Claims, the extent to which such consideration will be attributable to accrued interest is unclear. The aggregate consideration to be distributed to holders of Allowed Claims in each Class will be allocated first to the principal amount of Allowed Claims, with any excess allocated to accrued but unpaid interest on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for federal income tax purposes, however, the applicable Treasury Regulations generally treat payments as allocated first to any accrued but unpaid interest and then as a payment of principal. The IRS could take the position that the consideration received by the U.S. Holder should be allocated other than as provided in the Plan. U.S. Holders of Allowed Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

### 17.2.3  *Market Discount.*

Under the "market discount" provisions of the IRC, some or all of any gain realized by a U.S. Holder of an Allowed Claim may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" constituting the Allowed Claim. In general, a debt instrument is considered to have been acquired by a U.S. Holder with "market discount" if it is acquired other than on original issue and if its U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, in each case, by at least a *de minimis* amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

### 17.3  **Tax Treatment of Creditors' Trust and Its Beneficial Holders**

### 17.3.1  *Classification of the Creditors' Trust*

The Creditors' Trust is intended to qualify as a "liquidating trust" for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity, but rather is treated for federal income tax purposes as a "grantor trust" (i.e., a pass-through type entity). However, merely establishing a trust as a liquidating trust does not ensure that it will be treated as a grantor trust for federal income tax purposes. The IRS has issued guidelines that set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Creditors' Trust has been or will be structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with such IRS guidance, all parties (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust) are required to treat, for federal income tax purposes, the Creditors' Trust as a grantor trust of which the beneficiaries of the Creditors' Trust are the owners and grantors (this treatment may differ from the treatment of the Disputed Claims Reserve, to the extent established, as discussed below). The following discussion assumes that the Creditors' Trust will be so respected for federal income tax purposes. However, no ruling has been requested from the IRS and no opinion of counsel has been requested concerning the tax status of the Creditors' Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position. If the IRS were to challenge successfully the classification of the Creditors' Trust, the federal income tax consequences to the Creditors' Trust and its beneficiaries could vary from those discussed herein (including the potential for an entity-level tax on income of the Creditors' Trust).

Interests in the Creditors' Trust will not be transferable, other than in certain limited circumstances.

### 17.3.2  *General Tax Reporting by the Creditors' Trust and its Beneficiaries*

For federal income tax purposes, all parties (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust) must treat the transfer of the Creditors' Trust Assets to the Creditors' Trust in accordance with the terms of the Plan. Pursuant to the Plan, the Creditors' Trust Assets (other than any assets allocated to the Disputed Claims

Reserve, to the extent established as discussed below) are treated, for federal income tax purposes, as having been transferred, subject to any obligations relating to those assets, directly to the holders of the respective Claims in satisfaction of their Claims (with each holder receiving an undivided interest in such assets in accord with their economic interests in such assets), followed by the transfer by the holders to the Creditors' Trust of such assets in exchange for interests in the Creditors' Trust. Accordingly, all parties must treat the Creditors' Trust as a grantor trust of which the holders of the interests in the Creditors' Trust are the owners and grantors, and the direct owners of an undivided interest in the Creditors' Trust Assets (other than any assets allocated to the Administrative and Priority Claims Reserve), consistent with their economic interests therein, for all federal income tax purposes.

Pursuant to the Plan the Creditors' Trustee, will in good faith value the Creditors' Trust Assets. The Creditors' Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Creditors' Trust (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust) for all federal income tax purposes.

Allocations of taxable income of the Creditors' Trust (other than income allocable to the Disputed Claims Reserve, to the extent established as discussed below) among the beneficiaries of the Creditors' Trust shall be determined by reference to the manner in which an amount of cash equal to such income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Creditors' Trust had distributed all its assets (valued at their tax book value, and other than assets allocable to the Disputed Claims Reserve, to the extent established as discussed below) to the beneficiaries of the Creditors' Trust, adjusted for prior income and loss and taking into account all prior and concurrent distributions from such Trust. Similarly, taxable loss of the Creditors' Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets of the Creditors' Trust. The tax book value of the assets of the Creditors' Trust for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury regulations, and other applicable administrative and judicial authorities and pronouncements. The effect of the above described allocation is to allocate taxable income or loss (i.e., the tax impact of receipts and expenditures) in a partnership-type fashion, due to the varying tiers of beneficiaries in the Creditors' Trust.

Taxable income or loss allocated to each beneficiary of the Creditors' Trust will be treated as income or loss with respect to such beneficiary's undivided interest in the Creditors' Trust Assets, and not as income or loss with respect to its prior Allowed Claim. The character of any income and the character and ability to use any loss will depend on the particular situation of such beneficiary.

The Creditors' Trustee will file with the IRS returns for the Creditors' Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). Except as discussed below with respect to the Disputed Claims Reserve, the Creditors' Trustee will annually send to the holders of record of interests in the Creditors' Trust a separate statement regarding the receipts and expenditures of the Creditors' Trust as relevant for federal income tax purposes and will instruct all such holders

to use such information in preparing their federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their federal income tax returns.

The Creditors' Trustee will comply with all applicable governmental withholding requirements. Thus, in the case of any beneficiary of the Creditors' Trust that is *not* a U.S. Holder, the Creditors' Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons. *As indicated above, the foregoing discussion of the federal income tax consequences of the Plan does not generally address the consequences to non-U.S. Holders; accordingly, such holders should consult their tax advisors with respect to the federal income tax consequences of the Plan, including owning an interest in the Creditors' Trust.*

### 17.4    Tax Reporting for Assets Allocable to Disputed Claims and Distributions from the Creditors' Trust Disputed Claims Reserve

The Creditors' Trustee may, in accordance with the Plan, establish a reserve for Disputed Claims (the "Disputed Claims Reserve").  If such Disputed Claims Reserve is established, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by either of the Creditors' Trustee of an IRS private letter ruling if the Creditors' Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Creditors' Trustee), the Creditors' Trustee may (A) elect to treat any assets allocable to, or retained on account of, Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (B) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. In such case, all parties (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust)  will be required to report for tax purposes consistent with such treatment.

If treated as a "disputed ownership fund," the Disputed Claims Reserve will be a separate taxable entity for federal income tax purposes, and all actual and constructive distributions from such reserve (including to the extent assets were initially allocable to Disputed Claims but are no longer) will be taxable to such reserve as if sold at fair market value. In such case, any actual or constructive distributions from the Disputed Claims Reserve to holders of Allowed Claims (including to previously Allowed Claims in the event a Disputed Claim is disallowed)  will be treated for federal income tax purposes as if received directly from the Debtors on the original Claim in respect of which the interest in the Creditors' Trust was issued. Thus, a holder must be careful to differentiate between the tax treatment of actual or constructive distributions from the Disputed Claims Reserve and the tax treatment of distributions out of assets of the Creditors' Trust to which the holder is already considered the direct owner for U.S. federal income tax purposes (discussed above).

Holders should consult their own tax advisors with respect to the federal income tax consequences of the Plan to them based on their own circumstances if the Disputed Claims Reserve is established.

#4925052

17.5    **Information Reporting and Withholding**

All distributions to holders of Allowed Claims under the Plan are subject to any applicable tax withholding, including employment tax withholding. Under federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 28%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

17.6    **Importance of Obtaining Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIM HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE, AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**ARTICLE XVIII**
**CONCLUSION AND RECOMMENDATION**

The Debtors believe that the Plan is in the best interests of all Holders of Claims, and urge those Holders of Claims entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be RECEIVED by the Voting Agent no later than August 14, 2015. If the Plan is not confirmed, or if Holders in those Classes do not vote to accept the Plan, the Holders in those Classes may not receive a distribution.

*(Signature Page Immediately Follows)*

#4925052

Dated: July 24, 2015

**WBH ENERGY, LP**

By:    */s/ Joseph S. Warnock*
Name:    Joseph S. Warnock
Title:    Vice President

**WBH ENERGY PARTNERS LLC**

By:    */s/ Joseph S. Warnock*
Name:    Joseph S. Warnock
Title:    Vice President

**WBH ENERGY GP, LLC**

By:    */s/ Joseph S. Warnock*
Name:    Joseph S. Warnock
Title:    Vice President

#4925052