DRAFT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | **Case No. 15-10003** |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | **Chapter 11** |
| | § | |
| Debtors. | § | *Jointly Administered* |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF WBH ENERGY, LP, WBH ENERGY PARTNERS LLC, AND WBH ENERGY GP, LLC

William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

DRAFT

# TABLE OF CONTENTS

ARTICLE I

        DEFINITIONS AND INTERPRETATION .................................................. 1

1.1    Rules of Interpretation. ........................................................ 1
1.2    Definitions.......................................................................... 1
1.3    Defined Terms ................................................................... 2

ARTICLE II

        PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE
        CLAIMS AND PRIORITY TAX CLAIMS .................................................. 11

2.1    Treatment of Allowed Administrative Expense Claims. ..................................... 11
2.2    Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims. ...................................................... 12
2.3    Treatment of Allowed Priority Tax Claims. ....................................... 12

ARTICLE III

        CLASSIFICATION OF CLAIMS AND INTERESTS ............................... 12

3.1    Creation of Classes. ...................................................... 12
3.2    Claims May Be in More Than One Class. ................................... 13

ARTICLE IV

        IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN............... 13

4.1    Classes of Claims Not Impaired. ........................................ 13
4.2    Impaired Classes of Claims. ............................................. 14
4.3    Impairment Controversies.................................................. 14

ARTICLE V

        PROVISIONS FOR TREATMENT OF CLASSES OFQA CLAIMS AND INTERESTS........................................................ 14

5.1    Classes A1, B1, C1 – Priority Claims.................................... 14
5.2    Classes A2, B2, C2 – Secured Claim of the DIP Lender.................... 14
5.3    Classes A3, B3, C3 – Senior Secured Claims............................. 14
5.4    Classes A4, B4, C4 –Senior Secured Claims of CL III. .................. 15
5.5    Classes A5, B5, C5 – Junior Secured Claim of CL III. .................. 15
5.6    Classes A6, B6, C6 – Other Secured Claims. ............................ 15
5.7    Classes A7, B7, C7 – General Unsecured Claims. ....................... 15
5.8    Classes A8, B8, C8 – Interests........................................... 15
5.9    Allowance of Unliquidated or Contingent Claims........................ 16

ARTICLE VI

        ACCEPTANCE OR REJECTION OF THIS PLAN ................................... 16

6.1    Classes and Claims Entitled to Vote.................................... 16

6.2    Cramdown. ................................................................................................ 16

ARTICLE VII        MEANS FOR IMPLEMENTATION OF THIS PLAN
                   AND POST EFFECTIVE DATE GOVERNANCE ..................................... 16

7.1    No Substantive Consolidation ................................................................. 16
7.2    Sale of the Acquired Assets .................................................................... 17
7.3    Application of Sale Proceeds .................................................................. 17
7.4    Other Assets ............................................................................................ 17
7.5    Creation of Creditors' Trust .................................................................... 17
7.6    Cancellation of Interests ......................................................................... 18
7.7    Terminated Corporate Existence ............................................................. 18
7.8    Distribution Procedures .......................................................................... 18
7.9    Cancellation of Existing Security Claims ............................................... 18
7.10   Directors and Officers ............................................................................ 18
7.11   Preservation of Rights of Action ............................................................ 19
7.12   Exclusivity Period ................................................................................... 19
7.13   Effectuating Documents; Further Reorganization Transactions .......... 20
7.14   Exemption from Certain Transfer Taxes ................................................ 20
7.15   Closing of the Debtors' Chapter 11 Cases. ............................................ 20

ARTICLE VIII       CREDITORS' TRUST AND CREDITORS' TRUSTEE ............................ 20

8.1    The Creation of the Creditors' Trust ...................................................... 20
8.2    Funding of Res of Trust .......................................................................... 21
8.3    The Creditors' Trustee ............................................................................ 21
8.4    Retention of Professionals ...................................................................... 22
8.5    Compensation of the Creditors' Trustee ................................................ 22
8.6    Creditors' Trust Expenses ....................................................................... 22
8.7    Liability; Indemnification ....................................................................... 22
8.8    Termination ............................................................................................. 23
8.9    Creditors' Trust Authority ...................................................................... 23

ARTICLE IX        PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ............... 24

9.1    Timing and Delivery of Distributions .................................................... 24
9.2    Method of Cash Distributions ................................................................ 24
9.3    Failure to Negotiate Checks ................................................................... 24
9.4    Compliance with Tax Requirements ....................................................... 24
9.5    De Minimis Distributions ....................................................................... 24
9.6    Distribution Record Date ........................................................................ 25

ARTICLE X         EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND
                  OTHER AGREEMENTS ........................................................................ 25

10.1   Assumption/Rejection ............................................................................. 25
10.2   Cure Amounts .......................................................................................... 25

10.3   Assumed Executory Contracts and Unexpired Leases ........................................ 25
10.4   Insurance Policies ............................................................................................. 26
10.5   Pass-through..................................................................................................... 26
10.6   Claims Based on Rejection of Executory Contracts and Unexpired Leases ....... 26
10.7   Reservation of Rights........................................................................................ 26
10.8   Nonoccurrence of Effective Date...................................................................... 27

ARTICLE XI            PROCEDURES FOR RESOLVING DISPUTED,
                      CONTINGENT, AND UNLIQUIDATED CLAIMS................................... 27

11.1   Objections to Claims........................................................................................ 27
11.2   Estimation of Claims........................................................................................ 28
11.3   No Distributions Pending Allowance ................................................................ 28
11.4   Distributions After Allowance.......................................................................... 28
11.5   Reduction of Claims ........................................................................................ 29
11.6   Compliance with Tax Requirements/Allocations .............................................. 29

ARTICLE XII           CONDITIONS PRECEDENT TO CONFIRMATION
                      AND CONSUMMATION OF THE PLAN ................................................ 29

12.1   Conditions Precedent to Confirmation.............................................................. 29
12.2   Conditions Precedent to Effective Date ............................................................ 30
12.3   Substantial Consummation ............................................................................... 30
12.4   Waiver of Conditions....................................................................................... 30
12.5   Revocation, Withdrawal, or Non-consummation .............................................. 31

ARTICLE XIII          AMENDMENTS AND MODIFICATIONS ............................................. 31

ARTICLE XIV           RETENTION OF JURISDICTION ................................................. 31

ARTICLE XV            COMPROMISES AND SETTLEMENTS ................................... 33

ARTICLE XVI           MISCELLANEOUS PROVISIONS....................................... 33

16.1   Bar Dates for Certain Actions.......................................................................... 33
16.2   Payment of Statutory Fees ............................................................................... 35
16.3   Severability of Plan Provisions........................................................................ 35
16.4   Successors and Assigns.................................................................................... 35
16.5   Releases........................................................................................................... 35
16.6   Bankruptcy Rule 3016 Compliance. ................................................................. 38
16.7   Exculpation ..................................................................................................... 38
16.8   Permanent Injunction ...................................................................................... 38
16.9   Term of Injunctions or Stay ............................................................................. 38
16.10  Integral to Plan................................................................................................ 39
16.11  Binding Effect ................................................................................................. 39
16.12  Notices ............................................................................................................ 39

DRAFT

16.13   Setoffs ................................................................................................ 40

16.14   Recoupment ......................................................................................... 40

16.15   Release of Liens ................................................................................. 40

16.16   Request for Expedited Tax Review ..................................................... 41

16.17   Dissolution of Committee .................................................................. 41

16.18   No Admissions.................................................................................... 41

16.19   Governing Law ................................................................................... 41

ARTICLE XVII

      CONFIRMATION REQUEST .................................................................... 41

DRAFT

# FIRST AMENDED PLAN OF REORGANIZATION OF WBH ENERGY, LP, WBH ENERGY PARTNERS LLC, AND WBH ENERGY GP, LLC

The Debtors hereby propose the following First Amended Plan of Reorganization pursuant to the provisions of section 1121 of the Bankruptcy Code. Although styled as a "joint plan," this Plan consists of three (3) separate plans (one for each of the Debtors). Consequently, except as provided in this Plan, for purposes of voting on this Plan and making and receiving distributions under this Plan, votes will be tabulated separately for each Debtor with respect to each Debtor's plan of reorganization and distributions will be made separately to each separate Class as provided in this Plan. Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters. No materials other than this Plan, the Disclosure Statement and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     Rules of Interpretation.

Unless otherwise specified, all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. The words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan. The words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

1.2     Definitions.

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the terms defined in section 1.3 of this Plan (which appear in this Plan as capitalized terms) have the respective meanings set forth in such section, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

#4930967.3

DRAFT

1.3     Defined Terms

1.3.1     "Acquired Assets" means such assets of the Debtors that are purchased by the Purchaser pursuant to the Purchase and Sale Agreement and the Sale Order or the Confirmation Order.

1.3.2     "Administrative and Priority Claims Reserve" means a reserve in the amount of the sum of (a) all budgeted expenses (including Professional Fees) set forth in the Final DIP Budget which have been incurred and are unpaid as of the Effective Date, (b) all Cure Costs incurred after the Effective Date, which amount shall be provided to the Creditors' Trust by the Debtors (or in the case of Cure Costs, by the Purchaser), pursuant to Section 8.1.2 of the Plan for the payment of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims.

1.3.3     "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case allowed under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code, including Claims for taxes entitled to treatment under section 507, and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.3.4     "Administrative Expense Claims Bar Date" means thirty (30) days after the Effective Date for any alleged Administrative Claims that arose after any earlier Administrative Claims bar dates that have been established by order of the Bankruptcy Court.  With respect to any alleged Administrative Claim that arose prior to any earlier Administrative Claims bar date that has been established by order of the Bankruptcy Court, "Administrative Expense Claims Bar Date" means such earlier bar date.  Nothing herein shall extend any prior Administrative Claims bar dates that have been established by order of the Bankruptcy Court.

1.3.5     "Affiliate" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code and, in addition, shall mean, with respect to any Person, any other Person directly or indirectly controlling (including all directors, officers, managers and general partners of such person, and Persons performing similar functions), directly or indirectly controlled by or under direct or indirect common control with such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative of the foregoing.

1.3.6     "Allowed" means, as it relates to any type of Claim provided for under this Plan (other than a Disputed, Contingent or Unliquidated Claim), a Claim (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which (a) no proof of Claim has been Timely Filed, and (b) no objection thereto has been Timely Filed; (ii) as to which a proof of Claim has been Timely Filed and either (a) no objection thereto has been Timely Filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been

2

expressly allowed (but only to the extent expressly allowed) under the provisions of this Plan or by other order of the Bankruptcy Court; or (iv) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court. Disputed, Contingent or Unliquidated Claims shall become Allowed Claims only when Allowed pursuant to a Final Order of the Bankruptcy Court.

1.3.7     "Assets" means all property of the Estate as defined in the Bankruptcy Code.

1.3.8     "Assumed Liabilities" means any liabilities being assumed by a Purchaser.

1.3.9     "Avoidance Actions" means any and all actions which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Estate under applicable state statute or Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553.

1.3.10    "Bankruptcy Code" means title 11 of the United States Code, section 101, et seq., as now in effect or as hereafter amended.

1.3.11    "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Austin Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Cases.

1.3.12    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

1.3.13    "Bankruptcy Schedules" means the schedules of assets and liabilities and the statements of financial affairs field by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.3.14    "Bar Date" means May 11, 2015.

1.3.15    "Bidding Procedures" means those bidding procedures approved by the Court and attached to Bidding Procedures Order.

1.3.16    "Bidding Procedures Order" means the Order Approving Bidding Procedures, Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; Approving Form and Notice Thereof entered at Docket Number 361 in Case No. 15-10003.

1.3.17    "Business Day" means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

DRAFT

1.3.18     "Cash" means lawful currency of the United States of America.

1.3.19     "Causes of Action" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.3.20     "Chapter 11 Cases" means the bankruptcy cases initiated by the Debtors when they filed voluntary petitions under Chapter 11 of the Bankruptcy Code on January 4, 2015, enumerated as Case Nos. 15-10003, 15-10004, and 15-10005, and jointly administered under Case No. 15-10003.

1.3.21     "CL III" means CL III Funding Holding Company, LLC in all of its capacities, including but not limited to as lender under the Senior CL III Credit Facility and Junior CL III Credit Facility, and all of its subsidiaries.

1.3.22     "Claim" means a claim against the Debtor or its property, as such term is defined in section 101(5) of the Bankruptcy Code.

1.3.23     "Claimant" means the holder of any Claim against the Debtor or its property, or of any Equity Interest.

1.3.24     "Claims Objection Deadline" means the first Business Day that is at least 90 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with section 11.1.2 of this Plan.

1.3.25     "Class" means a category of Claims or Interests, as classified in Article III of this Plan.

1.3.26     "Class 7 Contributed Amount" means Cash in the amount of $225,000 to be transferred to the Debtors as provided in Section 7.3 of this Plan.

1.3.27     "Closing" means the closing of the sale of the Acquired Assets to any Purchaser.

1.3.28     "Collateral" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

1.3.29     "Committee" means the Official Committee of Creditors appointed in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code.

DRAFT

1.3.30    "Confirmation" or "Confirmation of this Plan" means the approval of this Plan pursuant to section 1129 of the Bankruptcy Code by the Bankruptcy Court.

1.3.31    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.3.32    "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

1.3.33    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

1.3.34    "Consummation" takes place simultaneously with the completion of the Closing on the Effective Date.

1.3.35    "Contingent Claim" means a Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

1.3.36    "Creditors' Trust" means the entity created by the Creditors' Trust Agreement.

1.3.37    "Creditors' Trust Agreement" means the creditors' trust agreement approved and entered into in accordance with the Plan pursuant to which the Creditors' Trust will be established and administered.

1.3.38    "Creditors' Trust Assets" means (i) all Avoidance Actions (ii) the Class 7 Contributed Amount.

1.3.39    "Creditors' Trustee" means John D. ("Danny") Mullen, or any other party designated pursuant to this Plan or the Creditors' Trust Agreement to serve as Creditors' Trustee under this Plan.

1.3.40    "Cure Costs" means the costs, in Cash, required for the cure, assumption, and assignment of an executory contract or unexpired lease pursuant to the provisions of § 365(b) of the Bankruptcy Code.

1.3.41    "Debtors" means WBH Energy, LP, WBH Energy Partners LLC, and WBH Energy Partners GP, LLC.

1.3.42    "Definitive Documents" means the asset purchase agreement by and among the Debtor and any Purchaser, as amended, and the other documents pursuant to which the Acquired Assets were sold to a Purchaser.

1.3.43    "DIP Lender" means CL III, in its capacity as lender pursuant to the DIP Loan, its successors and assigns.

DRAFT

1.3.44    "DIP Loan" means the loans made pursuant to the Debtor in Possession Credit Agreement, dated as of June 5, 2015, by and among the Debtor and the DIP Lender, as the same may be amended.

1.3.45    "Disclosure Statement" means the Joint Disclosure Statement in support of this Plan dated July 24, 2015, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtor pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

1.3.46    "Disputed Claim" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be Timely Filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof or; (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

1.3.47    "Effective Date" means, and shall occur on the date on which all of the conditions set forth in Section 12.2 have been satisfied.

1.3.48    "Employee Benefit Plans" means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, officers or employees (whether salaried or hourly, active or retired) of the applicable Debtor.

1.3.49    "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity.

1.3.50    "Estate" means the estate created for the Debtor in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.3.51    "Estate Parties" means the Debtor, the Creditors' Trustee, their respective Subsidiaries, Affiliates and Representatives and all of their respective successors and assigns, predecessors in interest, present and former Representatives, members and shareholders.

6

1.3.52    "Excluded Assets" means all documents and instruments that may be protected by attorney-client privilege.

1.3.53    "Exculpated Person" means the Debtors, on and after the Petition Date, Purchaser, their respective subsidiaries, the Creditors' Trustee, the Committee, the DIP Lender, CL III, Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, Ryen Burrus, and each of their respective Representatives.

1.3.54    "Executory Contracts" means all "executory contacts," as such term is used in section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

1.3.55    "Final Decree" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

1.3.56    "Final DIP Budget" means the budget complying with the DIP Agreement and approved by the DIP Lender as of the date of the DIP Agreement, as such budget has been or may be amended or modified, in accordance with the DIP Loan, up to the Confirmation Date.

1.3.57    "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.3.58    "Free and Clear" means, free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the Estates, (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order.

1.3.59    "General Unsecured Claim" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, an Intercompany Claim, a Subordinated Claim, an Equity Interest, or an Assumed Liability.

1.3.60    "Intercompany Claim" means claim against a Debtor or its property by an Affiliate, including any amounts owed or allegedly owed between the Debtors.

DRAFT

1.3.61    "Interest(s)" means the interest of any holder of equity securities in any of the Debtors represented by any issued and outstanding common stock or interests, preferred stock or interests, or other instrument evidencing a present ownership interest in any of the Debtors before the Effective Date (including before the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common stock or preferred stock interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common stock interests or preferred stock interests or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common stock or preferred stock interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common stock interests, preferred stock interests or other equity securities, however evidenced but specifically excluding any Interests sold to the Purchaser pursuant to the Purchase and Sale Agreement

1.3.62    "Interim Distribution" means any distribution made before the final distribution for a Class.  The portion to be so distributed at any time shall be determined by the Creditors' Trustee, so as to leave the Debtors a sufficient portion of Assets to satisfy, as provided in this Plan, all General Unsecured Claims that are Disputed Claims or are undetermined on or about the date of such Interim Distribution.

1.3.63    "Junior CL III Credit Facility" means that credit agreement dated as of December 19, 2013 (as amended) by and between WBH Energy, LP and CL III Funding Holding Company, LLC.

1.3.64    "Leases" means all "unexpired leases," as such term is used within section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

1.3.65    "Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind, which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

1.3.66    "Ordinary Course Administrative Claim" means any Administrative Claim incurred in the ordinary course of the Debtor's business on and after the Petition Date but shall not include: (i) any Claim for Professional Fees and any expenses, compensation, or reimbursement requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code and any Committee members' expenses, which shall be subject to Bankruptcy Court approval; (ii) any taxes (including income, sales, use, property or other taxes incurred subsequent to the Petition Date); (iii) any Claims for

DRAFT

breach of contract, tort, or other actionable conduct; and (iv) any post-petition obligations incurred under Executory Contracts or Leases which are rejected pursuant to this Plan or prior to the Effective Date of this Plan.

1.3.67    "Other Secured Claim" means any Secured Claim other than the Secured Claims of the DIP Lender, the Senior Secured Claims, the Senior Secured Claims of CL III, and the Junior Secured Claims of CL III.

1.3.68    "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

1.3.69    "Petition Date" means January 4, 2015.

1.3.70    "Plan" means this First Amended Plan of Reorganization of the Debtor, and any amendments, supplements or modifications thereto.

1.3.71    "Plan Assets" means those assets of the Debtors not transferred to the Purchaser pursuant to the Purchase and Sale Agreement, the Sale Order, or this Confirmation Order.

1.3.72    "Plan Documents" means such other documents required to be filed pursuant to this Plan or filed as a Plan Document by the Debtor, which shall be filed on or before ten (10) days before the date of the Confirmation Hearing.

1.3.73    "Priority Claim" means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

1.3.74    "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.3.75    "Pro Rata" or "Pro Rata Portion" means, at any time, the proportion that the dollar amount of an Allowed Claim in a particular Class bears to the aggregate dollar amount of all Allowed Claims in such Class.

1.3.76    "Professional" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.3.77    "Professional Fees" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

1.3.78    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

DRAFT

1.3.79    "Proposed Purchaser" means CL III, or its designee, in its capacity as the stalking horse purchaser for the Acquired Assets under the Purchase and Sale Agreement pursuant to the Sale Order and/or the Confirmation Order.

1.3.80    "Proposed Purchaser Credit Bid" means the credit portion of the purchase price under the Proposed Purchaser's Purchase and Sale Agreement.

1.3.81    "Purchase and Sale Agreement" means that purchase and sale agreement by and between WBH Energy, LP and WBH Energy Partners LLC, on the one hand, and Purchaser, on the other.

1.3.82    "Purchaser" means the buyer of the Assets under the Purchase and Sale Agreement pursuant to the Sale Order and/or the Confirmation Order.

1.3.83    "Related Persons" means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

1.3.84    "Released Parties" means, collectively, each of the Debtors, the Creditors' Trustee, the Committee, CL III, Purchaser, DIP Lender, Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, Ryen Burrus, and each of their Related Persons.

1.3.85    "Representative" means, with respect to any specified Entity, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

1.3.86    "Sale Motion" means Debtors' Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; (III) Approving Form and Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell their Assets; (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief, filed at Docket Number 264 in the Bankruptcy Case.

1.3.87    "Sale Order" means that certain Order Approving Debtors' Motion for Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief, entered by the Bankruptcy Court.

DRAFT

1.3.88    "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

1.3.89    "Secured Claim" means a Claim that is (i) secured as provided by section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtor that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

1.3.90    "Secured Claims of the DIP Lender" means the Secured Claims of the DIP Lender arising under the DIP Loan.

1.3.91    "Senior CL III Credit Facility" means that credit agreement dated as of December 19, 2013 (as amended) by and between WBH Energy Partners LLC, WBH Energy, LP, and WBH Energy GP, LLC, on the one hand, and Green Bank, N.A. on the other hand, which facility was sold to CL III by Green Bank, N.A.

1.3.92    "Senior Secured Claim" means a Secured Claim that is senior in priority to the Senior Secured Claim of CL III.

1.3.93    "Senior Secured Claim of CL III" means the Secured Claim of CL III pursuant to the Senior CL III Credit Facility.

1.3.94    "Subordinated Claim" means a Claim that is subordinated as provided by section 510(b) or 510(c) of the Bankruptcy Code, or by order of the Bankruptcy Court.

1.3.95    "Timely Filed" means, with respect to a Claim, Equity Interest or Administrative Expense, that a proof of such Claim or Equity Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period of time fixed by this Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

1.3.96    "Unimpaired" means a claim or interest that is not impaired as provided under section 1124 of the Bankruptcy Code.

1.3.97    "Unliquidated Claim" means any Claim that is undetermined as to amount.

## ARTICLE II
## PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1    Treatment of Allowed Administrative Expense Claims.

Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such

#4930967.3

DRAFT

Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor, or, after the Effective Date, the Creditors' Trustee.

2.2     Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims.

All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor and the Creditors' Trustee no later than the Administrative Expense Claims Bar Date. Any request for payment of Administrative Expense Claims that is not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate, the Debtors, any Purchaser, the Creditors' Trustee or any of their respective Affiliates or Representatives; provided, however, that Ordinary Course Administrative Claims may be paid in the ordinary course of the Debtor' business and, if not previously paid in the ordinary course of the Debtor' business or assumed at the Closing by any Purchaser, shall be paid by the Debtor, or after the Effective Date, the Creditors' Trustee, pursuant to the terms thereof or such other terms as may be agreed upon by the Debtor, or after the Effective Date, the Creditors' Trustee, and by such Creditors.

2.3     Treatment of Allowed Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release and discharge of and in exchange for such Claim, the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor, or, after the Effective Date, the Creditors' Trustee.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Creation of Classes.

Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code. Pursuant to section 1122 of the Bankruptcy Code this Plan classifies the Claims against and the Interests in the Debtor as follows:

### CHART 3.1(A) - WBH ENERGY, LP

| Class A1 | Priority Claims |
|---|---|
| Class A2 | Secured Claims of the DIP Lender |

DRAFT

| Class A3 | Senior Secured Claims |
|---|---|
| Class A4 | Senior Secured Claims of CL III |
| Class A5 | Junior Secured Claims of CL III |
| Class A6 | Other Secured Claims |
| Class A7 | General Unsecured Claims |
| Class A8 | Interests |

### CHART 3.1(B) - WBH ENERGY PARTNERS LLC

| Class B1 | Priority Claims |
|---|---|
| Class B2 | Secured Claims of the DIP Lender |
| Class B3 | Senior Secured Claims |
| Class B4 | Senior Secured Claims of CL III |
| Class B5 | Junior Secured Claims of CL III |
| Class B6 | Other Secured Claims |
| Class B7 | General Unsecured Claims |
| Class B8 | Interests |

### CHART 3.1(C) - WBH ENERGY GP, LLC

| Class C1 | Priority Claims |
|---|---|
| Class C2 | Secured Claims of the DIP Lender |
| Class C3 | Senior Secured Claims |
| Class C4 | Senior Secured Claims of CL III |
| Class C5 | Junior Secured Claims of CL III |
| Class C6 | Other Secured Claims |
| Class C7 | General Unsecured Claims |
| Class C8 | Interests |

3.2    <u>Claims May Be in More Than One Class</u>.

A Claim (including an Allowed Claim) is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class, and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

### ARTICLE IV
### IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
### THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

4.1    <u>Classes of Claims Not Impaired</u>.

The Debtors believe that Classes A1, B1, C1, A2, B2, C2, A3, B3, C3, A4, B4, C4 (are) not impaired under this Plan.

13

4.2     Impaired Classes of Claims.

The Debtors believe that Classes A5, B5, C5, A6, B6, C6, A7, B7, C7, A8, B8, and C8 are impaired under this Plan.

4.3     Impairment Controversies.

If a controversy arises as to whether any Class of Claims or Class of Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless prior to Confirmation of this Plan the Bankruptcy Court shall determine such controversy differently upon objection of the party challenging the characterization of a particular Class of Claims or Class of Interests under this Plan.

## ARTICLE V
## PROVISIONS FOR TREATMENT OF CLASSES OF
## CLAIMS AND INTERESTS

5.1     Classes A1, B1, C1 – Priority Claims.

Each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

5.2     Classes A2, B2, C2 – Secured Claim of the DIP Lender.

The DIP Loan and all outstanding amounts owing thereunder shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding under the DIP Loan, the Cash proceeds of the sale of the DIP Lender's Collateral for the DIP Loan, up to the extent of the DIP Loan, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

5.3     Classes A3, B3, C3 – Senior Secured Claims.

Each holder of an Allowed Senior Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Senior Secured Claim (including such interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the election of the Debtor, or after the Effective Date, the Creditors' Trustee, either (i) the Cash proceeds of the sale of such holder's Collateral for the Allowed Senior Secured Claim, up to the extent of such Allowed Senior Secured Claim, (ii) such Collateral, without representation or warranty, (iii) retention of such Holder's lien against the relevant Collateral; (iv) such other treatment rendering such holder's Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (v) such other lesser treatment to which the Debtors and the Holder of a Senior Secured Claim agree upon in writing.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is

14

DRAFT

Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

5.4     Classes A4, B4, C4 –Senior Secured Claims of CL III.

The Senior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Senior Secured Claims of CL III, up to the extent of such claims, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

5.5     Classes A5, B5, C5 – Junior Secured Claim of CL III.

The Junior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Junior Secured Claims of CL III, up to the extent of such claims, (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid, or (iii) receive such other lesser treatment as to which the Debtors and CL III agree upon in writing.

5.6     Classes A6, B6, C6 – Other Secured Claims.

Each holder of an Allowed Other Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Other Secured Claim, the Cash proceeds of the sale of the Collateral securing such holder's Allowed Other Secured Claim up to the Allowed amount of such Holder's Other Secured Claim after satisfaction in full of all superior liens in the Collateral.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.  In the event that any Claim of the holder of an Allowed Other Secured Claim is not completely satisfied by such distribution, the deficiency amount will constitute a deficiency claim and such claim will be designated and treated as a General Unsecured Claim pursuant to Class 7 of this Plan.

5.7     Classes A7, B7, C7 – General Unsecured Claims.

Each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and discharge of and in exchange for all of their respective Allowed General Unsecured Claim, on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the Creditors' Trust Assets.  In no event shall the Proposed Purchaser share in the Class 7 Assets.

5.8     Classes A8, B8, C8 – Interests.

On the Effective Date, all Interests shall be cancelled and extinguished, and the holders of Interests shall not receive or retain any property or assets on account of their Interests.

15

5.9     Allowance of Unliquidated or Contingent Claims.

Pursuant to section 502(c) of the Bankruptcy Code, before, on or after the Effective Date, the Claimant or the Debtor, or after the Effective Date, the Creditors' Trustee, may seek the estimation of any Unliquidated Claim or Contingent Claim.  Any estimation of an Unliquidated Claim or a Contingent Claim shall constitute a final determination of such Claim for all purposes.  To the extent an Unliquidated Claim or a Contingent Claim is estimated by Final Order of the Bankruptcy Court, it shall receive the treatment for the particular type of Claim set forth in this Article V for the amount estimated by the Bankruptcy Court.  If a Claimant fails to seek estimation of a Claim at any time prior to the final distribution date for Class 7, such Claim shall be treated as a disallowed Claim without further Order of the Bankruptcy Court upon the final distribution date for Class 7.  Any Unliquidated Claim or Contingent Claim shall be treated as a Disputed Claim until and unless it becomes an Allowed Claim pursuant to a Final Order of the Bankruptcy Court.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THIS PLAN

6.1     Classes and Claims Entitled to Vote.

Each holder of an Impaired Claim (other than a Claim that will receive no recovery under this Plan) shall be entitled to vote to accept or reject this Plan.  Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes A1, B1, C1, A2, B2, C2, A3, B3, C3, A4, B4, and C4 are not impaired and hence are presumed to have accepted this Plan.  Classes A5, B5, C5, A6, B6, C6, A7, B7, C7 are impaired and therefore are entitled to vote to accept or reject this Plan.  Classes A8, B8, and C8, which comprise the holders of Interests, will receive no recovery, are impaired and each holder of Interests is deemed to have voted to reject this Plan.

6.2     Cramdown.

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THIS PLAN
## AND POST EFFECTIVE DATE GOVERNANCE

7.1     No Substantive Consolidation

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in

16

this Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent provided for in the relevant Plan), and such Claims will be administered and treated in the manner provided in the relevant Plan.

### 7.2    Sale of the Acquired Assets

The Plan contemplates the sale of the Acquired Assets to a third party. To effect this, the Debtors Filed the Bidding Procedures and Sale Motion which seek, *inter alia*, to establish an auction. On May 11, 2015, the Bankruptcy Court entered the Bidding Procedures Order, which established August 7, 2015, as the deadline for potential bidders to submit bids for the Acquired Assets, and established August 18, 2015, as the date for the auction. In connection with the auction, the Debtors have identified the Potential Purchaser as a potential purchaser for the Acquired Assets. If no additional Qualified Bidders (as defined in the Bidding Procedures) are identified at the auction, then the Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Potential Purchaser, pursuant to the Purchase and Sale Agreement. If additional Qualified Bidders are identified, at the conclusion of the auction, the Debtors will seek Bankruptcy Court approval to sell the Acquired Assets pursuant to the applicable Purchase and Sale Agreement to the Qualified Bidder submitting the highest and best offer, free and clear of any Liens, Claims, encumbrances or other interests, unless otherwise agreed to by the Purchaser. The Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement in this regard. The Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the Cash proceeds of the sale, unless otherwise agreed to by the Purchaser.

### 7.3    Application of Sale Proceeds

Contemporaneously with the Closing, the Purchaser shall deliver the sale proceeds (or, in the case of Potential Purchaser as Purchaser, the Class 7 Contributed Amount) to the Debtors or their designee for the purpose of funding the Creditors' Trust Assets as described in ARTICLE VIII.

### 7.4    Other Assets

Any Other Assets shall revest or vest in the appropriate Reorganized Debtor and shall be transferred to the Creditors' Trust for the benefit of the Holders of General Unsecured Claims.

### 7.5    Creation of Creditors' Trust

As set forth in ARTICLE VIII, the Plan provides for the creation of a Creditors' Trust with the Creditors' Trust Assets and for the liquidation, distribution and delivery of such assets in accordance with the terms of this Plan.

#4930967.3

DRAFT

7.6     Cancellation of Interests

On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

7.7     Terminated Corporate Existence

Following the Effective Date, the Debtors, through the Creditors' Trustee, shall take such actions as may be required under state law to wind down their affairs, effectuate the dissolution of each corporate entity, be discharged and have no further responsibilities for such Debtor.

7.8     Distribution Procedures

Any payments or distributions to be made by the Creditors' Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims.  Any payments or distributions to be made by the Creditors' Trustee pursuant to the Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in the Plan.  Any payment, delivery or distribution by the Creditors' Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Creditors' Trustee into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  The Creditors' Trustee will establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan.  The Debtors and the Creditors' Trustee will make no distributions upon a Claim held by a party against whom a Debtor or the Creditors' Trustee asserts any avoidance action until resolution of the avoidance action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  All Avoidance Actions are retained as property of the Debtors under the Plan, and such actions may be pursued solely by the Debtors or, after the Effective Date, the Creditors' Trustee.

7.9     Cancellation of Existing Security Claims

Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Creditors' Trustee after the Effective Date) any Collateral or other property of any Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

7.10    Directors and Officers

On the Effective Date, (a) the positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or

#4930967.3

similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action), (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Creditors' Trustee and the Creditors' Trustee or its designee shall be the presiding officer and the sole Governor of each such Debtor.

### 7.11   Preservation of Rights of Action

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise disposed of in this Plan, the Purchase and Sale Agreement, or are expressly and specifically released in connection with this Plan, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Bankruptcy Code § 1123(b):  (1) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Creditors' Trustee, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Creditors' Trustee does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates:  (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in this Plan, the Bankruptcy Schedules, the Bankruptcy Statements of Financial Affairs, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against this Plan, or received or retained any consideration under this Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Creditors' Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date.  The Creditors' Trustee may, subject to this Plan, commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Creditors' Trust.

### 7.12   Exclusivity Period

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the earlier of

(i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of the Plan under Bankruptcy Code section 1121(d).

### 7.13    Effectuating Documents; Further Reorganization Transactions

Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to certify or attest to any of the foregoing actions.  The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement.

### 7.14    Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(c), the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, including any transfers effected by mergers, provided under the Plan, from the Debtors to the Creditors' Trustee or any other Person or Entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.15    Closing of the Debtors' Chapter 11 Cases.

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Creditors' Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII
## CREDITORS' TRUST AND CREDITORS' TRUSTEE

### 8.1    The Creation of the Creditors' Trust

8.1.1    The Creditors' Trust, duly organized under the laws of Texas, is created for the purpose of liquidating the Creditors' Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Creditors' Trust Agreement.  The Creditors' Trust Agreement shall conform to the terms of this Plan, and to the extent that the Creditors' Trust Agreement is inconsistent with this Plan, the terms of this Plan shall govern.  The Creditors' Trustee will file all federal income tax returns for the Creditors' Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

8.1.2    On the Effective Date, the Debtors will transfer to the Creditors' Trust from their Cash the Administrative and Priority Claims Reserve for the benefit of the

Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims. From time to time the Creditors' Trustee will make distributions to the Holders of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims from (i) the Administrative and Priority Claims Reserve, and (ii) from the Class 7 Contributed Amount and proceeds of Avoidance Actions if the Administrative and Priority Claims Reserve is insufficient to pay all such Claims in full. If there is any amount remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, then such remaining amount shall become part of the Creditors' Trust Assets.

8.2    Funding of Res of Trust

On the Effective Date, all of the Creditors' Trust Assets shall be transferred and assigned to the Creditors' Trust, and the Creditors' Trust shall be in possession of, and have title to, all the Creditors' Trust Assets. The conveyances of all Creditors' Trust Assets shall be accomplished pursuant to this Plan, the Sale Order and/or the Confirmation Order. The Debtors shall convey, transfer, assign and deliver the Creditors' Trust Assets Free and Clear. The Creditors' Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Creditors' Trust. Such orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors and the Creditors' Trustee and the beneficiaries of the Creditors' Trust) will treat the transfer and assignment of the Creditors' Trust Assets to the Creditors' Trust for the benefit of the beneficiaries of the Creditors' Trust as (a) a transfer of the Creditors' Trust Assets directly to the beneficiaries of the Creditors' Trust followed by (b) the transfer by the beneficiaries of the Creditors' Trust to the Creditors' Trust of the Creditors' Trust Assets. The Creditors' Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The beneficiaries of the Creditors' Trust will be treated as the grantors and owners of their Pro Rata portion of the Creditors' Trust Assets for federal income tax purposes.

8.3    The Creditors' Trustee

The Creditors' Trustee shall be John D. ("Danny") Mullen. The Creditors' Trustee shall retain and have all the rights, powers and duties necessary to carry out his responsibilities under this Plan and the Creditors' Trust Agreement, and as otherwise provided in the Sale Order and/or the Confirmation Order. However, the Creditors' Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to professional fee applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date. The Creditors' Trustee shall be the exclusive trustee of the Creditors' Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Matters relating to the appointment, removal and resignation of the Creditors' Trustee and the appointment of any successor Creditors' Trustee shall be set forth in the Creditors' Trust Agreement. The Creditors' Trustee shall be required to perform his or her duties as set forth in this Plan and the Creditors' Trust Agreement.

#4930967.3

8.4     Retention of Professionals

The Creditors' Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Creditors' Trustee, are necessary to assist the Creditors' Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Creditors' Trust upon the monthly submission of statements to the Creditors' Trustee.  The payment of the reasonable fees and expenses of the Creditors' Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in this Plan.  Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Creditors' Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Creditors' Trust and Creditors' Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Creditors' Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Avoidance Actions shall be paid by the Creditors' Trust from the Creditors' Trust Assets and amounts otherwise distributable to Holders of Allowed General Unsecured Claims.

8.5     Compensation of the Creditors' Trustee

The Creditors' Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement, which shall be filed no later than 10 days prior to the Confirmation Hearing.  The payment of the fees of the Creditors' Trustee and any professionals retained by the Creditors' Trustee shall be made by the Creditors' Trust in accordance with the provisions of this Plan and the Creditors' Trust Agreement.

8.6     Creditors' Trust Expenses

All costs, expenses and obligations incurred by the Creditors' Trustee in administering this Plan and the Creditors' Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred.

8.7     Liability; Indemnification

The Creditors' Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Creditors' Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Creditors' Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Creditors' Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Creditors' Trustee unless such determination is based on willful misconduct, gross negligence or fraud.  The Creditors' Trust shall indemnify and hold harmless the Creditors' Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions

22

or omissions, with respect to the Creditors' Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

8.8    Termination

The duties, responsibilities and powers of the Creditors' Trustee shall terminate after all Creditors' Trust Assets have been fully resolved, abandoned or liquidated and the Creditors' Trust Assets have been distributed in accordance with this Plan and the Creditors' Trust Agreement; provided, however, except in the circumstances set forth below, the Creditors' Trust shall terminate no later than three years after the Effective Date.  If warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Creditors' Trust, the term of the Creditors' Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Creditors' Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Creditors' Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue.  Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Creditors' Trust.  Upon the occurrence of the termination of the Creditors' Trust, the Creditors' Trustee shall File with the Bankruptcy Court, a report thereof, seeking discharge of the Creditors' Trustee.

8.9    Creditors' Trust Authority

8.9.1    **Compromise of Claims.**  The Creditors' Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Creditors' Trust Agreement.

8.9.2    **Payment of Professional Fees.**  Without limiting the generality of the foregoing, and except as otherwise set forth in this Plan, the Creditors' Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.

8.9.3    **Request for Expedited Tax Review.**  The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

8.9.4    **Access and Preservation of Records.**  The Creditors' Trustee shall be granted access to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Purchase and Sale Agreement.

DRAFT

## ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

9.1      Timing and Delivery of Distributions

The Plan and Confirmation Order shall govern distributions from the Creditors' Trustee and shall include and be consistent with the terms of the other sections of this ARTICLE IX and other relevant provisions of the Plan, including, without limitation, ARTICLE III of the Plan.

9.2      Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Creditors' Trustee.

9.3      Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Creditors' Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Creditors' Trustee.  All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be "Unclaimed Property," and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Creditors' Trustee.

9.4      Compliance with Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Creditors' Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Creditors' Trustee within thirty (30) days from the date of such request, the Creditors' Trustee may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

9.5      De Minimis Distributions

No Cash payment of less than five ($5.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

DRAFT

9.6     Distribution Record Date

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims. The Creditors' Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE X
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

10.1     Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

10.2     Cure Amounts

The Bidding Procedures and Sale Motion contemplate that numerous executory contracts and unexpired leases will be assumed and assigned to the Purchaser pursuant to the Sale Order or the Confirmation Order. In accordance with the Bidding Procedures, as part of the Plan Supplement, the Debtors will File a list of such executory contracts and unexpired leases along with the proposed Cure Costs. Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures Order, File a detailed statement setting forth its reason. The Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation Hearing. The fixing of the Cure Costs shall constitute the Debtor's right to assign the executory contract and unexpired lease to the Purchaser under Bankruptcy Code sections 365(c) and (f).

10.3     Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

25

#4930967.3

DRAFT

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

10.4    Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Creditors' Trustee.  The Creditors' Trustee may purchase extensions or tails on any insurance policy.

10.5    Pass-through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Creditors' Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c), shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Creditors' Trustee and the counterparty unaltered and unaffected by the bankruptcy Filings or Chapter 11 Cases.

10.6    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Creditors' Trustee without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

10.7    Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was

26

executory or unexpired at the time of assumption or rejection, the Debtors or Creditors' Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

10.8    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

**ARTICLE XI**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

11.1    Objections to Claims

11.1.1    Authority

The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File objections to all Claims, and to withdraw any objections to such Claims that they File. The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims. The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims. From and after the Effective Date, the Creditors' Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. The Creditors' Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

Notwithstanding the foregoing paragraph, if CL III is the Purchaser, then CL III shall have the exclusive authority to File objections to all Senior Secured Claims, and to withdraw any objections to such Claims that they File. If CL III is the Purchaser, then CL III shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Senior Secured Claims. If CL III is the Purchaser, then CL III, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Senior Secured Claims. From and after the Effective Date, if CL III is the Purchaser, then CL III may settle or compromise any Disputed Claim that is a Senior Secured Claim, without approval of the Bankruptcy Court. If CL III is the Purchaser, then CL III also shall have the right to resolve any Disputed Claim that is a Senior Secured Claims outside the Bankruptcy Court under applicable governing law.

11.1.2    Objection Deadline

As soon as practicable, but no later than the Claims Objection Deadline, the Creditors' Trustee may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made. Nothing contained herein, however, shall limit the right of the Creditors' Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline. The Claims Objection Deadline may be extended

#4930967.3

by the Bankruptcy Court upon motion by the applicable Debtor or the Creditors' Trustee, as the case may be, without notice or hearing.

For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.

11.2    Estimation of Claims

The Creditors' Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Creditors' Trustee or any Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Creditors' Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

11.3    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Creditors' Trustee in writing, no payments or distributions shall be made with respect to any disputed portion of a Claim unless and until all objections to such disputed portion of the Claim have been settled or withdrawn or have been determined by Final Order.  The Creditors' Trustee shall pay the undisputed portion of a Claim in accordance with the Plan, Confirmation Order and orders of the Court.

11.4    Distributions After Allowance

The Creditors' Trustee shall make payments and distributions from a distribution reserve to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Creditors' Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of the Creditors' Trust for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

11.5    Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Creditors' Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

11.6    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Creditors' Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Creditors' Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. The Creditors' Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise provided in the Plan, distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

The Creditors' Trustee, will in good faith value the Creditors' Trust Assets. The Creditors' Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Creditors' Trust (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust) for all federal income tax purposes.

**ARTICLE XII**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

12.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.1.1    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such order shall have become a Final Order.

29

DRAFT

12.1.2     The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors and the Purchaser; and (ii) include a finding of fact that the Debtors, and their respective present members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code section 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

12.1.3     If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order, which approves the Purchase and Sale Agreement, in form and substance reasonably acceptable to the Debtors and the Purchaser.

12.2     Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.2.1     The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser and such order shall have become a Final Order.

12.2.2     If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser, and such order shall have become a Final Order.

12.2.3     Purchaser shall have provided written evidence satisfactory to the Debtors that simultaneous with the occurrence of the Effective Date, Purchaser is prepared to close under the Purchase and Sale Agreement, and the Closing shall have occurred pursuant to the Purchase and Sale Agreement.

12.3     Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

12.4     Waiver of Conditions

Each of the conditions set forth in Section 12.1 or Section 12.2 hereof may be waived in whole or in part by the Debtors or Purchaser, as applicable. The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

#4930967.3

DRAFT

12.5    Revocation, Withdrawal, or Non-consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or substantial consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

# ARTICLE XIII
# AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to the Purchaser, the Debtors may not modify such document without the written consent of the Purchaser, as applicable.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

# ARTICLE XIV
# RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

31

DRAFT

     (B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

     (C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

     (D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

     (E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

     (F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

     (G)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

     (H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

     (I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

     (J)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Purchase and Sale Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

     (K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

     (L)     Recover all assets of the Debtors and property of the Estates, wherever located;

#4930967.3

DRAFT

(M)    Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)    Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

(O)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)    Enter an order or final decree concluding or closing the Chapter 11 Cases; and

(Q)    Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

16.1    <u>Bar Dates for Certain Actions</u>

16.1.1    Administrative Claims; Substantial Contribution Claims

The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and the types of Administrative Claims outlined in section 16.1.2, 16.1.3, or 16.1.4 below), which date will be forty-five (45) days after the Effective Date (the "<u>Administrative Claims Bar Date</u>"). Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities described in section 16.1.2 or 16.1.3 below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date.

The Creditors' Trustee shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

### 16.1.2   Administrative Ordinary Course Liabilities

Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims.  For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code section 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

### 16.1.3   Administrative Tax Claims

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Creditors' Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Creditors' Trustee or its property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

### 16.1.4   Professional Fee Claims

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must be Filed and served on the Creditors' Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

#4930967.3

DRAFT

16.2    Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan.  Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited to funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids.  Post-confirmation, the Debtors, and post-Effective Date, the Creditors' Trustee, shall be responsible for the payment of accruing United States Trustee quarterly fees for each of the Debtors until each case is closed by the Court.  The Debtors and the Creditors' Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

16.3    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

16.4    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

16.5    Releases

16.5.1    **Releases of and by Debtors and Estates**.

**On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, CL III, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys,**

#4930967.3

and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus, in their individual capacities (iv) legal, financial and restructuring advisors of the Debtors; (v) the Creditors' Trustee, and (vi) the Related Persons of each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that CL III, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Creditors' Trustee, on its own behalf and as a representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) CL III; (ii) CL III's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal, financial and restructuring advisors of CL III; and (iv) the Related Parties for each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that the Debtors or Creditors' Trustee, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

16.5.2    **Release of and by Purchaser.**  On and after the Effective Date, the Purchaser shall be deemed to have conclusively, absolutely, unconditionally,

irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus in their individual capacities (iv) legal, financial and restructuring advisors of the Debtors; (v) the Creditors' Trustee, and (vi) the Related Persons of each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, save and except any Claims and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.

On or after the Effective Date, the Debtors, on behalf of themselves and their respective subsidiaries and affiliates (including the Creditors' Trustee) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Purchaser, (ii) the Purchaser's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal and financial advisors of the Purchaser, and (iv) the Related Persons of each of the foregoing, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtors' their subsidiaries and affiliates (including the Creditors' Trustee) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, save and except any Claims arising after the Closing and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.

16.5.3 **No Waiver.** Notwithstanding anything to the contrary contained in this Section 16.5, the releases set forth in this Section 16.5 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Creditors' Trustee, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Creditors' Trustee or the Purchaser pursuant to this Plan or the Purchase and Sale Agreement and related orders.

16.6     Bankruptcy Rule 3016 Compliance.

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

16.7     **Exculpation**

**The Exculpated Persons SHALL NOT BE LIABLE FOR ANY cause of action arising in connection with or out of the administration of the Chapter 11 Cases, the planning of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the good faith solicitation of acceptances of the Plan in accordance with Bankruptcy Code 1125(e), pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the Acquired Property to be sold pursuant to the Purchase and Sale Agreement or to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court. All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against any Exculpated Person as to which such Exculpated Person has been exculpated from liability pursuant to the preceding sentence**.

16.8     Permanent Injunction

Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, and the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Creditors' Trust, or their assets with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest. The foregoing injunction will extend to successors of the Debtors and Creditors' Trust and their respective property and interests in the property.

16.9     Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

#4930967.3

DRAFT

16.10   Integral to Plan

Each of the injunctions provided in this Plan is an integral part of the Plan and is essential to its implementation.  Each of the other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

16.11   Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

16.12   Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Creditors' Trustee shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

WBH Energy, LP *et al*.
Attention: Joseph Warnock
P.O. Box 302380
Austin, TX 78703
Phone:  (512) 330-9502
Fax:  (512) 330-9504

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300
Fax:  (713) 221-1212

If to the Creditors' Trustee

John D. Mullen
5014 Spring Hill Dr., Ste. 300
Spring, TX  77396
Phone:  (713) 408-4478

With a copy to (which shall not constitute notice)

39

DRAFT

Berry Spears
Locke Lord LLP
600 Congress Ave., Suite 2200
Austin, TX 78701
Phone: (512) 305-4700
Fax: (512) 305-4800

16.13   Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or the Creditors' Trustee may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or the Creditors' Trustee, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Creditors' Trustee of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder. **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtor or the Creditors' Trustee, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

16.14   Recoupment

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or the Creditors' Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

16.15   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest

#4930967.3

DRAFT

of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.  For the avoidance of doubt, as provided in section 7.2 of this Plan, the Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

16.16   Request for Expedited Tax Review

The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

16.17   Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

16.18   No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

16.19   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or the Creditors' Trustee, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

## ARTICLE XVII
## CONFIRMATION REQUEST

The Debtors request Confirmation of the Plan under Bankruptcy Code section 1129.  If any Impaired Class does not accept the Plan pursuant to Bankruptcy Code section 1126, the Debtors request Confirmation pursuant to Bankruptcy Code section 1129(b).  In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under Bankruptcy Code section 1129(b) requires modification.

#4930967.3

DRAFT

Dated:  July 24, 2015

**WBH ENERGY, LP**


By:      */s/ Joseph S. Warnock*
Name:       Joseph S. Warnock
Title:       Vice President

**WBH ENERGY PARTNERS LLC**


By:      */s/ Joseph S. Warnock*
Name:       Joseph S. Warnock
Title:       Vice President

**WBH ENERGY GP, LLC**


By:      */s/ Joseph S. Warnock*
Name:       Joseph S. Warnock
Title:       Vice President

#4930967.3