IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **WBH Energy, LP,** | § | Case No. 15-10003 |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | Chapter 11 |
| | § | |
| Debtors. | § | *Jointly Administered* |

**ORDER (I) AUTHORIZING AND APPROVING THE DEBTORS TO SELL THEIR ASSETS, (II) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND <u>(III) GRANTING RELATED RELIEF</u>**

Upon consideration of the Debtors' Motion for Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Assets; and (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief

#4968265.1

(Dkt. No. 264, the "Motion");[1] and after a hearing on April 20, 27, and 28, 2015, and May 8, 2015 (the "Sale Procedures Hearing"), the Court having entered an order approving, among other things, the Bidding Procedures (Dkt. No. 361, the "Sale Procedures Order"); and CL III Funding Holding Company, LLC ("Castlelake") having been chosen as the Successful Bidder in accordance with the Bidding Procedures; and the Court having conducted a hearing on the Motion on August 20, 2015 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Asset Purchase and Sale Agreement (the "PSA") attached hereto; and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Sale Procedures Hearing and the Sale Hearing; and upon the record of the Sale Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, the Court finds that good cause exists to grant the relief requested in the Motion and therefore,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:** [2]

A.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  The statutory predicates for the relief requested in the Motion are sections 105, 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Motion or the PSA, as applicable.

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law made or announced by the Court at the Sale Hearing or in the Sale Procedures Order are incorporated herein.

C. Notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Sale Procedures Order. A reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

D. The Oil and Gas Assets and Personal Property (together, the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors estates.

E. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sale process, including without limitation, (i) approval of the Sale of the Purchased Assets to the Successful Bidder, and (ii) approval of the assumption and assignment of executory contracts and unexpired leases required by the Successful Bidder.

F. The Debtors and their advisors marketed the Purchased Assets and conducted the marketing and sale process as set forth in the Motion and in accordance with the Sale Procedures Order. Based upon the record of these proceedings and as demonstrated by evidence proffered or adduced at the Sale Hearing, all creditors and other parties in interest, and all prospective purchasers, have been afforded a full, fair and reasonable opportunity to bid for the Purchased Assets, participate in the Auction and submit their highest or otherwise best bid to purchase the Purchased Assets and be heard on the Motion.

G. The Debtors and their advisors have complied in all respects with the Sale Procedures Order. In that regard, the Debtors retained a Court-approved marketing agent to list and market the assets. The marketing process was conducted in a manner that was reasonably certain to achieve the highest and best bid for the Purchased Assets.

H. Because the Debtors did not receive any Qualified Bids for the Purchased Assets other than the bid of the Successful Bidder, an Auction was not held.

I. Upon entry of this Order, the Sellers (i) have full power and authority to execute the necessary documents to effect the Sale, (ii) have all of the power and authority necessary to consummate the Sale with the Successful Bidder, (iii) have taken all company action necessary to authorize and approve the Sale, the applicable documents, and the consummation by the Debtors of the transactions contemplated thereby, and (iv) have no consents or approvals, other than those expressly provided for in the PSA and the entry of this Order, required for the Debtors to consummate the Sale.

J. The relief requested in the Motion (including, without limitation, the approval of the Sale of the Purchased Assets pursuant to section 363 of the Bankruptcy Code) is a necessary and appropriate step toward enabling the Debtors to conclude their chapter 11 cases successfully, and it is in the best interests of the Debtors, their creditors, their estates and all other parties in interest in these cases. In addition, a Sale of the Purchased Assets is necessary to preserve and maximize value and avoid continuing losses to the Debtors' estates.

K. The Sale of the Purchased Assets to the Successful Bidder and the consummation of the Sale is a prerequisite to the Debtors' ability to confirm and consummate a chapter 11 plan and was pursued in contemplation of such a plan.

L. The Debtors have exercised sound business judgment in deciding to sell the Purchased Assets to the Successful Bidder, including in light of the facts that (i) the bid submitted by the Successful Bidder constitutes the highest and best bid for the Purchased Assets, as established by, among other things, the marketing process; (ii) the PSA and the closing of the transactions contemplated thereby will present the best opportunity to realize the highest value

for the Purchased Assets; and (iii) without the Sale, there will be continuing losses to the detriment of the Debtors' estates, creditors and parties in interest.

M. The total consideration provided by the Successful Bidder for the Purchased Assets is the highest and best bid received by the Sellers, and the Purchase Price (as defined in the PSA) constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets. A sale of the Purchased Assets at this time to the Successful Bidder preserves the value of the Purchased Assets and maximizes the Debtors' estates for the benefit of all constituencies.

N. The Debtors and the Successful Bidder, including their agents and representatives, negotiated the PSA and the other related documents in good faith, without collusion or fraud, and at arms' length within the meaning of Bankruptcy Code section 363(m). As a result of the foregoing, the Debtors and the Successful Bidder are entitled to the protections of Bankruptcy Code section 363(m).

O. Neither the Debtors nor the Successful Bidder have engaged in any conduct that would cause or permit the PSA or the consummation of the transactions contemplated thereby to be avoided or otherwise challenged under Bankruptcy Code section 363(n).

P. The PSA and the related sale documents were not entered into, and the Sale will not be consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, of the District of Columbia, or any other applicable law. Neither the Sellers

nor the Successful Bidder has entered into the PSA or the related sale documents or is consummating the Sale with any fraudulent or otherwise improper purpose.

Q. If the Sellers did not sell the Purchased Assets free and clear of all encumbrances and interests, except for valid senior liens that have not been paid in cash or had a cash escrow established on their behalf ("Assumed Senior Liens") and assumed liabilities under the PSA ("Assumed Liabilities"), such a sale would have yielded substantially lower value for the Debtors' estates, with less certainty than the Sale. The Successful Bidder would not have submitted a bid and would not consummate the Sale or the transactions contemplated by the Sale, thus adversely affecting the Debtors, their estates and their creditors, if the Sale were not free and clear of all Interests, Liens, and/or Claims (as defined below) (other than any Assumed Senior Liens and Assumed Liabilities), or if the Successful Bidder would, or in the future could, be liable for any of the Interests, Liens, and/or Claims, other than any Assumed Senior Liens and Assumed Liabilities.

R. The Sellers may sell the Purchased Assets free and clear of all Interests, Liens, and/or Claims (other than the Assumed Senior Liens and Assumed Liabilities) because, in each case, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) have been satisfied. All holders of Interests, Liens and/or Claims that did not object or withdraw their objections to the Sale or the Motion are deemed to have consented to the Sale and the Motion pursuant to Bankruptcy Code section 363(f)(2). In addition, all holders of Interests, Liens, and/or Claims that did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).

S. The Sale is or will be a legal, valid and effective transfer of the Purchased Assets to the Successful Bidder, vesting the Successful Bidder with all of the Sellers' right, title and

interest of, in and to the Purchased Assets on the Closing, free and clear of all Interests, Liens, and/or Claims (other than the Assumed Senior Liens and Assumed Liabilities), pursuant to Bankruptcy Code sections 105, 363(b), and 363(f).

T. Each and every provision of the Assumed and Assigned Contracts or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contracts have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

U. Upon payment of the Cure Costs to the relevant counterparty, there are no outstanding defaults of the Sellers and their estates under the Assumed and Assigned Contracts.

V. The Successful Bidder has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

W. Upon assignment and sale to the Successful Bidder, the Assumed and Assigned Contracts shall be deemed to be valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

X. The Sale does not constitute a *sub rosa* chapter 11 plan.

Y. Time is of the essence in consummating the Sale. In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the PSA. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d).

Z. The Sale contemplated by the PSA is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The relief requested in the Motion is GRANTED as set forth below.

2. The PSA and the Sale of the Purchased Assets to the Successful Bidder are hereby approved, and the Debtors are authorized to undertake any and all actions necessary or appropriate to effectuate the terms of the PSA and consummate the Sale.

3. All objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, including any reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice except as otherwise set forth herein.

**Approval of the Sale Documents and Actions Relating Thereto**

4. Pursuant to Bankruptcy Code sections 105 and 363(b), the Sale, the PSA, the other related sale documents and the consummation of the transactions contemplated thereby are approved and authorized in all respects.

5. Pursuant to Bankruptcy Code sections 105 and 363(b), the Sellers is hereby authorized to take any and all actions necessary or appropriate to: (i) sell the Purchased Assets to the Successful Bidder; (ii) consummate the Sale in accordance with and subject to the terms and conditions of the PSA and this Order; (iii) convey title to, and to transfer and assign all right, title and interest (including common law rights) in and to the Purchased Assets in accordance with and subject to the terms and conditions of the PSA and this Order; and (iv) assume and assign the Assumed and Assigned Contracts.

6. The Debtors, their officers, employees and agents, are authorized to execute and deliver, and are empowered to perform under, consummate and implement, the PSA together

with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale and to take all further actions as may be reasonably requested by the Successful Bidder for the purposes of assigning, transferring, granting, conveying and conferring to the Successful Bidder or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the PSA, or as may be necessary to effectuate the terms of this Order.

7. Subject to the terms and conditions of this Order, all entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Successful Bidder or its assignee on the Closing Date.

**Transfer of the Purchased Assets**

8. Pursuant to Bankruptcy Code sections 363(b), and 363(f), upon the Closing, and in accordance with the PSA, title to the Purchased Assets shall be transferred to the Successful Bidder free and clear of all pre-Closing:

- liens (including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens), mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, demands, encumbrances, easements, servitudes;
- interests, obligations, liabilities, demands, guaranties, options, restrictions, contractual or other commitments;
- rights, including, without limitation, rights of first refusal, rights of offset, contract rights, recoupment rights, and rights of recovery;
- decrees of any court or foreign or domestic governmental entity (to the extent permitted by law);
- charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, including, without limitation consent of any person or entity to assign or transfer any of the Purchased Assets;

- debts arising in any way in connection with any agreements, acts or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;
- claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, exoneration claims, alter-ego claims, environmental claims (including claims that may be secured or entitled to priority under the Bankruptcy Code), tax claims, reclamation claims, and pending litigation claims; and
- matters of any kind and nature, in each instance for all of the foregoing, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the foregoing shall be referred to herein as the "***Interests, Liens and/or Claims***")

other than the Assumed Senior Liens and Assumed Liabilities. The transfer of the Purchased Assets to the Successful Bidder pursuant to the PSA shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Purchased Assets, and vests with or will vest in the Successful Bidder all right, title and interest of the Sellers in the Purchased Assets, free and clear of all Interests, Liens, and/or Claims of any kind or nature whatsoever (other than the Assumed Senior Liens and Assumed Liabilities).

9. For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan or PSA, to the extent not previously satisfied, the ad valorem taxes of Montague County as evidenced by its proof of claim shall be timely paid by the Purchaser pursuant to applicable non-bankruptcy law and any liens securing such taxes shall be assumed by Purchaser. Purchaser reserves its right to object to any proof of claim of Montague County in accordance with the Plan

10. The Purchased Assets shall be sold free and clear of the Interests, Liens and/or Claims of [Inwell II, LLC d/b/a Inwell, LLC and Orr Construction]. Within five (5) days

following the entry of this Order, the Successful Bidder shall escrow [$            ] in Cash (the "Escrowed Funds") by depositing such funds with [            ]. The Escrowed Funds shall be held pending the Court's determination of whether the liens of [Inwell II, LLC d/b/a Inwell, LLC and Orr Construction] are Senior Prior Liens as well as a determination of the extent and validity of such liens. Upon making such determination, the Court shall issue an order directing the disbursement of the Escrowed Funds in compliance with its determination.

11. Upon the Closing, all persons and entities, including (without limitation), [Inwell II, LLC d/b/a Inwell, LLC and Orr Construction], and all holders of Interests, Liens and/or Claims or other rights, debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders and trade and other creditors of the Sellers, are permanently and forever barred, estopped and enjoined from asserting any Interests, Liens, and/or Claims or enforcing remedies, or commencing or continuing in any manner an action or other proceeding of any kind, against the Successful Bidder or the Purchased Assets on account of any of the Interests, Liens, Claims, or explicitly excluded liabilities or excluded assets, other than the holders of Assumed Senior Liens or Assumed Liabilities.

12. This Order is and shall be effective as a determination that all Interests, Liens, and/or Claims (other than Assumed Senior Liens and the Assumed Liabilities), shall be, and hereby are, released with respect to the Sellers's interest in the Purchased Assets as of the Closing. If any person or entity that has filed liens, financing statements, mortgages, mechanics' liens, *lis pendens* or other documents or agreements evidencing Interests, Liens, and/or Claims against or in the Purchased Assets shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, unconditional releases of all Interests, Liens, and/or Claims that the

-11-

person or entity has with respect to the Purchased Assets, or otherwise (except as provided in this Order with respect to the Cash Proceeds), the Successful Bidder is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf and in the name of the person or entity with respect to the Purchased Assets or the Successful Bidder may file, register or record a certified copy of this Order in any place where such instruments would or could be filed, and such filing shall constitute conclusive evidence of the release of Interests, Liens, and/or Claims on the Purchased Assets as of the Closing.

13. No government unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets, transferred or conveyed to the Successful Bidder on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale. To the greatest extent available under applicable law, the Successful Bidder shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, transferred to the Successful Bidder as of the Closing Date.

14. The transactions contemplated by the PSA and the execution, delivery and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the PSA are exempt from the imposition and payment of all recording fees and taxes, stamp taxes, and/or sales, transfer or any other similar taxes, pursuant to Bankruptcy Code section 1146(a) because the Debtors will confirm a chapter 11 plan on or before a reasonable period after the Closing, and the Sale is necessary to such plan's

#4968265.1

effectiveness. Likewise, any filing under paragraph 12 shall contain the contain the following endorsement:

> Because this instrument has been authorized pursuant to an order of the United States Bankruptcy Court for the District of Delaware, in contemplation of a plan of reorganization of the Debtors, it is exempt from transfer taxes, stamp taxes or similar taxes pursuant to 11 U.S.C. §1146(a).

15. The Sale of the Purchased Assets outside of a plan of reorganization pursuant to the PSA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The Sale does not constitute a *sub rosa* plan of reorganization.

16. Upon the closing of the transactions contemplated by the PSA, the Successful Bidder shall not be deemed to (i) be the successor or alter ego of the Debtors under doctrines of successor liability, alter ego or otherwise, (ii) have, *de facto* or otherwise, merged with or into the Debtors or (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors.

**Releases**

17.     Except for the enumerated rights and obligations of the Debtors and the Successful Bidder under the PSA, the Successful Bidder, to the extent permitted by law, is hereby deemed to have irrevocably and unconditionally released, remised, and forever discharged the Debtors and their affiliates, and all their past, present and future shareholders, partners, members, board of directors and/or supervisors, managers, officers, employees, agents, representatives and advisors from any and all suits, legal or administrative proceedings, claims, demands, damages, losses, costs, liabilities, interest or causes of action whatsoever at law or in equity, known or unknown, which the Successful Bidder or its affiliates might now or subsequently may have, based on, relating to or arising out of the PSA, the transactions contemplated thereby, the ownership, use or operation of the Purchased Assets or the condition, quality, status or nature of the Purchased Assets, including rights to contribution under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, breaches of statutory or implied warranties, nuisance or other tort actions, rights to punitive damages, common law rights of contribution and rights under insurance maintained by the Debtors or any of their affiliates.

**Assumed and Assigned Contracts**

18.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision of any Assumed and Assigned Contract or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contract, the Sellers is authorized to assume and assign the Assumed and Assigned Contracts to the Successful Bidder, which assignment shall take place on and be effective as of the Closing or as otherwise provided by order of this Court.

19. The Sellers's assumption of the Assumed and Assigned Contracts is subject to Court approval and consummation of the Sale of the Purchased Assets to the Successful Bidder. Upon the assumption of the Assumed and Assigned Contracts by the Sellers and assignment to the Successful Bidder, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order. As of the Closing, subject to the provisions of this Order, the Successful Bidder shall succeed to the entirety of the Sellers's rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

20. Upon the Closing (i) all defaults (monetary and non-monetary) under the Assumed and Assigned Contracts through the Closing shall be deemed cured and satisfied through the payment of the Cure Costs by the Successful Bidder, (ii) no other amounts will be owed by the Sellers, their estates or the Successful Bidder with respect to amounts first arising or accruing during, or attributable or related to, the period before the Closing with respect to the Assumed Contracts, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Sellers, their estates, or the Successful Bidder that any additional amounts are due or defaults exist under the Assumed and Assigned Contracts that arose or accrued, or relate to or are attributable to the period before or as of the Closing.

21. All counterparties to the Assumed and Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Successful Bidder, and shall not charge the Sellers or the Successful Bidder for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale.

22. Notwithstanding anything in this Order, the PSA, or the *Notice of Debtors' Intent to Assume and Assign Certain Unexpired Leases and Executory Contracts and Setting Forth the Cure Amounts* (Dkt. No. 456), the Letter Agreement dated March 1, 2104, as amended, between Enterprise Crude Oil LLC and WBH Energy Partners LLC ("Enterprise Agreement") is not an Assumed and Assigned Contract and is neither assumed nor assumed and assigned by the Debtors. The Enterprise Agreement has terminated by its own terms and therefore is not assumable.

**Miscellaneous Provisions**

23. The consideration provided by the Successful Bidder for the Purchased Assets under the PSA is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States or any state, territory or possession thereof or the District of Columbia.

24. The Sale has been undertaken by the Successful Bidder in good faith and the Successful Bidder is a "good faith purchaser" of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Successful Bidder is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

25. Upon the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance and transfer of title to and all other right, title and interest in all of the Purchased Assets and a bill of sale transferring good and valid title in such Purchased Assets to the Successful Bidder on the Closing Date pursuant to the terms of the PSA, free and clear of all Interests, Liens and/or Claims (other than the Assumed Liabilities).

26. This Order and the PSA (i) shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtors, any affected third parties, including (without limitation) all persons asserting a Claim or Interest relating to or in the Purchased Assets, all successors and assigns of the Successful Bidder, the Debtors and their affiliates and subsidiaries and any subsequent trustee, examiner or other fiduciary appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and all contractual counterparties to the Debtor, and (ii) shall not be subject to rejection.

27. Nothing contained in any chapter 11 plan confirmed in these cases or the confirmation order confirming any plan shall conflict with or derogate from the provisions of this Order unless expressly consented to in writing by the Successful Bidder.

28. The PSA and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the Parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

29. Nothing contained in this Order or the PSA is intended to or shall be deemed to vary, modify, alter or supersede in any way the terms of the DIP Order or the DIP Credit Agreement.

30. The failure to specifically include or make reference to any particular provision of the PSA or a related sale document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the PSA and the related sale documents are authorized and approved in their entirety.

#4968265.1

31. To the extent that any provision of this Order is inconsistent with the terms of the PSA (including all ancillary documents executed in connection therewith), this Order shall govern.

32. This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order and the PSA in all respects and to decide any disputes arising between the Debtors and the Successful Bidder and/or their respective successors and assigns, with respect thereto.

33. The provisions of this Order are nonseverable and mutually dependent.

34. Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), this Order shall be effective and enforceable immediately upon entry.

###