## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | **Case No. 15-10003** |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | *Jointly Administered* |

### NOTICE OF AMENDMENT TO FIRST AMENDED JOINT PLAN OF REORGANIZATION AND AMENDMENT TO SUPPLEMENT TO FIRST AMENDED JOINT PLAN OF REORGANIZATION

**PLEASE TAKE NOTICE THAT** on July 26, 2015, the above-captioned debtors (together, the "Debtors") filed their First Amended Joint Plan of Reorganization (the "Plan") [Dkt. No. 459]. On August 10, 2015, the Debtors filed a plan supplement (the "Plan Supplement") in support of the Plan, which contained a Creditors' Trust Agreement [Dkt. No. 486].[1] The Debtors filed an Amendment to the Plan Supplement on August 11, 2015, which contained an amended Creditors' Trust Agreement [Dkt. No. 487].

**PLEASE TAKE FURTHER NOTICE THAT** as a result of discussions with various parties, the Debtors have modified the Plan and Creditors' Trust Agreement. Attached hereto as **Exhibit A** is an amended version of the Plan. Attached hereto as **Exhibit B** is a redline version of the amended Plan showing changes between Exhibit A and the version of the Plan at Dkt. No. 459. Attached hereto as **Exhibit C** is an amended Creditors' Trust Agreement. Attached hereto as **Exhibit D** is a redline version of the Amended Creditors' Trust Agreement showing changes between Exhibit C and the version of the Creditors' Trust Agreement at Dkt. No. 487-1.

Respectfully submitted,

**BRACEWELL & GIULIANI LLP**

By: */s/ Jason G. Cohen*
William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

**COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 19, 2015, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system.

*/s/ Jason G. Cohen*
Jason G. Cohen

EXHIBIT A

DRAFT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | **Case No. 15-10003** |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | *Jointly Administered* |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF WBH ENERGY, LP, WBH ENERGY PARTNERS LLC, AND WBH ENERGY GP, LLC

William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

#4930967.4

DRAFT

# TABLE OF CONTENTS

ARTICLE I

    DEFINITIONS AND INTERPRETATION ..................................................... 1

1.1    Rules of Interpretation. ......................................................................... 1
1.2    Definitions............................................................................................. 1
1.3    Defined Terms ...................................................................................... 2

ARTICLE II

    PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE
    CLAIMS AND PRIORITY TAX CLAIMS .................................................. 12

2.1    Treatment of Allowed Administrative Expense Claims. ..................... 12
2.2    Bar Date for the Filing and Assertion of Administrative Expense Claims,
Including Professional Fees but Excluding Ordinary Course
Administrative Claims. ....................................................................... 12
2.3    Treatment of Allowed Priority Tax Claims. ...................................... 12

ARTICLE III

    CLASSIFICATION OF CLAIMS AND INTERESTS ............................... 12

3.1    Creation of Classes. ........................................................................... 12
3.2    Claims May Be in More Than One Class. .......................................... 13

ARTICLE IV

    IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
    THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN ............... 14

4.1    Classes of Claims Not Impaired. ....................................................... 14
4.2    Impaired Classes of Claims. .............................................................. 14
4.3    Impairment Controversies.................................................................. 14

ARTICLE V

    PROVISIONS FOR TREATMENT OF CLASSES OF
    CLAIMS AND INTERESTS..................................................................... 14

5.1    Classes A1, B1, C1 – Priority Claims................................................. 14
5.2    Classes A2, B2, C2 – Secured Claim of the DIP Lender.................... 14
5.3    Classes A3, B3, C3 – Senior Secured Claims..................................... 14
5.4    Classes A4, B4, C4 –Senior Secured Claims of CL III. ..................... 15
5.5    Classes A5, B5, C5 – Junior Secured Claim of CL III. ...................... 15
5.6    Classes A6, B6, C6 – Other Secured Claims. .................................... 15
5.7    Classes A7, B7, C7 – General Unsecured Claims. ............................. 15
5.8    Classes A8, B8, C8 – Interests........................................................... 16
5.9    Allowance of Unliquidated or Contingent Claims............................. 16

ARTICLE VI

    ACCEPTANCE OR REJECTION OF THIS PLAN ................................... 16

6.1    Classes and Claims Entitled to Vote.................................................. 16

6.2     Cramdown.................................................................................................. 16

ARTICLE VII     MEANS FOR IMPLEMENTATION OF THIS PLAN
AND POST EFFECTIVE DATE GOVERNANCE..................................... 17

7.1     No Substantive Consolidation............................................................... 17
7.2     Sale of the Acquired Assets .................................................................. 17
7.3     Application of Sale Proceeds ................................................................ 17
7.4     Other Assets ......................................................................................... 18
7.5     Creation of Creditors' Trust.................................................................. 18
7.6     Cancellation of Interests ...................................................................... 18
7.7     Terminated Corporate Existence........................................................... 18
7.8     Distribution Procedures ....................................................................... 18
7.9     Cancellation of Existing Security Claims ............................................. 19
7.10    Directors and Officers.......................................................................... 19
7.11    Preservation of Rights of Action.......................................................... 19
7.12    Exclusivity Period ............................................................................... 20
7.13    Effectuating Documents; Further Reorganization Transactions........................ 20
7.14    Exemption from Certain Transfer Taxes ............................................... 20
7.15    Closing of the Debtors' Chapter 11 Cases. ........................................... 21

ARTICLE VIII     CREDITORS' TRUST AND CREDITORS' TRUSTEE............................ 21

8.1     The Creation of the Creditors' Trust.................................................... 21
8.2     Funding of Res of Trust ....................................................................... 21
8.3     The Creditors' Trustee ......................................................................... 22
8.4     Retention of Professionals .................................................................... 22
8.5     Compensation of the Creditors' Trustee .............................................. 22
8.6     Creditors' Trust Expenses ................................................................... 22
8.7     Liability; Indemnification .................................................................... 23
8.8     Termination ......................................................................................... 23
8.9     Creditors' Trust Authority ................................................................... 23

ARTICLE IX     PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ............... 24

9.1     Timing and Delivery of Distributions................................................... 24
9.2     Method of Cash Distributions .............................................................. 24
9.3     Failure to Negotiate Checks................................................................. 24
9.4     Compliance with Tax Requirements ..................................................... 25
9.5     De Minimis Distributions .................................................................... 25
9.6     Distribution Record Date ..................................................................... 25

ARTICLE X     EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND
OTHER AGREEMENTS ....................................................................... 25

10.1    Assumption/Rejection.......................................................................... 25
10.2    Cure Amounts ..................................................................................... 25

DRAFT

10.3 Assumed Executory Contracts and Unexpired Leases ....................................... 26
10.4 Insurance Policies .......................................................................................... 26
10.5 Pass-through.................................................................................................... 26
10.6 Claims Based on Rejection of Executory Contracts and Unexpired Leases ....... 26
10.7 Reservation of Rights....................................................................................... 27
10.8 Nonoccurrence of Effective Date...................................................................... 27

ARTICLE XI           PROCEDURES FOR RESOLVING DISPUTED,
                     CONTINGENT, AND UNLIQUIDATED CLAIMS................................... 27

11.1 Objections to Claims........................................................................................ 27
11.2 Estimation of Claims........................................................................................ 28
11.3 No Distributions Pending Allowance ............................................................... 28
11.4 Distributions After Allowance ......................................................................... 29
11.5 Reduction of Claims ........................................................................................ 29
11.6 Compliance with Tax Requirements/Allocations .............................................. 29

ARTICLE XII          CONDITIONS PRECEDENT TO CONFIRMATION
                     AND CONSUMMATION OF THE PLAN ............................................... 30

12.1 Conditions Precedent to Confirmation.............................................................. 30
12.2 Conditions Precedent to Effective Date ............................................................ 30
12.3 Substantial Consummation .............................................................................. 31
12.4 Waiver of Conditions....................................................................................... 31
12.5 Revocation, Withdrawal, or Non-consummation .............................................. 31

ARTICLE XIII         AMENDMENTS AND MODIFICATIONS ............................................. 31

ARTICLE XIV          RETENTION OF JURISDICTION ......................................................... 32

ARTICLE XV           COMPROMISES AND SETTLEMENTS ................................................ 33

ARTICLE XVI          MISCELLANEOUS PROVISIONS........................................................ 34

16.1 Bar Dates for Certain Actions.......................................................................... 34
16.2 Payment of Statutory Fees ............................................................................... 35
16.3 Severability of Plan Provisions........................................................................ 35
16.4 Successors and Assigns.................................................................................... 36
16.5 Releases........................................................................................................... 36
16.6 Bankruptcy Rule 3016 Compliance. ................................................................. 38
16.7 **Exculpation**.................................................................................................... 38
16.8 Permanent Injunction ...................................................................................... 38
16.9 Term of Injunctions or Stay ............................................................................. 39
16.10 Integral to Plan................................................................................................ 39
16.11 Binding Effect ................................................................................................. 39
16.12 Notices ............................................................................................................ 39

16.13   Setoffs ........................................................................................................ 40

16.14   Recoupment ............................................................................................... 41

16.15   Release of Liens ........................................................................................ 41

16.16   Request for Expedited Tax Review ......................................................... 41

16.17   Dissolution of Committee ......................................................................... 42

16.18   No Admissions ........................................................................................... 42

16.19   Governing Law .......................................................................................... 42

ARTICLE XVII

        CONFIRMATION REQUEST .................................................................. 42

DRAFT

## FIRST AMENDED PLAN OF REORGANIZATION OF WBH ENERGY, LP, WBH ENERGY PARTNERS LLC, AND WBH ENERGY GP, LLC

The Debtors hereby propose the following First Amended Plan of Reorganization pursuant to the provisions of section 1121 of the Bankruptcy Code. Although styled as a "joint plan," this Plan consists of three (3) separate plans (one for each of the Debtors). Consequently, except as provided in this Plan, for purposes of voting on this Plan and making and receiving distributions under this Plan, votes will be tabulated separately for each Debtor with respect to each Debtor's plan of reorganization and distributions will be made separately to each separate Class as provided in this Plan. Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters. No materials other than this Plan, the Disclosure Statement and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     <u>Rules of Interpretation</u>.

Unless otherwise specified, all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. The words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan. The words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

1.2     <u>Definitions</u>.

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the terms defined in section 1.3 of this Plan (which appear in this Plan as capitalized terms) have the respective meanings set forth in such section, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

#4930967.4

1.3     Defined Terms

1.3.1     "Acquired Assets" means such assets of the Debtors that are purchased by the Purchaser pursuant to the Purchase and Sale Agreement and the Sale Order or the Confirmation Order.

1.3.2     "Administrative and Priority Claims Reserve" means a reserve in the amount of the sum of (a) all budgeted expenses and allowances (including Professional Fees) set forth in the Final DIP Budget which have been incurred and are unpaid as of the Effective Date, (b) all Cure Costs incurred after the Effective Date, which amount shall be provided to CL III by the Debtors (or in the case of Cure Costs, by the Purchaser), pursuant to Section 8.1.2 of the Plan for the payment of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims.

1.3.3     "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case allowed under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code, including Claims for taxes entitled to treatment under section 507, and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.3.4     "Administrative Expense Claims Bar Date" means forty five (45) days after the Effective Date for any alleged Administrative Claims that arose after any earlier Administrative Claims bar dates that have been established by order of the Bankruptcy Court.  With respect to any alleged Administrative Claim that arose prior to any earlier Administrative Claims bar date that has been established by order of the Bankruptcy Court, "Administrative Expense Claims Bar Date" means such earlier bar date.  Nothing herein shall extend any prior Administrative Claims bar dates that have been established by order of the Bankruptcy Court.

1.3.5     "Affiliate" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code and, in addition, shall mean, with respect to any Person, any other Person directly or indirectly controlling (including all directors, officers, managers and general partners of such person, and Persons performing similar functions), directly or indirectly controlled by or under direct or indirect common control with such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative of the foregoing.

1.3.6     "Allowed" means, as it relates to any type of Claim provided for under this Plan (other than a Disputed, Contingent or Unliquidated Claim), a Claim (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which (a) no proof of Claim has been Timely Filed, and (b) no objection thereto has been Timely Filed; (ii) as to which a proof of Claim has been Timely Filed and either (a) no objection thereto has been Timely Filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been

2

expressly allowed (but only to the extent expressly allowed) under the provisions of this Plan or by other order of the Bankruptcy Court; or (iv) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court. Disputed, Contingent or Unliquidated Claims shall become Allowed Claims only when Allowed pursuant to a Final Order of the Bankruptcy Court.

1.3.7    "<u>Assets</u>" means all property of the Estate as defined in the Bankruptcy Code.

1.3.8    "<u>Assumed Liabilities</u>" means any liabilities being assumed by a Purchaser.

1.3.9    "<u>Avoidance Actions</u>" means any and all actions which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Estate under applicable state statute or Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553.

1.3.10    "<u>Bankruptcy Code</u>" means title 11 of the United States Code, section 101, et seq., as now in effect or as hereafter amended.

1.3.11    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Western District of Texas, Austin Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Cases.

1.3.12    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

1.3.13    "<u>Bankruptcy Schedules</u>" means the schedules of assets and liabilities and the statements of financial affairs field by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.3.14    "<u>Bar Date</u>" means May 11, 2015.

1.3.15    "<u>Bidding Procedures</u>" means those bidding procedures approved by the Court and attached to Bidding Procedures Order.

1.3.16    "<u>Bidding Procedures Order</u>" means the Order Approving Bidding Procedures, Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; Approving Form and Notice Thereof entered at Docket Number 361 in Case No. 15-10003.

1.3.17    "<u>Business Day</u>" means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

3

1.3.18    "<u>Cash</u>" means lawful currency of the United States of America.

1.3.19    "<u>Causes of Action</u>" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.3.20    "<u>Chapter 11 Cases</u>" means the bankruptcy cases initiated by the Debtors when they filed voluntary petitions under Chapter 11 of the Bankruptcy Code on January 4, 2015, enumerated as Case Nos. 15-10003, 15-10004, and 15-10005, and jointly administered under Case No. 15-10003.

1.3.21    "<u>CL III</u>" means CL III Funding Holding Company, LLC in all of its capacities, including but not limited to as lender under the Senior CL III Credit Facility and Junior CL III Credit Facility, and all of its subsidiaries.

1.3.22    "<u>Claim</u>" means a claim against the Debtor or its property, as such term is defined in section 101(5) of the Bankruptcy Code.

1.3.23    "<u>Claimant</u>" means the holder of any Claim against the Debtor or its property, or of any Equity Interest.

1.3.24    "<u>Claims Objection Deadline</u>" means the first Business Day that is at least 90 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with section 11.1.2 of this Plan.

1.3.25    "<u>Class</u>" means a category of Claims or Interests, as classified in Article III of this Plan.

1.3.26    "<u>Class 7 Contributed Amount</u>" means Cash in the amount of $225,000 to be transferred to the Debtors as provided in Section 7.3 of this Plan.

1.3.27    "<u>Closing</u>" means the closing of the sale of the Acquired Assets to any Purchaser.

1.3.28    "<u>Collateral</u>" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

1.3.29    "<u>Committee</u>" means the Official Committee of Creditors appointed  in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code.

1.3.30    "Confirmation" or "Confirmation of this Plan" means the approval of this Plan pursuant to section 1129 of the Bankruptcy Code by the Bankruptcy Court.

1.3.31    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.3.32    "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

1.3.33    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

1.3.34    "Consummation" takes place simultaneously with the completion of the Closing on the Effective Date.

1.3.35    "Contingent Claim" means a Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

1.3.36    "Creditors' Trust" means the entity created by the Creditors' Trust Agreement.

1.3.37    "Creditors' Trust Agreement" means the creditors' trust agreement approved and entered into in accordance with the Plan pursuant to which the Creditors' Trust will be established and administered, and incorporated herein by reference..

1.3.38    "Creditors' Trust Assets" means (i) all Avoidance Actions and other Causes of Action, including the attorney-client privilege related to such Causes of Action, not purchased by the Purchaser pursuant to the Purchase and Sale Agreement, (ii) the Class 7 Contributed Amount, and (iii) all Other Assets.

1.3.39    "Creditors' Trustee" means John D. ("Danny") Mullen, or any other party designated pursuant to this Plan or the Creditors' Trust Agreement to serve as Creditors' Trustee under this Plan.

1.3.40    "Cure Costs" means the costs, in Cash, required for the cure, assumption, and assignment of an executory contract or unexpired lease pursuant to the provisions of § 365(b) of the Bankruptcy Code.

1.3.41    "Debtors" means WBH Energy, LP, WBH Energy Partners LLC, and WBH Energy Partners GP, LLC.

1.3.42    "Definitive Documents" means the asset purchase agreement by and among the Debtor and any Purchaser, as amended, and the other documents pursuant to which the Acquired Assets were sold to a Purchaser.

1.3.43     "DIP Lender" means CL III, in its capacity as lender pursuant to the DIP Loan, its successors and assigns.

1.3.44     "DIP Loan" means the loans made pursuant to the Debtor in Possession Credit Agreement, dated as of June 5, 2015, by and among the Debtor and the DIP Lender, as the same may be amended.

1.3.45     "Disclosure Statement" means the Joint Disclosure Statement in support of this Plan dated July 24, 2015, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtor pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

1.3.46     "Disputed Claim" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be Timely Filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof or; (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

1.3.47     "Effective Date" means, and shall occur on the date on which all of the conditions set forth in Section 12.2 have been satisfied.

1.3.48     "Employee Benefit Plans" means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, officers or employees (whether salaried or hourly, active or retired) of the applicable Debtor.

1.3.49     "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity.

1.3.50     "Estate" means the estate created for the Debtor in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.3.51     "Estate Parties" means the Debtor, the Creditors' Trustee, their respective Subsidiaries, Affiliates and Representatives and all of their respective

6

DRAFT

successors and assigns, predecessors in interest, present and former Representatives, members and shareholders.

1.3.52    "Exculpated Person" means the Debtors, on and after the Petition Date, Purchaser, their respective subsidiaries, the Creditors' Trustee, the Committee, the DIP Lender, CL III, Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, Ryen Burrus, and each of their respective Representatives.

1.3.53    "Executory Contracts" means all "executory contacts," as such term is used in section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

1.3.54    "Final Decree" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

1.3.55    "Final DIP Budget" means the budget complying with the DIP Agreement and approved by the DIP Lender as of the date of the DIP Agreement, as such budget has been or may be amended or modified, in accordance with the DIP Loan, up to the Confirmation Date.

1.3.56    "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.3.57    "Free and Clear" means, free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the Estates, (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order.

1.3.58    "General Unsecured Claim" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, an Intercompany Claim, a Subordinated Claim, an Equity Interest, or an Assumed Liability.

1.3.59    "Intercompany Claim" means claim against a Debtor or its property by an Affiliate, including any amounts owed or allegedly owed between the Debtors.

#4930967.4

1.3.60    "Interest(s)" means the interest of any holder of equity securities in any of the Debtors represented by any issued and outstanding common stock or interests, preferred stock or interests, or other instrument evidencing a present ownership interest in any of the Debtors before the Effective Date (including before the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common stock or preferred stock interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common stock interests or preferred stock interests or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common stock or preferred stock interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common stock interests, preferred stock interests or other equity securities, however evidenced but specifically excluding any Interests sold to the Purchaser pursuant to the Purchase and Sale Agreement

1.3.61    "Interim Distribution" means any distribution made before the final distribution for a Class.  The portion to be so distributed at any time shall be determined by the Creditors' Trustee, so as to leave the Debtors a sufficient portion of Assets to satisfy, as provided in this Plan, all General Unsecured Claims that are Disputed Claims or are undetermined on or about the date of such Interim Distribution.

1.3.62    "Junior CL III Credit Facility" means that credit agreement dated as of December 19, 2013 (as amended) by and between WBH Energy, LP and CL III Funding Holding Company, LLC.

1.3.63    "Leases" means all "unexpired leases," as such term is used within section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

1.3.64    "Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind, which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

1.3.65    "Ordinary Course Administrative Claim" means any Administrative Claim incurred in the ordinary course of the Debtor's business on and after the Petition Date but shall not include: (i) any Claim for Professional Fees and any expenses, compensation, or reimbursement requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code and any Committee members' expenses, which shall be subject to Bankruptcy Court approval;  (ii) any taxes (including income, sales, use, property or other taxes incurred subsequent to the Petition Date); (iii) any Claims for

8

DRAFT

breach of contract, tort, or other actionable conduct; and (iv) any post-petition obligations incurred under Executory Contracts or Leases which are rejected pursuant to this Plan or prior to the Effective Date of this Plan.

 1.3.66 "Other Asset" means any asset that is not an Acquired Asset.

 1.3.67 "Other Secured Claim" means any Secured Claim other than the Secured Claims of the DIP Lender, the Senior Secured Claims, the Senior Secured Claims of CL III, and the Junior Secured Claims of CL III.

 1.3.68 "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

 1.3.69 "Petition Date" means January 4, 2015.

 1.3.70 "Plan" means this First Amended Plan of Reorganization of the Debtor, and any amendments, supplements or modifications thereto.

 1.3.71 "Plan Assets" means those assets of the Debtors not transferred to the Purchaser pursuant to the Purchase and Sale Agreement, the Sale Order, or this Confirmation Order.

 1.3.72 "Plan Documents" means such other documents required to be filed pursuant to this Plan or filed as a Plan Document by the Debtor, which shall be filed on or before ten (10) days before the date of the Confirmation Hearing.

 1.3.73 "Priority Claim" means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

 1.3.74 "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under section 507(a)(8) of the Bankruptcy Code.

 1.3.75 "Pro Rata" or "Pro Rata Portion" means, at any time, the proportion that the dollar amount of an Allowed Claim in a particular Class bears to the aggregate dollar amount of all Allowed Claims in such Class.

 1.3.76 "Professional" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

 1.3.77 "Professional Fees" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

#4930967.4

1.3.78    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

1.3.79    "Proposed Purchaser" means CL III, or its designee, in its capacity as the stalking horse purchaser for the Acquired Assets under the Purchase and Sale Agreement pursuant to the Sale Order and/or the Confirmation Order.

1.3.80    "Proposed Purchaser Credit Bid" means the credit portion of the purchase price under the Proposed Purchaser's Purchase and Sale Agreement.

1.3.81    "Purchase and Sale Agreement" means that purchase and sale agreement by and between WBH Energy, LP and WBH Energy Partners LLC, on the one hand, and Purchaser, on the other.

1.3.82    "Purchaser" means the buyer of the Assets under the Purchase and Sale Agreement pursuant to the Sale Order and/or the Confirmation Order.

1.3.83    "Related Persons" means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

1.3.84    "Released Parties" means, collectively, each of the Debtors, the Creditors' Trustee, the Committee, CL III, Purchaser, DIP Lender, Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, Ryen Burrus, and each of their Related Persons.

1.3.85    "Representative" means, with respect to any specified Entity, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

1.3.86    "Sale Motion" means Debtors' Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; (III) Approving Form and Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell their Assets; (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief, filed at Docket Number 264 in the Bankruptcy Case.

1.3.87    "Sale Order" means that certain Order Approving Debtors' Motion for Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory

Contracts and Unexpired Leases and (III) Granting Related Relief, entered by the Bankruptcy Court.

1.3.88    "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

1.3.89    "Secured Claim" means a Claim that is (i) secured as provided by section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtor that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

1.3.90    "Secured Claims of the DIP Lender" means the Secured Claims of the DIP Lender arising under the DIP Loan.

1.3.91    "Senior CL III Credit Facility" means that credit agreement dated as of December 19, 2013 (as amended) by and between WBH Energy Partners LLC, WBH Energy, LP, and WBH Energy GP, LLC, on the one hand, and Green Bank, N.A. on the other hand, which facility was sold to CL III by Green Bank, N.A.

1.3.92    "Senior Secured Claim" means a Secured Claim that is senior in priority to the Senior Secured Claim of CL III.

1.3.93    "Senior Secured Claim of CL III" means the Secured Claim of CL III pursuant to the Senior CL III Credit Facility.

1.3.94    "Subordinated Claim" means a Claim that is subordinated as provided by section 510(b) or 510(c) of the Bankruptcy Code, or by order of the Bankruptcy Court.

1.3.95    "Timely Filed" means, with respect to a Claim, Equity Interest or Administrative Expense, that a proof of such Claim or Equity Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period of time fixed by this Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

1.3.96    "Unimpaired" means a claim or interest that is not impaired as provided under section 1124 of the Bankruptcy Code.

1.3.97    "Unliquidated Claim" means any Claim that is undetermined as to amount.

#4930967.4

DRAFT

## ARTICLE II
## PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1     Treatment of Allowed Administrative Expense Claims.

Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor, or, after the Effective Date, the Creditors' Trustee.

2.2     Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims.

All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor and the Creditors' Trustee no later than the Administrative Expense Claims Bar Date.  Any request for payment of Administrative Expense Claims that is not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate, the Debtors, any Purchaser, the Creditors' Trustee or any of their respective Affiliates or Representatives; provided, however, that Ordinary Course Administrative Claims may be paid in the ordinary course of the Debtor' business and, if not previously paid in the ordinary course of the Debtor' business or assumed at the Closing by any Purchaser, shall be paid by the Debtor, or after the Effective Date, the Creditors' Trustee, pursuant to the terms thereof or such other terms as may be agreed upon by the Debtor, or after the Effective Date, the Creditors' Trustee, and by such Creditors.

2.3     Treatment of Allowed Priority Tax Claims.

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release and discharge of and in exchange for such Claim, the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor, or, after the Effective Date, the Creditors' Trustee.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Creation of Classes.

Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy

12

Code.  Pursuant to section 1122 of the Bankruptcy Code this Plan classifies the Claims against and the Interests in the Debtor as follows:

### CHART 3.1(A) - WBH ENERGY, LP

| | |
|---|---|
| Class A1 | Priority Claims |
| Class A2 | Secured Claims of the DIP Lender |
| Class A3 | Senior Secured Claims |
| Class A4 | Senior Secured Claims of CL III |
| Class A5 | Junior Secured Claims of CL III |
| Class A6 | Other Secured Claims |
| Class A7 | General Unsecured Claims |
| Class A8 | Interests |

### CHART 3.1(B) - WBH ENERGY PARTNERS LLC

| | |
|---|---|
| Class B1 | Priority Claims |
| Class B2 | Secured Claims of the DIP Lender |
| Class B3 | Senior Secured Claims |
| Class B4 | Senior Secured Claims of CL III |
| Class B5 | Junior Secured Claims of CL III |
| Class B6 | Other Secured Claims |
| Class B7 | General Unsecured Claims |
| Class B8 | Interests |

### CHART 3.1(C) - WBH ENERGY GP, LLC

| | |
|---|---|
| Class C1 | Priority Claims |
| Class C2 | Secured Claims of the DIP Lender |
| Class C3 | Senior Secured Claims |
| Class C4 | Senior Secured Claims of CL III |
| Class C5 | Junior Secured Claims of CL III |
| Class C6 | Other Secured Claims |
| Class C7 | General Unsecured Claims |
| Class C8 | Interests |

3.2    <u>Claims May Be in More Than One Class</u>.

A Claim (including an Allowed Claim) is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class, and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

13

# ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

4.1 <u>Classes of Claims Not Impaired</u>.

The Debtors believe that Classes A1, B1, C1, A2, B2, C2, A3, B3, C3, A4, B4, C4 (are) not impaired under this Plan.

4.2 <u>Impaired Classes of Claims</u>.

The Debtors believe that Classes A5, B5, C5, A6, B6, C6, A7, B7, C7, A8, B8, and C8 are impaired under this Plan.

4.3 <u>Impairment Controversies</u>.

If a controversy arises as to whether any Class of Claims or Class of Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless prior to Confirmation of this Plan the Bankruptcy Court shall determine such controversy differently upon objection of the party challenging the characterization of a particular Class of Claims or Class of Interests under this Plan.

# ARTICLE V
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1 <u>Classes A1, B1, C1 – Priority Claims</u>.

Each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

5.2 <u>Classes A2, B2, C2 – Secured Claim of the DIP Lender</u>.

The DIP Loan and all outstanding amounts owing thereunder shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding under the DIP Loan, the Cash proceeds of the sale of the DIP Lender's Collateral for the DIP Loan, up to the extent of the DIP Loan, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

5.3 <u>Classes A3, B3, C3 – Senior Secured Claims</u>.

Each holder of an Allowed Senior Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Senior Secured Claim (including such interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the

election of the Debtor, or after the Effective Date, the Creditors' Trustee, either (i) the Cash proceeds of the sale of such holder's Collateral for the Allowed Senior Secured Claim, up to the extent of such Allowed Senior Secured Claim, (ii) such Collateral, without representation or warranty, (iii) retention of such Holder's lien against the relevant Collateral; (iv) such other treatment rendering such holder's Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (v) such other lesser treatment to which the Debtors and the Holder of a Senior Secured Claim agree upon in writing.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

5.4     Classes A4, B4, C4 –Senior Secured Claims of CL III.

The Senior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Senior Secured Claims of CL III, up to the extent of such claims, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

5.5     Classes A5, B5, C5 – Junior Secured Claim of CL III.

The Junior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Junior Secured Claims of CL III, up to the extent of such claims, (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid, or (iii) receive such other lesser treatment as to which the Debtors and CL III agree upon in writing.

5.6     Classes A6, B6, C6 – Other Secured Claims.

Each holder of an Allowed Other Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Other Secured Claim, the Cash proceeds of the sale of the Collateral securing such holder's Allowed Other Secured Claim up to the Allowed amount of such Holder's Other Secured Claim after satisfaction in full of all superior liens in the Collateral.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.  In the event that any Claim of the holder of an Allowed Other Secured Claim is not completely satisfied by such distribution, the deficiency amount will constitute a deficiency claim and such claim will be designated and treated as a General Unsecured Claim pursuant to Class 7 of this Plan.

5.7     Classes A7, B7, C7 – General Unsecured Claims.

Each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and discharge of and in exchange for all of their respective Allowed General Unsecured Claim, on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the Creditors' Trust Assets.  In no event shall the Proposed Purchaser share in the Class 7 Assets.

#4930967.4

DRAFT

5.8    Classes A8, B8, C8 – Interests.

On the Effective Date, all Interests shall be cancelled and extinguished, and the holders of Interests shall not receive or retain any property or assets on account of their Interests.

5.9    Allowance of Unliquidated or Contingent Claims.

Pursuant to section 502(c) of the Bankruptcy Code, before, on or after the Effective Date, the Claimant or the Debtor, or after the Effective Date, the Creditors' Trustee, may seek the estimation of any Unliquidated Claim or Contingent Claim.  Any estimation of an Unliquidated Claim or a Contingent Claim shall constitute a final determination of such Claim for all purposes.  To the extent an Unliquidated Claim or a Contingent Claim is estimated by Final Order of the Bankruptcy Court, it shall receive the treatment for the particular type of Claim set forth in this Article V for the amount estimated by the Bankruptcy Court.  If a Claimant fails to seek estimation of a Claim at any time prior to the final distribution date for Class 7, such Claim shall be treated as a disallowed Claim without further Order of the Bankruptcy Court upon the final distribution date for Class 7.  Any Unliquidated Claim or Contingent Claim shall be treated as a Disputed Claim until and unless it becomes an Allowed Claim pursuant to a Final Order of the Bankruptcy Court.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THIS PLAN

6.1    Classes and Claims Entitled to Vote.

Each holder of an Impaired Claim (other than a Claim that will receive no recovery under this Plan) shall be entitled to vote to accept or reject this Plan.  Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes A1, B1, C1, A2, B2, C2, A3, B3, C3, A4, B4, and C4 are not impaired and hence are presumed to have accepted this Plan.  Classes A5, B5, C5, A6, B6, C6, A7, B7, C7 are impaired and therefore are entitled to vote to accept or reject this Plan.  Classes A8, B8, and C8, which comprise the holders of Interests, will receive no recovery, are impaired and each holder of Interests is deemed to have voted to reject this Plan.

6.2    Cramdown.

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

#4930967.4

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THIS PLAN
## AND POST EFFECTIVE DATE GOVERNANCE

7.1     No Substantive Consolidation

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof. Except as specifically set forth herein, nothing in this Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor. Additionally, Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent provided for in the relevant Plan), and such Claims will be administered and treated in the manner provided in the relevant Plan.

7.2     Sale of the Acquired Assets

The Plan contemplates the sale of the Acquired Assets to a third party. To effect this, the Debtors Filed the Bidding Procedures and Sale Motion which seek, *inter alia*, to establish an auction. On May 11, 2015, the Bankruptcy Court entered the Bidding Procedures Order, which established August 7, 2015, as the deadline for potential bidders to submit bids for the Acquired Assets, and established August 18, 2015, as the date for the auction. In connection with the auction, the Debtors have identified the Potential Purchaser as a potential purchaser for the Acquired Assets. If no additional Qualified Bidders (as defined in the Bidding Procedures) are identified at the auction, then the Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Potential Purchaser, pursuant to the Purchase and Sale Agreement. If additional Qualified Bidders are identified, at the conclusion of the auction, the Debtors will seek Bankruptcy Court approval to sell the Acquired Assets pursuant to the applicable Purchase and Sale Agreement to the Qualified Bidder submitting the highest and best offer, free and clear of any Liens, Claims, encumbrances or other interests, unless otherwise agreed to by the Purchaser. The Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement in this regard. The Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the Cash proceeds of the sale, unless otherwise agreed to by the Purchaser.

7.3     Application of Sale Proceeds

Contemporaneously with the Closing, the Purchaser shall deliver the sale proceeds (or, in the case of Potential Purchaser as Purchaser, the Class 7 Contributed Amount) to the Debtors or their designee for the purpose of funding the Creditors' Trust Assets as described in ARTICLE VIII.

7.4     Other Assets

Any Other Assets shall revest or vest in the appropriate Reorganized Debtor and shall be transferred to the Creditors' Trust for the benefit of the Holders of General Unsecured Claims, except to the extent that such Other Asset is subject to a lien securing a Senior Secured Claim or Other Secured Claim, in which case such lien shall remain and not be altered, affected or extinguished by the terms of this Plan.

7.5     Funding of the Administrative Claims and Priority Reserve

Upon the Effective Date, the Administrative Claims and Priority Reserve shall be transferred to Purchaser or its designee as otherwise agreed to by the Debtors, to be held in trust for Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims. Purchaser shall make distributions to satisfy the Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims upon their allowance, from the Administrative Claims and Priority Reserve, and pursuant to Court order. Purchaser shall have no liability for any Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims beyond the Administrative Claims and Priority Reserve. Upon final resolution of all Administrative Expense Claims, Priority Tax Claims and Priority Claims in accordance with this Plan, any surplus funds not distributed on account such claims shall vest in the Purchaser as an Acquired Asset under the Purchase and Sale Agreement.

7.6     Creation of Creditors' Trust

As set forth in ARTICLE VIII, the Plan provides for the creation of a Creditors' Trust with the Creditors' Trust Assets and for the liquidation, distribution and delivery of such assets in accordance with the terms of this Plan.

7.7     Cancellation of Interests

On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

7.8     Terminated Corporate Existence

Following the Effective Date, the Debtors shall take such actions as may be required under state law to wind down their affairs, effectuate the dissolution of each corporate entity, be discharged and have no further responsibilities for such Debtor.

7.9     Distribution Procedures

Any payments or distributions to be made by the Creditors' Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims. Any payments or distributions to be made by the Creditors' Trustee pursuant to the Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided

#4930967.4

for in the Plan.  Any payment, delivery or distribution by the Creditors' Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Creditors' Trustee into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  The Creditors' Trustee will establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan.  The Debtors and the Creditors' Trustee will make no distributions upon a Claim held by a party against whom a Debtor or the Creditors' Trustee asserts any avoidance action until resolution of the avoidance action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  All Avoidance Actions are retained as property of the Debtors under the Plan, and such actions may be pursued solely by the Debtors or, after the Effective Date, the Creditors' Trustee.

7.10    Cancellation of Existing Security Claims

Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Creditors' Trustee after the Effective Date) any Collateral or other property of any Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

7.11    Directors and Officers

The positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall not be eliminated on the Effective Date, so that the Governors may take the actions described above in Section 7.7.

7.12    Preservation of Rights of Action

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise disposed of in this Plan, the Purchase and Sale Agreement, or are expressly and specifically released in connection with this Plan, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Bankruptcy Code § 1123(b):  (1) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Creditors' Trustee, whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Creditors' Trustee does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded

#4930967.4

DRAFT

from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in this Plan, the Bankruptcy Schedules, the Bankruptcy Statements of Financial Affairs, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Creditors' Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date. The Creditors' Trustee may, subject to this Plan, commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Creditors' Trust.

### 7.13   Exclusivity Period

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of the Plan under Bankruptcy Code section 1121(d).

### 7.14   Effectuating Documents; Further Reorganization Transactions

Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to certify or attest to any of the foregoing actions. The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement.

### 7.15   Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected by mergers, provided under the Plan, from the Debtors to the Creditors' Trustee or any other Person or Entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to

#4930967.4

accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.16    Closing of the Debtors' Chapter 11 Cases.

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Creditors' Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### ARTICLE VIII
### CREDITORS' TRUST AND CREDITORS' TRUSTEE

### 8.1    The Creation of the Creditors' Trust

8.1.1    The Creditors' Trust, duly organized under the laws of Texas, is created for the purpose of liquidating the Creditors' Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Creditors' Trust Agreement.  The Creditors' Trust Agreement shall conform to the terms of this Plan, and to the extent that the Creditors' Trust Agreement is inconsistent with this Plan, the terms of this Plan shall govern.  The Creditors' Trustee will file all federal income tax returns for the Creditors' Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

8.1.2    For the sake of clarity, neither the Class 7 Contributed Amount, nor the proceeds of Avoidance Actions will be used to satisfy any Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims if the Administrative and Priority Claims Reserve is insufficient to pay such Claims in full..

### 8.2    Funding of Res of Trust

On the Effective Date, all of the Creditors' Trust Assets shall be transferred and assigned to the Creditors' Trust, and the Creditors' Trust shall be in possession of, and have title to, all the Creditors' Trust Assets. The conveyances of all Creditors' Trust Assets shall be accomplished pursuant to this Plan, the Sale Order and/or the Confirmation Order.  The Debtors shall convey, transfer, assign and deliver the Creditors' Trust Assets Free and Clear.  The Creditors' Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Creditors' Trust.  Such orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors and the Creditors' Trustee and the beneficiaries of the Creditors' Trust) will treat the transfer and assignment of the Creditors' Trust Assets to the Creditors' Trust for the benefit of the beneficiaries of the Creditors' Trust as (a) a transfer of the Creditors' Trust Assets directly to the beneficiaries of the Creditors' Trust followed by (b) the transfer by the beneficiaries of the Creditors' Trust to the Creditors' Trust of the Creditors' Trust Assets.  The Creditors' Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable

21

law, for state and local income tax purposes.  The beneficiaries of the Creditors' Trust will be treated as the grantors and owners of their Pro Rata portion of the Creditors' Trust Assets for federal income tax purposes.

### 8.3    The Creditors' Trustee

The Creditors' Trustee shall be John D. ("Danny") Mullen.  The Creditors' Trustee shall retain and have all the rights, powers and duties necessary to carry out his responsibilities under this Plan and the Creditors' Trust Agreement, and as otherwise provided in the Sale Order and/or the Confirmation Order.  However, the Creditors' Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to professional fee applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date.  The Creditors' Trustee shall be the exclusive trustee of the Creditors' Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B).  Matters relating to the appointment, removal and resignation of the Creditors' Trustee and the appointment of any successor Creditors' Trustee shall be set forth in the Creditors' Trust Agreement.  The Creditors' Trustee shall be required to perform his or her duties as set forth in this Plan and the Creditors' Trust Agreement.

### 8.4    Retention of Professionals

The Creditors' Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Creditors' Trustee, are necessary to assist the Creditors' Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Creditors' Trust upon the monthly submission of statements to the Creditors' Trustee.  The payment of the reasonable fees and expenses of the Creditors' Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in this Plan.  Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Creditors' Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Creditors' Trust and Creditors' Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Creditors' Trust relating to the administration and/or liquidation of General Unsecured Claims and/or Avoidance Actions shall be paid by the Creditors' Trust from the Creditors' Trust Assets and amounts otherwise distributable to Holders of Allowed General Unsecured Claims.

### 8.5    Compensation of the Creditors' Trustee

The Creditors' Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement, which shall be filed no later than 10 days prior to the Confirmation Hearing.  The payment of the fees of the Creditors' Trustee and any professionals retained by the Creditors' Trustee shall be made by the Creditors' Trust in accordance with the provisions of this Plan and the Creditors' Trust Agreement.

### 8.6    Creditors' Trust Expenses

All costs, expenses and obligations incurred by the Creditors' Trustee in administering this Plan and the Creditors' Trust, or in any manner connected, incidental or related thereto shall

come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred.

8.7    Liability; Indemnification

The Creditors' Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Creditors' Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Creditors' Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Creditors' Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Creditors' Trustee unless such determination is based on willful misconduct, gross negligence or fraud.  The Creditors' Trust shall indemnify and hold harmless the Creditors' Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditors' Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

8.8    Termination

The duties, responsibilities and powers of the Creditors' Trustee shall terminate after all Creditors' Trust Assets have been fully resolved, abandoned or liquidated and the Creditors' Trust Assets have been distributed in accordance with this Plan and the Creditors' Trust Agreement; provided, however, except in the circumstances set forth below, the Creditors' Trust shall terminate no later than three years after the Effective Date.  If warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Creditors' Trust, the term of the Creditors' Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Creditors' Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Creditors' Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue.  Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Creditors' Trust.  Upon the occurrence of the termination of the Creditors' Trust, the Creditors' Trustee shall File with the Bankruptcy Court, a report thereof, seeking discharge of the Creditors' Trustee.

8.9    Creditors' Trust Authority

8.9.1    **Compromise of Claims.**  The Creditors' Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Creditors' Trust Agreement.

23

#4930967.4

8.9.2    **Payment of Professional Fees.**  Without limiting the generality of the foregoing, and except as otherwise set forth in this Plan, the Creditors' Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.

8.9.3    **Request for Expedited Tax Review.**  The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

8.9.4    **Access and Preservation of Records.**  The Creditors' Trustee shall be granted access to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Purchase and Sale Agreement.

# ARTICLE IX
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

9.1    Timing and Delivery of Distributions

The Plan and Confirmation Order shall govern distributions from the Creditors' Trustee and shall include and be consistent with the terms of the other sections of this ARTICLE IX and other relevant provisions of the Plan, including, without limitation, ARTICLE III of the Plan.

9.2    Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Creditors' Trustee.

9.3    Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance.  The Creditors' Trustee shall hold any amounts returned in respect of such non-negotiated checks.  The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Creditors' Trustee.  All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be "Unclaimed Property," and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Creditors' Trustee.

DRAFT

9.4     Compliance with Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Creditors' Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Creditors' Trustee within thirty (30) days from the date of such request, the Creditors' Trustee may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

9.5     De Minimis Distributions

No Cash payment of less than five ($5.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

9.6     Distribution Record Date

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims.  The Creditors' Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE X
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

10.1    Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

10.2    Cure Amounts

The Bidding Procedures and Sale Motion contemplate that numerous executory contracts and unexpired leases will be assumed and assigned to the Purchaser pursuant to the Sale Order or the Confirmation Order.  In accordance with the Bidding Procedures, as part of the Plan Supplement, the Debtors will File a list of such executory contracts and unexpired leases along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures Order, File a detailed statement setting forth its reason. The Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation

25

DRAFT

Hearing.  The fixing of the Cure Costs shall constitute the Debtor's right to assign the executory contract and unexpired lease to the Purchaser under Bankruptcy Code sections 365(c) and (f).

### 10.3    Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### 10.4    Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the Creditors' Trustee.  The Creditors' Trustee may purchase extensions or tails on any insurance policy.

### 10.5    Pass-through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Creditors' Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c), shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Creditors' Trustee and the counterparty unaltered and unaffected by the bankruptcy Filings or Chapter 11 Cases.

### 10.6    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any

#4930967.4

Debtor or the Creditors' Trustee without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

10.7    Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Creditors' Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

10.8    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

## ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

11.1    Objections to Claims

11.1.1    Authority

The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File objections to all Claims, and to withdraw any objections to such Claims that they File.  The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims.  The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims.  From and after the Effective Date, the Creditors' Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Creditors' Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

Notwithstanding the foregoing paragraph, if CL III is the Purchaser, then CL III shall have the exclusive authority to File objections to all Senior Secured Claims, and to withdraw any objections to such Claims that they File.  If CL III is the Purchaser, then CL III shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Senior Secured Claims.  If CL III is the Purchaser, then CL III, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment objections to other Senior Secured Claims.  From and after the Effective Date, if CL III is the Purchaser, then CL III may settle or compromise any Disputed Claim that is a Senior Secured Claim, without approval of the Bankruptcy Court.  If CL III is the Purchaser, then CL III also shall have the right to resolve any Disputed Claim that is a Senior Secured Claims outside the Bankruptcy Court under applicable governing law.

### 11.1.2    Objection Deadline

As soon as practicable, but no later than the Claims Objection Deadline, the Creditors' Trustee may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Creditors' Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor or the Creditors' Trustee, as the case may be, without notice or hearing.

For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.

### 11.2    Estimation of Claims

The Creditors' Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Creditors' Trustee or any Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Creditors' Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### 11.3    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Creditors' Trustee in writing, no payments or distributions shall be made with respect to any disputed portion of a Claim unless and until all objections to such disputed portion of the Claim

have been settled or withdrawn or have been determined by Final Order. The Creditors' Trustee shall pay the undisputed portion of a Claim in accordance with the Plan, Confirmation Order and orders of the Court.

### 11.4  Distributions After Allowance

The Creditors' Trustee shall make payments and distributions from a distribution reserve to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Creditors' Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date. After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of the Creditors' Trust for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

### 11.5  Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Creditors' Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

### 11.6  Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Creditors' Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Creditors' Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. The Creditors' Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise provided in the Plan, distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

The Creditors' Trustee, will in good faith value the Creditors' Trust Assets. The Creditors' Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Creditors' Trust (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust) for all federal income tax purposes.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

12.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.1.1    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such order shall have become a Final Order.

12.1.2    The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors and the Purchaser; and (ii) include a finding of fact that the Debtors, and their respective present members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code section 1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

12.1.3    If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order, which approves the Purchase and Sale Agreement, in form and substance reasonably acceptable to the Debtors and the Purchaser.

12.2    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.2.1    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser and such order shall have become a Final Order.

12.2.2    If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser, and such order shall have become a Final Order.

12.2.3    Purchaser shall have provided written evidence satisfactory to the Debtors that simultaneous with the occurrence of the Effective Date, Purchaser is prepared to close under the Purchase and Sale Agreement, and the Closing shall have occurred pursuant to the Purchase and Sale Agreement.

12.3    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

12.4    Waiver of Conditions

Each of the conditions set forth in Section 12.1 or Section 12.2 hereof may be waived in whole or in part by the Debtors or Purchaser, as applicable. The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

12.5    Revocation, Withdrawal, or Non-consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or substantial consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

# ARTICLE XIII
# AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to the Purchaser, the Debtors may not modify such document without the written consent of the Purchaser, as applicable. After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; provided,

31

however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XIV
## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(G)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

#4930967.4

DRAFT

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

(I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Purchase and Sale Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

(L)     Recover all assets of the Debtors and property of the Estates, wherever located;

(M)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)     Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

(O)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)     Enter an order or final decree concluding or closing the Chapter 11 Cases; and

(Q)     Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the

33

Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

16.1     Bar Dates for Certain Actions

16.1.1     Administrative Claims; Substantial Contribution Claims

The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and the types of Administrative Claims outlined in section 16.1.2, 16.1.3, or 16.1.4 below), which date will be forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities described in section 16.1.2 or 16.1.3 below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date. The Creditors' Trustee shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

16.1.2     Administrative Ordinary Course Liabilities

Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims.  For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code section 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

16.1.3     Administrative Tax Claims

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Creditors' Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Creditors' Trustee or its property, regardless of whether any such

Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

### 16.1.4    Professional Fee Claims

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must be Filed and served on the Creditors' Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

### 16.2    Payment of Statutory Fees

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan.  Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited to funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids.  Post-confirmation, the Debtors, and post-Effective Date, the Creditors' Trustee, shall be responsible for the payment of accruing United States Trustee quarterly fees for each of the Debtors until each case is closed by the Court.  The Debtors and the Creditors' Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

### 16.3    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in

no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 16.4    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 16.5    Releases

#### 16.5.1    **Releases of and by Debtors and Estates**.

**On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, CL III, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus, in their individual capacities; (iv) the Committee;  (v) legal, financial and restructuring advisors of the Debtors and the Committee; (vi) the Creditors' Trustee, and (vii) the Related Persons of each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that CL III, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.**

**On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors, on its own behalf and as a representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) CL III; (ii) CL III's**

current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal, financial and restructuring advisors of CL III; and (iv) the Related Parties for each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that the Debtors or Creditors' Trustee, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

16.5.2    **Release of and by Purchaser.**  On and after the Effective Date, the Purchaser shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus in their individual capacities (iv) legal, financial and restructuring advisors of the Debtors; (v) the Creditors' Trustee, and (vi) the Related Persons of each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, save and except any Claims and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.

On or after the Effective Date, the Debtors, on behalf of themselves and their respective subsidiaries and affiliates (including the Creditors' Trustee) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Purchaser, (ii) the Purchaser's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal and financial advisors of the Purchaser, and (iv) the Related Persons of each of the foregoing, from any and all Claims, interests,

37

**obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtors' their subsidiaries and affiliates (including the Creditors' Trustee) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, save and except any Claims arising after the Closing and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.**

16.5.3    **No Waiver.**  Notwithstanding anything to the contrary contained in this Section 16.5, the releases set forth in this Section 16.5 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Creditors' Trustee, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Creditors' Trustee or the Purchaser pursuant to this Plan or the Purchase and Sale Agreement and related orders.

16.6    Bankruptcy Rule 3016 Compliance.

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

16.7    **Exculpation**

**The Debtors and their Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising in connection with or out of the good faith solicitation of acceptances of the Plan in accordance with Bankruptcy Code 1125(e).  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or their Professionals as to any Claim or cause of action as to which the Debtors and their professionals have been exculpated pursuant to the preceding sentence.**

16.8    Permanent Injunction

**Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, and the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Creditors' Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Creditors' Trust, or their assets on account of any such**

38

**Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas. The foregoing injunction will extend to successors of the Debtors and Creditors' Trust and their respective property and interests in the property.**

16.9     Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

16.10     Integral to Plan

Each of the injunctions provided in this Plan is an integral part of the Plan and is essential to its implementation.  Each of the other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

16.11     Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

16.12     Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Creditors' Trustee shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

#4930967.4

DRAFT

<u>If to the Debtors</u>:

WBH Energy, LP *et al.*
Attention: Joseph Warnock
P.O. Box 302380
Austin, TX 78703
Phone:  (512) 330-9502
Fax:  (512) 330-9504

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300
Fax:  (713) 221-1212

<u>If to the Creditors' Trustee</u>

John D. Mullen
5014 Spring Hill Dr., Ste. 300
Spring, TX  77396
Phone:  (713) 408-4478

With a copy to (which shall not constitute notice)

Berry Spears
Locke Lord LLP
600 Congress Ave., Suite 2200
Austin, TX  78701
Phone:  (512) 305-4700
Fax:  (512) 305-4800

-and-

Philip G. Eisenberg
Locke Lord LLP
600 Travis Street, Suite 2800
Houston, TX  77002
Phone:  (713) 226-1304
Fax:  (713) 223-3717

16.13   <u>Setoffs</u>

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to

#4930967.4

by the Holder of a Claim or Interest, each Debtor or the Creditors' Trustee may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or the Creditors' Trustee, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Creditors' Trustee of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtor or the Creditors' Trustee, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

### 16.14   Recoupment

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or the Creditors' Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 16.15   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.  For the avoidance of doubt, as provided in section 7.2 of this Plan, the Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

### 16.16   Request for Expedited Tax Review

The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

#4930967.4

16.17   Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

16.18   No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

16.19   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or the Creditors' Trustee, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

<h1 style="text-align:center">ARTICLE XVII<br>CONFIRMATION REQUEST</h1>

The Debtors request Confirmation of the Plan under Bankruptcy Code section 1129.  If any Impaired Class does not accept the Plan pursuant to Bankruptcy Code section 1126, the Debtors request Confirmation pursuant to Bankruptcy Code section 1129(b).  In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under Bankruptcy Code section 1129(b) requires modification.

Dated:  July 24, 2015

**WBH ENERGY, LP**

By:       */s/ Joseph S. Warnock*
Name:         Joseph S. Warnock
Title:          Vice President

**WBH ENERGY PARTNERS LLC**

By:       */s/ Joseph S. Warnock*
Name:         Joseph S. Warnock
Title:          Vice President

DRAFT

**WBH ENERGY GP, LLC**

By:     */s/ Joseph S. Warnock*
Name:      Joseph S. Warnock
Title:      Vice President

43

EXHIBIT B

DRAFT

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **WBH Energy, LP,** | § | **Case No. 15-10003** |
| **WBH Energy Partners LLC** | § | |
| **WBH Energy GP, LLC** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | *Jointly Administered* |

# FIRST AMENDED JOINT PLAN OF REORGANIZATION OF WBH ENERGY, LP, WBH ENERGY PARTNERS LLC, AND WBH ENERGY GP, LLC

William A. (Trey) Wood III
Texas Bar No. 21916050
Trey.Wood@bgllp.com
Jason G. Cohen
Texas Bar No. 24050435
Jason.Cohen@bgllp.com
711 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

#4930967.3#4930967.4

# TABLE OF CONTENTS

ARTICLE I

DEFINITIONS AND INTERPRETATION............................................................1
1.1    Rules of Interpretation.............................................................................1
1.2    Definitions...............................................................................................1
1.3    Defined Terms.........................................................................................2

ARTICLE II

PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE
CLAIMS AND PRIORITY TAX CLAIMS........................................11
2.1    Treatment of Allowed Administrative Expense Claims.........................11
2.2    Bar Date for the Filing and Assertion of Administrative Expense Claims,
Including Professional Fees but Excluding Ordinary Course
Administrative Claims............................................................................12
2.3    Treatment of Allowed Priority Tax Claims...........................................12

ARTICLE III

CLASSIFICATION OF CLAIMS AND INTERESTS...............................12
3.1    Creation of Classes.................................................................................12
3.2    Claims May Be in More Than One Class...............................................13

ARTICLE IV

IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN.............13
4.1    Classes of Claims Not Impaired.............................................................13
4.2    Impaired Classes of Claims....................................................................~~13~~14
4.3    Impairment Controversies......................................................................14

ARTICLE V

PROVISIONS FOR TREATMENT OF CLASSES ~~OFQA~~OF
CLAIMS AND INTERESTS..............................................................14
5.1    Classes A1, B1, C1 – Priority Claims....................................................14
5.2    Classes A2, B2, C2 – Secured Claim of the DIP Lender........................14
5.3    Classes A3, B3, C3 – Senior Secured Claims........................................14
5.4    Classes A4, B4, C4 –Senior Secured Claims of CL III..........................15
5.5    Classes A5, B5, C5 – Junior Secured Claim of CL III...........................15
5.6    Classes A6, B6, C6 – Other Secured Claims..........................................15
5.7    Classes A7, B7, C7 – General Unsecured Claims...................................15
5.8    Classes A8, B8, C8 – Interests..............................................................15
5.9    Allowance of Unliquidated or Contingent Claims..................................~~15~~16

ARTICLE VI

ACCEPTANCE OR REJECTION OF THIS PLAN...............................16

| | | | |
|---|---|---|---|
| 6.1 | Classes and Claims Entitled to Vote. | | 16 |
| 6.2 | Cramdown. | | 16 |

**ARTICLE VII**

MEANS FOR IMPLEMENTATION OF THIS PLAN
AND POST EFFECTIVE DATE GOVERNANCE ... 16

| | | | |
|---|---|---|---|
| 7.1 | No Substantive Consolidation | | 16 |
| 7.2 | Sale of the Acquired Assets | | 17 |
| 7.3 | Application of Sale Proceeds | | 17 |
| 7.4 | Other Assets | | 17 |
| 7.5 | Creation of Creditors' Trust | | ~~17~~18 |
| 7.6 | Cancellation of Interests | | ~~17~~18 |
| 7.7 | Terminated Corporate Existence | | 18 |
| 7.8 | Distribution Procedures | | 18 |
| 7.9 | Cancellation of Existing Security Claims | | 18 |
| 7.10 | Directors and Officers | | ~~18~~19 |
| 7.11 | Preservation of Rights of Action | | 19 |
| 7.12 | Exclusivity Period | | ~~19~~20 |
| 7.13 | Effectuating Documents; Further Reorganization Transactions | | 20 |
| 7.14 | Exemption from Certain Transfer Taxes | | 20 |
| 7.15 | Closing of the Debtors' Chapter 11 Cases. | | 20 |

**ARTICLE VIII**

CREDITORS' TRUST AND CREDITORS' TRUSTEE ... 20

| | | | |
|---|---|---|---|
| 8.1 | The Creation of the Creditors' Trust | | 20 |
| 8.2 | Funding of Res of Trust | | 21 |
| 8.3 | The Creditors' Trustee | | 21 |
| 8.4 | Retention of Professionals | | 22 |
| 8.5 | Compensation of the Creditors' Trustee | | 22 |
| 8.6 | Creditors' Trust Expenses | | 22 |
| 8.7 | Liability; Indemnification | | 22 |
| 8.8 | Termination | | 23 |
| 8.9 | Creditors' Trust Authority | | 23 |

**ARTICLE IX**

PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ... 24

| | | | |
|---|---|---|---|
| 9.1 | Timing and Delivery of Distributions | | 24 |
| 9.2 | Method of Cash Distributions | | 24 |
| 9.3 | Failure to Negotiate Checks | | 24 |
| 9.4 | Compliance with Tax Requirements | | 24 |
| 9.5 | De Minimis Distributions | | 24 |
| 9.6 | Distribution Record Date | | 25 |

**ARTICLE X**

EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND
OTHER AGREEMENTS ... 25

| | | | |
|---|---|---|---|
| 10.1 | Assumption/Rejection | | 25 |

10.2    Cure Amounts ........................................................................... 25
10.3    Assumed Executory Contracts and Unexpired Leases ........................ 25
10.4    Insurance Policies ..................................................................... 26
10.5    Pass-through ............................................................................ 26
10.6    Claims Based on Rejection of Executory Contracts and Unexpired Leases ....... 26
10.7    Reservation of Rights ................................................................. 26
10.8    Nonoccurrence of Effective Date ................................................... 27

ARTICLE XI
                PROCEDURES FOR RESOLVING DISPUTED,
                CONTINGENT, AND UNLIQUIDATED CLAIMS ........................ 27
11.1    Objections to Claims .................................................................. 27
11.2    Estimation of Claims .................................................................. 28
11.3    No Distributions Pending Allowance .............................................. 28
11.4    Distributions After Allowance ...................................................... 28
11.5    Reduction of Claims ................................................................... 29
11.6    Compliance with Tax Requirements/Allocations ................................ 29

ARTICLE XII
                CONDITIONS PRECEDENT TO CONFIRMATION
                AND CONSUMMATION OF THE PLAN .................................. 29
12.1    Conditions Precedent to Confirmation ............................................ 29
12.2    Conditions Precedent to Effective Date ........................................... 30
12.3    Substantial Consummation ........................................................... 30
12.4    Waiver of Conditions .................................................................. 30
12.5    Revocation, Withdrawal, or Non-consummation .......................... 30̶31

ARTICLE XIII
                AMENDMENTS AND MODIFICATIONS .................................. 31

ARTICLE XIV
                RETENTION OF JURISDICTION ............................................ 31

ARTICLE XV
                COMPROMISES AND SETTLEMENTS ..................................... 33

ARTICLE XVI
                MISCELLANEOUS PROVISIONS ........................................... 33
16.1    Bar Dates for Certain Actions ...................................................... 33
16.2    Payment of Statutory Fees ........................................................... 35
16.3    Severability of Plan Provisions ..................................................... 35
16.4    Successors and Assigns ............................................................... 35
16.5    Releases .................................................................................. 35
16.6    Bankruptcy Rule 3016 Compliance. ......................................... 39̶38
16.7    **Exculpation** ............................................................................ 39̶38
16.8    Permanent Injunction ............................................................ 39̶38
16.9    Term of Injunctions or Stay ..................................................... 40̶38
16.10   Integral to Plan ...................................................................... 40̶39
16.11   Binding Effect ...................................................................... 40̶39

16.12 Notices...................................................................................................4039

16.13 Setoffs..................................................................................................4140

16.14 Recoupment...........................................................................................4240

16.15 Release of Liens.....................................................................................4241

16.16 Request for Expedited Tax Review..........................................................4241

16.17 Dissolution of Committee........................................................................4241

16.18 No Admissions.......................................................................................4241

16.19 Governing Law.......................................................................................4241

ARTICLE XVII

CONFIRMATION REQUEST...................................................................4341

DRAFT

## FIRST AMENDED PLAN OF REORGANIZATION OF WBH ENERGY, LP, WBH ENERGY PARTNERS LLC, AND WBH ENERGY GP, LLC

The Debtors hereby propose the following First Amended Plan of Reorganization pursuant to the provisions of section 1121 of the Bankruptcy Code. Although styled as a "joint plan," this Plan consists of three (3) separate plans (one for each of the Debtors). Consequently, except as provided in this Plan, for purposes of voting on this Plan and making and receiving distributions under this Plan, votes will be tabulated separately for each Debtor with respect to each Debtor's plan of reorganization and distributions will be made separately to each separate Class as provided in this Plan. Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, businesses, properties, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters. No materials other than this Plan, the Disclosure Statement and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     <u>Rules of Interpretation</u>.

Unless otherwise specified, all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. The words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan. The words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

1.2     <u>Definitions</u>.

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the terms defined in section 1.3 of this Plan (which appear in this Plan as capitalized terms) have the respective meanings set forth in such section, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

DRAFT

## 1.3     Defined Terms

1.3.1     "Acquired Assets" means such assets of the Debtors that are purchased by the Purchaser pursuant to the Purchase and Sale Agreement and the Sale Order or the Confirmation Order.

1.3.2     "Administrative and Priority Claims Reserve" means a reserve in the amount of the sum of (a) all budgeted expenses and allowances (including Professional Fees) set forth in the Final DIP Budget which have been incurred and are unpaid as of the Effective Date, (b) all Cure Costs incurred after the Effective Date, which amount shall be provided to the Creditors' TrustCL III by the Debtors (or in the case of Cure Costs, by the Purchaser), pursuant to Section 8.1.2 of the Plan for the payment of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims.

1.3.3     "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case allowed under sections 503, 507(a)(2) or 507(b) of the Bankruptcy Code, including Claims for taxes entitled to treatment under section 507, and approved by Final Order of the Bankruptcy Court, and all fees and costs assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.3.4     "Administrative Expense Claims Bar Date" means thirty (30forty five (45) days after the Effective Date for any alleged Administrative Claims that arose after any earlier Administrative Claims bar dates that have been established by order of the Bankruptcy Court.  With respect to any alleged Administrative Claim that arose prior to any earlier Administrative Claims bar date that has been established by order of the Bankruptcy Court, "Administrative Expense Claims Bar Date" means such earlier bar date.  Nothing herein shall extend any prior Administrative Claims bar dates that have been established by order of the Bankruptcy Court.

1.3.5     "Affiliate" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code and, in addition, shall mean, with respect to any Person, any other Person directly or indirectly controlling (including all directors, officers, managers and general partners of such person, and Persons performing similar functions), directly or indirectly controlled by or under direct or indirect common control with such Person.  For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative of the foregoing.

1.3.6     "Allowed" means, as it relates to any type of Claim provided for under this Plan (other than a Disputed, Contingent or Unliquidated Claim), a Claim (i) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which (a) no proof of Claim has been Timely Filed, and (b) no objection thereto has been Timely Filed; (ii) as to which a proof of Claim has been Timely Filed and either (a) no objection thereto has been Timely Filed, or (b) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (iii) which has been

#4930967.3#4930967.4

expressly allowed (but only to the extent expressly allowed) under the provisions of this Plan or by other order of the Bankruptcy Court; or (iv) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court.  Disputed, Contingent or Unliquidated Claims shall become Allowed Claims only when Allowed pursuant to a Final Order of the Bankruptcy Court.

1.3.7     "Assets" means all property of the Estate as defined in the Bankruptcy Code.

1.3.8     "Assumed Liabilities" means any liabilities being assumed by a Purchaser.

1.3.9     "Avoidance Actions" means any and all actions which a trustee, debtor in possession or other appropriate party in interest may assert on behalf of the Estate under applicable state statute or Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, and 553.

1.3.10     "Bankruptcy Code" means title 11 of the United States Code, section 101, et seq., as now in effect or as hereafter amended.

1.3.11     "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, Austin Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Cases.

1.3.12     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

1.3.13     "Bankruptcy Schedules" means the schedules of assets and liabilities and the statements of financial affairs field by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007 as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.3.14     "Bar Date" means May 11, 2015.

1.3.15     "Bidding Procedures" means those bidding procedures approved by the Court and attached to Bidding Procedures Order.

1.3.16     "Bidding Procedures Order" means the Order Approving Bidding Procedures, Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; Approving Form and Notice Thereof entered at Docket Number 361 in Case No. 15-10003.

1.3.17     "Business Day" means any day which is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

1.3.18    "Cash" means lawful currency of the United States of America.

1.3.19    "Causes of Action" means all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims, or any other claims whatsoever, whether known or unknown, matured or unmatured, fixed or contingent, liquidated or unliquidated, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring before the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.3.20    "Chapter 11 Cases" means the bankruptcy cases initiated by the Debtors when they filed voluntary petitions under Chapter 11 of the Bankruptcy Code on January 4, 2015, enumerated as Case Nos. 15-10003, 15-10004, and 15-10005, and jointly administered under Case No. 15-10003.

1.3.21    "CL III" means CL III Funding Holding Company, LLC in all of its capacities, including but not limited to as lender under the Senior CL III Credit Facility and Junior CL III Credit Facility, and all of its subsidiaries.

1.3.22    "Claim" means a claim against the Debtor or its property, as such term is defined in section 101(5) of the Bankruptcy Code.

1.3.23    "Claimant" means the holder of any Claim against the Debtor or its property, or of any Equity Interest.

1.3.24    "Claims Objection Deadline" means the first Business Day that is at least 90 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with section  11.1.2 of this Plan.

1.3.25    "Class" means a category of Claims or Interests, as classified in Article III of this Plan.

1.3.26    "Class 7 Contributed Amount" means Cash in the amount of $225,000 to be transferred to the Debtors as provided in Section 7.3 of this Plan.

1.3.27    "Closing" means the closing of the sale of the Acquired Assets to any Purchaser.

1.3.28    "Collateral" means any property or interest in property of the Estate subject to a Lien, not otherwise subject to avoidance under the Bankruptcy Code, to secure the payment or performance of a Claim.

1.3.29    "Committee" means the Official Committee of Creditors appointed  in the Bankruptcy Case pursuant to section 1102 of the Bankruptcy Code.

#4930967.3#4930967.4

1.3.30    "Confirmation" or "Confirmation of this Plan" means the approval of this Plan pursuant to section 1129 of the Bankruptcy Code by the Bankruptcy Court.

1.3.31    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.3.32    "Confirmation Hearing" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider Confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

1.3.33    "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

1.3.34    "Consummation" takes place simultaneously with the completion of the Closing on the Effective Date.

1.3.35    "Contingent Claim" means a Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

1.3.36    "Creditors' Trust" means the entity created by the Creditors' Trust Agreement.

1.3.37    "Creditors' Trust Agreement" means the creditors' trust agreement approved and entered into in accordance with the Plan pursuant to which the Creditors' Trust will be established and administered, and incorporated herein by reference.

1.3.38    "Creditors' Trust Assets" means (i) all Avoidance Actions and other Causes of Action, including the attorney-client privilege related to such Causes of Action, not purchased by the Purchaser pursuant to the Purchase and Sale Agreement, (ii) the Class 7 Contributed Amount, and (iii) all Other Assets.

1.3.39    "Creditors' Trustee" means John D. ("Danny") Mullen, or any other party designated pursuant to this Plan or the Creditors' Trust Agreement to serve as Creditors' Trustee under this Plan.

1.3.40    "Cure Costs" means the costs, in Cash, required for the cure, assumption, and assignment of an executory contract or unexpired lease pursuant to the provisions of § 365(b) of the Bankruptcy Code.

1.3.41    "Debtors" means WBH Energy, LP, WBH Energy Partners LLC, and WBH Energy Partners GP, LLC.

1.3.42    "Definitive Documents" means the asset purchase agreement by and among the Debtor and any Purchaser, as amended, and the other documents pursuant to which the Acquired Assets were sold to a Purchaser.

1.3.43    "DIP Lender" means CL III, in its capacity as lender pursuant to the DIP Loan, its successors and assigns.

1.3.44    "DIP Loan" means the loans made pursuant to the Debtor in Possession Credit Agreement, dated as of June 5, 2015, by and among the Debtor and the DIP Lender, as the same may be amended.

1.3.45    "Disclosure Statement" means the Joint Disclosure Statement in support of this Plan dated July 24, 2015, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtor pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

1.3.46    "Disputed Claim" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be Timely Filed, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof or; (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

1.3.47    "Effective Date" means, and shall occur on the date on which all of the conditions set forth in Section 12.2 have been satisfied.

1.3.48    "Employee Benefit Plans" means any employment, compensation, pension, welfare, healthcare, bonus, incentive compensation, sick leave and other leave, vacation pay, expense, reimbursement, dependent care, retirement, savings, deferred compensation, supplemental pension, retention, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, severance or other compensation or benefit plan, agreement or arrangement for the benefit of the current or former directors, officers or employees (whether salaried or hourly, active or retired) of the applicable Debtor.

1.3.49    "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity.

1.3.50    "Estate" means the estate created for the Debtor in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.3.51    "Estate Parties" means the Debtor, the Creditors' Trustee, their respective Subsidiaries, Affiliates and Representatives and all of their respective

successors and assigns, predecessors in interest, present and former Representatives, members and shareholders.

1.3.52    "Excluded Assets" means all documents and instruments that may be protected by attorney-client privilege.

1.3.52    1.3.53  "Exculpated Person" means the Debtors, on and after the Petition Date, Purchaser, their respective subsidiaries, the Creditors' Trustee, the Committee, the DIP Lender, CL III, Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, Ryen Burrus, and each of their respective Representatives.

1.3.53    1.3.54 "Executory Contracts" means all "executory contacts," as such term is used in section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

1.3.54    1.3.55 "Final Decree" means the final decree entered by the Bankruptcy Court pursuant to Bankruptcy Rule 3022.

1.3.55    1.3.56 "Final DIP Budget" means the budget complying with the DIP Agreement and approved by the DIP Lender as of the date of the DIP Agreement, as such budget has been or may be amended or modified, in accordance with the DIP Loan, up to the Confirmation Date.

1.3.56    1.3.57 "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.3.57    1.3.58 "Free and Clear" means, free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the Estates, (and all created expenses and charges) of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order.

1.3.58    1.3.59 "General Unsecured Claim" means any Claim that is not an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, an Intercompany Claim, a Subordinated Claim, an Equity Interest, or an Assumed Liability.

DRAFT

1.3.59  1.3.60 "Intercompany Claim" means claim against a Debtor or its property by an Affiliate, including any amounts owed or allegedly owed between the Debtors.

1.3.60  1.3.61 "Interest(s)" means the interest of any holder of equity securities in any of the Debtors represented by any issued and outstanding common stock or interests, preferred stock or interests, or other instrument evidencing a present ownership interest in any of the Debtors before the Effective Date (including before the Petition Date), whether or not transferable, any restricted stock units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to the common stock or preferred stock interests of any of the Debtors, obligating any of the Debtors to issue, transfer, purchase, redeem, or sell any equity interests or other equity securities, any rights under any equity incentive plans, voting agreements and registration rights agreements regarding equity securities of any of the Debtors, any claims arising from the rescission of a purchase, sale or other acquisition of any outstanding common stock interests or preferred stock interests or other equity securities (or any right, claim, or interest in and to any common stock interests, preferred stock interests or other equity securities) of any of the Debtors, any claims for the payment of any distributions with respect to any common stock or preferred stock interests of any of the Debtors, and any claims for damages or any other relief arising from the purchase, sale, or other acquisition of any of the Debtors' outstanding common stock interests, preferred stock interests or other equity securities, however evidenced but specifically excluding any Interests sold to the Purchaser pursuant to the Purchase and Sale Agreement

1.3.61  1.3.62 "Interim Distribution" means any distribution made before the final distribution for a Class.  The portion to be so distributed at any time shall be determined by the Creditors' Trustee, so as to leave the Debtors a sufficient portion of Assets to satisfy, as provided in this Plan, all General Unsecured Claims that are Disputed Claims or are undetermined on or about the date of such Interim Distribution.

1.3.62  1.3.63 "Junior CL III Credit Facility" means that credit agreement dated as of December 19, 2013 (as amended) by and between WBH Energy, LP and CL III Funding Holding Company, LLC.

1.3.63  1.3.64 "Leases" means all "unexpired leases," as such term is used within section 365 of the Bankruptcy Code, to which the Debtor was a party as of the Effective Date.

1.3.64  1.3.65 "Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind, which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

1.3.65  1.3.66 "Ordinary Course Administrative Claim" means any Administrative Claim incurred in the ordinary course of the Debtor's business on and

8

after the Petition Date but shall not include: (i) any Claim for Professional Fees and any expenses, compensation, or reimbursement requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code and any Committee members' expenses, which shall be subject to Bankruptcy Court approval; (ii) any taxes (including income, sales, use, property or other taxes incurred subsequent to the Petition Date); (iii) any Claims for breach of contract, tort, or other actionable conduct; and (iv) any post-petition obligations incurred under Executory Contracts or Leases which are rejected pursuant to this Plan or prior to the Effective Date of this Plan.

      1.3.66      "Other Asset" means any asset that is not an Acquired Asset.

      1.3.67      "Other Secured Claim" means any Secured Claim other than the Secured Claims of the DIP Lender, the Senior Secured Claims, the Senior Secured Claims of CL III, and the Junior Secured Claims of CL III.

      1.3.68      "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

      1.3.69      "Petition Date" means January 4, 2015.

      1.3.70      "Plan" means this First Amended Plan of Reorganization of the Debtor, and any amendments, supplements or modifications thereto.

      1.3.71      "Plan Assets" means those assets of the Debtors not transferred to the Purchaser pursuant to the Purchase and Sale Agreement, the Sale Order, or this Confirmation Order.

      1.3.72      "Plan Documents" means such other documents required to be filed pursuant to this Plan or filed as a Plan Document by the Debtor, which shall be filed on or before ten (10) days before the date of the Confirmation Hearing.

      1.3.73      "Priority Claim" means a Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Expense Claim or a Priority Tax Claim.

      1.3.74      "Priority Tax Claim" means any Claim to the extent that such Claim is entitled to a priority in payment under section 507(a)(8) of the Bankruptcy Code.

      1.3.75      "Pro Rata" or "Pro Rata Portion" means, at any time, the proportion that the dollar amount of an Allowed Claim in a particular Class bears to the aggregate dollar amount of all Allowed Claims in such Class.

      1.3.76      "Professional" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.3.77    "Professional Fees" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Bankruptcy Case.

1.3.78    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

1.3.79    "Proposed Purchaser" means CL III, or its designee, in its capacity as the stalking horse purchaser for the Acquired Assets under the Purchase and Sale Agreement pursuant to the Sale Order and/or the Confirmation Order.

1.3.80    "Proposed Purchaser Credit Bid" means the credit portion of the purchase price under the Proposed Purchaser's Purchase and Sale Agreement.

1.3.81    "Purchase and Sale Agreement" means that purchase and sale agreement by and between WBH Energy, LP and WBH Energy Partners LLC, on the one hand, and Purchaser, on the other.

1.3.82    "Purchaser" means the buyer of the Assets under the Purchase and Sale Agreement pursuant to the Sale Order and/or the Confirmation Order.

1.3.83    "Related Persons" means, with respect to any Person, such Person's predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former Affiliates and each of their respective current and former members, partners, equity-holders, officers, directors, employees, managers, shareholders, partners, financial advisors, attorneys, accountants, investment bankers, consultants, agents and professionals, each acting in such capacity, and any Person claiming by or through any of them (including their respective officers, directors, managers, shareholders, partners, employees, members and professionals).

1.3.84    "Released Parties" means, collectively, each of the Debtors, the Creditors' Trustee, the Committee, CL III, Purchaser, DIP Lender, Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, Ryen Burrus, and each of their Related Persons.

1.3.85    "Representative" means, with respect to any specified Entity, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

1.3.86    "Sale Motion" means Debtors' Motion for (A) Entry of an Order (I) Approving Bidding Procedures; (II) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date; (III) Approving Form and Notice Thereof; (B) Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell their Assets; (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (C) Granting Related Relief, filed at Docket Number 264 in the Bankruptcy Case.

1.3.87 "Sale Order" means that certain Order Approving Debtors' Motion for Entry of an Order After the Sale Hearing (I) Authorizing the Debtors to Sell Their Property, (II) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief, entered by the Bankruptcy Court.

1.3.88 "Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

1.3.89 "Secured Claim" means a Claim that is (i) secured as provided by section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtor that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

1.3.90 "Secured Claims of the DIP Lender" means the Secured Claims of the DIP Lender arising under the DIP Loan.

1.3.91 "Senior CL III Credit Facility" means that credit agreement dated as of December 19, 2013 (as amended) by and between WBH Energy Partners LLC, WBH Energy, LP, and WBH Energy GP, LLC, on the one hand, and Green Bank, N.A. on the other hand, which facility was sold to CL III by Green Bank, N.A.

1.3.92 "Senior Secured Claim" means a Secured Claim that is senior in priority to the Senior Secured Claim of CL III.

1.3.93 "Senior Secured Claim of CL III" means the Secured Claim of CL III pursuant to the Senior CL III Credit Facility.

1.3.94 "Subordinated Claim" means a Claim that is subordinated as provided by section 510(b) or 510(c) of the Bankruptcy Code, or by order of the Bankruptcy Court.

1.3.95 "Timely Filed" means, with respect to a Claim, Equity Interest or Administrative Expense, that a proof of such Claim or Equity Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court within such applicable period of time fixed by this Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

1.3.96 "Unimpaired" means a claim or interest that is not impaired as provided under section 1124 of the Bankruptcy Code.

1.3.97 "Unliquidated Claim" means any Claim that is undetermined as to amount.

**ARTICLE II**
**PROVISION FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

2.1 <u>Treatment of Allowed Administrative Expense Claims</u>.

Each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Administrative Expense Claim, in Cash, on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor, or, after the Effective Date, the Creditors' Trustee.

2.2 <u>Bar Date for the Filing and Assertion of Administrative Expense Claims, Including Professional Fees but Excluding Ordinary Course Administrative Claims</u>.

All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor and the Creditors' Trustee no later than the Administrative Expense Claims Bar Date.  Any request for payment of Administrative Expense Claims that is not filed by the Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate, the Debtors, any Purchaser, the Creditors' Trustee or any of their respective Affiliates or Representatives; provided, however, that Ordinary Course Administrative Claims may be paid in the ordinary course of the Debtor' business and, if not previously paid in the ordinary course of the Debtor' business or assumed at the Closing by any Purchaser, shall be paid by the Debtor, or after the Effective Date, the Creditors' Trustee, pursuant to the terms thereof or such other terms as may be agreed upon by the Debtor, or after the Effective Date, the Creditors' Trustee, and by such Creditors.

2.3 <u>Treatment of Allowed Priority Tax Claims</u>.

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, release and discharge of and in exchange for such Claim, the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and by the Debtor, or, after the Effective Date, the Creditors' Trustee.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1 <u>Creation of Classes</u>.

Administrative Expense Claims and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy

12

Code.  Pursuant to section 1122 of the Bankruptcy Code this Plan classifies the Claims against and the Interests in the Debtor as follows:

### CHART 3.1(A) - WBH ENERGY, LP

| Class A1 | Priority Claims |
|----------|-----------------|
| Class A2 | Secured Claims of the DIP Lender |
| Class A3 | Senior Secured Claims |
| Class A4 | Senior Secured Claims of CL III |
| Class A5 | Junior Secured Claims of CL III |
| Class A6 | Other Secured Claims |
| Class A7 | General Unsecured Claims |
| Class A8 | Interests |

### CHART 3.1(B) - WBH ENERGY PARTNERS LLC

| Class B1 | Priority Claims |
|----------|-----------------|
| Class B2 | Secured Claims of the DIP Lender |
| Class B3 | Senior Secured Claims |
| Class B4 | Senior Secured Claims of CL III |
| Class B5 | Junior Secured Claims of CL III |
| Class B6 | Other Secured Claims |
| Class B7 | General Unsecured Claims |
| Class B8 | Interests |

### CHART 3.1(C) - WBH ENERGY GP, LLC

| Class C1 | Priority Claims |
|----------|-----------------|
| Class C2 | Secured Claims of the DIP Lender |
| Class C3 | Senior Secured Claims |
| Class C4 | Senior Secured Claims of CL III |
| Class C5 | Junior Secured Claims of CL III |
| Class C6 | Other Secured Claims |
| Class C7 | General Unsecured Claims |
| Class C8 | Interests |

3.2     Claims May Be in More Than One Class.

A Claim (including an Allowed Claim) is part of a particular Class only to the extent that the Claim qualifies within the definition of that Class, and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

13

# ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

4.1     <u>Classes of Claims Not Impaired</u>.

The Debtors believe that Classes A1, B1, C1, A2, B2, C2, A3, B3, C3, A4, B4, C4 (are) not impaired under this Plan.

4.2     <u>Impaired Classes of Claims</u>.

The Debtors believe that Classes A5, B5, C5, A6, B6, C6, A7, B7, C7, A8, B8, and C8 are impaired under this Plan.

4.3     <u>Impairment Controversies</u>.

If a controversy arises as to whether any Class of Claims or Class of Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless prior to Confirmation of this Plan the Bankruptcy Court shall determine such controversy differently upon objection of the party challenging the characterization of a particular Class of Claims or Class of Interests under this Plan.

# ARTICLE V
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1     <u>Classes A1, B1, C1 – Priority Claims</u>.

Each holder of an Allowed Priority Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the amount of such Allowed Priority Claim, in Cash, on or as soon as practicable after the latest of (i) the Effective Date; (ii) the date that is ten (10) Business Days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

5.2     <u>Classes A2, B2, C2 – Secured Claim of the DIP Lender</u>.

The DIP Loan and all outstanding amounts owing thereunder shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding under the DIP Loan, the Cash proceeds of the sale of the DIP Lender's Collateral for the DIP Loan, up to the extent of the DIP Loan, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

5.3     <u>Classes A3, B3, C3 – Senior Secured Claims</u>.

Each holder of an Allowed Senior Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Senior Secured Claim (including such interest, fees and charges as are Allowed under section 506 of the Bankruptcy Code), at the

14

election of the Debtor, or after the Effective Date, the Creditors' Trustee, either (i) the Cash proceeds of the sale of such holder's Collateral for the Allowed Senior Secured Claim, up to the extent of such Allowed Senior Secured Claim, (ii) such Collateral, without representation or warranty, (iii) retention of such Holder's lien against the relevant Collateral; (iv) such other treatment rendering such holder's Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code, or (v) such other lesser treatment to which the Debtors and the Holder of a Senior Secured Claim agree upon in writing.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.

5.4     Classes A4, B4, C4 –Senior Secured Claims of CL III.

The Senior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Senior Secured Claims of CL III, up to the extent of such claims, or (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid.

5.5     Classes A5, B5, C5 – Junior Secured Claim of CL III.

The Junior Secured Claims of CL III shall (i) receive in full satisfaction, release and discharge of the obligations and amounts outstanding thereunder, the Cash proceeds of the sale of the Collateral for the Junior Secured Claims of CL III, up to the extent of such claims, (ii) be satisfied, compromised, settled, and released in full in exchange for the Proposed Purchaser Credit Bid, or (iii) receive such other lesser treatment as to which the Debtors and CL III agree upon in writing.

5.6     Classes A6, B6, C6 – Other Secured Claims.

Each holder of an Allowed Other Secured Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Other Secured Claim, the Cash proceeds of the sale of the Collateral securing such holder's Allowed Other Secured Claim up to the Allowed amount of such Holder's Other Secured Claim after satisfaction in full of all superior liens in the Collateral.  Payment shall be made on or as soon as practicable after the latest of (a) the Effective Date; (b) the date that is ten (10) Business Days after the date such Claim is Allowed; or (c) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor, or after the Effective Date, the Creditors' Trustee.  In the event that any Claim of the holder of an Allowed Other Secured Claim is not completely satisfied by such distribution, the deficiency amount will constitute a deficiency claim and such claim will be designated and treated as a General Unsecured Claim pursuant to Class 7 of this Plan.

5.7     Classes A7, B7, C7 – General Unsecured Claims.

Each holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and discharge of and in exchange for all of their respective Allowed General Unsecured Claim, on or as soon as reasonably practicable after the Effective Date, their Pro Rata share of the Creditors' Trust Assets.  In no event shall the Proposed Purchaser share in the Class 7 Assets.

15

DRAFT

5.8    Classes A8, B8, C8 – Interests.

On the Effective Date, all Interests shall be cancelled and extinguished, and the holders of Interests shall not receive or retain any property or assets on account of their Interests.

5.9    Allowance of Unliquidated or Contingent Claims.

Pursuant to section 502(c) of the Bankruptcy Code, before, on or after the Effective Date, the Claimant or the Debtor, or after the Effective Date, the Creditors' Trustee, may seek the estimation of any Unliquidated Claim or Contingent Claim.  Any estimation of an Unliquidated Claim or a Contingent Claim shall constitute a final determination of such Claim for all purposes.  To the extent an Unliquidated Claim or a Contingent Claim is estimated by Final Order of the Bankruptcy Court, it shall receive the treatment for the particular type of Claim set forth in this Article V for the amount estimated by the Bankruptcy Court.  If a Claimant fails to seek estimation of a Claim at any time prior to the final distribution date for Class 7, such Claim shall be treated as a disallowed Claim without further Order of the Bankruptcy Court upon the final distribution date for Class 7.  Any Unliquidated Claim or Contingent Claim shall be treated as a Disputed Claim until and unless it becomes an Allowed Claim pursuant to a Final Order of the Bankruptcy Court.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THIS PLAN

6.1    Classes and Claims Entitled to Vote.

Each holder of an Impaired Claim (other than a Claim that will receive no recovery under this Plan) shall be entitled to vote to accept or reject this Plan.  Classes of Claims not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Classes A1, B1, C1, A2, B2, C2, A3, B3, C3, A4, B4, and C4 are not impaired and hence are presumed to have accepted this Plan.  Classes A5, B5, C5, A6, B6, C6, A7, B7, C7 are impaired and therefore are entitled to vote to accept or reject this Plan.  Classes A8, B8, and C8, which comprise the holders of Interests, will receive no recovery, are impaired and each holder of Interests is deemed to have voted to reject this Plan.

6.2    Cramdown.

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8), the Debtor shall request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, so long as at least one impaired Class of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

#4930967.3#4930967.4

DRAFT

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THIS PLAN
## AND POST EFFECTIVE DATE GOVERNANCE

7.1     No Substantive Consolidation

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan, the Disclosure Statement or otherwise shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any Claim against any other Debtor.  Additionally, Creditors holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus post-petition interest, if and to the extent provided for in the relevant Plan), and such Claims will be administered and treated in the manner provided in the relevant Plan.

7.2     Sale of the Acquired Assets

The Plan contemplates the sale of the Acquired Assets to a third party.  To effect this, the Debtors Filed the Bidding Procedures and Sale Motion which seek, *inter alia*, to establish an auction.  On May 11, 2015, the Bankruptcy Court entered the Bidding Procedures Order, which established August 7, 2015, as the deadline for potential bidders to submit bids for the Acquired Assets, and established August 18, 2015, as the date for the auction.  In connection with the auction, the Debtors have identified the Potential Purchaser as a potential purchaser for the Acquired Assets.  If no additional Qualified Bidders (as defined in the Bidding Procedures) are identified at the auction, then the Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Potential Purchaser, pursuant to the Purchase and Sale Agreement.  If additional Qualified Bidders are identified, at the conclusion of the auction, the Debtors will seek Bankruptcy Court approval to sell the Acquired Assets pursuant to the applicable Purchase and Sale Agreement to the Qualified Bidder submitting the highest and best offer, free and clear of any Liens, Claims, encumbrances or other interests, unless otherwise agreed to by the Purchaser. The Confirmation Order shall contain specific authority for the Debtors to comply with the Purchase and Sale Agreement in this regard.  The Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the Cash proceeds of the sale, unless otherwise agreed to by the Purchaser.

7.3     Application of Sale Proceeds

Contemporaneously with the Closing, the Purchaser shall deliver the sale proceeds (or, in the case of Potential Purchaser as Purchaser, the Class 7 Contributed Amount) to the Debtors or their designee for the purpose of funding the Creditors' Trust Assets as described in ARTICLE VIII.

17

7.4     Other Assets

Any Other Assets shall revest or vest in the appropriate Reorganized Debtor and shall be transferred to the Creditors' Trust for the benefit of the Holders of General Unsecured Claims, except to the extent that such Other Asset is subject to a lien securing a Senior Secured Claim or Other Secured Claim, in which case such lien shall remain and not be altered, affected or extinguished by the terms of this Plan.

7.5     Funding of the Administrative Claims and Priority Reserve

Upon the Effective Date, the Administrative Claims and Priority Reserve shall be transferred to Purchaser or its designee as otherwise agreed to by the Debtors, to be held in trust for Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims. Purchaser shall make distributions to satisfy the Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims upon their allowance, from the Administrative Claims and Priority Reserve, and pursuant to Court order. Purchaser shall have no liability for any Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Priority Claims beyond the Administrative Claims and Priority Reserve. Upon final resolution of all Administrative Expense Claims, Priority Tax Claims and Priority Claims in accordance with this Plan, any surplus funds not distributed on account such claims shall vest in the Purchaser as an Acquired Asset under the Purchase and Sale Agreement.

7.6     ~~7.5~~ Creation of Creditors' Trust

As set forth in ARTICLE VIII, the Plan provides for the creation of a Creditors' Trust with the Creditors' Trust Assets and for the liquidation, distribution and delivery of such assets in accordance with the terms of this Plan.

7.7     ~~7.6~~ Cancellation of Interests

On the Effective Date, all Interests in the Debtors (including those Interests held in Treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those interests shall be deemed canceled (all without further action by any person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.

7.8     ~~7.7~~ Terminated Corporate Existence

Following the Effective Date, the Debtors~~, through the Creditors' Trustee,~~ shall take such actions as may be required under state law to wind down their affairs, effectuate the dissolution of each corporate entity, be discharged and have no further responsibilities for such Debtor.

7.9     ~~7.8~~ Distribution Procedures

Any payments or distributions to be made by the Creditors' Trustee to Claimants as required by the Plan shall be made only to the holders of Allowed Claims. Any payments or distributions to be made by the Creditors' Trustee pursuant to the Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise

provided for in the Plan.  Any payment, delivery or distribution by the Creditors' Trustee pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Creditors' Trustee into the United States mail.  Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims.  No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed.  The Creditors' Trustee will establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to holders of Allowed Claims, in accordance with the terms of the Plan.  The Debtors and the Creditors' Trustee will make no distributions upon a Claim held by a party against whom a Debtor or the Creditors' Trustee asserts any avoidance action until resolution of the avoidance action by settlement or judgment or as otherwise provided by Bankruptcy Court order.  All Avoidance Actions are retained as property of the Debtors under the Plan, and such actions may be pursued solely by the Debtors or, after the Effective Date, the Creditors' Trustee.

7.10  7.9 Cancellation of Existing Security Claims

Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Creditors' Trustee after the Effective Date) any Collateral or other property of any Debtor held by such Holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

7.11  7.10 Directors and Officers

On the Effective Date, (a) the The positions of the current directors, or in the case of a governing body created by a partnership agreement, limited liability company agreement or similar agreement, the members of such governing body (such persons and the corporate directors collectively, the "Governors") of each Debtor shall be eliminated, and each Governor shall be terminated (without the necessity of further action), (b) to the fullest extent permitted by applicable law, the rights, powers, and duties of the Governors of each Debtor that has a Governor shall vest in the Creditors' Trustee and the Creditors' Trustee or its designee shall be the presiding officer and the sole Governor of each such Debtor not be eliminated on the Effective Date, so that the Governors may take the actions described above in Section 7.7.

7.12  7.11 Preservation of Rights of Action

Except to the extent such rights, claims, causes of action, defenses, and counterclaims are otherwise disposed of in this Plan, the Purchase and Sale Agreement, or are expressly and specifically released in connection with this Plan, the Sale Order and/or Confirmation Order, or in any settlement agreement approved during the Chapter 11 Cases, or in any contract, instrument, release, indenture or other agreement entered into in connection with this Plan, in accordance with Bankruptcy Code § 1123(b):  (1) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be transferred to the Creditors' Trustee, whether or not litigation relating

thereto is pending on the Effective Date, and whether or not any such rights, claims, causes of action, defenses and counterclaims have been listed or referred to in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court; and (2) the Creditors' Trustee does not waive, relinquish, or abandon (nor shall it be estopped or otherwise precluded from asserting) any right, claim, cause of action, defense, or counterclaim that constitutes property of the Estates: (a) whether or not such right, claim, cause of action, defense, or counterclaim has been listed or referred to in this Plan, the Bankruptcy Schedules, the Bankruptcy Statements of Financial Affairs, or any other document Filed with the Bankruptcy Court; (b) whether or not such right, claim, cause of action, defense, or counterclaim is currently known to the Debtors; and (c) whether or not a defendant in any litigation relating to such right, claim, cause of action, defense or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against this Plan, or received or retained any consideration under this Plan. Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, claim, cause of action, defense, or counterclaim, or potential right, claim, cause of action, defense, or counterclaim, in this Plan, the Bankruptcy Schedules, or any other document Filed with the Bankruptcy Court shall in no manner waive, eliminate, modify, release, or alter the Creditors' Trustee's right to commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, or counterclaims that a Debtor has, or may have, as of the Effective Date. The Creditors' Trustee may, subject to this Plan, commence, prosecute, defend against, settle, and realize upon any rights, claims, causes of action, defenses, and counterclaims in its sole discretion, in accordance with what is in the best interests, and for the benefit, of the beneficiaries of the various assets in the Creditors' Trust.

### 7.13    7.12 Exclusivity Period

The Debtors shall retain the exclusive right to amend or modify the Plan, and to solicit acceptances of any amendments to or modifications of the Plan, through and until the earlier of (i) the Effective Date or (ii) the expiration of the Debtors' exclusive period to solicit acceptances of the Plan under Bankruptcy Code section 1121(d).

### 7.14    7.13 Effectuating Documents; Further Reorganization Transactions

Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Joseph Warnock, as Vice President of the Debtors or, after the Effective Date, the Creditors' Trustee, shall be authorized to certify or attest to any of the foregoing actions. The Debtors are authorized to perform their obligations under the Purchase and Sale Agreement.

### 7.15    7.14 Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(ea), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, including any transfers effected

by mergers, provided under the Plan, from the Debtors to the Creditors' Trustee or any other Person or Entity pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.16    7.15 Closing of the Debtors' Chapter 11 Cases.

When all Disputed Claims or Interests filed against a Debtor have become Allowed Claims or Interests or have been Disallowed by Final Order or otherwise pursuant to the Plan, and all appropriate Plan Distributions have been made pursuant to the Plan, the Creditors' Trustee shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII
## CREDITORS' TRUST AND CREDITORS' TRUSTEE

8.1    The Creation of the Creditors' Trust

8.1.1    The Creditors' Trust, duly organized under the laws of Texas, is created for the purpose of liquidating the Creditors' Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and shall be governed by the Creditors' Trust Agreement.  The Creditors' Trust Agreement shall conform to the terms of this Plan, and to the extent that the Creditors' Trust Agreement is inconsistent with this Plan, the terms of this Plan shall govern.  The Creditors' Trustee will file all federal income tax returns for the Creditors' Trust as a grantor trust pursuant to Section 671 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

8.1.2    On the Effective Date, the Debtors will transfer to the Creditors' Trust from their Cash the Administrative and Priority Claims Reserve for the benefit of the Holders of For the sake of clarity, neither the Class 7 Contributed Amount, nor the proceeds of Avoidance Actions will be used to satisfy any Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims. From time to time the Creditors' Trustee will make distributions to the Holders of the Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims from (i) the Administrative and Priority Claims Reserve, and (ii) from the Class 7 Contributed Amount and proceeds of Avoidance Actions if the Administrative and Priority Claims Reserve is insufficient to pay all such Claims in full. If there is any amount remaining in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Claims, then such remaining amount shall become part of the Creditors' Trust Assets such Claims in full.

8.2    Funding of Res of Trust

On the Effective Date, all of the Creditors' Trust Assets shall be transferred and assigned to the Creditors' Trust, and the Creditors' Trust shall be in possession of, and have title to, all the

Creditors' Trust Assets. The conveyances of all Creditors' Trust Assets shall be accomplished pursuant to this Plan, the Sale Order and/or the Confirmation Order. The Debtors shall convey, transfer, assign and deliver the Creditors' Trust Assets Free and Clear. The Creditors' Trustee may present such orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Creditors' Trust. Such orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors and the Creditors' Trustee and the beneficiaries of the Creditors' Trust) will treat the transfer and assignment of the Creditors' Trust Assets to the Creditors' Trust for the benefit of the beneficiaries of the Creditors' Trust as (a) a transfer of the Creditors' Trust Assets directly to the beneficiaries of the Creditors' Trust followed by (b) the transfer by the beneficiaries of the Creditors' Trust to the Creditors' Trust of the Creditors' Trust Assets. The Creditors' Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The beneficiaries of the Creditors' Trust will be treated as the grantors and owners of their Pro Rata portion of the Creditors' Trust Assets for federal income tax purposes.

8.3     The Creditors' Trustee

The Creditors' Trustee shall be John D. ("Danny") Mullen. The Creditors' Trustee shall retain and have all the rights, powers and duties necessary to carry out his responsibilities under this Plan and the Creditors' Trust Agreement, and as otherwise provided in the Sale Order and/or the Confirmation Order. However, the Creditors' Trustee shall not be obligated to review, investigate, evaluate, analyze, or object to professional fee applications or Professional Fee Claims relating to services rendered and expenses incurred before the Effective Date. The Creditors' Trustee shall be the exclusive trustee of the Creditors' Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Matters relating to the appointment, removal and resignation of the Creditors' Trustee and the appointment of any successor Creditors' Trustee shall be set forth in the Creditors' Trust Agreement. The Creditors' Trustee shall be required to perform his or her duties as set forth in this Plan and the Creditors' Trust Agreement.

8.4     Retention of Professionals

The Creditors' Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Creditors' Trustee, are necessary to assist the Creditors' Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Creditors' Trust upon the monthly submission of statements to the Creditors' Trustee. The payment of the reasonable fees and expenses of the Creditors' Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except as otherwise provided in this Plan. Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Creditors' Trustee on a special counsel basis, and former employees of the Debtors shall be eligible for retention by the Creditors' Trust and Creditors' Trustee.

The reasonable fees and expenses incurred in connection with services performed by the Creditors' Trust relating to the administration and/or liquidation of General Unsecured Claims

and/or Avoidance Actions shall be paid by the Creditors' Trust from the Creditors' Trust Assets and amounts otherwise distributable to Holders of Allowed General Unsecured Claims.

8.5     Compensation of the Creditors' Trustee

The Creditors' Trustee's compensation, on a post-Effective Date basis, shall be disclosed in the Plan Supplement, which shall be filed no later than 10 days prior to the Confirmation Hearing. The payment of the fees of the Creditors' Trustee and any professionals retained by the Creditors' Trustee shall be made by the Creditors' Trust in accordance with the provisions of this Plan and the Creditors' Trust Agreement.

8.6     Creditors' Trust Expenses

All costs, expenses and obligations incurred by the Creditors' Trustee in administering this Plan and the Creditors' Trust, or in any manner connected, incidental or related thereto shall come from amounts distributable to the appropriate beneficiaries for whose benefit such expenses or obligations were incurred.

8.7     Liability; Indemnification

The Creditors' Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Creditors' Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud. The Creditors' Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals. Notwithstanding such authority, the Creditors' Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Creditors' Trustee unless such determination is based on willful misconduct, gross negligence or fraud. The Creditors' Trust shall indemnify and hold harmless the Creditors' Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Creditors' Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

8.8     Termination

The duties, responsibilities and powers of the Creditors' Trustee shall terminate after all Creditors' Trust Assets have been fully resolved, abandoned or liquidated and the Creditors' Trust Assets have been distributed in accordance with this Plan and the Creditors' Trust Agreement; provided, however, except in the circumstances set forth below, the Creditors' Trust shall terminate no later than three years after the Effective Date. If warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court upon a finding that an extension is necessary for the purpose of the Creditors' Trust, the term of the Creditors' Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Creditors' Trustee receives a favorable ruling from the Internal Revenue

23

Service that any further extension would not adversely affect the status of the Creditors' Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Creditors' Trust. Upon the occurrence of the termination of the Creditors' Trust, the Creditors' Trustee shall File with the Bankruptcy Court, a report thereof, seeking discharge of the Creditors' Trustee.

8.9 Creditors' Trust Authority

8.9.1 **Compromise of Claims.** The Creditors' Trust shall have full authority to compromise Claims or settle interests without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, and the Creditors' Trust Agreement.

8.9.2 **Payment of Professional Fees.** Without limiting the generality of the foregoing, and except as otherwise set forth in this Plan, the Creditors' Trust may, without application to or approval by the Bankruptcy Court, pay fees that it incurs after the Effective Date for professional fees and expenses.

8.9.3 **Request for Expedited Tax Review.** The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code § 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

8.9.4 **Access and Preservation of Records.** The Creditors' Trustee shall be granted access to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Purchaser and the Purchaser shall preserve records, all to the extent and on the terms of the Purchase and Sale Agreement.

**ARTICLE IX**
**PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY**

9.1 Timing and Delivery of Distributions

The Plan and Confirmation Order shall govern distributions from the Creditors' Trustee and shall include and be consistent with the terms of the other sections of this ARTICLE IX and other relevant provisions of the Plan, including, without limitation, ARTICLE III of the Plan.

9.2 Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the sole discretion of the Creditors' Trustee.

#4930967.3#4930967.4

DRAFT

### 9.3    Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Creditors' Trustee shall hold any amounts returned in respect of such non-negotiated checks. The Holder of an Allowed Claim with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Creditors' Trustee. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim is Allowed, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be "Unclaimed Property," and all Claims in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Creditors' Trustee.

### 9.4    Compliance with Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Creditors' Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Creditors' Trustee within thirty (30) days from the date of such request, the Creditors' Trustee may, at its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

### 9.5    De Minimis Distributions

No Cash payment of less than five ($5.00) dollars shall be made to the Holder of any Claim on account of its Allowed Claim.

### 9.6    Distribution Record Date

As of the close of business on the fifth (5th) Business Day following the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims will be closed and, for purposes of the Plan, there shall be no further changes in the record holders of such Claims. The Creditors' Trustee shall have no obligation to recognize the transfer of any Claims occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

#4930967.3#4930967.4

# ARTICLE X
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

10.1    Assumption/Rejection

On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan; (b) is the subject of a motion to assume Filed on or before the Confirmation Date; or (c) has been previously rejected or assumed.

10.2    Cure Amounts

The Bidding Procedures and Sale Motion contemplate that numerous executory contracts and unexpired leases will be assumed and assigned to the Purchaser pursuant to the Sale Order or the Confirmation Order.  In accordance with the Bidding Procedures, as part of the Plan Supplement, the Debtors will File a list of such executory contracts and unexpired leases along with the proposed Cure Costs.  Any party taking exception to the proposed Cure Costs shall, in accordance with the Bidding Procedures Order, File a detailed statement setting forth its reason. The Bankruptcy Court shall determine the proper amount of the Cure Costs at the Confirmation Hearing.  The fixing of the Cure Costs shall constitute the Debtor's right to assign the executory contract and unexpired lease to the Purchaser under Bankruptcy Code sections 365(c) and (f).

10.3    Assumed Executory Contracts and Unexpired Leases

Each executory contract and unexpired lease that is assumed will include (a) all amendments, modifications, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease; and (b) with respect to any executory contract or unexpired lease that relates to the use, ability to acquire, or occupancy of real property, all executory contracts or unexpired leases and other rights appurtenant to the property, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other equity interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements have been rejected pursuant to an order of the Bankruptcy Court or are the subject of a motion to reject Filed on or before the Confirmation Date.

Amendments, modifications, supplements, and restatements to prepetition executory contracts and unexpired leases that have been executed by the Debtors during their Chapter 11 Cases shall not be deemed to alter the prepetition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

10.4    Insurance Policies

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant

26

to the Plan and shall be assumed by the Creditors' Trustee.  The Creditors' Trustee may purchase extensions or tails on any insurance policy.

10.5    Pass-through

Except as otherwise provided in the Plan, any rights or arrangements necessary or useful to the administration of the Creditors' Trust but not otherwise addressed as a Claim or Interest, and other executory contracts not assumable under Bankruptcy Code section 365(c), shall, in the absence of any other treatment under the Plan, the Purchase and Sale Agreement or Confirmation Order, be passed through the Chapter 11 Cases for the benefit of the Creditors' Trustee and the counterparty unaltered and unaffected by the bankruptcy Filings or Chapter 11 Cases.

10.6    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Debtors' executory contracts and unexpired leases pursuant to the Plan or otherwise must be Filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any proofs of Claim arising from the rejection of the Debtors' executory contracts or unexpired leases that are not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor or the Creditors' Trustee without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the executory contract or unexpired lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' executory contracts and unexpired leases shall be classified as General Unsecured Claims for the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; provided however, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any Collateral to secure obligations under such rejected executory contract or unexpired lease, the Allowed Claim for rejection damages shall be treated as an Other Secured Claim to the extent of the value of such Holder's interest in the Collateral, with the deficiency, if any, treated as a General Unsecured Claim.

10.7    Reservation of Rights

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that any Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Creditors' Trustee, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

10.8    Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

#4930967.3#4930967.4

DRAFT

# ARTICLE XI
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

11.1     Objections to Claims

    11.1.1     Authority

The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File objections to all Claims, and to withdraw any objections to such Claims that they File.  The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Claims.  The Debtors or the Creditors' Trustee, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Claims.  From and after the Effective Date, the Creditors' Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  The Creditors' Trustee also shall have the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law.

Notwithstanding the foregoing paragraph, if CL III is the Purchaser, then CL III shall have the exclusive authority to File objections to all Senior Secured Claims, and to withdraw any objections to such Claims that they File.  If CL III is the Purchaser, then CL III shall have the exclusive authority to settle, compromise, or litigate to judgment any objections to such Senior Secured Claims.  If CL III is the Purchaser, then CL III, on and after the Effective Date, shall have the exclusive authority to File, settle, compromise, withdraw, or litigate to judgment any objections to other Senior Secured Claims.  From and after the Effective Date, if CL III is the Purchaser, then CL III may settle or compromise any Disputed Claim that is a Senior Secured Claim, without approval of the Bankruptcy Court.  If CL III is the Purchaser, then CL III also shall have the right to resolve any Disputed Claim that is a Senior Secured Claims outside the Bankruptcy Court under applicable governing law.

    11.1.2     Objection Deadline

As soon as practicable, but no later than the Claims Objection Deadline, the Creditors' Trustee may File objections with the Bankruptcy Court and serve such objections on the Creditors holding the Claims to which such objections are made.  Nothing contained herein, however, shall limit the right of the Creditors' Trustee to object to Claims, if any, Filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the applicable Debtor or the Creditors' Trustee, as the case may be, without notice or hearing.

For the avoidance of doubt, no Claim is or shall be deemed Allowed until the later of the Claims Objection Deadline or the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court.

11.2    Estimation of Claims

The Creditors' Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Creditors' Trustee or any Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Creditors' Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

11.3    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, unless otherwise agreed to by the Creditors' Trustee in writing, no payments or distributions shall be made with respect to any disputed portion of a Claim unless and until all objections to such disputed portion of the Claim have been settled or withdrawn or have been determined by Final Order.  The Creditors' Trustee shall pay the undisputed portion of a Claim in accordance with the Plan, Confirmation Order and orders of the Court.

11.4    Distributions After Allowance

The Creditors' Trustee shall make payments and distributions from a distribution reserve to each Holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such Holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Creditors' Trustee shall distribute to the Holder of such Claim the distribution (if any) that would have been made to such Holder on the Distribution Date had such Allowed Claim been allowed on the Distribution Date.  After a Disputed Claim is Allowed or otherwise resolved, the excess Cash or other property that was reserved on account of such Disputed Claim, if any, shall become property of the Creditors' Trust for the benefit of other Allowed Claims of the Class or Classes for which the distribution reserve was created.

11.5    Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall

preclude the Creditors' Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

11.6    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Creditors' Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Creditors' Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes with respect to such distribution, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. The Creditors' Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise provided in the Plan, distributions in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

The Creditors' Trustee, will in good faith value the Creditors' Trust Assets. The Creditors' Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Creditors' Trust (including, without limitation, the Debtors, the Creditors' Trustee, and the beneficiaries of the Creditors' Trust) for all federal income tax purposes.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

12.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.1.1    The Bankruptcy Court shall have entered an order, in form and substance reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement, and such order shall have become a Final Order.

12.1.2    The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall (i) be in form and substance reasonably acceptable to the Debtors and the Purchaser; and (ii) include a finding of fact that the Debtors, and their respective present members, officers, directors, managers, employees, advisors, attorneys and agents, acted in good faith within the meaning of and with respect to all of the actions described in Bankruptcy Code section

#4930967.3#4930967.4

1125(e) and are therefore not liable for the violation of any applicable law, rule, or regulation governing such actions.

12.1.3    If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Bankruptcy Court shall have entered the Sale Order, which approves the Purchase and Sale Agreement, in form and substance reasonably acceptable to the Debtors and the Purchaser.

12.2    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.4 below:

12.2.1    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser and such order shall have become a Final Order.

12.2.2    If the Purchaser purchases the Acquired Assets pursuant to a Sale Order, the Sale Order shall have been entered in form and substance reasonably acceptable to the Debtors and the Purchaser, and such order shall have become a Final Order.

12.2.3    Purchaser shall have provided written evidence satisfactory to the Debtors that simultaneous with the occurrence of the Effective Date, Purchaser is prepared to close under the Purchase and Sale Agreement, and the Closing shall have occurred pursuant to the Purchase and Sale Agreement.

12.3    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

12.4    Waiver of Conditions

Each of the conditions set forth in Section 12.1 or Section 12.2 hereof may be waived in whole or in part by the Debtors or Purchaser,  as applicable.  The failure to satisfy or waive any condition to Confirmation or the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

12.5    Revocation, Withdrawal, or Non-consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or substantial consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null

and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for Consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XIII
## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan or any exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date; provided, however, that where the Plan requires a document to be acceptable to, consented to, agreed to or otherwise satisfactory to the Purchaser, the Debtors may not modify such document without the written consent of the Purchaser, as applicable.  After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not (i) materially adversely affect the treatment of Holders of Claims or Interests under the Plan or (ii) modify any provision of the Purchase and Sale Agreement or any of the Purchaser's rights thereunder; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XIV
## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), 1103 or 1129(a)(4); provided, however, that from and after the Effective Date, the payment of fees and expenses of professionals retained by the Debtors shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which one or more of the Debtors are

32

parties or with respect to which one or more of the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(G)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, Consummation, or enforcement of the Plan or the Confirmation Order;

(I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, the Purchase and Sale Agreement, or any other contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan;

(L)     Recover all assets of the Debtors and property of the Estates, wherever located;

(M)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)     Hear and determine all disputes involving the existence, nature, or scope of Debtors' discharge or any releases granted in the Plan;

(O)    Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)    Enter an order or final decree concluding or closing the Chapter 11 Cases; and

(Q)    Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

16.1    Bar Dates for Certain Actions

16.1.1    Administrative Claims; Substantial Contribution Claims

The Confirmation Order will establish a Bar Date for Filing of all Administrative Claims, including substantial contribution claims (but not including Professional Fee Claims, claims for the expenses of the members of the Committee and the types of Administrative Claims outlined in section 16.1.2, 16.1.3, or 16.1.4 below), which date will be forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").  Holders of asserted Administrative Claims, other than Professional Fee Claims, claims for U.S. Trustee fees under 28 U.S.C. §1930, administrative tax claims and administrative ordinary course liabilities described in section 16.1.2 or 16.1.3 below, must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so.  A notice prepared by the Debtors will set forth such date and constitute notice of this Administrative Claims Bar Date. The Creditors' Trustee shall have forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

16.1.2    Administrative Ordinary Course Liabilities

34

Holders of Administrative Claims that are based on liabilities incurred and paid by any Debtor in the ordinary course of the applicable Debtor's business (other than Claims of governmental units for taxes and for interest and/or penalties related to such taxes) on and after the Petition Date shall not be required to File any request for payment of such Administrative Claims.  For the avoidance of doubt, Holders of Administrative Claims pursuant to Bankruptcy Code section 503(b)(9) shall be required to File a proof of Administrative Claim on or before the Administrative Claims Bar Date.

### 16.1.3    Administrative Tax Claims

All requests for payment of Administrative Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date, and for which no bar date has otherwise been previously established, must be Filed and served on the Creditors' Trustee and any other party specifically requesting a copy in writing on or before the later of (a) thirty (30) days following the Effective Date; and (b) one hundred and twenty (120) days following the Filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any such Claim that is required to File a request for payment of such taxes and does not File and properly serve such a claim by the applicable bar date shall be forever barred from asserting any such claim against the Debtors, the Creditors' Trustee or its property, regardless of whether any such Claim is deemed to arise prior to, on, or subsequent to the Effective Date.  Any interested party desiring to object to an Administrative Claim for taxes must File and serve its objection on counsel to the Debtors and the relevant taxing authority no later than ninety (90) days after the taxing authority Files and serves its application.

### 16.1.4    Professional Fee Claims

All final requests for compensation or reimbursement of professional fees pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b) or 1103 for services rendered to or on behalf of the applicable Debtors or the Committee prior to the Effective Date (other than substantial contribution claims under Bankruptcy Code section 503(b)(4)) must be Filed and served on the Creditors' Trustee and their counsel no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be Filed and served on the Debtors and their counsel and the requesting Professional or other entity no later than forty-five (45) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

### 16.2    <u>Payment of Statutory Fees</u>

On or before the Effective Date, the Debtors shall have paid in full, in Cash (including by check or wire transfer), in U.S. dollars, all fees payable pursuant to section 1930 of title 28 of the United States Code, in the amount determined by the Bankruptcy Court at the Confirmation Hearing.

DRAFT

Each of the Debtors shall be responsible for timely payment of United States Trustee quarterly fees incurred pre-confirmation and these fees will be paid in full on the Effective Date of the Plan. Fees shall be paid on all disbursements made by or on behalf of the Debtors to creditors, including and not limited to funds paid in the normal course of business, funds paid at closing of collateral sales, and funds attributed to creditors on successful sales pursuant to credit bids. Post-confirmation, the Debtors, and post-Effective Date, the Creditors' Trustee, shall be responsible for the payment of accruing United States Trustee quarterly fees for each of the Debtors until each case is closed by the Court. The Debtors and the Creditors' Trustee shall file with the Court and serve on the United States Trustee quarterly financial reports for each quarter (or portion thereof) that any of the cases remain open, in a format prescribed by the United States Trustee.

16.3    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

16.4    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan, including any Holder of a Claim, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

16.5    Releases

16.5.1    **Releases of and by Debtors and Estates**.

**On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, CL III, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus, in their individual capacities; (iv) the Committee; (v) legal, financial and restructuring advisors of the Debtors and the Committee; (vi) the Creditors' Trustee, and (vivii) the Related Persons of each of the foregoing, from any and all**

Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that CL III, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

On and after the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Creditors' Trustee, on its own behalf and as a representative of its respective Estate, and each of its respective Related Persons, shall, and shall be deemed to have, conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) CL III; (ii) CL III's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal, financial and restructuring advisors of CL III; and (iv) the Related Parties for each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) that the Debtors or Creditors' Trustee, and each of its respective Related Persons, or any Entity claiming by or through such parties now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, in connection with or related to any of the Debtors, the Creditors' Trustee or their respective assets, property and Estates, the Chapter 11 Cases or this Plan, the Purchase and Sale Agreement, or the Disclosure Statement.

16.5.2    **Release of and by Purchaser.**  On and after the Effective Date, the Purchaser shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each of (i) the Debtors; (ii) the Debtors' current and former directors, managers, officers, employees, attorneys, and other representatives, (including Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus) in their capacities as such; (iii) Joseph Warnock, Jacob Warnock, David Henderson, Randal Winfrey, and Ryen Burrus in their individual capacities (iv) legal, financial and restructuring advisors of the

#4930967.3#4930967.4

**Debtors; (v) the Creditors' Trustee, and (vi) the Related Persons of each of the foregoing, from any and all Claims, interest, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, including any derivative capital claims asserted or assertable against the Debtors, their estates, and the Creditors' Trustee whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise that the Purchaser, or any Entity claiming by or through the Purchaser now has or hereafter can, shall or may have, or otherwise would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, save and except any Claims and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.**

**On or after the Effective Date, the Debtors, on behalf of themselves and their respective subsidiaries and affiliates (including the Creditors' Trustee) shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released (i) the Purchaser, (ii) the Purchaser's current and former directors, managers, officers, employees, attorneys, and other representatives, in their capacities as such; (iii) legal and financial advisors of the Purchaser, and (iv) the Related Persons of each of the foregoing, from any and all Claims, interests, obligations, rights, suits, damages, losses, costs and expenses, actions, Causes of Action, remedies, and liabilities of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, suspected or unsuspected, matured or unmatured, fixed or contingent, in law, equity, or otherwise, that the Debtors' their subsidiaries and affiliates (including the Creditors' Trustee) or any Entity claiming by or through the Debtors or their subsidiaries and affiliates ever had, now has or hereafter can, shall or may have, or otherwise be legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, save and except any Claims arising after the Closing and/or continuing obligations under, in connection with or relating to the Purchase and Sale Agreement, the Sale Order, and/or the Confirmation Order.**

16.5.3    **No Waiver.**  Notwithstanding anything to the contrary contained in this Section 16.5, the releases set forth in this Section 16.5 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Creditors' Trustee, or the Purchaser to enforce, sue on, settle or compromise the rights, claims and other matters expressly retained by the Creditors' Trustee or the Purchaser pursuant to this Plan or the Purchase and Sale Agreement and related orders.

16.6    Bankruptcy Rule 3016 Compliance.

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

#4930967.3#4930967.4

16.7    **Exculpation**

~~The Exculpated Persons~~ **The Debtors and their Professionals** SHALL NOT BE LIABLE FOR ANY cause of action arising in connection with or out of the ~~administration of the Chapter 11 Cases, the planning of the Chapter 11 Cases, the formulation, negotiation or implementation of the Plan, the~~ good faith solicitation of acceptances of the Plan in accordance with Bankruptcy Code 1125(e)~~, pursuit of Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the Acquired Property to be sold pursuant to~~ the Purchase and Sale Agreement ~~or to be distributed under the Plan, except for gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court~~.  All Holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against ~~any Exculpated Person as to which such Exculpated Person has~~ the Debtors or their Professionals as to any Claim or cause of action as to which the Debtors and their professionals have been exculpated ~~from liability~~ pursuant to the preceding sentence.

16.8    Permanent Injunction

Except as otherwise expressly provided in this Plan, the Purchase and Sale Agreement, and the Confirmation Order, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Creditors' Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (b) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (d) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Creditors' Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.  The foregoing injunction will extend to successors of the Debtors and Creditors' Trust and their respective property and interests in the property.

16.9    Term of Injunctions or Stay

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

16.10    Integral to Plan

Each of the injunctions provided in this Plan is an integral part of the Plan and is essential to its implementation.  Each of the other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

16.11    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their respective successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in these Chapter 11 Cases.

16.12    Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Creditors' Trustee shall be (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtors:

WBH Energy, LP *et al*.
Attention: Joseph Warnock
P.O. Box 302380
Austin, TX 78703
Phone:  (512) 330-9502
Fax:  (512) 330-9504

With a copy to (which shall not constitute notice):

William A. (Trey) Wood, III
Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, TX 77002
Phone:  (713) 223-2300
Fax:  (713) 221-1212

If to the Creditors' Trustee

John D. Mullen
5014 Spring Hill Dr., Ste. 300
Spring, TX  77396
Phone:  (713) 408-4478

With a copy to (which shall not constitute notice)

Berry Spears
Locke Lord LLP
600 Congress Ave., Suite 2200
Austin, TX  78701
Phone:  (512) 305-4700
Fax:  (512) 305-4800

-and-

Philip G. Eisenberg
Locke Lord LLP
600 Travis Street, Suite 2800
Houston, TX  77002
Phone:  (713) 226-1304
Fax:  (713) 223-3717

16.13   Setoffs

Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including Bankruptcy Code section 553), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, each Debtor or the Creditors' Trustee may setoff against any Allowed Claim or Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Interest (before such distribution is made), any Claims, rights, and Causes of Action of any nature that such Debtor or the Creditors' Trustee, as applicable, may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by such Debtor or the Creditors' Trustee of any such Claims, rights, and Causes of Action that such Debtor may possess against such Holder.  **In no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any Claim, right, or cause of action of the Debtor or the Creditors' Trustee, as applicable, unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

16.14   Recoupment

Except as provided in the Plan, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim, right, or cause of action of the Debtors or the Creditors' Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 16.15    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Debtor and its successors and assigns.  For the avoidance of doubt, as provided in section 7.2 of this Plan, the Sale Order shall provide that all Liens, Claims, encumbrances or other interests shall attach to the proceeds of the sale.

### 16.16    Request for Expedited Tax Review

The Creditors' Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 16.17    Dissolution of Committee

On the Effective Date, the Committee shall dissolve and the members of the Committee shall be released and discharged from all authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases.

### 16.18    No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

### 16.19    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors; provided, however, that corporate governance matters relating to the Debtors or the Creditors' Trustee, as applicable, not organized under Texas law shall be governed by the laws of the state of organization of such Debtor.

## ARTICLE XVII
## CONFIRMATION REQUEST

The Debtors request Confirmation of the Plan under Bankruptcy Code section 1129.  If any Impaired Class does not accept the Plan pursuant to Bankruptcy Code section 1126, the

Debtors request Confirmation pursuant to Bankruptcy Code section 1129(b).  In that event, the Debtors reserve the right to modify the Plan to the extent (if any) that Confirmation of the Plan under Bankruptcy Code section 1129(b) requires modification.

Dated:  July 24, 2015

**WBH ENERGY, LP**

By:      */s/ Joseph S. Warnock*
Name:      Joseph S. Warnock
Title:      Vice President

**WBH ENERGY PARTNERS LLC**

By:      */s/ Joseph S. Warnock*
Name:      Joseph S. Warnock
Title:      Vice President

**WBH ENERGY GP, LLC**

By:      */s/ Joseph S. Warnock*
Name:      Joseph S. Warnock
Title:      Vice President

Document comparison by Workshare Compare on Wednesday, August 19, 2015 10:45:23 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DM/4930967/3 |
| Description | DM-#4930967-v3-WBH_-_First_Amended_Plan |
| Document 2 ID | PowerDocs://DM/4930967/4 |
| Description | DM-#4930967-v4-WBH_-_First_Amended_Plan |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 64 |
| Deletions | 71 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 143 |

EXHIBIT C

# CREDITORS' TRUST AGREEMENT

This Creditors' Trust Agreement (the "Trust Agreement"), dated as of [August 18, 2015] by and among WBH Energy, LP, WBH Energy Partners LLC and WBH Energy Partners GP, LLC (each a "Debtor," and collectively, the "Debtors") and John D. ("Danny") Mullen (the "Trustee") is executed in connection with the First Amended Joint Chapter 11 Plan of Reorganization for the Debtors and Debtors-in-Possession (as modified through August 20, 2015) dated July 24, 2015 (as amended, modified or supplemented from time to time, the "Plan"). Capitalized terms used in this Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

WITNESSETH

WHEREAS, the Debtors commenced chapter 11 cases (collectively, the "Cases") by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court");

WHEREAS, on July 24, 2015, the Debtors filed the Plan;

WHEREAS, on [DATE], the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

WHEREAS, the Plan provides for the creation of a post-confirmation creditors' trust (the "Creditors' Trust") to hold and administer the Creditors' Trust Assets (defined below), including but not limited to the Class 7 Contributed Amount, Causes of Action, and the proceeds of the foregoing, to distribute the assets or proceeds of such assets in accordance with the terms of the Plan to secured creditors with allowed claims against specific assets and to the Holders of Allowed General Unsecured Claims (the "Trust Beneficiaries"), and to take all actions necessary to wind down and close the Estates, all in accordance with the terms of this Trust Agreement and the Plan;

WHEREAS, "Creditors' Trust Assets" means (i) all Avoidance Actions and other Causes of Action, (ii) the Class 7 Contributed Amount, (iii) Other Assets, and (iv) the proceeds or right to proceeds of each of the foregoing (including any proceeds of any D&O Insurance), owned as of the Effective Date or acquired thereafter pursuant to the terms of the Plan. This Trust Agreement is executed to establish the Creditors' Trust and to facilitate the Plan;

WHEREAS, the Creditors' Trust is established for the sole purpose of liquidating the Creditors' Trust Assets for the benefit of the Creditors' Trust Beneficiaries (including holders of Disputed Claims that become Allowed Claims) in accordance with Treasury Regulation Section 301.770l-4(d), with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors' Trust including the wind down and closure of the Estates;

WHEREAS, the Creditors' Trust is intended to qualify as a Creditors' Trust within the meaning of Treasury Regulation Section 301.7701-4(d) for United States federal income tax purposes;

1

WHEREAS, the respective powers, authority, responsibilities and duties of the Trustee shall be governed by this Trust Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and any obligations under Texas law;

WHEREAS, this Trust Agreement is intended to supplement, complement and implement the Plan; provided, however, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Trust Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Trustee agree as follows:

## ARTICLE 1
## ESTABLISHMENT OF THE CREDITORS' TRUST

1.1     <u>Establishment of Creditors' Trust</u>.  John D. ("Danny") Mullen hereby accepts his appointment as Trustee. Pursuant to the Plan, the Debtors and the Trustee hereby establish the Creditors' Trust on behalf of the Creditors' Trust Beneficiaries. The Trustee agrees to accept and hold the Creditors' Trust Assets in trust for the Creditors' Trust Beneficiaries subject to the terms of this Trust Agreement, and agrees to assume the role and duties of the Trustee as provided in this Agreement.

1.2     <u>Purpose of the Creditors' Trust</u>. The Creditors' Trust shall be established for the purpose of liquidating the Creditors' Trust Assets and taking all actions necessary to wind down and close the Estates, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Creditors' Trust Assets, make distributions, and not unduly prolong the duration of the Creditors' Trust. The Creditors' Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan.

1.3     <u>Transfer of Assets and Rights to the Trustee</u>.

(a)     Except as provided otherwise in the Plan, as of the Effective Date the Debtors hereby transfer, assign, convey and deliver to the Trustee, (i) all of their right, title, and interest in the Creditors' Trust Assets free and clear of any Lien or Claim in such property of any other Person or entity except as otherwise provided in the Plan or Confirmation Order, (ii) all of their rights with respect to the Creditors' Trust Assets, and (iii) the attorney-client privilege related to Claims and Causes of Action transferred to the Creditors' Trust, and the Trustee on behalf of the Creditors' Trust hereby assumes and agrees that all such Creditors' Trust Assets will be transferred to the Creditors' Trust free and clear of any and all liabilities except to the extent otherwise provided in the Plan or Confirmation Order.

(b)     After the Effective Date, the Purchaser, pursuant to the terms and conditions of the executed Purchase and Sale Agreement, agrees at the

2

reasonable request of the Trustee to execute and deliver, or otherwise make available for inspection, any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) of the Debtors.

1.4     Title to Creditors' Trust Assets.

(a)     The transfer of the Creditors' Trust Assets to the Creditors' Trust shall be made for the benefit of the Creditors' Trust Beneficiaries, whether the Claims of the Creditors' Trust Beneficiaries are Allowed on or after the Effective Date of the Plan. In this regard, the Creditors' Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Creditors' Trust Beneficiaries, and then by the Creditors' Trust Beneficiaries to the Creditors' Trust in exchange for beneficiary interests in the Creditors' Trust, which interests shall be distributed by the Trustee to the Creditors' Trust Beneficiaries in exchange for their Allowed Claims in accordance with the Plan and as set forth in Article 5 below. Upon the transfer of the Creditors' Trust Assets, the Trustee shall succeed to all of the Debtors' right, title and interest in and to the Creditors' Trust Assets and the Debtors will have no further interest in or with respect to the Creditors' Trust Assets or this Creditors' Trust.

(b)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Trustee, and the Creditors' Trust Beneficiaries) shall treat the transfer of Creditors' Trust Assets to the Creditors' Trust described in this Section 1.4 and in the Plan (and any subsequent transfers of Assets) as a transfer to the Creditors' Trust Beneficiaries followed by a deemed transfer by such Creditors' Trust Beneficiaries to the Creditors' Trust, and the beneficiaries of this Creditors' Trust shall be treated as the grantors and owners hereof.

1.5     Reliance.  The Trustee may rely upon the Debtors' filed schedules and statements of financial affairs and all other information provided by the Debtors or their representatives to the Trustee or the Committee concerning Claims filed against the Debtors and the Debtors' reconciliation, if any, and other documents supporting such reconciliation.

1.6     Valuation of Creditors' Trust Assets.  As reasonably determined from time to time by the Trustee in its good faith and reasonable judgment, valuation of the Creditors' Trust Assets transferred to the Creditors' Trust shall be used consistently by the Trustee and the Creditors' Trust Beneficiaries for all federal income tax purposes. The Trustee, Debtors and the Creditors' Trust Beneficiaries agree that (i) the value of the Causes of Action on the date of their transfer to the Creditors' Trust shall be zero dollars; and (ii) the transfer of the Causes of Action to the Creditors' Trust shall "close" the transaction for tax purposes as to the Debtors with respect to any subsequent receipt of proceeds by the Creditors' Trust in connection with the Causes of Action or investment earnings thereon.

3

    1.7   <u>Governance of the Creditors' Trust</u>. The Creditors' Trust shall be governed by the Trustee subject to the provisions set forth in this Trust Agreement and Texas law. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Creditors' Trust and not otherwise, except that the Trustee may deal with the Creditors' Trust Assets for its own account as provided herein. Subject to the terms and conditions of this Trust Agreement, the Trustee may delegate responsibility for discrete issues or decisions to third parties subject to continued oversight by the Trustee.

    1.8   <u>Appointment of the Trustee</u>. John D. ("Danny") Mullen is hereby selected by the Committee, pursuant to the terms of the Plan, as the Trustee. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of John D. ("Danny") Mullen, as Trustee who shall hold such position until his removal, resignation or death.

    1.9   <u>Bond</u>. The Trustee shall serve without bond.

    1.10   <u>Funding of the Creditors' Trust</u>. The Trustee may from time to time make withdrawals from the Creditors' Trust Assets in amounts and at times that the Trustee deems necessary or appropriate to fund any and all costs and expenses that the Trustee and the Creditors' Trust incur subsequent to the Effective Date in accordance with this Trust Agreement and the Plan.

**ARTICLE 2**
**THE TRUSTEE**

    2.1   <u>Role of the Trustee</u>. In furtherance of and consistent with the purpose of the Creditors' Trust and the Plan, the Trustee shall, for the benefit of the Creditors' Trust Beneficiaries and subject to the provisions set forth in this Trust Agreement and the Plan: (i) have the power and authority to hold, manage, and distribute the Creditors' Trust Assets; (ii) have the power and authority to hold, manage, and distribute the Cash or non-Cash Creditors' Trust Assets obtained through the exercise of his power and authority; and (iii) have the power and responsibility to take all actions necessary to wind down and close the Estates, file all required tax returns, and file and receive approval of a final report from the Bankruptcy Court, all as may be provided for in additional and further detail below. In all circumstances, the Trustee shall act in the best interests of all Creditors' Trust Beneficiaries of the Creditors' Trust and in furtherance of the purpose of the Creditors' Trust.

    2.2   <u>Authority of Trustee</u>. In connection with the administration of the Creditors' Trust, subject to and except as otherwise set forth in this Trust Agreement or the Plan, the Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Creditors' Trust. Without limiting, but subject to the foregoing, the Trustee, as applicable, shall be authorized, unless otherwise provided for in this Trust Agreement and subject to the limitations contained herein and in the Plan, to:

    1)   Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

4

2)      Hold legal title to any and all rights of the beneficiaries the Creditors' Trust in or arising from the Creditors' Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Creditors' Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein;

3)      Make Distributions contemplated under the Plan;

4)      Supervise and administer the reconciliation, resolution, settlement and payment of Claims and the Distributions to the Holders of Allowed Claims in accordance with the Plan;

5)      Enter into any agreement on behalf of the Creditors' Trust required by or consistent with the Plan and perform all of the obligations required of the Trustee under the Creditors' Trust Agreement or the Plan;

6)      Abandon any of the assets of the Creditors' Trust if the Trustee concludes that such assets are of no benefit to the Creditors;

7)      Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Creditors' Trust, including without limitation all state and federal Causes of Action or any other litigation, including Avoidance Actions, which constitute an asset of the Creditors' Trust;

8)      Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Cases;

9)      Act in the name of or in the place of the Creditors' Trust in any action before the United States Bankruptcy Court or any other judicial or administrative body;

10)      Protect and enforce the rights to the Creditors' Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

11)      Take actions and exercise remedies against any Person that owes money to the Creditors' Trust, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

5

12) Retain and pay such Creditors' Trust Professionals as the Trustee may select to assist the Trustee in its duties, on such terms as the Trustee deems appropriate, without Bankruptcy Court approval. The Trustee may commit the Creditors' Trust to and shall pay Creditors' Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel on a contingent basis. A law firm or professional shall not be disqualified from serving as a Creditors' Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Cases;

13) Retain and pay an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Creditors' Trust as the Trustee may deem appropriate, and to prepare and file any tax returns or informational returns for the Creditors' Trust as may be required, without Bankruptcy Court approval. The Trustee may commit the Creditors' Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred;

14) Retain and pay such third parties as the Trustee may deem necessary or appropriate to assist the Trustee in carrying out its powers and duties under this Trust Agreement. The Trustee may commit the Creditors' Trust to and shall pay all such Persons reasonable compensation for services rendered and expenses incurred, as well as commit the Creditors' Trust to indemnify any such parties in connection with the performance of services;

15) Assert or waive any privilege or defense on behalf of the Creditors' Trust or, with respect to the Creditors' Trust Assets, the Debtors as provided in the Trust Agreement or the Plan;

16) Compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Creditors' Trust as the Trustee shall deem advisable;

17) Avoid and recover transfers of the Debtors' property as may be permitted by the Bankruptcy Code or applicable state law;

18) Execute offsets and assert counterclaims against Claims as provided for in the Plan;

19) Compromise, settle or otherwise resolve all objections to any Claim filed in the amount of $25,000 or less without the approval of the Bankruptcy Court or further notice. For all Claims in excess of $25,000, the Trustee shall provide 10 days written notice of any proposed settlement. If no

6

objection is submitted to the Trustee within 10 days of the date of such notice, the Trustee may proceed with such settlement and may settle such Claim without approval of any other person;

20) Invest any moneys held as part of the Creditors' Trust, limited, however, to such investments that are consistent with the Creditors' Trust's status as a Creditors' Trust within the meaning of Treasury Regulations Section 301.7701-4(d);

21) Request any appropriate tax determination with respect to the Creditors' Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

22) May establish and maintain a website for the purpose of providing notice of Creditors' Trust activities in lieu of sending written notice to beneficiaries of Creditors' Trust, subject to providing notice of such website to such Holders;

23) Take or refrain from taking any and all actions the Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Creditors' Trust Assets or to carry out the purposes hereof;

24) Seek the examination of any Person, and subject to, the provisions of Bankruptcy Rule 2004;

25) Assume such other powers as may be vested in or assumed by the Creditors' Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Trust Agreement;

26) Establish and maintain such bank accounts as may be necessary or appropriate, draw checks on such bank accounts and perform such other necessary and appropriate duties with respect to such accounts, or designate individuals as signatories therefore, as the Trustee may direct and authorize;

27) Invest or reinvest Creditors' Trust Assets and to cause such investments, or any part thereof, to be registered and held in his name, as Trustee, or in the name of nominees;

28) File any required reports and pay to the office of the U.S. Trustee all applicable costs and fees incurred from and after the Effective Date and file a final report with the Bankruptcy Court and close the Cases;

29) Hold any Unclaimed Distribution or payment to the Holder of an Allowed Claim in accordance with the Plan and the Creditors' Trust Agreement;

7

30) Propose any amendment, modification or supplement to the Plan or the Creditors' Trust Agreement, provided that any such amendment, modification or supplement that is material requires approval of the Bankruptcy Court after notice and a hearing;

31) File dissolution/termination documents with the appropriate governmental agencies to dissolve the Creditors' Trust;

32) Receive, conserve and manage the Creditors' Trust Assets, and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1123(a)(5) or the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Trustee deems most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

33) Pay all taxes, if any, properly payable by the Creditors' Trust and/or the Debtors, make all tax withholdings and file tax returns and tax information returns with respect to the Creditors' Trust and the Debtors, and make tax elections by and on behalf of the Creditors' Trust;

34) Have the right but not the obligation to carry insurance coverage, including insurance to protect the Creditors' Trust and the Trustee against claims brought against the Trustee in such amounts as he deems advisable, including obtain insurance coverage with respect to real and personal property that may become Creditors' Trust Assets, if any;

35) Establish such reserves for taxes, assessments and other expenses of administration of the Creditors' Trust (including without limitation the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Creditors' Trust;

36) Borrow funds, incur or assume liabilities, and pledge Creditors' Trust Assets on behalf of the Creditors' Trust in furtherance of or in connection with the Trustee's or the Creditors' Trust's duties, powers, authority, and obligations under this Trust Agreement, and determine and satisfy any and all liabilities created, incurred or assumed by the Creditors' Trust;

37) Exercise such other powers and duties as are necessary or appropriate in the Trustee's discretion to accomplish the purposes of the Plan; and

2.3    <u>Limitation of Trustee's Authority</u>. The Trustee shall have no power or authority except as set forth in this Trust Agreement or in the Plan. Notwithstanding anything herein to the contrary, the Trustee shall not be authorized to engage in any trade or business, and shall only take such actions consistent with the orderly liquidation of the Creditors' Trust Assets as are required or contemplated by applicable law, the Plan and this Trust Agreement, and the actions necessary to wind down and close the Estates and dissolve the Creditors' Trust.

8

2.4     Books and Records. The Trustee shall maintain in respect of the Creditors' Trust books and records relating to the Creditors' Trust Assets (including the Causes of Action) and income of the Creditors' Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Creditors' Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Creditors' Trust. Except as otherwise may be expressly provided in this Trust Agreement, nothing in this Trust Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Creditors' Trust, or as a condition for managing any payment or distribution out of the Creditors' Trust Assets. Subject to all applicable privileges, the Creditors' Trust Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Trust Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice to the Trustee, to request a reasonable inspection of the books and records held by the Trustee; provided, however, that all costs associated with such inspection shall be paid in advance by such requesting Creditors' Trust Beneficiary; provided further, however, that if so requested, such Creditors' Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Trustee, and make such other arrangements as may be reasonably requested by the Trustee. One (1) year after dissolution of the Trust or the Debtor entities, the Trustee is authorized to destroy any and all books and records without further notice or Bankruptcy Court order, unless the Bankruptcy Court has ordered otherwise; provided, however, that the Trustee may move the Bankruptcy Court for entry of an order authorizing the destruction of any and all books and records prior to expiration of the one (1) year period following dissolution of the Trust.

2.5     Additional Powers. Except as otherwise set forth in this Trust Agreement or in the Plan, and subject to the Treasury Regulations governing creditors' trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Creditors' Trust Assets and over the protection, conservation and disposition thereof. No Person dealing with the Creditors' Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of the Creditors' Trust Assets.

2.6     Tax and Reporting Duties of the Trustee. The Trustee shall file returns for the Creditors' Trust as a grantor trust pursuant to Treasury Regulation 1.671-4(a) and comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, including, without limitation, any requirements imposed with respect to Distributions hereunder and under the Plan. The Trustee shall also file (or cause to be filed) any other statements, returns, reports or disclosures relating to the Creditors' Trust that are required by any governmental authority, and all such statements, returns, reports or disclosures shall be prepared in reasonable detail in accordance with all applicable laws.

2.7     Compliance with Laws. Any and all Distributions of Creditors' Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws. The Trustee may withhold a Distribution from any Creditors' Trust Beneficiary if the Trustee is unable, after reasonable investigation, to

9

obtain taxpayer identification information for any Creditors' Trust Beneficiary sufficient to permit the Trustee to make any Distribution in compliance with applicable law.

2.8     Confidentiality. The Trustee shall forever hold in strict confidence and not use for personal gain any material, non-public information of or pertaining to the Creditors' Trust Assets, or the operation of the Creditors' Trust and any other entity to which any of the Creditors' Trust Assets may at any time relate.

2.9     Compensation of the Trustee. The Trustee shall be entitled to reasonable compensation as set forth in Exhibit "A" attached hereto. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of the Trustee's compensation.

2.10    Costs and Expenses of the Trustee. All costs and expenses of the Trustee and Creditors' Trust shall be borne by and as a charge against the Creditors' Trust Assets.

2.11    Compensation Procedures. If applicable, fees and expenses of the Trustee and all professionals employed by him shall be paid on a monthly basis by the Trustee. Payment of the fees and expenses of the Trustee and his professionals shall be paid monthly from the Creditors' Trust Assets and may be made without approval of the Bankruptcy Court.

2.12    Reliance by Trustee.

(a)     the Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him/her to be genuine and to have been signed or presented by the proper party or parties including, but not limited to, the Claims Register maintained by the Clerk of the Bankruptcy Court in these Cases; and

(b)     Persons dealing with the Trustee shall look only to the Creditors' Trust Assets to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Trust Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Trustee are determined by a Final Order to be solely due to the Trustee's gross negligence, fraud or willful misconduct.

(c)     The Trustee may consult with and shall not be liable for any actions taken or suffered by the Trustee in accordance with the advice of such counsel or other professionals, and may also consult with and rely upon accountants and former consultants or advisors of the Debtors, the Committee, present and former officers, directors and consultants of the Debtors' affiliates or subsidiaries.

2.13    Investment and Safekeeping of Creditors' Trust Assets. The right and power of the Trustee to invest Creditors' Trust Assets, the proceeds thereof, or any income earned by the Creditors' Trust, shall be limited to the right and power that a Creditors' Trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the

10

Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.14    Authorization to Expend Creditors' Trust Assets. The Trustee may expend the Creditors' Trust Assets:  (a) as reasonably necessary to maintain the value of the Creditors' Trust Assets during liquidation: (b) to pay all costs and expenses of the Creditors' Trust (including, without limitation, any taxes imposed on the Creditors' Trust); and (c) to satisfy all other liabilities incurred or assumed by the Creditors' Trust (or to which the Creditors' Trust Assets are otherwise subject) in accordance with this Trust Agreement and the Plan.

2.15    Termination.  The duties, responsibilities and powers of the Trustee will terminate on the date the Creditors' Trust is dissolved under applicable law in accordance with the Plan, Article 7 of this Agreement, or by an order of the Bankruptcy Court.

2.16    Reliance.  Any Person dealing with the Trustee shall be fully protected in relying upon the Trustee' s certificate or instrument signed by the Trustee that he has authority to take any action under this Trust.

2.17    Trustee's Funds.  No provision of this Agreement or the Plan shall require the Trustee to expend or risk his own funds or otherwise incur any financial liability in the performance of any of his duties as Trustee hereunder or under the Plan, or in the exercise of any of its rights or powers, if the Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Trustee against such risk or liability is not reasonably assured to the Trustee.

## ARTICLE 3
## DISTRIBUTIONS

3.1    Distribution; Withholding. In the discretion of the Trustee, the Trustee shall distribute from the Creditors' Trust to each Creditors' Trust Beneficiary Cash on hand (including, without limitation, all net Cash income plus all net Cash proceeds from the liquidation of Creditors' Trust Assets, including, without limitation, as Cash for this purpose, all permissible investments described in Section 2.13) from the Creditors' Trust to the Creditors' Trust Beneficiaries, after making reserve for Disputed Claims as provided in Section 3.7 below; provided, however, that no distribution to an individual unit holder will be required unless such aggregate distribution would be at least $25.00.

3.2    Payment of Distributions. The Trustee shall apply all Creditors' Trust Assets to the Creditors' Trust Beneficiaries in respect of the Allowed Class A7, B7 and C7 Claims, or, in the case of Creditors' Trust Assets to which an allowed Secured Claim attaches, to such Allowed Secured Claim, until such Claim is paid in full in accordance with this Trust Agreement and the Plan. Notwithstanding anything to the contrary contained in this Article 3 or the Plan, prior to making any Distribution to the Creditors' Trust Beneficiaries, the Trustee may retain such amounts as deemed reasonably necessary to: (i) meet contingent liabilities and to maintain the value of the Creditors' Trust Assets of the Creditors' Trust during liquidation; and (ii) to pay reasonable estimated expenses. The Trustee may withhold from amounts distributable to any

11

Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

3.3 <u>Manner of Payment of Distributions</u>. All Distributions to Creditors' Trust Beneficiaries from the Creditors' Trust shall be payable only to Creditors' Trust Beneficiaries of Record and, as to each such Creditors' Trust Beneficiary within a Class then entitled to payment, in amounts equal to such Creditors' Trust Beneficiaries' Ratable Portion of the Distribution. All Distributions to Creditors' Trust Beneficiaries from the Creditors' Trust shall be payable in Cash by wire transfer, check or such other method as the Trustee deems appropriate under the circumstances. All payments of the costs and expenses of the Trust shall be paid in Cash by wire transfer, check or such other method as the Trustee deems appropriate under the circumstances.

3.4 <u>Distributions on Business Days</u>.  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

3.5 <u>Objections to Claims; Prosecution of Disputed Claims</u>.  The Trustee shall have the authority to compromise, settle or otherwise resolve all objections to any Claim filed in the amount of $25,000 or less without approval of the Bankruptcy Court or further notice. For all Claims in excess of $25,000, the Trustee shall provide 10 days written notice to Trust Beneficiaries of any proposed settlement. If no objection is submitted to the Trustee within 10 days of the date of such notice, the Trustee may proceed with such settlement and may settle such Claim without approval of any other person or entity. If a Trust Beneficiary objects to any proposed settlement, the Trustee shall either withdraw the settlement or bring the matter before the Bankruptcy Court for final resolution after notice and hearing. Unless otherwise ordered by the Bankruptcy Court, the Trustee shall file and serve all objections to Claims no later than the Claims Objection Deadline.

3.6 <u>Estimation of Claims</u>. The Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

3.7 <u>Reserve for Disputed Claims</u>.

(a) No Cash or other property shall be distributed on account of any Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, unless and until such Claim becomes an Allowed

Claim. The Trustee shall reserve and segregate Cash sufficient to pay holders of Disputed Claims their Ratable Portion, if any, of the Available Cash distributed to Creditors' Trust Beneficiaries. Any such Cash reserved shall be held and segregated by the Creditors' Trust for the benefit of holders of Disputed Claims. In the event a Disputed Claim is ultimately Allowed, the holder of such previously Disputed Claim shall, within sixty (60) days, be entitled to payment of such holder's Ratable Portion of any Distributions previously made.

(b)      The Trustee may make such determinations on Disputed Claims as are appropriate, and as further subject to any Bankruptcy Court authorization as may be requested. The Trustee is authorized, as often as desired but at least annually, to make determinations as to the valuation of the Disputed Claims.

(c)      Upon the Effective Date, any claims that are the subject of dispute shall be recognized in the Disputed Claims Reserve until Final Order of the Bankruptcy Court or other binding resolution of the status of the Disputed Claim.

3.8      <u>No Distribution in Excess of Allowed Amounts</u>.  Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, no Creditors' Trust Beneficiary shall receive Distributions of a value which exceed the amount of such Creditors' Trust Beneficiary's Allowed Claim as of the Petition Date, plus accrued interest provided for in the Plan, if any. The foregoing shall not limit holders of Disputed Claims from receiving Distributions on account of accrued interest as provided herein and in the Plan, if such holders' Disputed Claims become Allowed.

3.9      <u>De Minimis Distributions</u>.  Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, the Trustee shall not be required to distribute Cash to the holder of an Allowed Claim if the amount of cash to be distributed on account of such Claim is less than $25. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $25 shall have such Claim discharged and shall be forever barred from asserting any such Claim against the Debtors, the Creditors' Trust, or their respective property. Any Cash not distributed pursuant to this provision shall be the property of the Creditors' Trust, free of any restrictions thereon. The Trustee may, in his sole discretion, remit any Cash not distributed or otherwise utilized by the Creditors' Trust pursuant to this Section 3.9 of the Trust Agreement to the State of Texas and/or pay such Cash into the registry of the Bankruptcy Court.

3.10     <u>Setoffs</u>. The Trustee may set off against any Distributions to be made to a Creditors' Trust Beneficiary hereunder, claims, rights and Causes of Action of any nature that the Trustee may at any time hold against such Creditors' Trust Beneficiary; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Trustee of any such claim, right and Causes of Action that the Trustee may at any time possess against such Creditors' Trust Beneficiary.

13

3.11 <u>Disputed Payments</u>. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Trustee may, in lieu of making such Distribution to such Person, make reserve for such Distribution. Such Distribution shall be held in reserve until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

3.12 <u>Unclaimed Distributions</u>.

(a) Any Unclaimed Distributions shall be held and reserved by the Creditors' Trust for the benefit of the Creditors' Trust Beneficiaries entitled thereto under the terms of this Trust Agreement and the Plan. All such Unclaimed Distributions shall be held for a period of sixty (60) days following the filing of the applicable Notice of Distribution and during such period shall be released from the Creditors' Trust and delivered to the Creditors' Trust Beneficiaries entitled thereto only upon presentation of proper proof by such Creditors' Trust Beneficiaries of such entitlement. At the end of sixty (60) days following the filing of the relevant Notice of Distribution of any Unclaimed Distributions, the Creditors' Trust Beneficiaries theretofore entitled to such Unclaimed Distributions shall cease to be entitled thereto and the Unclaimed Distributions for each such Creditors' Trust Beneficiary shall then be distributed on the succeeding Payment Date on a Pro Rata basis to the Creditors' Trust Beneficiaries who have received and have claimed Distributions and who are otherwise entitled to further Distributions under Sections 3.2 and 3.9, and if no such Creditors' Trust Beneficiaries then exist, such Unclaimed Distributions shall be excess Distributions to be distributed in accordance with Section 3.8 of this Agreement.

(b) The Trustee may choose to file, or cause to be filed any tax or information return. All Cash held shall be invested in accordance with Section 2.13 hereof and section 345 of the Bankruptcy Code, as modified by the relevant Orders of the Court for investments made by the Debtors during the Cases.

3.13 <u>Uncashed Checks</u>. Checks issued in respect of a Distribution will be null and void if not negotiated within ninety (90) days after the date of issuance. Distributions with respect to such un-negotiated checks shall be treated as an Unclaimed Distribution and will revert to the Creditors' Trust for distribution in accordance with the Plan and Trust Agreement, and payment to such Holder with respect to such un-negotiated check shall be discharged.

3.14 <u>Allocation of Tax Items</u>.

(a) Unless otherwise required by applicable tax law, items of income, gain, loss and deduction recognized or incurred by the Creditors' Trust and the amount of distributions received by the Creditors' Trust shall be allocated Pro Rata among the Creditors' Trust Beneficiaries who are entitled to

14

receive Distributions in the tax year in accordance with the priorities set forth in Section 3.2 hereof.

(b)  Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Trustee shall:

(i)  treat all Creditors' Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

(ii)  on the last day of each calendar year, to the extent there is a reserve for Disputed Claims on that date, treat as taxable income or loss of this separate trust, the portion of the annual taxable income or loss of the Creditors' Trust that would have been allocated to the holders of such Disputed Claims had such claims been Allowed on the Effective Date;

(iii)  treat as a distribution from this separate trust any increased amounts distributed by the Creditors' Trust as a result of any Disputed Claim resolved earlier in the taxable year; and

(iv)  to the extent permitted by applicable law, report consistently for state and local income tax purposes.

# ARTICLE 4
## SUCCESSOR TRUSTEE

4.1  <u>Removal of Trustee</u>.  The Trustee may be removed, with cause, by the Bankruptcy Court upon motion of a Trust Beneficiary.  Such removal shall become effective on the date specified by the Bankruptcy Court.  In the event such removal occurs, a notice of the identity of the successor trustee shall be filed with the Bankruptcy Court and served on the Creditors' Trust Beneficiaries.

4.2  <u>Resignation of Trustee</u>. The Trustee may resign by filing written notice thereof with the Bankruptcy Court. Such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing of such notice, or (ii) the appointment of a successor and the acceptance by such successor of such appointment.

4.3  <u>Appointment of Successor Trustee upon Removal, Resignation, or Death</u>.  If the Trustee is removed pursuant to Section 4.1, resigns pursuant to Section 4.2, or dies, the Bankruptcy Court shall appoint a successor Trustee. Any successor Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Trustee.

15

4.4     Acceptance of Appointment by Successor Trustee. Any successor Trustee appointed pursuant to this Article 4 shall execute an instrument accepting such appointment as the Trustee under this Trust Agreement and shall file and maintain such acceptance with the books and records of the Creditors' Trust. Upon acceptance of such appointment as aforesaid, such successor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Creditors' Trust with like effect as if originally named herein; provided, however, that a removed or resigning Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Creditors' Trust all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

## ARTICLE 5
## EXCULPATION AND INDEMNIFICATION

5.1     Exculpation.

(a)     From and after the Effective Date, the Trustee and his respective professionals, non-professionals, employees Affiliates and representatives (the "Protected Parties"), shall be and hereby are exculpated by all Persons and entities, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Trust Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud.

(b)     No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Protected Parties, for making payments in accordance with the Plan or this Trust Agreement or for implementing the provisions of the Plan or this Trust Agreement. Any act taken or not taken, in the case of the Trustee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

5.2     Indemnification. The Creditors' Trust shall indemnify, defend and hold harmless the Protected Parties from and against any and all claims, causes of action, liabilities, obligations, losses damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date which the Protected Parties may incur or which the Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Creditors' Trust or the Plan or the discharge of their duties hereunder or otherwise to the Creditors' Trust or the Trustee ("Related Matters"), other than to the extent determined by a

16

Final Order to be solely due to their own respective gross negligence, willful misconduct, to the fullest extent permitted by applicable law.

5.3    Reimbursement.  In the sole discretion of the Trustee, the Trustee may authorize available funds of the Creditors' Trust to be advanced to satisfy any reasonable and documented out-of-pocket costs and expenses (including reasonable attorneys' fees and other costs of defense) incurred by any Protected Party who is threatened to be named or made a defendant or a respondent in any proceeding concerning the administration, business, and affairs of the Creditors' Trust; provided, however, that all such payments are subject to disgorgement in the event that the underlying claim against the Protected Party has been finally and judicially determined to have resulted from such Protected Party's own willful misconduct, gross negligence, or fraud. In the event that, at any time whether before or after termination of this Agreement, as a result of or in connection with Related Matters, any Creditors' Trust Protected Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any Creditors' Trust Protected Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Creditors' Trust Protected Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Creditors' Trust Protected Party shall be reimbursed by the Creditors' Trust for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will be compensated by the Creditors' Trust for the time expended by its personnel based on such personnel's then current hourly rate.

# ARTICLE 6
## REPORTS TO BENEFICIARIES OF CREDITORS' TRUST

6.1    Reporting to the U.S. Trustee. By thirty days following each calendar quarter commencing from and after the Effective Date, the Trustee shall file periodic reports with the office of the United States Trustee and shall promptly pay any and all fees assessed by the United States Trustee; provided, however, that the Trustee shall only be required to file such periodic reports and pay such fees to the extent required by the office of the United States Trustee and the Bankruptcy Court, as the case may be. The funding for such payments shall be pursuant to Section 2.10.

6.2    Tax Reporting. The Trustee shall submit to each beneficiary of the Creditors' Trust appearing on its records during such year a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit. The Creditors' Trust's taxable income, gain, loss, deduction, and credit will be allocated Pro Rata to the holders of Creditors' Trust in accordance with such holders' respective beneficial interests in the Creditors' Trust Assets. In addition, the Trustee shall file all tax returns required to be filed and shall pay all taxes on such returns, if any. The Trustee shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditors' Trust that are required by any governmental authority.

6.3    Other Reporting. Trustee shall cause to be prepared a semi-annual report illustrating (i) receipts and disbursements during the prior two quarters, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, (iv) a summary listing of the status of the resolution of objections to Claims and Causes of Action, and (v) a list of payments made to

17

Creditors' Trust Professionals. Such semi-annual report shall be made available to any party in interest upon request, within fifteen (15) business days after the end of the relevant report preparation period.  The reports furnished pursuant to this Section 6.3 are neither compilations, reviews nor audits. The Trustee shall not be required to file any further written reports described in this section 6.3 of the Trust Agreement following the report submitted after the Final Distribution Date.

## ARTICLE 7
## TERMINATION AND FINAL DISTRIBUTION

7.1     Termination of Creditors' Trust.   The Creditors' Trust will terminate on the earlier of (a) thirty (30) days after the full and final Distribution of the Creditors' Trust Assets or proceeds thereof in accordance with the terms of this Trust Agreement and the Plan, and (b) the fifth (5th) anniversary of the Effective Date; provided, however, that within six months of the fifth (5th) anniversary of the Effective Date, the Bankruptcy Court, upon a motion by the Trustee or any party in interest, may extend the term of the Creditors' Trust for an additional term of not more than five (5) years if it is necessary for the liquidation of the Creditors' Trust Assets. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained within six months of the beginning of each such extended term. Notwithstanding the foregoing, the Trustee shall not unduly prolong the duration of the Creditors' Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all property and Claims that constitute Creditors' Trust Assets and to effect the full and final Distribution of the Creditors' Trust Assets to the Creditors' Trust Beneficiaries in accordance with the terms hereof and the Plan and, thereafter, terminate the Creditors' Trust as soon as practicable. Notwithstanding anything to the contrary herein, any termination of the Creditors' Trust is conditioned upon payment of all costs and fees payable to the U.S. Trustee and filing and receiving Bankruptcy Court approval of an order to close the Cases.

7.2     Final Distribution.   Prior to and upon termination of the Creditors' Trust, the Creditors' Trust Assets will be finally distributed to the beneficiaries of Creditors' Trust pursuant to the provisions set forth herein.

## ARTICLE 8
## AMENDMENT AND WAIVER

8.1     Amendment And Waiver.   This Trust Agreement may not be amended, modified or supplemented, and no provision hereof or rights hereunder may be waived, except with the written consent of the Trustee. Any amendments to the Trust Agreement shall not be inconsistent with the purpose and intention of the Creditors' Trust to liquidate in an expeditious but orderly manner the Creditors' Trust Assets. Notwithstanding anything to the contrary herein, no amendment, modification, supplement or waiver shall be effective if it materially and adversely affects the liquidation and Distributions contemplated by the Plan, or if it would adversely affect the federal income tax status of the Creditors' Trust as a "grantor trust." The Trustee shall promptly file a copy of each amendment, modification, supplement or waiver of this Trust Agreement.

## ARTICLE 9

18

## MISCELLANEOUS PROVISIONS

9.1    <u>Intention of Parties to Establish Creditors' Trust</u>.  This Trust Agreement is intended to create a Creditors' Trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with such intent and purpose and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may be made to apply retroactively.

9.2    <u>Preservation of Privilege and Defenses</u>.  Notwithstanding anything herein or in the Plan to the contrary, the Debtors shall not be required to waive any existing rights or privileges to which they are entitled under applicable law, including but not limited to the attorney-client privilege, except with regards to Claims and Causes of Action transferred to the Creditors' Trust. Notwithstanding anything herein or in the Plan to the contrary, all professionals shall reserve all rights at law regarding work product privilege.

9.3    <u>Prevailing Party</u>.  If the Trustee or the Creditors' Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Trustee or the Creditors' Trust, as the case may be, shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non- prevailing party incurred in connection with such dispute or enforcement action.

9.5    <u>Confidentiality</u>. The Trustee and each of his respective employees, members, agents, professionals and advisors (each a "<u>Confidential Party</u>" and collectively, the "<u>Confidential Parties</u>") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any entity to which any of the Creditors' Trust Assets relates; provided, however, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Trustee to allow him/her sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

9.6    <u>Laws as to Construction</u>.  This Trust Agreement shall be governed and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

9.7    <u>Severability</u>.  If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held

19

invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.8     Retention of Jurisdiction. Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Creditors' Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection with the Creditors' Trust, the Trust Agreement, or any entity's obligations incurred in connection with the Creditors' Trust, and any action against the Trustee or any professional retained by the Trustee or the Creditors' Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to service by certified or registered mail, return receipt requested, to be sent to its address set forth in this Trust Agreement or in the official Schedules filed in the Cases or to such other address as it may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

9.9     Notices.  Any notice or other communication under this Trust Agreement shall be in writing and shall be given by either (i) hand-delivery, (ii) first class mail (postage prepaid), (iii) reliable overnight commercial courier (charges prepaid), or (iv) email, if confirmed promptly by any of the methods specified in clauses (i), (ii) and (iii) of this sentence, to the following addresses:

If to the Trustee:

John D. ("Danny") Mullen
5014 Spring Hill Dr., Ste. 300
Spring, TX  77396
Email: danny.mullen@inwell.com

with copies to:

Berry D. Spears
Locke Lord LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701
Email:  bspears@lockelord.com

- and -

Philip G. Eisenberg
Locke Lord LLP

20

#4982892.2

600 Travis Street, Suite 2800
Houston, TX 77002
Email:  peisenberg@lockelord.com

Notice given by email shall be deemed to have been given and received when sent. Notice by overnight courier shall be deemed to have been given and received on the date scheduled for delivery. Notice by mail shall be deemed to have been given and received three (3) calendar days after the date first deposited in the United States Mail. Notice by hand delivery shall be deemed to have been given and received upon delivery. A party may change its address by giving written notice to the other party as specified herein.

9.10    Headings.  The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

9.11    Integration.  This Trust Agreement and the Plan constitute the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

9.12    Further Assurances.    From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of the Creditors' Trust and to consummate the transactions contemplated hereby.

9.13    Successors and Assigns.  The terms of this Trust Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto, and their respective successors and assigns.

9.14    Counterparts.  This Trust Agreement may be signed by the parties hereto in counterparts, which, taken together, shall constitute one and the same document, and the counterparts may be delivered by facsimile transmission or by electronic mail in portable document format (.pdf).

9.15    Relationship to the Plan.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan. To that end, the Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Trust Agreement. If any provisions of this Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

[SIGNATURES ON NEXT PAGE]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

WBH ENERGY LP

21

#4982892.2

By:_____

Its_____

WBH ENERGY PARTNERS LLP

By:_____

Its_____

WBH ENERGY PARTNERS GP

By:_____

Its _____

JOHN D. ("DANNY") MULLEN

By:_____

EXHIBIT D

# CREDITORS' TRUST AGREEMENT

This Creditors' Trust Agreement (the "Trust Agreement"), dated as of [August 18, 2015] by and among WBH Energy ~~Partners L.P.~~, LP, WBH Energy Partners LLC and WBH Energy Partners ~~G.P.~~GP, LLC (each a "Debtor," and collectively, the "Debtors") and John D. ("Danny") Mullen (the "Trustee") is executed in connection with the First Amended Joint Chapter 11 Plan of Reorganization for the Debtors and Debtors-in-Possession (as modified through August 20, 2015) dated July 24, 2015 (as amended, modified or supplemented from time to time, the "Plan"). Capitalized terms used in this Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## W I T N E S S E T H

WHEREAS, the Debtors commenced chapter 11 cases (collectively, the "Cases") by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court");

WHEREAS, on July 24, 2015, the Debtors filed the Plan;

WHEREAS, on [DATE], the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

WHEREAS, the Plan provides for the creation of a post-confirmation creditors' trust (the "Creditors' Trust") to hold and administer the Creditors' Trust Assets (defined below), including but not limited to the Class 7 Contributed Amount, Causes of Action, and the proceeds of the foregoing, to distribute the assets or proceeds of such assets in accordance with the terms of the Plan to secured creditors with allowed claims against specific assets and to the Holders of Allowed General Unsecured Claims (the "Trust Beneficiaries"), and to take all actions necessary to wind down and close the Estates, all in accordance with the terms of this Trust Agreement and the Plan;

WHEREAS, ~~the Plan provides for the creation of an Administrative and Priority Claims Reserve and authorizes the Trustee to distribute the proceeds of such assets in accordance with the terms of the Plan to the Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims or Allowed Priority Claims; WHEREAS,~~ "Creditors' Trust Assets" means (i) all Avoidance Actions and other Causes of Action, (ii) the Class 7 Contributed Amount, (iii) ~~any portion of the Administrative and Priority Claims Reserve not used to satisfy Allowed Administrative Expense Claims, Allowed Priority Tax Claims or Allowed Priority Claims~~Other Assets, and (iv) the proceeds or right to proceeds of each of the foregoing (including any proceeds of any D&O Insurance), owned as of the Effective Date or acquired thereafter pursuant to the terms of the Plan. This Trust Agreement is executed to establish the Creditors' Trust and to facilitate the Plan;

WHEREAS, the Creditors' Trust is established for the sole purpose of liquidating the Creditors' Trust Assets for the benefit of the Creditors' Trust Beneficiaries (including holders of Disputed Claims that become Allowed Claims) in accordance with Treasury Regulation Section 301.770l-4(d), with no objective or authority to continue or engage in the conduct of a trade or

1

business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Creditors' Trust including the wind down and closure of the Estates;

WHEREAS, the Creditors' Trust is intended to qualify as a Creditors' Trust within the meaning of Treasury Regulation Section 301.7701-4(d) for United States federal income tax purposes;

WHEREAS, the respective powers, authority, responsibilities and duties of the Trustee shall be governed by this Trust Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and any obligations under Texas law;

WHEREAS, this Trust Agreement is intended to supplement, complement and implement the Plan; provided, however, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Trust Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Trustee agree as follows:

## ARTICLE 1
## ESTABLISHMENT OF THE CREDITORS' TRUST

1.1     Establishment of Creditors' Trust.  John D. ("Danny") Mullen hereby accepts his appointment as Trustee. Pursuant to the Plan, the Debtors and the Trustee hereby establish the Creditors' Trust on behalf of the Creditors' Trust Beneficiaries. The Trustee agrees to accept and hold the Creditors' Trust Assets in trust for the Creditors' Trust Beneficiaries subject to the terms of this Trust Agreement, and agrees to assume the role and duties of the Trustee as provided in this Agreement.

1.2     Purpose of the Creditors' Trust. The Creditors' Trust shall be established for the purpose of liquidating the Creditors' Trust Assets and taking all actions necessary to wind down and close the Estates, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Creditors' Trust Assets, make distributions, and not unduly prolong the duration of the Creditors' Trust. The Creditors' Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan.

1.3     Transfer of Assets and Rights to the Trustee.

(a)     Except as provided otherwise in the Plan, as of the Effective Date the Debtors hereby transfer, assign, convey and deliver to the Trustee, (i) all of their right, title, and interest in the Creditors' Trust Assets free and clear of any Lien or Claim in such property of any other Person or entity except as otherwise provided in the Plan or Confirmation Order, (ii) all of their rights with respect to the Creditors' Trust Assets including, and (iii) the attorney-client privilege and hereby waive their right and the right of any legal, financial or other advisors to assert such rights as a defense or

2

otherwise, and the related to Claims and Causes of Action transferred to the Creditors' Trust, and the Trustee on behalf of the Creditors' Trust hereby assumes and agrees that all such Creditors' Trust Assets will be transferred to the Creditors' Trust free and clear of any and all liabilities except to the extent otherwise provided in the Plan or Confirmation Order.

(b)     After the Effective Date, the Purchaser, pursuant to the terms and conditions of the executed Purchase and Sale Agreement, agrees at the reasonable request of the Trustee to execute and deliver, or otherwise make available for inspection, any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) of the Debtors.

1.4    Title to Creditors' Trust Assets.

(a)     The transfer of the Creditors' Trust Assets to the Creditors' Trust shall be made for the benefit of the Creditors' Trust Beneficiaries, whether the Claims of the Creditors' Trust Beneficiaries are Allowed on or after the Effective Date of the Plan. In this regard, the Creditors' Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Creditors' Trust Beneficiaries, and then by the Creditors' Trust Beneficiaries to the Creditors' Trust in exchange for beneficiary interests in the Creditors' Trust, which interests shall be distributed by the Trustee to the Creditors' Trust Beneficiaries in exchange for their Allowed Claims in accordance with the Plan and as set forth in Article 5 below. Upon the transfer of the Creditors' Trust Assets, the Trustee shall succeed to all of the Debtors' right, title and interest in and to the Creditors' Trust Assets and the Debtors will have no further interest in or with respect to the Creditors' Trust Assets or this Creditors' Trust.

(b)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Trustee, and the Creditors' Trust Beneficiaries) shall treat the transfer of Creditors' Trust Assets to the Creditors' Trust described in this Section 1.4 and in the Plan (and any subsequent transfers of Assets) as a transfer to the Creditors' Trust Beneficiaries followed by a deemed transfer by such Creditors' Trust Beneficiaries to the Creditors' Trust, and the beneficiaries of this Creditors' Trust shall be treated as the grantors and owners hereof.

1.5    Reliance.  The Trustee may rely upon the Debtors' filed schedules and statements of financial affairs and all other information provided by the Debtors or their representatives to the Trustee or the Committee concerning Claims filed against the Debtors and the Debtors' reconciliation, if any, and other documents supporting such reconciliation.

1.6    Valuation of Creditors' Trust Assets.  As reasonably determined from time to time by the Trustee in its good faith and reasonable judgment, valuation of the Creditors' Trust Assets transferred to the Creditors' Trust shall be used consistently by the Trustee and the Creditors' Trust

3

Beneficiaries for all federal income tax purposes. The Trustee, Debtors and the Creditors' Trust Beneficiaries agree that (i) the value of the Causes of Action on the date of their transfer to the Creditors' Trust shall be zero dollars; and (ii) the transfer of the Causes of Action to the Creditors' Trust shall "close" the transaction for tax purposes as to the Debtors with respect to any subsequent receipt of proceeds by the Creditors' Trust in connection with the Causes of Action or investment earnings thereon.

1.7    Governance of the Creditors' Trust. The Creditors' Trust shall be governed by the Trustee subject to the provisions set forth in this Trust Agreement and Texas law. The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Creditors' Trust and not otherwise, except that the Trustee may deal with the Creditors' Trust Assets for its own account as provided herein. Subject to the terms and conditions of this Trust Agreement, the Trustee may delegate responsibility for discrete issues or decisions to third parties subject to continued oversight by the Trustee.

1.8    Appointment of the Trustee.  John D. ("Danny") Mullen is hereby selected by the Committee, pursuant to the terms of the Plan, as the Trustee. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of John D. ("Danny") Mullen, as Trustee who shall hold such position until his removal, resignation or death.

1.9    Bond. The Trustee shall serve without bond.

1.10    Funding of the Creditors' Trust. The Trustee may from time to time make withdrawals from the Creditors' Trust Assets in amounts and at times that the Trustee deems necessary or appropriate to fund any and all costs and expenses that the Trustee and the Creditors' Trust incur subsequent to the Effective Date in accordance with this Trust Agreement and the Plan.

## ARTICLE 2
## THE TRUSTEE

2.1    Role of the Trustee. In furtherance of and consistent with the purpose of the Creditors' Trust and the Plan, the Trustee shall, for the benefit of the Creditors' Trust Beneficiaries and subject to the provisions set forth in this Trust Agreement and the Plan: (i) have the power and authority to hold, manage, and distribute the Creditors' Trust Assets; (ii) have the power and authority to hold, manage, and distribute the Cash or non-Cash Creditors' Trust Assets obtained through the exercise of his power and authority; and (iii) have the power and responsibility to take all actions necessary to wind down and close the Estates, file all required tax returns, and file and receive approval of a final report from the Bankruptcy Court, all as may be provided for in additional and further detail below. In all circumstances, the Trustee shall act in the best interests of all Creditors' Trust Beneficiaries of the Creditors' Trust and in furtherance of the purpose of the Creditors' Trust.

2.2    Authority of Trustee. In connection with the administration of the Creditors' Trust, subject to and except as otherwise set forth in this Trust Agreement or the Plan, the Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Creditors' Trust. Without limiting, but subject to the foregoing, the Trustee, as applicable, shall be

4

#4982892.2#4982892.2

authorized, unless otherwise provided for in this Trust Agreement and subject to the limitations contained herein and in the Plan, to:

1) Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

2) Hold legal title to any and all rights of the beneficiaries the Creditors' Trust in or arising from the Creditors' Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Creditors' Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein;

3) Make Distributions contemplated under the Plan;

4) Supervise and administer the reconciliation, resolution, settlement and payment of Claims and the Distributions to the Holders of Allowed Claims in accordance with the Plan;

5) Enter into any agreement on behalf of the Creditors' Trust required by or consistent with the Plan and perform all of the obligations required of the Trustee under the Creditors' Trust Agreement or the Plan;

6) Abandon any of the assets of the Creditors' Trust if the Trustee concludes that such assets are of no benefit to the Creditors;

7) Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Creditors' Trust, including without limitation all state and federal Causes of Action or any other litigation, including Avoidance Actions, which constitute an asset of the Creditors' Trust;

8) Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Cases;

9) Act in the name of or in the place of the Creditors' Trust in any action before the United States Bankruptcy Court or any other judicial or administrative body;

10) Protect and enforce the rights to the Creditors' Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

5

#4982892.2#4982892.2

11) Take actions and exercise remedies against any Person that owes money to the Creditors' Trust, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

12) Retain and pay such Creditors' Trust Professionals as the Trustee may select to assist the Trustee in its duties, on such terms as the Trustee deems appropriate, without Bankruptcy Court approval. The Trustee may commit the Creditors' Trust to and shall pay Creditors' Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel on a contingent basis. A law firm or professional shall not be disqualified from serving as a Creditors' Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Cases;

13) Retain and pay an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Creditors' Trust as the Trustee may deem appropriate, and to prepare and file any tax returns or informational returns for the Creditors' Trust as may be required, without Bankruptcy Court approval. The Trustee may commit the Creditors' Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred;

14) Retain and pay such third parties as the Trustee may deem necessary or appropriate to assist the Trustee in carrying out its powers and duties under this Trust Agreement. The Trustee may commit the Creditors' Trust to and shall pay all such Persons reasonable compensation for services rendered and expenses incurred, as well as commit the Creditors' Trust to indemnify any such parties in connection with the performance of services;

15) Assert or waive any privilege or defense on behalf of the Creditors' Trust or, with respect to the Creditors' Trust Assets, the Debtors as provided in the Trust Agreement or the Plan;

16) Compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Creditors' Trust as the Trustee shall deem advisable;

17) Avoid and recover transfers of the Debtors' property as may be permitted by the Bankruptcy Code or applicable state law;

6

18)      Execute offsets and assert counterclaims against Claims as provided for in the Plan;

19)      Compromise, settle or otherwise resolve all objections to any Claim filed in the amount of $25,000 or less without the approval of the Bankruptcy Court or further notice. For all Claims in excess of $25,000, the Trustee shall provide 10 days written notice of any proposed settlement. If no objection is submitted to the Trustee within 10 days of the date of such notice, the Trustee may proceed with such settlement and may settle such Claim without approval of any other person;

20)      Invest any moneys held as part of the Creditors' Trust, limited, however, to such investments that are consistent with the Creditors' Trust's status as a Creditors' Trust within the meaning of Treasury Regulations Section 301.7701-4(d);

21)      Request any appropriate tax determination with respect to the Creditors' Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

22)      May establish and maintain a website for the purpose of providing notice of Creditors' Trust activities in lieu of sending written notice to beneficiaries of Creditors' Trust, subject to providing notice of such website to such Holders;

23)      Take or refrain from taking any and all actions the Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Creditors' Trust Assets or to carry out the purposes hereof;

24)      Seek the examination of any Person, and subject to, the provisions of Bankruptcy Rule 2004;

25)      Assume such other powers as may be vested in or assumed by the Creditors' Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Trust Agreement;

26)      Establish and maintain such bank accounts as may be necessary or appropriate, draw checks on such bank accounts and perform such other necessary and appropriate duties with respect to such accounts, or designate individuals as signatories therefore, as the Trustee may direct and authorize;

27)      Invest or reinvest Creditors' Trust Assets and to cause such investments, or any part thereof, to be registered and held in his name, as Trustee, or in the name of nominees;

#4982892.2#4982892.2

28) File any required reports and pay to the office of the U.S. Trustee all applicable costs and fees incurred from and after the Effective Date and file a final report with the Bankruptcy Court and close the Cases;

29) Hold any Unclaimed Distribution or payment to the Holder of an Allowed Claim in accordance with the Plan and the Creditors' Trust Agreement;

30) Propose any amendment, modification or supplement to the Plan or the Creditors' Trust Agreement, provided that any such amendment, modification or supplement that is material requires approval of the Bankruptcy Court after notice and a hearing;

31) File dissolution/termination documents with the appropriate governmental agencies to dissolve the Creditors' Trust;

32) Receive, conserve and manage the Creditors' Trust Assets, and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1123(a)(5) or the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Trustee deems most beneficial to the Creditors and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

33) Pay all taxes, if any, properly payable by the Creditors' Trust and/or the Debtors, make all tax withholdings and file tax returns and tax information returns with respect to the Creditors' Trust and the Debtors, and make tax elections by and on behalf of the Creditors' Trust;

34) Have the right but not the obligation to carry insurance coverage, including insurance to protect the Creditors' Trust and the Trustee against claims brought against the Trustee in such amounts as he deems advisable, including obtain insurance coverage with respect to real and personal property that may become Creditors' Trust Assets, if any;

35) Establish such reserves for taxes, assessments and other expenses of administration of the Creditors' Trust (including without limitation the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Creditors' Trust;

36) Borrow funds, incur or assume liabilities, and pledge Creditors' Trust Assets on behalf of the Creditors' Trust in furtherance of or in connection with the Trustee's or the Creditors' Trust's duties, powers, authority, and obligations under this Trust Agreement, and determine and satisfy any and all liabilities created, incurred or assumed by the Creditors' Trust;

37) Exercise such other powers and duties as are necessary or appropriate in the Trustee's discretion to accomplish the purposes of the Plan; and

#4982892.2#4982892.2

38)     Distribute the proceeds of the Administrative and Priority Claims Reserve in accordance with the terms of the Plan to the Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims or Allowed Priority Claims.

2.3     Limitation of Trustee's Authority. The Trustee shall have no power or authority except as set forth in this Trust Agreement or in the Plan. Notwithstanding anything herein to the contrary, the Trustee shall not be authorized to engage in any trade or business, and shall only take such actions consistent with the orderly liquidation of the Creditors' Trust Assets as are required or contemplated by applicable law, the Plan and this Trust Agreement, and the actions necessary to wind down and close the Estates and dissolve the Creditors' Trust.

2.4     Books and Records. The Trustee shall maintain in respect of the Creditors' Trust books and records relating to the Creditors' Trust Assets (including the Causes of Action) and income of the Creditors' Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Creditors' Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Creditors' Trust. Except as otherwise may be expressly provided in this Trust Agreement, nothing in this Trust Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Creditors' Trust, or as a condition for managing any payment or distribution out of the Creditors' Trust Assets. Subject to all applicable privileges, the Creditors' Trust Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Trust Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice to the Trustee, to request a reasonable inspection of the books and records held by the Trustee; provided, however, that all costs associated with such inspection shall be paid in advance by such requesting Creditors' Trust Beneficiary; provided further, however, that if so requested, such Creditors' Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Trustee, and make such other arrangements as may be reasonably requested by the Trustee. One (1) year after dissolution of the Trust or the Debtor entities, the Trustee is authorized to destroy any and all books and records without further notice or Bankruptcy Court order, unless the Bankruptcy Court has ordered otherwise; provided, however, that the Trustee may move the Bankruptcy Court for entry of an order authorizing the destruction of any and all books and records prior to expiration of the one (1) year period following dissolution of the Trust.

2.5     Additional Powers. Except as otherwise set forth in this Trust Agreement or in the Plan, and subject to the Treasury Regulations governing creditors' trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Creditors' Trust Assets and over the protection, conservation and disposition thereof. No Person dealing with the Creditors' Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of the Creditors' Trust Assets.

2.6     Tax and Reporting Duties of the Trustee. The Trustee shall file returns for the Creditors' Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and comply with all withholding and reporting requirements imposed by any federal, state, local or foreign

9

taxing authority, including, without limitation, any requirements imposed with respect to Distributions hereunder and under the Plan. The Trustee shall also file (or cause to be filed) any other statements, returns, reports or disclosures relating to the Creditors' Trust that are required by any governmental authority, and all such statements, returns, reports or disclosures shall be prepared in reasonable detail in accordance with all applicable laws.

2.7     Compliance with Laws. Any and all Distributions of Creditors' Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws. The Trustee may withhold a Distribution from any Creditors' Trust Beneficiary if the Trustee is unable, after reasonable investigation, to obtain taxpayer identification information for any Creditors' Trust Beneficiary sufficient to permit the Trustee to make any Distribution in compliance with applicable law.

2.8     Confidentiality. The Trustee shall forever hold in strict confidence and not use for personal gain any material, non-public information of or pertaining to the Creditors' Trust Assets, or the operation of the Creditors' Trust and any other entity to which any of the Creditors' Trust Assets may at any time relate.

2.9     Compensation of the Trustee. The Trustee shall be entitled to reasonable compensation as set forth in Exhibit "A" attached hereto. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of the Trustee's compensation.

2.10    Costs and Expenses of the Trustee. All costs and expenses of the Trustee and Creditors' Trust shall be borne by and as a charge against the Creditors' Trust Assets.

2.11    Compensation Procedures. If applicable, fees and expenses of the Trustee and all professionals employed by him shall be paid on a monthly basis by the Trustee. Payment of the fees and expenses of the Trustee and his professionals shall be paid monthly from the Creditors' Trust Assets and may be made without approval of the Bankruptcy Court.

2.12    Reliance by Trustee.

(a)     the Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him/her to be genuine and to have been signed or presented by the proper party or parties including, but not limited to, the Claims Register maintained by the Clerk of the Bankruptcy Court in these Cases; and

(b)     Persons dealing with the Trustee shall look only to the Creditors' Trust Assets to satisfy any liability incurred by the Trustee to such person in carrying out the terms of this Trust Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Trustee are determined by a Final Order to be solely due to the Trustee's gross negligence, fraud or willful misconduct.

#4982892.2#4982892.2

(c)    The Trustee may consult with and shall not be liable for any actions taken or suffered by the Trustee in accordance with the advice of such counsel or other professionals, and may also consult with and rely upon accountants and former consultants or advisors of the Debtors, the Committee, present and former officers, directors and consultants of the Debtors' affiliates or subsidiaries.

2.13   <u>Investment and Safekeeping of Creditors' Trust Assets</u>. The right and power of the Trustee to invest Creditors' Trust Assets, the proceeds thereof, or any income earned by the Creditors' Trust, shall be limited to the right and power that a Creditors' Trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.14   <u>Authorization to Expend Creditors' Trust Assets</u>. The Trustee may expend the Creditors' Trust Assets: (a) as reasonably necessary to maintain the value of the Creditors' Trust Assets during liquidation: (b) to pay all costs and expenses of the Creditors' Trust (including, without limitation, any taxes imposed on the Creditors' Trust); and (c) to satisfy all other liabilities incurred or assumed by the Creditors' Trust (or to which the Creditors' Trust Assets are otherwise subject) in accordance with this Trust Agreement and the Plan.

2.15   <u>Termination</u>. The duties, responsibilities and powers of the Trustee will terminate on the date the Creditors' Trust is dissolved under applicable law in accordance with the Plan, Article 7 of this Agreement, or by an order of the Bankruptcy Court.

2.16   <u>Reliance</u>. Any Person dealing with the Trustee shall be fully protected in relying upon the Trustee' s certificate or instrument signed by the Trustee that he has authority to take any action under this Trust.

2.17   <u>Trustee's Funds</u>. No provision of this Agreement or the Plan shall require the Trustee to expend or risk his own funds or otherwise incur any financial liability in the performance of any of his duties as Trustee hereunder or under the Plan, or in the exercise of any of its rights or powers, if the Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Trustee against such risk or liability is not reasonably assured to the Trustee.

## ARTICLE 3
## DISTRIBUTIONS

3.1   <u>Distribution; Withholding</u>. In the discretion of the Trustee, the Trustee shall distribute from the Creditors' Trust to each Creditors' Trust Beneficiary Cash on hand (including, without limitation, all net Cash income plus all net Cash proceeds from the liquidation of Creditors' Trust Assets, including, without limitation, as Cash for this purpose, all permissible investments described in Section 2.13) from the Creditors' Trust to the Creditors' Trust Beneficiaries, after making reserve for Disputed Claims as provided in Section 3.7 below; provided, however, that no distribution to an individual unit holder will be required unless such aggregate distribution would be at least $25.00.

11

3.2    Payment of Distributions. The Trustee shall apply all Creditors' Trust Assets to the Creditors' Trust Beneficiaries in respect of the Allowed Class A7, B7 and C7 Claims, or, in the case of Creditors' Trust Assets to which an allowed Secured Claim attaches, to such Allowed Secured Claim, until such Claim is paid in full in accordance with this Trust Agreement and the Plan. Notwithstanding anything to the contrary contained in this Article 3 or the Plan, prior to making any Distribution to the Creditors' Trust Beneficiaries, the Trustee may retain such amounts as deemed reasonably necessary to: (i) meet contingent liabilities and to maintain the value of the Creditors' Trust Assets of the Creditors' Trust during liquidation; and (ii) to pay reasonable estimated expenses. The Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

3.3    Manner of Payment of Distributions. All Distributions to Creditors' Trust Beneficiaries from the Creditors' Trust shall be payable only to Creditors' Trust Beneficiaries of Record and, as to each such Creditors' Trust Beneficiary within a Class then entitled to payment, in amounts equal to such Creditors' Trust Beneficiaries' Ratable Portion of the Distribution. All Distributions to Creditors' Trust Beneficiaries from the Creditors' Trust shall be payable in Cash by wire transfer, check or such other method as the Trustee deems appropriate under the circumstances. All payments of the costs and expenses of the Trust shall be paid in Cash by wire transfer, check or such other method as the Trustee deems appropriate under the circumstances.

3.4    Distributions on Business Days.  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

3.5    Objections to Claims; Prosecution of Disputed Claims.  The Trustee shall have the authority to compromise, settle or otherwise resolve all objections to any Claim filed in the amount of $25,000 or less without approval of the Bankruptcy Court or further notice. For all Claims in excess of $25,000, the Trustee shall provide 10 days written notice to Trust Beneficiaries of any proposed settlement. If no objection is submitted to the Trustee within 10 days of the date of such notice, the Trustee may proceed with such settlement and may settle such Claim without approval of any other person or entity. If a Trust Beneficiary objects to any proposed settlement, the Trustee shall either withdraw the settlement or bring the matter before the Bankruptcy Court for final resolution after notice and hearing. Unless otherwise ordered by the Bankruptcy Court, the Trustee shall file and serve all objections to Claims no later than the Claims Objection Deadline.

3.6    Estimation of Claims. The Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive

12

of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

      3.7    <u>Reserve for Disputed Claims</u>.

      (a)    No Cash or other property shall be distributed on account of any Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, unless and until such Claim becomes an Allowed Claim. The Trustee shall reserve and segregate Cash sufficient to pay holders of Disputed Claims their Ratable Portion, if any, of the Available Cash distributed to Creditors' Trust Beneficiaries. Any such Cash reserved shall be held and segregated by the Creditors' Trust for the benefit of holders of Disputed Claims. In the event a Disputed Claim is ultimately Allowed, the holder of such previously Disputed Claim shall, within sixty (60) days, be entitled to payment of such holder's Ratable Portion of any Distributions previously made.

      (b)    The Trustee may make such determinations on Disputed Claims as are appropriate, and as further subject to any Bankruptcy Court authorization as may be requested. The Trustee is authorized, as often as desired but at least annually, to make determinations as to the valuation of the Disputed Claims.

      (c)    Upon the Effective Date, any claims that are the subject of dispute shall be recognized in the Disputed Claims Reserve until Final Order of the Bankruptcy Court or other binding resolution of the status of the Disputed Claim.

      3.8    <u>No Distribution in Excess of Allowed Amounts</u>.  Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, no Creditors' Trust Beneficiary shall receive Distributions of a value which exceed the amount of such Creditors' Trust Beneficiary's Allowed Claim as of the Petition Date, plus accrued interest provided for in the Plan, if any. The foregoing shall not limit holders of Disputed Claims from receiving Distributions on account of accrued interest as provided herein and in the Plan, if such holders' Disputed Claims become Allowed.

      3.9    <u>De Minimis Distributions</u>.  Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, the Trustee shall not be required to distribute Cash to the holder of an Allowed Claim if the amount of cash to be distributed on account of such Claim is less than $25. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $25 shall have such Claim discharged and shall be forever barred from asserting any such Claim against the Debtors, the Creditors' Trust, or their respective property. Any Cash not distributed pursuant to this provision shall be the property of the Creditors' Trust, free of any restrictions thereon. The Trustee may, in his sole discretion, remit any Cash not distributed or otherwise utilized by the Creditors' Trust pursuant to this Section 3.9 of the Trust Agreement to the State of Texas and/or pay such Cash into the registry of the Bankruptcy Court.

#4982892.2#4982892.2

3.10    <u>Setoffs</u>. The Trustee may set off against any Distributions to be made to a Creditors' Trust Beneficiary hereunder, claims, rights and Causes of Action of any nature that the Trustee may at any time hold against such Creditors' Trust Beneficiary; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Trustee of any such claim, right and Causes of Action that the Trustee may at any time possess against such Creditors' Trust Beneficiary.

3.11    <u>Disputed Payments</u>. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Trustee may, in lieu of making such Distribution to such Person, make reserve for such Distribution. Such Distribution shall be held in reserve until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

3.12    <u>Unclaimed Distributions</u>.

(a)    Any Unclaimed Distributions shall be held and reserved by the Creditors' Trust for the benefit of the Creditors' Trust Beneficiaries entitled thereto under the terms of this Trust Agreement and the Plan. All such Unclaimed Distributions shall be held for a period of sixty (60) days following the filing of the applicable Notice of Distribution and during such period shall be released from the Creditors' Trust and delivered to the Creditors' Trust Beneficiaries entitled thereto only upon presentation of proper proof by such Creditors' Trust Beneficiaries of such entitlement. At the end of sixty (60) days following the filing of the relevant Notice of Distribution of any Unclaimed Distributions, the Creditors' Trust Beneficiaries theretofore entitled to such Unclaimed Distributions shall cease to be entitled thereto and the Unclaimed Distributions for each such Creditors' Trust Beneficiary shall then be distributed on the succeeding Payment Date on a Pro Rata basis to the Creditors' Trust Beneficiaries who have received and have claimed Distributions and who are otherwise entitled to further Distributions under Sections 3.2 and 3.9, and if no such Creditors' Trust Beneficiaries then exist, such Unclaimed Distributions shall be excess Distributions to be distributed in accordance with Section 3.8 of this Agreement.

(b)    The Trustee may choose to file, or cause to be filed any tax or information return. All Cash held shall be invested in accordance with Section 2.13 hereof and section 345 of the Bankruptcy Code, as modified by the relevant Orders of the Court for investments made by the Debtors during the Cases.

3.13    <u>Uncashed Checks</u>. Checks issued in respect of a Distribution will be null and void if not negotiated within ninety (90) days after the date of issuance. Distributions with respect to such un-negotiated checks shall be treated as an Unclaimed Distribution and will revert to the Creditors' Trust for distribution in accordance with the Plan and Trust Agreement, and payment to such Holder with respect to such un-negotiated check shall be discharged.

3.14    <u>Allocation of Tax Items</u>.

14

#4982892.2#4982892.2

(a)     Unless otherwise required by applicable tax law, items of income, gain, loss and deduction recognized or incurred by the Creditors' Trust and the amount of distributions received by the Creditors' Trust shall be allocated Pro Rata among the Creditors' Trust Beneficiaries who are entitled to receive Distributions in the tax year in accordance with the priorities set forth in Section 3.2 hereof.

(b)     Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Trustee shall:

 (i)     treat all Creditors' Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

 (ii)     on the last day of each calendar year, to the extent there is a reserve for Disputed Claims on that date, treat as taxable income or loss of this separate trust, the portion of the annual taxable income or loss of the Creditors' Trust that would have been allocated to the holders of such Disputed Claims had such claims been Allowed on the Effective Date;

 (iii)     treat as a distribution from this separate trust any increased amounts distributed by the Creditors' Trust as a result of any Disputed Claim resolved earlier in the taxable year; and

 (iv)     to the extent permitted by applicable law, report consistently for state and local income tax purposes.

~~3.15 Distribution to Holders of Administrative Priority Claims. The Trustee shall distribute the proceeds of the Administrative and Priority Claims Reserve in accordance with the terms of the Plan to the Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims or Allowed Priority Claims. The Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims or Allowed Priority Claims are NOT Trust Beneficiaries, nor are their claims payable from Creditors' Trust Assets.~~

**ARTICLE 4**
**SUCCESSOR TRUSTEE**

4.1 Removal of Trustee. The Trustee may be removed, with cause, by the Bankruptcy Court upon motion of a Trust Beneficiary. Such removal shall become effective on the date specified by the Bankruptcy Court. In the event such removal occurs, a notice of the identity of the successor trustee shall be filed with the Bankruptcy Court and served on the Creditors' Trust Beneficiaries.

4.2 Resignation of Trustee. The Trustee may resign by filing written notice thereof with the Bankruptcy Court. Such resignation shall become effective on the earlier to occur of (i)

sixty (60) days after the filing of such notice, or (ii) the appointment of a successor and the acceptance by such successor of such appointment.

4.3     <u>Appointment of Successor Trustee upon Removal, Resignation, or Death</u>.  If the Trustee is removed pursuant to Section 4.1, resigns pursuant to Section 4.2, or dies, the Bankruptcy Court shall appoint a successor Trustee. Any successor Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Trustee.

4.4     <u>Acceptance of Appointment by Successor Trustee</u>. Any successor Trustee appointed pursuant to this Article 4 shall execute an instrument accepting such appointment as the Trustee under this Trust Agreement and shall file and maintain such acceptance with the books and records of the Creditors' Trust. Upon acceptance of such appointment as aforesaid, such successor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Creditors' Trust with like effect as if originally named herein; provided, however, that a removed or resigning Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Creditors' Trust all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

## ARTICLE 5
## EXCULPATION AND INDEMNIFICATION

5.1     <u>Exculpation</u>.

(a)     From and after the Effective Date, the Trustee and his respective professionals, non-professionals, employees Affiliates and representatives (the "<u>Protected Parties</u>"), shall be and hereby are exculpated by all Persons and entities, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Trust Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud.

(b)     No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Protected Parties, for making payments in accordance with the Plan or this Trust Agreement or for implementing the provisions of the Plan or this Trust Agreement. Any act taken or not taken, in the case of the Trustee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

#4982892.2#4982892.2

5.2    Indemnification.  The Creditors' Trust shall indemnify, defend and hold harmless the Protected Parties from and against any and all claims, causes of action, liabilities, obligations, losses damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date which the Protected Parties may incur or which the Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Creditors' Trust or the Plan or the discharge of their duties hereunder or otherwise to the Creditors' Trust or the Trustee ("Related Matters"), other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, to the fullest extent permitted by applicable law.

5.3    Reimbursement.  In the sole discretion of the Trustee, the Trustee may authorize available funds of the Creditors' Trust to be advanced to satisfy any reasonable and documented out-of-pocket costs and expenses (including reasonable attorneys' fees and other costs of defense) incurred by any Protected Party who is threatened to be named or made a defendant or a respondent in any proceeding concerning the administration, business, and affairs of the Creditors' Trust; provided, however, that all such payments are subject to disgorgement in the event that the underlying claim against the Protected Party has been finally and judicially determined to have resulted from such Protected Party's own willful misconduct, gross negligence, or fraud. In the event that, at any time whether before or after termination of this Agreement, as a result of or in connection with Related Matters, any Creditors' Trust Protected Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any Creditors' Trust Protected Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Creditors' Trust Protected Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Creditors' Trust Protected Party shall be reimbursed by the Creditors' Trust for its out of pocket expenses,  including the reasonable fees and expenses of its counsel, and will be compensated by the Creditors' Trust for the time expended by its personnel based on such personnel's then current hourly rate.

### ARTICLE 6
### REPORTS TO BENEFICIARIES OF CREDITORS' TRUST

6.1    Reporting to the U.S. Trustee. By thirty days following each calendar quarter commencing from and after the Effective Date, the Trustee shall file periodic reports with the office of the United States Trustee and shall promptly pay any and all fees assessed by the United States Trustee; provided, however, that the Trustee shall only be required to file such periodic reports and pay such fees to the extent required by the office of the United States Trustee and the Bankruptcy Court, as the case may be. The funding for such payments shall be pursuant to Section 2.10.

6.2    Tax Reporting. The Trustee shall submit to each beneficiary of the Creditors' Trust appearing on its records during such year a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit. The Creditors' Trust's taxable income, gain, loss, deduction, and credit will be allocated Pro Rata to the holders of Creditors' Trust in accordance with such holders' respective beneficial interests in the Creditors' Trust Assets. In addition, the

17

Trustee shall file all tax returns required to be filed and shall pay all taxes on such returns, if any. The Trustee shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Creditors' Trust that are required by any governmental authority.

6.3    Other Reporting. Trustee shall cause to be prepared a semi-annual report illustrating (i) receipts and disbursements during the prior two quarters, (ii) a schedule of all asset dispositions, (iii) a schedule of Distributions made, (iv) a summary listing of the status of the resolution of objections to Claims and Causes of Action, and (v) a list of payments made to Creditors' Trust Professionals. Such semi-annual report shall be made available to any party in interest upon request, within fifteen (15) business days after the end of the relevant report preparation period.  The reports furnished pursuant to this Section 6.3 are neither compilations, reviews nor audits. The Trustee shall not be required to file any further written reports described in this section 6.3 of the Trust Agreement following the report submitted after the Final Distribution Date.

## ARTICLE 7
## TERMINATION AND FINAL DISTRIBUTION

7.1    Termination of Creditors' Trust.  The Creditors' Trust will terminate on the earlier of (a) thirty (30) days after the full and final Distribution of the Creditors' Trust Assets or proceeds thereof in accordance with the terms of this Trust Agreement and the Plan, and (b) the fifth (5th) anniversary of the Effective Date; provided, however, that within six months of the fifth (5th) anniversary of the Effective Date, the Bankruptcy Court, upon a motion by the Trustee or any party in interest, may extend the term of the Creditors' Trust for an additional term of not more than five (5) years if it is necessary for the liquidation of the Creditors' Trust Assets. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained within six months of the beginning of each such extended term. Notwithstanding the foregoing, the Trustee shall not unduly prolong the duration of the Creditors' Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all property and Claims that constitute Creditors' Trust Assets and to effect the full and final Distribution of the Creditors' Trust Assets to the Creditors' Trust Beneficiaries in accordance with the terms hereof and the Plan and, thereafter, terminate the Creditors' Trust as soon as practicable. Notwithstanding anything to the contrary herein, any termination of the Creditors' Trust is conditioned upon payment of all costs and fees payable to the U.S. Trustee and filing and receiving Bankruptcy Court approval of an order to close the Cases.

7.2    Final Distribution.  Prior to and upon termination of the Creditors' Trust, the Creditors' Trust Assets will be finally distributed to the beneficiaries of Creditors' Trust pursuant to the provisions set forth herein.

## ARTICLE 8
## AMENDMENT AND WAIVER

8.1    Amendment And Waiver.  This Trust Agreement may not be amended, modified or supplemented, and no provision hereof or rights hereunder may be waived, except with the written consent of the Trustee. Any amendments to the Trust Agreement shall not be inconsistent with the purpose and intention of the Creditors' Trust to liquidate in an expeditious but orderly manner the Creditors' Trust Assets. Notwithstanding anything to the contrary herein, no amendment,

18

modification, supplement or waiver shall be effective if it materially and adversely affects the liquidation and Distributions contemplated by the Plan, or if it would adversely affect the federal income tax status of the Creditors' Trust as a "grantor trust." The Trustee shall promptly file a copy of each amendment, modification, supplement or waiver of this Trust Agreement.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

9.1     <u>Intention of Parties to Establish Creditors' Trust</u>.  This Trust Agreement is intended to create a Creditors' Trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with such intent and purpose and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may be made to apply retroactively.

9.2     <u>Preservation of Privilege and Defenses</u>.  Notwithstanding anything herein or in the Plan to the contrary, the Debtors shall not be required to waive any existing rights or privileges to which they are entitled under applicable law, including but not limited to the attorney-client privilege, except with regards to Claims and Causes of Action transferred to the Creditors' Trust. Notwithstanding anything herein or in the Plan to the contrary, all professionals shall reserve all rights at law regarding work product privilege.

9.3     <u>Prevailing Party</u>.  If the Trustee or the Creditors' Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Trustee or the Creditors' Trust, as the case may be, shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non- prevailing party incurred in connection with such dispute or enforcement action.

9.5     <u>Confidentiality</u>.  The Trustee and each of his respective employees, members, agents, professionals and advisors (each a "<u>Confidential Party</u>" and collectively, the "<u>Confidential Parties</u>") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any entity to which any of the Creditors' Trust Assets relates; provided, however, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations. In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Trustee to allow him/her sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

9.6     <u>Laws as to Construction</u>.  This Trust Agreement shall be governed and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

#4982892.2#4982892.2

9.7     Severability.  If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.8     Retention of Jurisdiction. Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Creditors' Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection with the Creditors' Trust, the Trust Agreement, or any entity's obligations incurred in connection with the Creditors' Trust, and any action against the Trustee or any professional retained by the Trustee or the Creditors' Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to service by certified or registered mail, return receipt requested, to be sent to its address set forth in this Trust Agreement or in the official Schedules filed in the Cases or to such other address as it may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

9.9     Notices.  Any notice or other communication under this Trust Agreement shall be in writing and shall be given by either (i) hand-delivery, (ii) first class mail (postage prepaid), (iii) reliable overnight commercial courier (charges prepaid), or (iv) email, if confirmed promptly by any of the methods specified in clauses (i), (ii) and (iii) of this sentence, to the following addresses:

If to the Trustee:

John D. ("Danny") Mullen
5014 Spring Hill Dr., Ste. 300
Spring, TX  77396
Email: danny.mullen@inwell.com

with copies to:

Berry D. Spears
Locke Lord LLP
600 Congress Avenue, Suite 2200
Austin, TX 78701
Email:  bspears@lockelord.com

- and -

#4982892.2#4982892.2

Philip G. Eisenberg
Locke Lord LLP
600 Travis Street, Suite 2800
Houston, TX 77002
Email:  peisenberg@lockelord.com

Notice given by email shall be deemed to have been given and received when sent. Notice by overnight courier shall be deemed to have been given and received on the date scheduled for delivery. Notice by mail shall be deemed to have been given and received three (3) calendar days after the date first deposited in the United States Mail. Notice by hand delivery shall be deemed to have been given and received upon delivery. A party may change its address by giving written notice to the other party as specified herein.

     9.10    <u>Headings</u>.  The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

     9.11    <u>Integration</u>.  This Trust Agreement and the Plan constitute the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

     9.12    <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of the Creditors' Trust and to consummate the transactions contemplated hereby.

     9.13    <u>Successors and Assigns</u>.  The terms of this Trust Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto, and their respective successors and assigns.

     9.14    <u>Counterparts</u>.  This Trust Agreement may be signed by the parties hereto in counterparts, which, taken together, shall constitute one and the same document, and the counterparts may be delivered by facsimile transmission or by electronic mail in portable document format (.pdf).

     9.15    <u>Relationship to the Plan</u>.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan. To that end, the Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Trust Agreement. If any provisions of this Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

[SIGNATURES ON NEXT PAGE]

21

       IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

WBH ENERGY LP

By:_____

Its_____

WBH ENERGY PARTNERS LLP

By:_____

Its_____

WBH ENERGY PARTNERS GP

By:_____

Its _____

JOHN D. ("DANNY") MULLEN

By:_____

22

23

Document comparison by Workshare Compare on Wednesday, August 19, 2015 4:04:25 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DM/4982892/1 |
| Description | DM-#4982892-v1-Creditors'_Trust_Agreement.v5-c_(3) |
| Document 2 ID | PowerDocs://DM/4982892/2 |
| Description | DM-#4982892-v2-Creditors'_Trust_Agreement.v5-c_(3) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 11 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 22 |