

Signed May 20, 2016.

_____
H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| WBH ENERGY, LP, | § | Case No. 15-10003-HCM |
| WBH ENERGY PARTNERS LLC, | § | Case No. 15-10004-HCM |
| WBH ENERGY GP, LLC, | § | Case No. 15-10005-HCM |
| | § | (Chapter 11) |
| Debtors. | § | |
| | § | (Jointly Administered under |
| | § | Case No. 15-10003-HCM) |

### OPINION ON CONSOLIDATED OBJECTIONS
### TO U.S. ENERGY DEVELOPMENT CORPORATION CLAIMS

As the late Supreme Court Justice Antonin Scalia[1] recognized:

> The ordinary-meaning rule is the most fundamental semantic rule of interpretation. It governs constitutions, statutes, rules, and private instruments . . . . If possible, every word and provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored . . . it is no more the court's function to revise by subtraction than by addition.[2]

---

[1] Associate Justice Antonin Gregory Scalia (March 11, 1936—February 13, 2016).

[2] Antonin Scalia & Bryan A. Gardner, *Reading Law: The Interpretation of Legal Texts*, pp. 69, 174 (Thomson/West, 2012).

1

In this case, the Court is called upon to determine the meaning of a private instrument—a joint operating agreement. Judicial interpretation is required to decide if the claimant is a "prevailing party" entitled to recover its attorneys' fees under the restrictive contractual standard set forth in the agreement. However, to rule that the claimant is entitled to recover attorneys' fees, the Court would have to rewrite the text of the agreement—by either ignoring the ordinary meaning of the critical word "financial" or by subtracting this critical word altogether. The Court can do neither. As a consequence, the recovery of attorneys' fees by the claimant must be denied.

## I
## INTRODUCTION

### A. Hearing on Consolidated Objections to USED Claims

The Court conducted a hearing on the merits of the Objections to the Proofs of Claim of U.S. Energy Development Corporation ("USED") on April 26, 2016. The Objections to the Proofs of Claim of USED were filed by CL III Funding Holding Company, LLC ("Castlelake").

The Court consolidated the contested matters and hearing on the (1) Objection to Proofs of Claim Filed by USED (dkt# 621 in lead case no. 15-10003) filed by Castlelake; (2) Objection to Proofs of Claim Filed by USED (dkt# 30 in member case no. 15-10004) filed by Castlelake; and  (3) Objection to Proofs of Claim Filed by USED (dkt# 24 in member case no. 15-10005) filed by Castlelake (collectively "Consolidated Objections to USED Claims"). The consolidation was accomplished by a Scheduling Order and with agreement of the parties. *See* Scheduling Order (dkt# 623).

A Joint Pretrial Order was filed by the parties prior to the hearing, which has been accepted by the Court. *See* Joint Pretrial Order ("Joint PTO") (dkt# 657). At the hearing,

Joint Exhibits Nos. 1-18 were introduced and admitted into evidence ("Ex."). The Court was also requested to take judicial notice of matters in the bankruptcy case and related adversary proceedings (dkt# 653).

This Opinion constitutes the findings of fact and conclusions of law by the Court with respect to the Consolidated Objections to USED Claims, in accordance with Rules 7052(a)(1) and 9014(c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").[3] In making the findings and conclusions in this Opinion, the Court has considered and weighed all the evidence, the demeanor and credibility of witnesses, the admitted exhibits, the record, arguments of counsel, and the pleadings and briefs filed by the parties, regardless of whether they are specifically referenced in this Opinion.[4]

## B. **Jurisdiction**

This Court has jurisdiction over the Consolidated Objections to USED Claims pursuant to 28 U.S.C. § 1334. The Consolidated Objections to USED Claims arise in, arise under, and are related to bankruptcy cases referred to this Court by the Standing Order of Reference entered in this District. This is a "core" proceeding under 28 U.S.C. § 157(b)(2). This Court is authorized to enter a final order. The parties have also expressly consented to this Court's authority to enter a final order on the Consolidated Objections to USED Claims. *See* Joint PTO, ¶¶ 3-6 (dkt# 657).

---

[3] To the extent any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[4] Cents (pennies) are intentionally omitted by the Court in the dollar figures used in this Opinion. Sense, however, is not intentionally omitted.

## II
## PROCEDURAL BACKGROUND

On January 4, 2015, WBH Energy, LP ("Debtor LP"), WBH Energy Partners LLC ("Debtor LLC"), and WBH Energy GP, LLC ("Debtor GP") (collectively "Debtors"), each filed voluntary petitions  under Chapter 11 of the Bankruptcy Code. The Chapter 11 cases of the Debtors are jointly administered under lead case no. 15-10003.

Prior to their Chapter 11 filings, the Debtors were engaged in the oil and gas exploration and production business. During the Chapter 11 case, the Court authorized the sale of substantially all of the Debtors' oil and gas assets to Castlelake by Order entered on August 28, 2015 ("Sale Order"). The sale was free and clear of all liens, except as set forth in the Sale Order. *See* Sale Order (dkt# 547, Ex. 15). At about the same time, the Court confirmed the Modified First Amended Joint Plan of Reorganization ("Plan") of the Debtors, by Order entered on September 4, 2015 ("Confirmation Order"). *See* Plan and Confirmation Order (dkt# 559, Ex. 16). The Plan and Confirmation Order also provided for the sale of substantially all of the Debtors' oil and gas assets to Castlelake free and clear of liens, except as set forth in the Plan and Confirmation Order. On September 9, 2015, the sale to Castlelake closed and the Plan became effective (dkt# 566).

The sale of the Debtors' oil and gas assets to Castlelake was subject to any valid senior liens asserted by USED under a joint operating agreement.[5]  USED filed the following Proofs of Claim with the Court on May 11, 2015: (1) Proof of Claim No. 69-1 against Debtor LP as a secured claim in the amount of at least $11,400,000; (2) Proof of

---

[5] *See* Sale Order (dkt# 547, ¶¶ 8, 10; Ex. 15, pp. 9-11)(defining USED claim and lien as an "Assumed Senior Lien and Assumed Liability"); Plan (dkt# 559, ¶¶ 1.3.80, 5.3.3; Ex. 16, pp. 43, 46)(defining USED claim and lien as a "Senior Secured Claim"); Confirmation Order (Ex. 16, pp. 20-21).

Claim No. 32-1 against Debtor LLC as a secured claim in the amount of at least $11,400,000; and (3) Proof of Claim No. 14-1 against Debtor GP as an unsecured claim in the amount of at least $11,400,000 (collectively "USED Claims") (Ex. 2-4).

Castlelake filed objections to the USED Claims on January 7, 2016, as follows: (1) Objection to USED Proof of Claim No. 69-1 in the case of Debtor LP (dkt# 621 in lead case no. 15-10003); (2) Objection to USED Proof of Claim No. 32-1 in the case of Debtor LLC (dkt# 30 in member case no. 15-10004); and (3) Objection to USED Proof of Claim No. 14-1 in the case of Debtor GP (dkt# 24 in member case no. 15-10005).[6] The Court then consolidated Castlelake's objections to the USED Claims under Bankruptcy Rule 7042 (herein "Consolidated Objections to USED Claims"). *See* Scheduling Order (dkt# 623). USED filed a Response to the Consolidated Objections to USED Claims on February 25, 2016 (dkt# 629).

### III
### FINDINGS OF FACT WITH FACTUAL BACKGROUND

The Court conducted a hearing on the merits of the Consolidated Objections to USED Claims on April 26, 2016. The following witnesses testified at the hearing:  Mr. Ryan Holbrook, in-house corporate counsel for USED; Mr. Eric J. Taube, outside counsel and expert witness for USED; and Mr. W. Ross Spence, outside counsel and expert witness for Castlelake.[7]

The primary issue to be decided by the Court is whether USED was a "prevailing party" under the contractual standard of an attorneys' fees provision in a joint operating agreement. If USED is a prevailing party under the contractual standard, then USED

---

[6] In the Plan, Castlelake was granted the authority to file objections to Senior Secured Claims and to litigate any such objections. *See* Plan (Ex. 16, p. 58).

[7] The Court's findings of fact include factual stipulations of the parties in the Joint PTO (dkt# 657).

would be entitled to recovery of its reasonable attorneys' fees and have a senior lien for such fees on the oil and gas assets of the Debtors sold to Castlelake. USED has withdrawn the other secured claims set forth in the USED Claims. *See* Stipulations in Joint PTO, ¶¶ 1-2; 7-14; 35-43.[8]

## A. **Business of Debtors**

The Debtors were engaged in the business of oil and gas exploration and production prior to their bankruptcy filings on January 4, 2015 ("Petition Date"). Although the Debtors were affiliated through common ownership, each of the Debtors was a separate legal entity with different functions. In short, Debtor LLC was an operator, Debtor LP was a working interest owner, and Debtor GP was the general partner of Debtor LP. USED (a party unrelated to the Debtors) was also a working interest owner in oil and gas properties operated by Debtor LLC.

Debtor LP owned working interests in numerous oil and gas leases located in the State of Texas. Prior to the Petition Date, Debtor LLC was the operator responsible for operating the leases in which Debtor LP and USED held working interests pursuant to certain joint operating agreements. Castlelake was a lender to the Debtors and held a security interest and lien on substantially all of the Debtors' assets.

## B. **Joint Operating Agreement**

Debtor LLC (as operator), and Debtor LP and USED (as working interest owners and non-operators) entered into a Joint Operating Agreement, dated September 1, 2011

---

[8] On April 25, 2016 (immediately prior to the hearing), USED filed an Amended Proof of Claim No. 69-2 against Debtor LP. The Amended Proof of Claim included a claim for unpaid joint interest billings in the amount of $133,052. This claim for unpaid joint interest billings was not adjudicated at the hearing.

and amended on December 30, 2011 ("JOA").[9] *See* JOA (Ex. 1). The JOA covers multiple oil and gas leases and wells located in various counties in the State of Texas (the "Oil and Gas Properties"). A Memorandum of the JOA was filed and recorded in the relevant County Clerks' records for such counties.

The JOA has several provisions relevant to the instant dispute between USED and Castlelake, which include the following:

> **Liens and Security Interests**: Each party grants to the other parties hereto a lien upon any interest it now owns or hereafter acquires in Oil and Gas Leases and Oil and Gas Interests in the Contract Area, and a security interest and/or purchase money security interest in any interest it now owns or hereafter acquires in the personal property and fixtures on or used or obtained for use in connection therewith, to secure performance of all of its obligations under this agreement including but not limited to payment of expense, interest and fees, the proper disbursement of all monies paid hereunder, the assignment or relinquishment of interest in Oil and Gas Leases as required hereunder, and the proper performance of operations hereunder. Such lien and security interest granted by each party hereto shall include such party's leasehold interests, working interests, operating rights, and royalty and overriding royalty interests in the Contract Area…. *See* Article VII.B of JOA (Ex. 1, p. 15).

> **Defaults and Remedies**: "If any party fails to discharge any financial obligation under this agreement" then the "remedies specified" in Article VII "shall be applicable". *See* Article VII.D of JOA (Ex. 1, p. 15).

> Suit for Damages: "Non-defaulting parties…for the benefit of non-defaulting parties may sue…to collect the amounts in default." *See* Article VII.D.2 of JOA (Ex. 1, p. 16).

The key provision of the JOA, and centerpiece of the instant dispute, provides:

> Costs and Attorneys' Fees: In the event any party is required to bring legal proceedings to enforce any financial obligation of a party hereunder, the prevailing party in such action shall be entitled to recover all court costs, costs of collection, and a reasonable

---

[9] VW Ventures was an original party to the JOA. VW Ventures later assigned its interests to Debtor LP.

attorney's fee, which the lien provided for herein shall also secure.
*See* Article VII.D.5 of JOA (Ex. 1, p. 16).

The JOA has a Texas choice of law provision. *See* Article XIV.B of JOA (Ex. 1, p. 19) (the laws of the State where the Contract Area is located governs); Exhibit A to JOA (Ex. 1, pp. 34-41) (Contract Area is counties in the State of Texas); First Amendment to JOA (Ex. 1, p. 65) (Texas law governs).

Under the JOA, USED and Debtor LP (as working interest owners) were required to pay joint interest billings to Debtor LLC (as operator) for their proportionate share of the costs for operation of the Oil and Gas Properties. As of the Petition Date, Debtor LP (as working interest owner) owed millions of dollars in unpaid joint interest billings under the JOA to Debtor LLC (as operator). In turn, Debtor LLC (as operator) owed millions of dollars to vendors and suppliers.

By late 2014, unpaid vendors and suppliers began sending statutory mineral lien notices to USED and the Debtors. On or about November 20, 2014, USED sent a letter to Debtor LLC. This letter notified Debtor LLC that it was deemed to have resigned and that it had been removed as operator under the JOA, due to its insolvency and because it was incapable of serving as operator. The letter from USED also notified Debtor LLC that USED had selected itself as successor operator. On or about December 9, 2014, USED also sent a letter to Debtor LLC and Debtor LP notifying them that they were in default under the JOA for failure to pay vendors and expenses.

Debtor LLC disputed USED's contention that Debtor LLC had properly been removed as operator under the JOA. Debtor LLC did not relinquish its operatorship under the JOA, which led USED to file the state court proceeding described below.

## C. Stale Court Proceeding

On December 29, 2014, USED filed its Original Petition in the 271st District Court of Jack County, Texas, naming Debtor LLC, Debtor LP, and Debtor GP as defendants ("State Court Proceeding"). *See* Original Petition and Application for Ancillary Injunctive Relief (Ex. 5). The primary and "main" issue and relief sought by USED in the State Court Proceeding was injunctive relief recognizing and enforcing the removal of Debtor LLC as operator under the JOA.

USED immediately sought and obtained an *ex parte* Temporary Restraining Order against Debtor LLC in the State Court Proceeding on December 29, 2014. *See* Order Granting Plaintiff's Application for Temporary Restraining Order ("Temporary Restraining Order") (Ex. 6). In short, the Temporary Restraining Order prevented Debtor LLC from continuing to act as the operator under the JOA, and required Debtor LLC to execute documents and relinquish operatorship to USED.

Within a week after the Temporary Restraining Order was entered, Debtor LLC (and the other Debtors) filed their Chapter 11 bankruptcy petitions with this Court. As a result, the State Court Proceeding was ultimately dismissed by USED.

## D. Operator Adversary Proceeding

With the Debtors' bankruptcy filing on January 4, 2015, the ongoing battle between USED and Debtor LLC over the operatorship under the JOA shifted to this Court. On January 15, 2015, USED filed its Original Complaint and Application for Injunctive Relief in this Court as adversary proceeding no. 15-1006 ("Operator Adversary Proceeding"). *See* Original Complaint (Ex. 7).

The primary and "main" issue and relief sought by USED in the Operator Adversary Proceeding was injunctive relief to enforce the removal of Debtor LLC as operator under the JOA and to recognize USED as the successor operator.[10] USED asserted that Debtor LLC had no "property interest" in the JOA because its only interest (the operatorship) was terminated prior to Debtor LLC's bankruptcy filing. *See* Original Complaint (Ex. 7, p. 9). USED sought a preliminary injunction only against Debtor LLC.

This Court conducted a contested hearing on the preliminary injunction in the Operator Adversary Proceeding on February 6, 2015. This Court granted a preliminary injunction in favor of USED on February 9, 2015. *See* Ruling Transcript (Ex. 9); Order Granting Plaintiff's Application for Preliminary Injunction against Debtor LLC ("Preliminary Injunction") (Ex. 8). The Court found that Debtor LLC had been properly removed as operator under the JOA prior to its bankruptcy filing, and that USED had been properly selected as the successor operator under the JOA. The Preliminary Injunction prevented Debtor LLC from continuing to act as the operator under the JOA, determined that USED was the operator under the JOA, and required Debtor LLC to execute documents and relinquish operatorship to USED, pending a trial on the merits.

The trial on the merits in the Operator Adversary Proceeding was never conducted. Given later developments in the bankruptcy case (including the sale of substantially all of the Debtors' oil and gas assets to Castlelake, confirmation of a Plan, and agreements between Castlelake and USED as to the operatorship), USED remained the operator and this proceeding was ultimately dismissed.

---

[10] The Original Complaint filed by USED in the Operator Adversary Proceeding was identical in many respects to the Original Petition filed by USED in the State Court Proceeding. *Compare* Exs. 5 and 7. Debtor LP and Debtor GP were originally named as Defendants in the Operator Adversary Proceeding, in addition to Debtor LLC. The Court later dismissed USED's claims against Debtor LP and Debtor GP for failure to state a claim. *See* Order (adversary no. 15-1006, dkt# 34).

In the Operator Adversary Proceeding, USED sought recovery of its reasonable attorneys' fees under Article VII.D.5 of the JOA. *See* Original Complaint (Ex. 7, p. 14). This is the same provision of the JOA upon which USED now seeks a senior secured lien for attorneys' fees. The Operator Adversary Proceeding was dismissed by agreement of USED and the Debtors pursuant to a Stipulation and Order of Dismissal entered by the Court on December 30, 2015 ("Stipulated Dismissal Order"). In part, the Stipulated Dismissal Order provides that the parties (named as USED, Debtor LLC, Debtor LP and Debtor GP) "stipulate to the dismissal of all of the claims in this civil action without prejudice with each party to bear its own costs, expenses, and attorney's fees." *See* Stipulated Dismissal Order (Ex. 10, p. 2).

**E. Interpleader Adversary Proceeding**

Numerous unpaid vendors and suppliers who provided materials and services to the Oil and Gas Properties asserted mineral subcontractor liens and claims against USED. As a result, USED filed a Complaint in Interpleader in this Court on February 2, 2015, as adversary proceeding no. 15-1010, against Debtor LLC, Castlelake and multiple vendors and suppliers asserting mineral subcontractor liens against USED ("Interpleader Adversary Proceeding"). *See* Complaint in Interpleader (Ex. 11).

In the Interpleader Adversary Proceeding, USED sought to interplead approximately $1.9 million representing joint interest billings that USED admitted that it owed to Debtor LLC (as operator) into the registry of the Court. USED also sought a discharge from all liability including the mineral subcontractor liens asserted against USED's interests in the Oil and Gas Properties. USED also sought recovery of its reasonable attorneys' fees and costs in its Complaint.

The "main" issue and relief sought in the Interpleader Adversary Proceeding was the amount owed by USED to Debtor LLC for joint interest billings and discharge of USED from liability through payment of USED interplead funds to parties entitled to such funds. USED deposited the amount of about $1.9 million into the registry of the Court in the interpleader proceeding.

As part of a mediated settlement agreement arranged by Castlelake, the Interpleader Adversary Proceeding was disposed of by an Agreed Final Judgment entered by the Court on August 18, 2015. *See* Agreed Final Judgment in Interpleader Adversary Proceeding (Ex. 12). Among other things, the Agreed Final Judgment "discharged USED and its interest in the Leases and the Wells (as defined in USED's complaint)" from "all claims asserted by all Defendants". The Agreed Final Judgment also distributed the registry funds interplead by USED primarily for the benefit of mineral lienholders. All relief requested by any party in the Interpleader Adversary Proceeding not specifically granted in the Agreed Final Judgment was "denied and dismissed with prejudice". USED did not pay mineral lienholders any amounts over the amount that USED admitted it owed to Debtor LLC in the Interpleader Adversary Proceeding.

**F.  Bankruptcy Case**

Several events and hearings occurred in the main bankruptcy case of the Debtors, separate and apart from the above-described adversary proceedings that directly involved USED. Numerous parties participated in the main bankruptcy case of the Debtors. The Debtors conducted their businesses as debtors in possession. The Debtors' bankruptcy cases were jointly administered in one bankruptcy case, but the Debtors were not substantively consolidated. An Official Committee of Creditors

("Creditors Committee") was appointed, retained counsel, and was active in the bankruptcy case. Mineral lien vendors and suppliers were active in the bankruptcy case.

Castlelake (the primary lender) filed motions for relief from the automatic stay to foreclose its liens and to convert the Debtors' Chapter 11 cases to Chapter 7. These motions were vigorously opposed by the Debtors and the Creditors Committee. The Debtors were in need of additional funding to complete certain wells known as the "Lewis-Stewart" wells. To provide such funding, the Debtors located debtor-in-possession ("DIP") financing with a new lender. The proposed DIP financing drew stiff opposition from Castlelake and other creditors. Castlelake then offered to provide DIP financing to complete such wells, which also drew opposition. The Creditors Committee sought authority to bring certain claims and causes of action on behalf of the Debtors' estates, which was also contested.

Later, a settlement was reached between the Debtors, Creditors Committee, and Castlelake. The settlement resulted in Castlelake providing DIP financing to the Debtors and a Court-approved bidding and marketing process for the Debtors' oil and gas assets. Castlelake was permitted to credit bid its secured debt under certain conditions.

Ultimately, a sale of substantially all of the Debtors' oil and gas assets to Castlelake was approved by the Court. The Plan filed by the Debtors was confirmed by the Court at about the same time. On September 9, 2015, the sale to Castlelake closed and the confirmed Plan became effective. As a result, Castlelake now owns the working interests of Debtor LP in the Oil and Gas Properties, and USED remains the operator of the Oil and Gas Properties.

The only assets with value sold to Castlelake were assets owned by Debtor LP—consisting of working and leasehold interests in the Oil and Gas Properties. Indeed at the hearing, USED effectively (and understandably) conceded that USED is asserting its lien only on the working interests that were owned by Debtor LP, and not on any assets owned by Debtor LLC that were sold to Castlelake.

The evidence at the hearing did not establish that the assets owned by Debtor LLC that were sold to Castlelake had any value. Debtor LLC's assets consisted primarily of operator rights (which were terminated prior to the bankruptcy by USED) and accounts receivable owing from Debtor LP to Debtor LLC (which were released by Castlelake as part of the sale under an agreement with USED). Debtor GP owned only a general partnership interest in Debtor LP, which had no value.

**G. Other Agreements between Castlelake and USED**

During the course of the bankruptcy case, Castlelake and USED entered into several other agreements and stipulations in connection with the DIP financing, sale of the Debtors' assets to Castlelake, and confirmation of the Plan.

On April 22, 2015, Castlelake and USED filed their Joint Notice of Filing of Agreement Regarding Sale Motion, DIP Motion and Lift Stay Motion. This agreement provided, in relevant part, that:

> CL III [Castlelake] agrees that, if it acquires the Oil and Gas Property and Personal Property (as those terms are defined in the DIP Credit Agreement attached to the DIP Motion) pursuant to the Sale Motion, a plan or foreclosure, it shall:
>
> (1) Execute a Joint Operating Agreement with respect to the Oil and Gas Properties that is substantially in the form of the existing Operating Agreements with a provision [sic] require all working interest owners to fund cash calls at the same time ("New JOA")

14

[and] jointly attempt to have USED act as operator for the pipelines associated with the Oil and Gas Properties.

(2) USED will be designated as the Operator of the Oil and Gas Property in the New JOA; and

(3) Release any claims, if any should exist (a) acquired in connection with the sale of accounts receivable by WBH Energy Partners [Debtor LLC] to CL III [Castlelake] pursuant to the order entered granting the Sale Motion, which (b) arose under Article 7 of the current Operating Agreements between WBH LP [Debtor LP] and USED for nonpayment by USED of joint interest billings by WBH Energy Partners [Debtor LLC] to WBH LP [Debtor LP]. The foregoing will not prejudice CL III's [Castlelake's] liens, claims and rights with respect to interplead funds asserted in Adversary No. 15-01010, styled *U.S. Energy Development Corp. v. WBH Energy Partners, LLC, et al.* pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division. *See* Joint Notice of Filing of Agreement (dkt# 319, Ex. 13) [added].

On August 28, 2015, the Court entered the Sale Order approving a Purchase and Sale Agreement between the Debtors and Castlelake. Under the Sale Order, substantially all of the Debtors' assets were acquired by Castlelake free and clear of liens, except as specifically set out in the Sale Order. Relevant here, paragraph 10 of the Sale Order provides:

For the avoidance of doubt, and without the admission of priority or amount, the liens asserted by U.S. Energy Development Corp. ("USED") pursuant to that certain Model Form Operating Agreement (the "JOA") dated December 30, 2011, as it has been amended and modified, shall be an Assumed Senior Lien and Assumed Liability, and nothing in this Order shall constitute a determination or adjudication that such liens and claims shall be satisfied or that the sale approved herein shall have transferred the Purchased Assets free of such liens and claims. The Purchased Assets shall not be sold free and clear of USED's liens or claims under the JOA. *See* Sale Order (Ex. 15, p. 11).

Shortly thereafter, on September 4, 2015, the Court entered the Confirmation Order confirming the Debtors' Plan. Relevant here, paragraph 18 of the Confirmation Order provides:

> USED Lien. Nothing in this Order or in the Plan shall be deemed to bar, enjoin, limit, adjudicate or preclude the assertion by U.S. Energy Development ("USED") of the lien(s) or claims asserted by it under that certain Model Form Operating Agreement dated September 1, 2011, as it may have been amended or modified (the "JOA"). *See* Confirmation Order (Ex. 16, pp. 20-21).

In connection with the Sale Order and confirmed Plan, Castlelake and USED entered into yet another agreement ("Agreement Regarding Sale and Plan"). USED agreed that, with respect to the Assumed Senior Lien and claim reserved by USED in the Plan and Sale Order: (1) USED attorneys' fees asserted in the USED Claims would be capped at no more than $500,000; and (2) the reserved Assumed Senior Lien and claim for all other amounts would be limited to amounts that USED was legally required to pay for and on account of (a) vendor debt incurred by Debtor LLC as operator which Debtor LLC failed to pay or (b) the joint interest billing amount Debtor LP was required to pay Debtor LLC under the JOA. USED and Castlelake reserved all other rights regarding the amount and priority of the reserved USED Senior Lien and claim. *See* Agreement Regarding Sale and Plan (Ex. 14).

## H.  USED Attorneys' Fees

The instant dispute before the Court involves whether USED is entitled to recover its attorneys' fees as a "prevailing party" under the contractual standard in the JOA. If USED is entitled to recovery of its attorneys' fees, USED would have a valid senior lien for such fees on the Oil and Gas Properties sold to Castlelake by the Debtors. This issue was specifically reserved by USED and Castlelake during the sale of the Debtors'

oil and gas assets. The issue has now been joined and presented to the Court through the Consolidated Objections to USED Claims filed by Castlelake.

At the hearing on the Consolidated Objections to USED Claims, invoices for attorneys' fees incurred by USED were admitted into evidence ("Invoices") (Ex. 17). The Invoices were organized by the different law firms that represented USED in its disputes with the Debtors, as follows: (i) the Hohmann Taube & Summers law firm ("Taube Firm") Ex. 17A); (ii) the Law Office of M. Steven Smith ("Smith Firm") (Ex. 17B); and (iii) the HodgsonRuss LLP law firm ("Hodgson Firm") (Ex. 17C, 17D).[11]

In general, the Taube Firm (located in Austin, Texas) served as bankruptcy counsel for USED during the Debtors' bankruptcy case. The Smith Firm (located in Houston, Texas) served as Texas oil and gas counsel for USED prior to and during the Debtors' bankruptcy case. The Hodgson Firm (located in Buffalo, New York, where USED is headquartered) served as corporate outside counsel for USED prior to and during the Debtors' bankruptcy case.

No summaries of the dollar amounts or categorical types of legal services rendered were provided by USED to the Court, only the raw Invoices. From USED witness testimony, the Court gleaned that the Taube Firm billed USED about $320,000; the Smith Firm billed USED about $140,000; and the Hodgson Firm billed USED about $134,000.[12] This would result in a grand total in the neighborhood of $594,000 in attorneys' fees incurred by USED.

---

[11] The invoices from the Hodgson Firm are heavily redacted and marked with handwritten calculations, making it virtually impossible for the Court to determine how much in legal services were actually billed to USED with regard to disputes with any of the Debtors. *See* Invoices (Ex. 17C, 17D).

[12] Castlelake provided the Court with a demonstrative exhibit which set forth a total for the Taube Firm invoices of $330,448, a total for the Smith Firm invoices of $159,720, and a total for the Hodgson Firm invoices of $155,171, for a grand total of $645,339 in USED attorneys' fees. *See* Chart (Ex. 18).

No effort was made by USED to segregate, allocate, or even estimate the attorneys' fees that USED incurred between disputes and proceedings that USED had with Debtor LP, from disputes and proceedings that USED had with Debtor LLC. But both Debtor LLC and Debtor LP were each parties to the JOA with USED—and each had a different role. As previously noted, Debtor LLC was the operator under the JOA and Debtor LP was a working interest owner (non-operator) under the JOA. Similarly, no effort was made by USED to segregate, allocate or even estimate attorneys' fees between those fees incurred in the State Court Proceeding, the Operator Adversary Proceeding, the Interpleader Adversary Proceeding, or the main bankruptcy case.

Instead, USED contended that the legal proceedings were "inextricably intertwined", and that it was not possible to segregate or allocate the attorneys' fees between the different legal proceedings or between Debtor LLC and Debtor LP. In this regard, the Court must disagree. As demonstrated by the structure of this Opinion, the Court is able to distinguish the different legal proceedings brought by USED against the different parties. Discrete legal services were performed by USED counsel in the different legal proceedings—namely the State Court Proceeding, the Operator Adversary Proceeding, the Interpleader Adversary Proceeding, and the Debtors' main bankruptcy case. Each of these proceedings had different hearings and many involved different issues.

USED admitted at the hearing that it never recovered any money damages or monetary relief against either Debtor LLC or Debtor LP, and that it never actually enforced any financial obligation of either Debtor LLC or Debtor LP. Further, neither Debtor LP nor Debtor LLC was ever ordered to pay any monetary obligations under the

JOA in a legal proceeding brought by USED. USED testified that Debtor LP never paid any of the outstanding pre-petition joint interest billings that it owed to either Debtor LLC (as operator) or USED (as successor operator). USED also admitted that it never had to pay any amounts owed by Debtor LP for joint interest billings or any amounts for Debtor LP's share of expenses owed to vendors and suppliers.

From the testimony at the hearing, it became clear that the goal and focus of USED in the legal proceedings was two-fold. First, to remove Debtor LLC as the operator and keep the operatorship in USED. Second, to preserve and enforce USED's lien rights under the JOA. From the Court's perspective, USED largely accomplished these goals and necessarily incurred significant attorneys' fees in so doing. However, as will be explained by the Court, USED's accomplishment of that goal does not make USED a "prevailing party" within the contractual standard set forth in the JOA.

## IV
## CONCLUSIONS OF LAW WITH LEGAL ANALYSIS

### A.  Summary of Positions of Castlelake and USED

In general, Castlelake objects to the secured claim of USED for attorneys' fees on the following grounds: (1) USED is only entitled to assert a lien under the JOA if it was the "prevailing party" in a proceeding to enforce a "financial obligation" of a party to the JOA, and USED was not a prevailing party in a proceeding to enforce a financial obligation of Debtor LLC or Debtor LP (the other parties to the JOA); (2) to the extent that USED was a prevailing party in the Operator Adversary Proceeding or State Court Proceeding, such claims were brought against Debtor LLC not to enforce a financial obligation of Debtor LLC, but rather to remove Debtor LLC as operator under the JOA;

(3) Debtor LLC (the only party that USED may have prevailed against) does not own a working interest in the Oil and Gas Properties that could be subject to USED's lien; and (4) even if USED were a prevailing party in a proceeding, USED has not segregated, and cannot demonstrate, its reasonable attorneys' fees related to any such proceeding. *See* Joint PTO, ¶2; Post-Hearing Brief (dkt# 667).

In general, USED responds to Castlelake's objections as follows: (1) USED was a "prevailing party" as it was successful in obtaining a judgment or order for equitable relief; (2) USED was a "prevailing party" under the JOA because (a) USED sought and obtained the Temporary Restraining Order in the State Court Proceeding and the Preliminary Injunction in the Operator Adversary Proceeding which removed Debtor LLC as operator, and USED remained the operator under the confirmed Plan, and (b) USED was the "prevailing party" in the Interpleader Adversary Proceeding and obtained a judgment which resulted in payments to lien claimants; and (3) USED has incurred reasonable attorneys' fees which are recoverable and such fees do not need to be segregated because the different claims asserted and services performed were "intertwined". *See* Joint PTO, ¶¶ 7, 39; Post-Hearing Brief (dkt# 666).

## B. JOA Contractual Standard for Recovery of Attorneys' Fees

In the present case, Texas law applies to the claim by USED for recovery of attorneys' fees under the Joint Operating Agreement (herein "JOA").[13]  Under Texas law, parties are free to contract for either a looser or stricter fee-recovery standard than the statutory standard provided in Chapter 38 of the Texas Civil Practice and Remedies Code. *See e.g., Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d

---

[13] *See* Article XIV.B of JOA (Ex. 1, p. 19); Exhibit A to JOA (Ex. 1, pp. 34-41); and First Amendment to JOA (Ex. 1, p. 65).

650, 653 (Tex. 2009); *Fleet Oil & Gas, Ltd. v. EOG Res., Inc.*, No. 10-11-00289-CV, 2014 Tex. App. LEXIS 5597, at *15 (Tex. App.—Waco May 22, 2014, *pet. denied*). In such event, the terms of the contract—not a statute—control the right to recovery of attorneys' fees. *See Fleet Oil & Gas*, 2014 Tex. App. LEXIS 5597, at *15 (citing *Mohican Oil & Gas, LLC v. Scorpion Expl. & Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, *pet. denied*)).[14]

This is the precise situation before the Court here. The JOA contains a specific contractual right to recovery of attorneys' fees secured by a lien. This contractual right supersedes any statutory right to recovery available under Texas law. As a result, the Court is confined to the language of the JOA in determining whether the attorneys' fees sought by USED are recoverable.

The JOA at the crux of this dispute was entered into by three parties—Debtor LLC (as operator), Debtor LP (as working interest owner), and USED (as the other working interest owner). The key provision of the JOA, which contains the contractual right of USED to recover attorney's fees, is as follows:

> Costs and Attorneys' Fees: In the event any party [USED] is required to bring legal proceedings to **enforce any financial obligation** of a party hereunder [Debtor LLC or Debtor LP], the **prevailing party** in such action shall be entitled to recover all court costs, costs of collection, and a reasonable attorney's fee, which the lien provided for herein shall also secure. *See* Article VII.D.5 of JOA (Ex. 1, p. 16) [added] (**emphasis added**).

---

[14] USED, as the party seeking to recover its attorneys' fees, bears the burden of proving that its fees are recoverable. *See Aetna Cas. & Sur. v. Wild*, 944 S.W.2d 37, 40 (Tex. App.—Houston 1997, *writ denied*) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991)).

To begin, the Court must determine whether this provision of the contract (JOA) is ambiguous.[15] In the present dispute, neither Castlelake nor USED contend that the JOA is ambiguous. Likewise, the Court finds that the relevant provisions of the JOA are not ambiguous. Instead, the parties simply disagree as to the appropriate interpretation of the provisions of the JOA.[16]

When the parties disagree over the meaning of an unambiguous provision in a contract, the parties' intent should be determined by examining the contract as a whole. A court must take the intent of the parties from the contract itself, not from the parties' present interpretation. Put another way, the contract must be enforced as written. *See e.g., Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 120-21 (Tex. App.—Corpus Christi 1999, *pet. denied*) (supporting citations omitted). As a result, this Court must give effect to the ordinary and plain meaning of the contractual attorneys' fees provision bargained for in the JOA.

### 1.  *Meaning  of "Prevailing Party" in JOA*

Next, the Court turns to the meaning of "prevailing party" in the attorneys' fees provision in the JOA. The JOA does not define "prevailing party". Castlelake and USED disagree on the applicable meaning of "prevailing party" under Texas law.

Castlelake suggests that the phrase "prevailing party" means a party who "successfully prosecutes an action or successfully defends against an action on the main issue." In support, Castlelake cites to a line of Texas cases including *Pegasus*

---

[15] *See e.g., Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 120 (Tex. App.—Corpus Christi 1999, *pet. denied*) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)) (finding that whether a contract is ambiguous is a question of law for the trial court and, further, that a contract is ambiguous if it is susceptible to more than one reasonable interpretation or meaning).

[16] A disagreement over the meaning of a contractual provision does not render the provision ambiguous. *See e.g., Pegasus Energy*, 3 S.W.3d at 120 (supporting citations omitted).

*Energy*, 3 S.W.3d 112, 128 (Tex. App.—Corpus Christi 1999, *pet. denied*).

In *Pegasus Energy,* the Texas Court of Appeals dealt with a contractual provision in an operating agreement that provided for recovery of attorneys' fees by a prevailing party. In this context, the Court of Appeals held that the phrase "prevailing party" means a party who "successfully prosecutes an action or successfully defends against an action on the main issue." *Pegasus Energy,* 3 S.W.3d at 128 (citing *Emery Air Freight Corp. v. General Transp. Sys., Inc.*, 933 S.W.2d 312, 316 (Tex. App.—Houston 1996, *no writ*); *Weng Enter., Inc. v. Embassy World Travel, Inc.*, 837 S.W.2d 217, 222-23 (Tex. App.—Houston 1992, *writ denied*)). To that end, the *Pegasus Energy* court focused on what constituted the "main issue" in the proceeding, and then determined which party prevailed on that main issue.

On the other hand, USED suggests that the phrase "prevailing party" means a party who is "successful in obtaining a judgment, damages or orders for equitable relief", or a party that obtained "some form of relief from the court that affected a material alteration of the legal relationship of the parties."[17]  In support, USED cites to a line of cases including *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009).

---

[17] Very recently, the U.S. Supreme Court addressed the meaning of "prevailing party" in the context of a federal statute—Title VII of the Civil Rights Act of 1964. *See CRST Van Expedited Inc. v. Equal Opportunity Emp't Comm'n*, --- S.Ct. ---, No. 14-1375, 2016 WL 2903425 (May 19, 2016). In sum, the Supreme Court recognized that under federal fee-shifting statutes, the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," and held that a defendant in a Title VII suit need not obtain a favorable judgment "on the merits" to be a prevailing party. This Court's decision here does no violence to the Supreme Court's definition of "prevailing party". This case concerns the meaning of "prevailing party" in the context of a private contract governed by Texas state law (the JOA), not a federal statute. More importantly, even if USED is a "prevailing party" under the Supreme Court's definition, the JOA requires more than that. The JOA requires that USED must have prevailed in a proceeding to enforce a "financial obligation", as more fully explained below. Obviously, the federal fee-shifting statutes addressed by the Supreme Court do not have this additional critical requirement—i.e., that a party prevail on enforcement of a "financial obligation".

In *Intercontinental Group,* the Texas Supreme Court dealt with a fee recovery provision in a real estate development contract. Although the plaintiff in *Intercontinental Group* obtained a jury finding that the defendant had breached the contract, the jury awarded zero ($0) damages against the defendant. 295 S.W.3d at 655. Ultimately, the Texas Supreme Court held that the plaintiff was not a "prevailing party" entitled to attorneys' fees because the plaintiff "recovered no damages; it secured no declaratory or injunctive relief; it obtained no consent decree or settlement in its favor; it received nothing of any value of any kind, certainly received none of the relief sought in its petition." *Intercontinental Group*, 295 S.W.3d at 655. According to the Texas Supreme Court, then, a prevailing party must prevail "upon the court to award it something, either monetary or equitable". 295 S.W.3d at 655.

The Court does not believe that these two lines of cases relied upon by Castlelake and USED are inconsistent.

Notably, the Texas Supreme Court in *Intercontinental Group* focused almost exclusively on the *remedy* actually obtained by the party to be a "prevailing party" — specifically whether a $0 judgment can meet this requirement. In turn, the *Pegasus Energy* court addressed the *issue* the party must win to be a "prevailing party". Indeed, a review of the opinion written by the Texas Court of Appeals in *Intercontinental Group* demonstrates that the lower court applied the same standard set forth in *Pegasus Energy*—a prevailing party is one who successfully prosecutes or defends the "main issue" in the case. *See Intercontinental Group*, 295 S.W.3d 668, 672 (Tex. App.— Corpus Christi 2009). Although the Texas Supreme Court reversed the lower court award of attorneys' fees in *Intercontinental Group,* in doing so, the Texas Supreme

Court did not reject the longstanding "main issue" test applied by Texas state courts. Instead, the Texas Supreme Court reversed the award of attorneys' fees because the *remedy* obtained by the plaintiff ($0 damages in a breach of contract suit) was insufficient to qualify the plaintiff as a prevailing party.

In sum, to determine if a party is a "prevailing party", Texas law requires a court to examine whether the party successfully prosecutes or defends the "main issue" in the proceeding, and the remedy actually obtained by that party.[18] As explained below however, the meaning of "prevailing party" does not dispose of the instant dispute between Castlelake and USED—given other restrictive text in the JOA.

### 2. *Meaning of "Financial Obligation" in JOA*

Importantly, the attorneys' fees provision in the JOA has restrictive text. To recover its attorneys' fees under the JOA, USED must be more than just a "prevailing party". The JOA requires that USED be a "prevailing party" in a legal proceeding to "enforce any financial obligation" of a party to the JOA.[19] Here, the other parties to the JOA were Debtor LLC and Debtor LP. So, the Court must determine whether USED was a "prevailing party" in a legal proceeding brought by USED to enforce any "***financial obligation***" of Debtor LLC or Debtor LP.

Under Texas law, the terms used in a contract are given their "ordinary" and "plain" meaning, unless the contract itself shows that the parties intended the terms to have a different meaning. *See e.g., Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W. 3d 445,

---

[18] The Fifth Circuit, in an unpublished opinion, also used the "main issue" test to define "prevailing party" under Texas state law. *See Debaillon v. Total Minatome Corp.*, 180 F.3d 265 (5th Cir. 1999) (unpublished) (finding that a "prevailing party" is the party that "successfully prosecutes the action or successfully defends against the action on the main issue") (citing to a litany of Texas state court cases).

[19] *See* Article VII.D.5 of JOA (Ex. 1, p. 16).

450 (Tex. 2015) (supporting citations omitted); *see also Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (applying Texas law). Here, the JOA provides no definition for the terms "financial obligation". As a result, this Court must give the terms "financial obligation" their ordinary and plain meaning.

The Court concludes that the ordinary and plain meaning of the terms "financial obligation" in the JOA requires some nexus to a monetary or pecuniary obligation of the party. Black's Law Dictionary defines a "financial interest" as "an interest involving money or its equivalent". Black's Law Dictionary (10th ed. 2014). The standard dictionary definition of "financial" is "relating to finance"; with "finance" being defined as "money or other liquid resources". Merriam-Webster Dictionary (11th ed. 2004).

As a result, the Court determines that the term "financial" as used in "financial obligation" requires a monetary obligation. Read in the context of the attorneys' fees provision of the JOA, the Court concludes that a "legal proceeding to enforce any financial obligation" means a legal proceeding to enforce any monetary obligation.

The Court's conclusion regarding the meaning of "financial obligation" in the JOA is buttressed by other provisions in the JOA.[20] For example, the JOA allows a non-defaulting party (USED) to sue a defaulting party for damages to collect "amounts in default". *See* Article VII.D.2 of JOA (Ex. 1, p. 16).  Debtor LP (as working interest owner) had a "financial obligation" under the JOA to pay its share of joint interest billings—and Debtor LP was in default on such monetary obligation. Debtor LLC (as operator) had a "financial obligation" to pay vendors and suppliers—and Debtor LLC was in default on such monetary obligation. USED (as a working interest owner, even

---

[20] The parties' intent should be determined by examining the entire contract as a whole. *See e.g., Fischer v. CTMI, L.L.C.,* 479 S.W.3d 231, 239 (Tex. 2016) (supporting citations omitted).

before it became the operator) could have sued Debtor LP or Debtor LLC for monetary damages due to these defaults under the JOA. If USED had been successful in any such suit, USED would have been a "prevailing party" in a proceeding to enforce a "financial obligation" and therefore entitled to its attorneys' fees. But, as we have and will see, this simply never happened.

Equally important, the JOA provision under which Debtor LLC was removed as operator by USED uses only the term "obligation", without the modifying term "financial" found in the attorneys' fee provision of the JOA. *Compare* Article V.B.1 of JOA (Ex. 1, p. 7) (operator may be removed for "material failure or inability to perform its obligations" under the JOA); *with* Article VII.D.5 of JOA (Ex. 1, p. 16) (attorneys' fees may be recovered by prevailing party in legal proceedings to enforce any "financial obligation"). If the parties really intended to allow recovery of attorneys' fees for legal proceedings to remove the operator under the JOA, the word "financial" would not have been added to modify the term "obligation" in the attorneys' fees provision of the JOA. But the word "financial" was added to the text of the attorneys' fee provision. The Court must give effect to this critical word "financial"; otherwise, the Court would be rewriting the JOA.

In sum, the Court concludes that a legal proceeding to enforce "any financial obligation" as used in the attorneys' fees provision of the JOA (Article VII.D.5), means a legal proceeding to enforce any monetary obligation. This attorneys' fees provision in the JOA does not include enforcement of non-financial obligations, such as a proceeding to remove Debtor LLC as the operator under the JOA.

### 3. *Application of JOA Attorneys' Fees Standard to Legal Proceedings*

The Court will now apply this legal framework to the different legal proceedings between USED, Debtor LLC, and Debtor LP (the parties to the JOA). Under this framework, to recover attorneys' fees under the JOA, USED must: (1) be a "prevailing party"—meaning that USED successfully prosecuted or successfully defended the "main issue" in a legal proceeding and actually obtained a remedy; and (2) the successful legal proceeding must enforce a "financial obligation" of Debtor LLC or Debtor LP—meaning to enforce a monetary obligation of Debtor LLC or Debtor LP.

<u>State Court Proceeding</u>

The Court starts with the State Court Proceeding filed by USED prior to the Debtors' bankruptcy. The "main" issue and remedy sought by USED in the State Court Proceeding was injunctive relief to recognize and enforce the removal of Debtor LLC as operator under the JOA. USED obtained an *ex parte* Temporary Restraining Order preventing Debtor LLC from continuing to act as the operator under the JOA. The Temporary Restraining Order soon expired by its terms and the State Court Proceeding was later dismissed without a trial on the merits.

If the Court gives USED the benefit of the doubt that obtaining an *ex parte* Temporary Restraining Order is "prevailing" in a proceeding, the Court concludes that USED was a "prevailing party" in the State Court Proceeding. But USED did not prevail in the State Court Proceeding to enforce any "financial obligation" of Debtor LLC or Debtor LP as required by the attorneys' fees provision of the JOA.

This is true because the primary remedy sought, and the only remedy obtained, by USED in the State Court Proceeding was an injunctive remedy removing Debtor LLC

as operator. USED was not awarded a remedy on any financial or monetary obligation against either Debtor LLC or Debtor LP in this proceeding. No monetary judgment was ever rendered in the State Court Proceeding. Ultimately, the State Court Proceeding was dismissed by USED with no monetary relief being awarded to USED.

As a result, the Court concludes that USED is not entitled to recovery of attorneys' fees incurred in the State Court Proceeding under the contractual standard in the JOA.

Operator Adversary Proceeding

Next, the Court will analyze the Operator Adversary Proceeding brought by USED in this Court. The "main" issue and remedy sought by USED in this proceeding was injunctive relief to enforce the removal of Debtor LLC as operator under the JOA and recognition that USED was the successor operator. Following a contested hearing, this Court granted USED's request for a Preliminary Injunction. The Preliminary Injunction prevented Debtor LLC from continuing to act as the operator and determined that USED was the operator, pending a trial on the merits. A trial on the merits was never conducted. USED remained the operator and the Operator Adversary Proceeding was later dismissed by stipulation of the parties.

If the Court considers the issuance of a Preliminary Injunction in favor of USED as "prevailing" in a proceeding, the Court concludes that USED was a "prevailing party" in the Operator Adversary Proceeding. But USED did not prevail in the Operator Adversary Proceeding to enforce any "financial obligation" of Debtor LLC or Debtor LP within the meaning of the attorneys' fees provision in the JOA.

This is true because the primary remedy sought, and the only remedy obtained, by USED in the Operator Adversary Proceeding was an injunctive remedy removing Debtor LLC as operator. USED was not awarded a remedy on a financial or monetary obligation against either Debtor LLC or Debtor LP in this proceeding. No monetary judgment or relief was ever rendered in this proceeding. Ultimately, the Operator Adversary Proceeding was dismissed by USED with no monetary relief being awarded to USED.

As a result, the Court concludes that USED is not entitled to recovery of attorneys' fees incurred in the Operator Adversary Proceeding under the contractual standard in the JOA.

<u>Interpleader Adversary Proceeding</u>

Next, the Court will evaluate the Interpleader Adversary Proceeding brought by USED in this Court. This proceeding was filed by USED against Debtor LLC, Castlelake and multiple mineral lienholders that asserted mineral subcontractor liens and claims against USED. The main issue and relief sought in the Interpleader Adversary Proceeding was the amount owed by USED to Debtor LLC for joint interest billings and discharge of USED from liability through payment of USED funds to parties entitled to such funds. Ultimately, an Agreed Final Judgment was entered in the Interpleader Adversary Proceeding. The Agreed Final Judgment discharged USED from claims, distributed the interplead funds, and dismissed all other claims with prejudice.

USED was indeed successful in obtaining an Agreed Final Judgment discharging it from liability in the Interpleader Adversary Proceeding. But this proceeding was not brought by USED to "enforce any financial obligation" of Debtor LLC within the meaning

of the attorneys' fees provision of the JOA. USED did not seek any monetary relief against Debtor LLC in this interpleader action; instead USED only sought to adjudicate *its own* liability to Debtor LLC for the interplead funds.

No monetary judgment or relief was ever granted in the Interpleader Adversary Proceeding in favor of USED against Debtor LLC. Indeed, in this proceeding USED admitted it owed joint interest billings *to* Debtor LLC and USED interplead the funds that USED admitted it owed into the registry of the Court. USED did not pay mineral lienholders any amount over the amount that USED admitted it owed to Debtor LLC in the Interpleader Adversary Proceeding.

As a result, the Court concludes that USED is not entitled to recovery of attorneys' fees incurred in the Interpleader Adversary Proceeding under the contractual standard in the JOA.

### Bankruptcy Case

USED appeared and participated in numerous hearings in the Debtors' main bankruptcy case pending in this Court—ranging from cash collateral and DIP financing to the sale of the Debtor's assets and confirmation of a Plan.

The primary goal of USED in the Debtors' bankruptcy case was to preserve and enforce USED's lien rights under the JOA and maintain USED's operatorship. This goal was demonstrated by the testimony of USED at the hearing on the Consolidated Objections to USED Claims. USED's goal was also evident from the numerous agreements reached by USED with Castlelake and the Debtors in the bankruptcy case to preserve any lien of USED under the JOA in connection with DIP financing, sale of the Debtors' assets, and confirmation of a Plan.

The Court concludes that preservation of USED's lien rights and operatorship in the bankruptcy case is not a proceeding to "enforce a financial obligation" of Debtor LP or Debtor LLC under the attorneys' fees provision of the JOA. *Preserving rights* under the JOA is a far, far cry from *enforcing financial obligations* under the JOA. USED cites to no order or judgment entered by this Court at USED's request in the bankruptcy case which enforced any financial obligation of Debtor LLC or Debtor LP under the JOA. Indeed, USED testified at the hearing that USED never actually enforced any financial obligation of either Debtor LLC or Debtor LP, and that Debtor LP never paid any of the outstanding pre-petition joint interest billings that were owed.

Finally, the language in the JOA requires that USED "bring" a legal proceeding against Debtor LP or Debtor LLC (the other parties to the JOA) to be entitled to recover attorneys' fees. Yet the bankruptcy case was voluntarily filed by the Debtors; the bankruptcy case was not a proceeding "brought" by USED to enforce a financial obligation. USED cites to no motion or contested matter it brought within the Debtors' bankruptcy case to enforce any financial obligation of Debtor LLC or Debtor LP.

As a result, the Court concludes that USED is not entitled to recovery of attorneys' fees incurred in the Debtors' bankruptcy case under the contractual standard in the JOA.

### 4. *Conclusion--USED Attorneys' Fees are not Recoverable under JOA Contractual Standard*

The net result: USED is not entitled to recover its attorneys' fees under the contractual standard set forth in the JOA. In essence, the JOA requires that USED prevail in a legal proceeding to enforce a "financial obligation" of another party (Debtor LLC or Debtor LP) to recover its attorneys' fees. It is true that USED could be viewed as

having prevailed in legal proceedings to remove Debtor LLC as operator. Yet that success never enforced any "financial obligation" of Debtor LLC or Debtor LP—as required by the contractual text of the JOA for USED to recover its attorneys' fees.

The Court's conclusion is also supported by USED's testimony at the hearing. USED admitted that it never actually enforced any financial obligation of either Debtor LLC or Debtor LP. USED also admitted that it never recovered any money damages or monetary relief from either Debtor LLC or Debtor LP.

For the Court to award USED any attorneys' fees would essentially require the Court to rewrite the JOA and violate two fundamental legal axioms—disregard the ordinary meaning rule and subtract the word "financial" before the word "obligation". This of course, the Court cannot do.[21] If the parties to the JOA had intended to allow recovery of attorney's fees for enforcement of *any obligation* under the JOA (such as the obligation of Debtor LLC to relinquish its operatorship), the JOA could have been written that way. But it was not. Instead, the JOA was written to require a successful proceeding to enforce a *financial obligation* to recover attorneys' fees.

In conclusion, USED is not entitled to recovery of any of its attorneys' fees under the contractual standard set forth in the JOA. As a result, USED has no lien under the JOA for its attorneys' fees, and the objections filed by Castlelake to the secured claims of USED must be granted.

### C. Lien on Assets of Debtor LP for Attorneys' Fees Against Debtor LLC

The Court has already concluded that USED does not have a valid claim and lien for attorneys' fees, given the contractual "financial obligation" standard used in the JOA.

---

[21] A court may not rewrite a contract. A court should give meaning to every word in a contract. *See e.g., Fischer*, 479 S.W. 3d at 239 (Tex. 2016) (supporting citations omitted); *see also Tenn. Gas Pipeline Co. v. Fed. Energy Regulatory Comm'n*, 17 F.3d 98, 103 (5th Cir. 1994) (applying Texas law).

There is a second and independent ground that leads the Court to conclude that USED does not have a valid claim and lien for attorneys' fees. Simply put, USED does not have a lien on assets of Debtor LP based on a claim for attorneys' fees against Debtor LLC under the JOA.

Debtor LLC is the only party to the JOA that USED could conceivably be deemed to have prevailed against in a legal proceeding. USED obtained injunctive relief (albeit temporary) against Debtor LLC in the State Court Proceeding and Operator Adversary Proceeding. Notably, USED obtained no relief and did not prevail in any legal proceeding against Debtor LP.

Yet Debtor LP is the only party to the JOA that owned assets with value that were sold to Castlelake. Debtor LP's assets consisted of working and leasehold interests in the Oil and Gas Properties. At the hearing, USED effectively (and understandably) conceded that USED is asserting its lien only on the working interests owned by Debtor LP sold to Castlelake. USED is not asserting a lien on any assets owned by Debtor LLC that were sold to Castlelake.[22]

Debtor LLC and Debtor LP were each separate parties and signatories to the JOA, along with USED. Debtor LLC was the operator and Debtor LP was a working interest holder. Debtor LLC and Debtor LP had different roles, functions, and obligations under the JOA. They are separate legal entities.

Under the JOA, USED has a contractual lien only on the assets and interests owned by *the party* against whom attorneys' fees are recoverable. This is evident from the language in the JOA. The assets and interests subject to the contractual lien are set

---

[22] As detailed in the Court's Findings of Fact, the assets of Debtor LLC sold to Castlelake and the assets of Debtor GP do not have any value.

forth in the JOA, which provides in pertinent part as follows:

> **Liens and Security Interests:** *Each party* grants to the other parties hereto a lien upon any interest *it* now owns or hereafter acquires in Oil and  Gas Leases and Oil and Gas Interests…and a security interest…in any interest *it* now owns or hereafter acquires in the personal property and fixtures… to secure performance of all of *its* obligations under this agreement…[s]uch lien and security interest granted by *each party* hereto shall include *such party'*s leasehold interests, working interests, operating rights, and royalty and overriding royalty interests in the Contract Area… *See* Article VII.B of JOA (Ex. 1, p. 15) (*emphasis added*).

In turn, the attorneys' fees provision of the JOA provides, in pertinent part, as follows:

> Costs and Attorneys' Fees: In the event any party is required to bring legal proceedings to enforce any financial obligation of *a party* hereunder, the prevailing party in such action shall be entitled to recover… a reasonable attorney's fee, *which the lien provided for herein shall also secure*. *See* Article VII.D.5 of JOA (Ex. 1, p. 16) (*emphasis added*).

The language in the JOA clearly provides that each party is granting a lien on the interests and assets owned by that particular party to secure only the obligations of that particular party. This is the inescapable conclusion from the use of the words "each", "it", "its" and "a" when describing a party in the relevant lien provisions of the JOA. Put another way, Debtor LP (a separate party) did not grant a lien on Debtor LP's assets to secure the attorneys' fee obligations of Debtor LLC (a different party) under the JOA.

To sum up, USED does not have a lien on assets of Debtor LP based on a claim for attorneys' fees against Debtor LLC by USED. Assuming *arguendo* that USED was a "prevailing party" under the contractual standard in the JOA, USED prevailed only against Debtor LLC (not Debtor LP). The JOA does not grant USED a lien on the assets of Debtor LP to secure obligations and fees owed by Debtor LLC. The assets now owned by Castlelake upon which USED asserts a lien, were assets owned by Debtor

LP (not Debtor LLC). Based on this separate and independent ground, the objections filed by Castlelake to the secured claims of USED must also be granted.

### D. Additional Grounds for Objections

Castlelake has raised additional grounds in its objections to USED's claim for attorneys' fees. These additional grounds include: (1) waiver of USED's right to recover attorneys' fees in certain legal proceedings, due to language in dismissal orders in such proceedings; and (2) denial of USED's attorneys' fees, due to the failure of USED to segregate such fees between recoverable and non-recoverable claims and proceedings.

The Court has already granted Castlelake's objection to the secured claims of USED for attorneys' fees on the two independent grounds set forth above in this Opinion. As a result, the Court finds it unnecessary to reach such additional grounds.

## V
## CONCLUSION

As this case aptly demonstrates, words do matter. Here, the governing contract (a joint operating agreement) has the critical word "financial" before the word "obligation". The Court cannot ignore this critical word in the text of the agreement, nor can it rewrite the agreement by subtracting this word. To recover its attorneys' fees, the joint operating agreement requires that USED be a "prevailing party" in a proceeding to enforce a "financial obligation". Although USED may have prevailed in the eyes of many, and incurred necessary attorneys' fees in doing so—USED did not prevail in the type of proceeding contractually required to recover attorneys' fees. For this reason standing alone, USED's secured claims for attorneys' fees must be denied.

There is second, independent reason that the secured claims of USED must be denied. Put simply, the only party to the agreement that USED may have prevailed against (Debtor LLC) is not the same party to the agreement upon whose assets USED asserts a contractual lien for attorneys' fees (Debtor LP).

In the end, and for the reasons set forth in this Opinion, USED's secured claims for attorneys' fees must be denied and Castlelake's objections to the secured claims must be granted. An Order consistent with this Opinion will be entered by the Court, granting the Consolidated Objections to USED Claims filed by Castlelake.

###